1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF HAWAII

3
     MARTIN DEFENSE GROUP, LLC;    )  CV 22-00283 LEK-WRP
4    and NAVATEK HOLDINGS LLC,     )
                                   )
5                 Plaintiffs,      )  Honolulu, Hawaii
                                   )  November 18, 2022
6       vs.                        )
                                   )  VIDEOCONFERENCE
7    MARTIN KAO; TIFFANY JENNIFER  )  MOTION HEARING
     LAM a.k.a. JENNY LAM and/or   )
8    TIFFANY KAO; LAWRENCE KAHELE  )
     LUM KEE; CLIFFORD CHEN; GARY  )
9    AMBROSE; DUKE HARTMAN;        )
     SOCIETY OF YOUNG WOMEN        )
10   SCIENTISTS AND ENGINEERS      )
     LLC,                          )
11                                 )
                  Defendants.      )
12   _____)

13
                         TRANSCRIPT OF PROCEEDINGS
14            BEFORE THE HONORABLE LESLIE E. KOBAYASHI
                    UNITED STATES DISTRICT JUDGE
15
     APPEARANCES:
16
     For the Plaintiffs:        CRYSTAL K. ROSE, ESQ.
17                              Bays Rose Lung & Wagnild
                                Topa Financial Center
18                              700 Bishop Street, Suite 900
                                Honolulu, Hawaii 96813
19
     For the Defendants        ALLISON A. ITO, ESQ.
20   Martin Kao, Tiffany        MICHAEL A. OKAZAKI, ESQ.
     Jennifer Lam:             Choi & Ito
21                              Topa Financial Center
                                700 Fort Street, Suite 1107
22                              Honolulu, Hawaii 96813

23

24

25

                         UNITED STATES DISTRICT COURT

```
 1   APPEARANCES CONTINUED:

 2   For the Defendant        SCOTT E. KUBOTA, ESQ.
     Lawrence Kahele Lum      Scott E. Kubota, AAL, LLLC
 3   Kee:                     Four Waterfront Plaza
                              500 Ala Moana Boulevard, Suite 480
 4                            Honolulu, Hawaii 96813-4920

 5   For the Defendant        DEREK R. KOBAYASHI, ESQ.
     Clifford Chen:           BRITTNEY MICHIKO WU, ESQ.
 6                            Schlack Ito LLLC
                              745 Fort Street, Suite 1500
 7                            Honolulu, Hawaii 96813

 8   For the Defendant        MARGERY S. BRONSTER, ESQ.
     Duke Hartman:            Bronster Fujichaku Robbins
 9                            Pauahi Tower
                              1003 Bishop Street, Suite 2300
10                            Honolulu, Hawaii 96813

11

12

13

14

15

16

17

18

19

20

21   Official Court Reporter:  Debra Read, RDR
                              United States District Court
22                            300 Ala Moana Boulevard
                              Honolulu, Hawaii 96850
23                            readit3949@gmail.com

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

UNITED STATES DISTRICT COURT

```
1   FRIDAY, NOVEMBER 18, 2022                          9:41 A.M.

2          THE COURTROOM MANAGER:  Before Judge Kobayashi

3   connects, I just wanted to go over some housekeeping matters.

4          This hearing is being recorded through Zoom government

5   system as well as by a live court reporter.  Counsel, please

6   mute your microphones when you're not speaking to minimize the

7   audio interference.  All hearings are strictly prohibited from

8   being recorded or broadcasted, in whole or in part, in any

9   fashion.  Those joining this hearing by audio only, please mute

10  your telephone to minimize the audio interference on our

11  recording.  Thank you.

12         Good morning, Judge.  Can you hear me okay?

13         THE COURT:  You may call the case, please.

14         THE COURTROOM MANAGER:  Thank you.

15  The United States District Court for the District of

16  Hawaii with the Honorable Leslie E. Kobayashi, United States

17  District Judge presiding, is now in session.

18  Civil No. 22-00283 LEK-WRP, Martin Defense Group, LLC, et

19  al, v. Martin Kao, et al.

20  This case has been called for hearing on Defendant Duke

21  Hartman's motion to dismiss complaint and Defendant Lum Kee's

22  substantive joinder.

23  Counsel, please make your appearances for the record.

24         MS. ROSE:  Good morning, Your Honor.

25  Crystal Rose on behalf of the plaintiffs Martin Defense
```

UNITED STATES DISTRICT COURT

 1   Group, LLC and Navatek Holdings LLC.

 2            THE COURT:  Good morning, Ms. Rose.

 3       All right.  Who's next?  Let's see.  I think the movant

 4   for Duke Hartman?

 5            MS. BRONSTER:  Yes, Your Honor.  Good morning, Your

 6   Honor.

 7       Margery Bronster on behalf of Duke Hartman.  Duke Hartman

 8   is observing today, and with me in my conference room is Rex

 9   Fujichaku and Noelle Chan.

10            THE COURT:  All right.  Good morning to all of you.

11       And then I think, Mr. Kubota, you're next.  Oh, I think

12   you're still muted.

13            MR. KUBOTA:  Good morning, Your Honor.

14       Scott Kubota appearing on behalf of Kahele Lum Kee.

15            THE COURT:  All right.  Good morning to you.

16       Mr. Kobayashi?

17            MR. KOBAYASHI:  Good morning, Your Honor.

18       Derek Kobayashi and Brittney Wu on behalf of Defendant

19   Clifford Chen.

20            THE COURT:  All right.  Good morning to both of you.

21       Ms. Ito.

22            MS. ITO:  Good morning, Your Honor.

23       Allison Ito and also Michael Okazaki on behalf of Martin

24   Kao, Tiffany Lum, and the Society of Young Women Scientists and

25   Engineers.

```
 1              THE COURT:  All right.  Good morning to all of you.
 2         So I've had an opportunity to review Mr. Hartman's motion
 3    to dismiss as well as the substantive joinder that was filed
 4    by -- or on behalf of Mr. Lum Kee and the simple joinder that
 5    was filed on behalf of Clifford Chen.
 6         So let me give you my initial thoughts, and then I have
 7    some specific questions, and then I'm happy to hear whatever
 8    arguments that you have.  You certainly know the case better
 9    than I do, and there are a lot of moving parts with regard to
10    the complaint in this matter.
11         So you saw my EO that I issued about the standard for the
12    Ninth Circuit.  So really the question is -- I'm inclined to
13    grant the motion but permit an amendment, all right? -- and
14    then it's which one should be permitted to amend; but also,
15    should any of the claims be dismissed with prejudice?  And
16    that's why I asked you to focus on the futility.
17         I would like to just focus for now on the claim involving
18    the RICO claim based on the PPP loan fraud.  So if we could go
19    through that, and in particular I'm interested in the element
20    that is required to be shown, the direct relationship, between
21    the criminal activity, i.e., the PPP loan fraud, and the injury
22    asserted.
23         So is MDG subject to any penalties?  What injuries?  I
24    note at paragraph 64 it claims that MDG as a result of this
25    alleged criminal enterprise is potentially having to repay the
```

1    federal government for PPP proceeds, having assets seized, et

2    cetera.

3         So this seems to be a possibility as alleged as opposed

4    to something with specificity.  And is this something that can

5    be amended if given an opportunity, or is something that is

6    really along the lines of futility?

7         So I'm going to turn first to Ms. Rose on that.  And then

8    my follow-up question more generally is, there's some confusion

9    because there's two plaintiffs, and it looks like the

10   plaintiffs' claims against -- of plaintiff Navatek Holding are

11   really claims against Mr. Kao and family members as opposed to

12   claims against Mr. Hartman and Mr. Lum Kee.  So if you could

13   clarify that as well.

14        But I'll turn to you first with regard to my question

15   initially about the PPP loan fraud allegation.

16        MS. ROSE:  Thank you, Your Honor.

17        So as to the PPP loan fraud and your specific question

18   regarding whether we have to repay it, it is unclear at this

19   point in time.  The loan has not received any type of

20   forbearance.

21        What has happened is at the time of Mr. Kao's arrest,

22   there was a seizure -- seizure of funds in various accounts

23   that were taken by the government.  And it is -- we -- that

24   matter as to whether they're going to keep those funds to pay

25   the loan is unclear yet.  His sentencing is for the PPP fraud.

1    While he has been indicted and pled guilty to the claims, the

2    sentencing has not occurred.

3         So if you would ask me today, we are obligated to pay

4    those funds; however, there are funds being held by the federal

5    government which could be used to reimburse the SBA.

6              THE COURT:  Okay.

7              MS. ROSE:  Does --

8              THE COURT:  Yeah, that's helpful.  So, yeah, I

9    understand, you know, you're not privy to what the government's

10   doing with regard to that.

11        Has there been any contact or outreach to your corporate

12   clients as victims?

13             MS. ITO:  We have -- there -- we have attempted to

14   both in the campaign finance case as well as the PPP fraud case

15   communicated with the attorney -- district attorneys to see if

16   we could get victim status.  That has -- that has not occurred

17   yet, but there has been a request that we become -- that we

18   have victim status, 'cause in addition to the loan amounts,

19   there are -- and in addition to that, Your Honor, there are

20   other injuries that derive from the PPP loan.

21        As alleged in the complaint, we allege that as a result

22   of this fraud and the RICO violations, there has -- we've lost

23   employees, we lost contracts, and other matters.

24        So the repayment of the loan is only one of the various

25   alleged injuries resulting from the PPP fraud as well as the

UNITED STATES DISTRICT COURT

1    campaign finance fraud.

2              THE COURT:  Okay.  The campaign finance fraud's not

3    being prosecuted in the District of Hawaii, though, right?

4              MS. ROSE:  No.  That's prosecuted, I believe, in

5    D.C., and he pled -- Mr. Kao pled guilty to that complaint as

6    well.  The sentencing, it's my understanding, for that

7    complaint has not occurred.

8         The other two defendants have not -- are -- the trial is

9    set for April.  They may be able to comment on that more

10   directly, but it's my understanding that the campaign fraud

11   trial in D.C. is scheduled for April.

12             THE COURT:  Okay.  So I see that --

13             MS. ROSE:  Or that --

14             THE COURT:  Yeah.

15             MS. ROSE:  I mean, that's as it relates to Defendant

16   Chin and Defendant Lum Kee.  But the PPP fraud indictment only

17   involved Mr. Kao.

18             THE COURT:  Right, and that's set for sentencing on

19   January 19, 2023.  So they're preparing the presentence report,

20   so they should be contacting any victim for victim statements

21   and --

22             MS. ROSE:  They have not --

23             THE COURT:  -- to be reimbursed.

24             MS. ROSE:  We have not been contacted yet.  Okay?

25             THE COURT:  Okay.  Okay.  That's helpful.  And then

1   with regard to -- with regard to Navatek, does it have any

2   claim?

3               MS. ROSE:  It does not have -- it is the parent

4   company.

5               THE COURT:  Right.

6               MS. ROSE:  And it does not have any direct claims

7   against either Lum -- Mr. Lum Kee, Lawrence Lum Kee, or Duke

8   Hartman.

9               THE COURT:  Okay.  Very good.  All right.  And then

10  while I have you, I want to ask you with the RICO claims

11  pertaining to the campaign finance fraud, I understand

12  factually what you're talking about with regard to Mr. Kao,

13  Mr. Chen, and Tiffany Lam, and Mr. Lum Kee.  But is there any

14  allegation with regard to that RICO claim having to do the

15  finance fraud with Mr. Hartman?

16              MS. ROSE:  Yes, there is, Your Honor.

17  Mr. Hartman -- and it's in the complaint -- he was essentially

18  brought in to do what we call the cover-up where there was in

19  February of 2020 a FAC complaint filed, and as a result of that

20  they started various actions to make the Society look

21  legitimate.  He was employed and paid for by Martin Defense

22  Group to do this, and those allegations and his actions to

23  create the legitimacy of the Society by giving out scholarships

24  to the various schools in areas in which -- or locations in

25  which MDG was seeking federal funds through what is referred to

1    as a pay-for-play scenario is well documented.

2              THE COURT:  Okay.  So that's the part I don't see in

3    the complaint.  I don't see that Count 2 or 3 in detail --

4              MS. ROSE:  Yes.  In fairness, Your Honor, I would

5    agree that that -- what we have received subsequent information

6    by -- through discovery of Mr. Hartman's specific actions as a

7    result of documents obtained from the University.

8              THE COURT:  Okay.  So you'd be able to amend that.

9              MS. ROSE:  We could amend that, Your Honor.

10             THE COURT:  Yeah.

11             MS. ROSE:  And I'm not here to tell you that that is

12   the best pled part of my complaint.

13             THE COURT:  Yeah.  We're not grading; we're just

14   seeing whether or not it meets the 12(b) standard.

15             MS. ROSE:  I believe there's enough there to give

16   Mr. Hartman and Margery notice of what the claim is, but we're

17   happy to amend for specificity.

18         We would seek leave to add additional claims as well

19   as -- against parties.  Thanks.

20             THE COURT:  Yeah.  Okay.  So what I'm looking at

21   with regard to that though, is, you know, the notice pleading

22   requirement, if not the letter of the rule, certainly the

23   spirit that there really isn't sufficient on the -- especially

24   on the fraud and the RICO claims where you have to have

25   specificity -- right? -- in terms of --

UNITED STATES DISTRICT COURT

1          MS. ROSE:  So my question --

2          THE COURT:  -- with it, but then -- go ahead.

3          MS. ROSE:  Go ahead.  My question to you, Your

4   Honor, is we believe that there is lots of specificity as to

5   the actions that were provided by the by -- or taken up by the

6   various defendants.

7          THE COURT:  Right.

8          MS. ROSE:  This is not a case about

9   misrepresentation which many of the case law refers to when

10  they seek specificity.

11         THE COURT:  Right.

12         MS. ROSE:  There've been a fair amount of specific

13  acts that were engaged in and we believe satisfy the

14  specificity requirements of -- or 9(b) in that respect.

15      And I look to, you know, some case law, in fact, the

16  Doran case that was your case that talks about the spirit of

17  9(b).  I think everyone here knows and understands what these

18  claims are.

19         THE COURT:  Yeah.  I think what it is -- and, you

20  know, it's -- you know, obviously it's your complaint, your

21  clients, you know, have their claim; they can present their

22  claim that they want to.

23      The problem that we're having is there's so much going

24  on --

25         MS. ROSE:  Right.


                    UNITED STATES DISTRICT COURT

1          THE COURT:  -- you know, and so you have your

2    factual statement and then you have each of your claims, and

3    you say, well, you know, we allege everything, you know, the

4    2000, you know, paragraphs that we had before.

5          So, but there's so much happening, you know.  There's the

6    PPP alleged fraud; there's the campaign finance alleged fraud;

7    there's, you know, employment contracts that, you know, have

8    alleged breaches and things like that.  So, you know, I think

9    it's helpful to kind of -- you can reallege because I think you

10   don't want to miss anything, but as to each of them, you know,

11   clarity would be helpful with regard to it, and then the

12   causation, what kind of --

13         MS. ROSE:  Correct.

14         THE COURT:  -- you know, harm.

15         So I do, though, tend to agree with the defendants that

16   on the allegations that, well, we lost employees, we did this,

17   that, and the other thing, you know, that -- and for the RICO

18   claim, at the very least, there has to be more specificity of,

19   you know, people left.

20         MS. ROSE:  Right.

21         THE COURT:  And so, you know -- so that's one

22   requirement.

23         The other thing that would be helpful that I found

24   confusing and could potentially I think in later stages would

25   be is on your request for relief.  You know, it says

UNITED STATES DISTRICT COURT

1    "Plaintiffs request," and then you have just like any other

2    complaint.  The problem is is the plaintiffs are in such a

3    different position vis-à-vis certain defendants.

4         So just a suggestion, you know, would be in the amendment

5    would be to, "For Plaintiff MDG we're seeking this, that, and

6    the other thing against these defendants; for Plaintiff

7    Navatek" -- and it's probably the same relief you're asking

8    for -- right? -- 'cause you don't want to leave anything off

9    the table.  But then they'll be on notice who is it that

10   they're seeking -- seeking these things and then hopefully, you

11   know, they're going to want to do it in terms of being able to

12   articulate their motion for summary judgment.  So free advice.

13         MS. ROSE:  If I can just clarify from what I'm

14   hearing from you, while we have put forth all of these

15   allegations as to each cause of action, you would like to know

16   which specific -- which specific allegations relate to that

17   cause of action, and then in the prayer for relief what damages

18   we're seeking from each defendant separately?  Is that --

19         THE COURT:  Yeah, which plaintiff is going

20   against -- like you said, Navatek doesn't have claims against

21   Lum Kee and Hartman, right?

22         MS. ROSE:  Right.

23         THE COURT:  So, you know, if that's clarified, then

24   they're not going to move for summary judgment on that --

25         MS. ROSE:  At this point clarity is what the Court

UNITED STATES DISTRICT COURT

1    is looking for?

2              THE COURT:  Yeah, yeah.

3              MS. ROSE:  I'm happy to do it.

4              THE COURT:  Okay.  Ms. Bronster, so I certainly

5    don't want to -- this is your motion -- leave you out of this,

6    particularly with the PPP loan fraud.

7         So what I'm hearing is that they believe that they have

8    either potential liability or there's funds of theirs that were

9    taken as a result of Mr. Kao's arrest and so forth, and so

10   we're looking at a futility argument.

11        Now, I'm looking at it more in terms of maybe their

12   claim's not ripe, you know, that the statute of limitation has

13   not run because we're kind of in this, well, maybe they'll get

14   the money back, maybe the government's not going to ask for the

15   money.

16             MS. BRONSTER:  Yeah, Your Honor, I think that's a

17   very good point and I think I'll start with your questions

18   first and then go into some other comments.

19        But basically when we filed the motion to dismiss the

20   RICO claims and focused on causation, I think it's pretty clear

21   that their response was that the damage that they suffered

22   related to the loss of the contracts and the loss of the

23   employees.  And I think when you look at the *Anza* case and the

24   more recent Hemi Group case, it makes it clear that that kind

25   of attenuated damage, indirect damage, does not meet the

UNITED STATES DISTRICT COURT

1    causation requirements under RICO.

2         And so they have not alleged and even in their arguments

3    don't go into the idea that there is specific money that they

4    have lost.  And to the extent that they do when they talk about

5    Mr. Kao in buying a house and other things, that is not alleged

6    as with respect to Duke Hartman.

7         So I think that as you parse through this complaint and

8    look at what can and cannot be amended, I think there are

9    certain things that it would be futile to amend or to attempt

10   to amend vis-à-vis Mr. Hartman.

11        And it goes beyond the causation.  I think that with

12   respect to Mr. Hartman, there are no allegations and no

13   plausible allegations that he conducted the enterprise in such

14   a fashion that he caused racketeering harm.  So when you look

15   at the failures with respect to Mr. Hartman, he -- there is no

16   claim that he conducted the enterprise as distinct from having

17   a role in MDG.  They do say that he had a position at MDG and

18   he had certain job responsibilities, but that's distinct from

19   the requirement that he had to have conducted the enterprise.

20             THE COURT:  Right.

21             MS. ROSE:  And so we feel that there's a problem

22   with the pattern and that may be something that can be

23   realleged.

24        But with respect to the continuing and likely to

25   continue, I think that's not plausible given the fact that all

UNITED STATES DISTRICT COURT

 1    of these people are either indicted or gone, including

 2    Mr. Hartman, who was fired, and we think that the causation is

 3    the most significant problem.

 4         So we do believe that the claims against Mr. Hartman, all

 5    of the RICO claims, would be futile, particularly on the issue

 6    of causation.

 7         With respect to the 1962(a) claim, which relates to the

 8    investment of the proceeds of the racketeering activity, there

 9    is no allegation with respect to Mr. Hartman and we don't

10    believe that that can be fixed.  So we believe that Count 2 on

11    1962(a) would fail based on the language of 1962(a) as well as

12    the things that are common to all of the RICO claims.  And the

13    conspiracy fails because the 1962(c) and the 1962(a) fail.  So

14    we believe that they are all a group.

15         I think, though, that perhaps the most compelling claim

16    that cannot be repled, it would be absolutely futile to replead

17    it, is the common-law fraud claim.  Now, it seems potentially a

18    little bit peculiar.  I mean, we're asking for it to be pled

19    with specificity and you would think that there are lots of

20    facts that they could come up with.  But as alleged, they don't

21    have it and, you know, they could come up with certain

22    statements that they can claim, you know, give rise to some

23    inference, but there is a fundamental problem with their

24    common-law fraud claim and that is that their common-law fraud

25    claim is alleged that the plaintiff is claiming that the

1    plaintiff was misled, and the plaintiff was MDG.

2         We don't believe that under *Hawaii's Thousand Friends* MDG

3    can be the plaintiff, because when you look at an allegation of

4    fraud, not only does it have to be pled with particularity, but

5    you also have to plead that the representations or omissions

6    were made with the intent that the plaintiff would rely and the

7    plaintiff relied to its detriment.  But the allegations were

8    made, allegedly --

9              THE COURT:  Right.

10             MS. BRONSTER:  -- in the complaint to the

11   government.

12             THE COURT:  Right.

13             MS. BRONSTER:  And so under common-law fraud, you

14   cannot have an injury that is not based on the reliance of the

15   plaintiff.

16             THE COURT:  Right.  That's for the PPP fraud, right?

17   But for the campaign finance fraud -- right? -- taking the --

18   washing the money through allegedly and so forth and so on, I

19   mean, it's a question of fact at that point -- right? -- in

20   terms of that.

21        So I agree with you --

22             MS. BRONSTER:  So --

23             THE COURT:  Yeah.

24             MS. BRONSTER:  But the PPF fraud -- so we're talking

25   about Mr. Hartman here.  So the PPP fraud is a problem

```
 1    to -- and I'm talking about the common law one here --
 2              THE COURT:  Right.
 3              MS. BRONSTER:  -- where -- where they cannot allege
 4    that he defrauded MDG --
 5              THE COURT:  Right.
 6              MS. BRONSTER:  -- and MDG has a claim.
 7              THE COURT:  Right.
 8              MS. BRONSTER:  So then you look at the campaign
 9    finance fraud.  As Ms. Rose said just a few moments ago, the
10    campaign finance fraud allegations against Mr. Hartman relate
11    to his alleged involvement in a cover-up, but that's not a
12    fraud allegation under common-law fraud against MDG.  It was an
13    attempt to mislead others that the -- that the fraud
14    was -- that the campaign spending was okay.  But there's no
15    allegation and it's impossible to consider.
16         It would be futile to suggest that the campaign spending
17    fraud misled MDG because he was doing it.  If he did
18    anything --
19              THE COURT:  Right.
20              MS. BRONSTER:  -- he did it at the behest of MDG.
21    All of the people who were his bosses and the owners of MDG
22    were the people who were indicted.
23         Duke Hartman -- I mean, when we talk about the fact that
24    everybody knows what's being alleged against them, there were
25    no allegations against Duke Hartman in the indictment.  You
```

1   know, there's been a lot of litigation, but there was nothing

2   against Duke Hartman.

3           THE COURT:  Right.  So -- so --

4           MS. BRONSTER:  This after-the-fact post-talk attempt

5   to try and pull him in -- and we believe that that case, you

6   know, where the cover-up is what supposedly brings him in -- is

7   insufficient under the *Baumer v. Pachl* case which we talk about

8   is that that doesn't give rise to the operation or management

9   of the enterprise.  It's similar to the other cover-up claims.

10          THE COURT:  Right.  So, but I'm going to have to,

11  you know, under the standard for motion to dismiss assume all

12  of their allegations are true for purposes of the motion.  So I

13  agree with you.

14      I think what I would like to do is work with you folks on

15  an amended complaint.  Then you guys can file a motion for

16  summary judgment, you know, because I think I -- you know, if

17  that's the way that the facts turn out for purposes of a motion

18  for summary judgment, I would agree with you; it seems

19  appropriate that judgment as a matter of law should be granted

20  to Mr. Hartman on that claim.

21      But, you know, how many times do I let them amend?  Two,

22  three times -- right? -- under Ninth Circuit law.

23      So what I would like to ask counsel, if they are in

24  agreement, to agree to have plaintiffs amend the complaint,

25  except for the PPP claim because that, I think, is at the most

1  risk, quite frankly, on a motion to dismiss even, because the

2  causation of injury because they don't know.

3       Now, I also think, though, that that claim isn't ripe

4  yet, so there's no problem with the statute of limitations or

5  something like that.  But if that's a concern, then I would,

6  you know, invite Ms. Rose to see if you folks would agree to

7  stipulate, you know, that the statute of limitations with

8  regard to that, 'cause they haven't experienced any harm.  They

9  haven't had a forfeiture request.  They haven't had, you know,

10 a demand letter from the government and things like that.  And

11 I can see why they're concerned about that, but I think for

12 purposes of actively bringing any sort of claim on the PPP

13 fraud, they really at this point have a hard time, you know,

14 showing injury.

15      And if Probation hasn't contacted them yet about a victim

16 statement and asking for if they're making any claim for

17 restitution, then, you know, they really don't have sort of a

18 hat to hang it on at this point.  Now, that doesn't mean that

19 the government isn't going to go after them at some point.  So

20 I don't know what their plans are.  So I would like to see if

21 we could talk about that in terms of it.

22      So, Ms. Rose, what are your thoughts?

23      MS. ROSE:  Your Honor, we think there is causation

24 for damages beyond the repayment of the PPP loan, and I would

25 like us to be able to have an opportunity to amend the

1  complaint as to that particular -- as to the PPP loan and give

2  us an opportunity to amend the complaint to both claims, the

3  PPP -- to what we talked about earlier --

4          THE COURT:  Right, right.

5          MS. ROSE:  -- which was the campaign finance, and

6  give everyone more specificity.  And if that triggers another

7  motion to dismiss or a motion for summary judgment, that's

8  everybody's right and obligation.

9      So I have -- I'm not going to object to that, but I do

10 think we should have a right to amend the whole thing if that

11 is their concerns.  I don't think the repayment of the PPP is

12 the only damage we can allege in this situation.

13         THE COURT:  Well, I mean, for RICO, you know, you

14 have to show -- well, anyway, okay --

15         MS. ROSE:  Exactly.

16         THE COURT:  -- and the injury asserted, but the

17 causation aspect, and I think Ms. Bronster has touched upon

18 that very well.

19         MS. ROSE:  And I agree.  I guess I'm not in

20 agreement that it's a -- at this point we have alleged damages

21 and we believe that there is a causal connection, and under a

22 motion to dismiss, that should stand --

23         THE COURT:  Okay.

24         MS. ROSE:  -- you know --

25         MS. BRONSTER:  Your Honor --

 1          MS. ROSE:  -- and be the case.  And she can argue

 2   there's no causation and it's futile, but that's not the

 3   standard under a motion to dismiss.

 4          THE COURT:  Okay.  All right.  Ms. Bronster?

 5          MS. BRONSTER:  Yes, a couple of things.  The Court

 6   mentioned that perhaps the next step would be a motion for

 7   summary judgment, and my concern about jumping all the way to a

 8   motion for summary judgment instead of a motion -- another

 9   motion to dismiss after they've tried and failed again to

10   allege a claim is that it would draw us, Mr. Hartman, into

11   expensive and extensive discovery that we don't think is

12   appropriate in this case.

13          THE COURT:  Yeah.  I didn't mean to say I would

14   foreclose you from filing another motion to dismiss.  My

15   personal goal is to tee you folks up for motion for summary

16   judgment --

17          MS. BRONSTER:  Understood.

18          THE COURT:  -- because I think, you know, I have to

19   give them two or three attempts to --

20          MS. BRONSTER:  And I -- and I fully understand that

21   and it may well be with respect to others they're going to have

22   to participate.

23          THE COURT:  Yeah.

24          MS. BRONSTER:  But we don't believe that Duke

25   Hartman is similarly situated.


                    UNITED STATES DISTRICT COURT

1          And then with respect to giving Mr. Hartman notice, I
2     don't believe that the -- that any of it gives him notice, and
3     in particular I'd like to focus on the campaign spending for a
4     moment.
5          There is no allegation that he gave any illegal
6     contributions, and if the campaign spending fraud is the
7     predicate act or is one of the predicate acts, we don't see how
8     Mr. Hartman fits into that.  It's certainly not alleged now,
9     and when Ms. Rose was explaining how the campaign spending
10    issues arose and everybody's involvement, she didn't mention
11    Mr. Hartman except for the single reference to a cover-up.
12              THE COURT:  Right.
13              MS. BRONSTER:  And we don't believe -- we don't
14    believe that that meets a 1961 predicate act in terms of a
15    fraud -- what did he say to whom; who was he trying to mislead;
16    how did it -- you know, how did it cause any damage, and -- and
17    then, of course, the other -- the other issues, you know, was
18    he in control and what involvement did he have in the
19    enterprise involved with this.
20         So I don't think that we have notice pleading of his role
21    into -- in the campaign spending, much less pleading with
22    particularity.
23              THE COURT:  No, I agree.  But, I mean, I think also
24    the case law's pretty clear that they could possibly -- there
25    could be facts possibly that exist that they can allege, and

1   so, you know, they're going to get a right to amend and

2   then --

3           MS. BRONSTER:  No, I wasn't arguing -- I wasn't

4   arguing that point.  I was just saying that if they continue to

5   allege the same kinds of things about what the others have

6   done, that doesn't -- that still doesn't work with respect

7   to --

8           THE COURT:  Right.  Doesn't carry the day for him.

9   I agree with you on that.

10      All right.  Mr. Kubota, I know that you -- oh, go ahead,

11  Ms. Rose.  You had something --

12          MS. ROSE:  Your Honor, I want to disagree with some

13  of the statements that Margery has made.

14          THE COURT:  No, I agree.  I think you guys are sort

15  of -- let me sort of, you know, get to the -- cut to the chase.

16  And so what I want to do is see if we can all agree that rather

17  than me ruling on the motion, that we agree that I will give a

18  deadline for the plaintiffs to file an amended complaint.

19          MS. ROSE:  Okay.

20          THE COURT:  And it's early on.  I just looked at the

21  scheduling conference that you guys just had a couple months

22  ago, and so, you know, your deadline hasn't come -- run yet

23  with regard to join at and --

24          MS. ROSE:  Your Honor, the scheduling conferences

25  have been *sua sponte* continued by Magistrate Porter, so we have

UNITED STATES DISTRICT COURT

1   not had one yet.

2           THE COURT:  Right.  And so you don't have a deadline

3   with regard to, so leave should be given freely to amend, et

4   cetera, et cetera.

5           So what I'd like to do is really spend the time up front

6   trying to drill down what are really the claims, and then the

7   parties can, as they see fit, file motions to dismiss and/or

8   motions for summary judgment.

9           And I do take what Ms. Bronster said, you know, seriously

10  is that, you know, you obviously have to look at the time and

11  expense of discovery with regard to what kind of motion you're

12  going to file.

13          But since it's so early on in the case, I would like to

14  see if the parties can agree to a deadline for plaintiffs to

15  file their first amended and then for you folks then to proceed

16  accordingly.

17          But, Mr. Kubota, you filed a substantive joinder, so I'll

18  let you put your two cents in.

19          MR. KUBOTA:  I guess only one penny after all the

20  arguments so far.

21          It appears that the Court will be allowing Ms. Rose to

22  file an amended complaint before ruling on our motions.  I

23  would just ask, because the fundamental argument is, again, the

24  lack of specificity as far as the RICO complaints, and the

25  argument -- Crystal's argument of specificity is grouping the

1    actions of all defendants together.  That's not a specific

2    allegation of an action against my client.

3          My client, just because he worked there and wrote a

4    check, you know, that's not a specific allegation of, for

5    instance, for the Count 2, how he personally benefitted from

6    these things.

7          So hopefully that will be cleared up by Crystal, and I'm

8    sure she's going to make an attempt at it and then we'll

9    address it at that point.  But I just wanted to point that part

10   out for the record.

11         THE COURT:  Yeah.  No, I appreciate that, yeah.  It

12   definitely has to show that he was a member of the enterprise,

13   what his specific acts did to advance the enterprise, right?

14   And that, you know, he can't be an -- not knowing what the

15   purpose of the enterprise is.

16         So -- so -- anyway, so I just want to clear up is that

17   what I would do is consider the motion withdrawn if we can

18   agree on a date that they would file a First Amended, 'cause

19   the motion that you guys filed only pertains to the initial

20   complaint.  If she files an amended complaint, you would have

21   to file a new motion to dismiss or summary judgment.

22         MS. BRONSTER:  Your Honor, if I may, I think because

23   the Ninth Circuit is so clear that the plaintiff needs to be

24   given an opportunity to amend if amendment would not be

25   futile --

UNITED STATES DISTRICT COURT

1          THE COURT:  Right.

2          MS. ROSE: -- I think it's important that the record

3    show that this complaint, the first complaint, is inadequate.

4    It does not.  It is not pled with sufficient specificity.

5          And I think that Ms. Rose has even admitted that in

6    her --

7          THE COURT:  Well --

8          MS. ROSE:  -- in her opposition.  So I just need

9    something in the record -- and I don't need an order; I don't

10   need you to do a full order -- but I need something in the

11   record to show that -- that their first complaint was subject

12   to a motion to dismiss; they voluntarily offered to file an

13   amended motion.

14         But I can't have it that our -- the next motion that we

15   file is the first one because then it will look peculiar that

16   we somehow withdrew the motion.  So --

17         THE COURT:  I understand.

18         MS. ROSE:  -- I have a problem with that.

19         THE COURT:  I understand your concern, but I'll rule

20   on the motion -- so I'll rule on the motion to dismiss.

21         All right.  So it's granted without prejudice, and

22   plaintiffs are permitted to file the First Amended Complaint,

23   and that's all I'm going to issue, a minute order, with regard

24   to it 'cause I don't think I need to go through an analysis of

25   each of the counts because they're going to file an amended.

1          And, Ms. Rose, you want four weeks?

2              MS. ROSE:  Yeah, four weeks -- 30 days is fine, Your

3   Honor.

4              THE COURT:  Okay.  30 days.  So that would take us

5   to -- I know, Ms. Kimura, if you have a calendar handy.

6          All right.  So today is the 18th, so I think that gives

7   us --

8              THE COURTROOM MANAGER:  December 19th, Judge,

9   because 18th falls on a Sunday.  So would be 19th of December.

10              THE COURT:  All right.  Thank you so much.

11          So the First Amended Complaint will be due on or before

12   December 19, 2022.  And then that will be the operative

13   pleading.  And then you folks can figure out, you know, what

14   agreement you want with regard to answering it.

15          And then we may resume this discussion after a second

16   motion, but I leave that up to you folks.

17          So, Mr. Kobayashi and Ms. Wu, I didn't give you an

18   opportunity to speak.  Is there anything you wanted to add?

19              MR. KOBAYASHI:  No, nothing to add other than we're

20   on record with having filed a simple joinder.

21              THE COURT:  All right.  Thank you.

22          Mr. Okazaki and Ms. Ito, is there anything you wanted to

23   add?

24              MR. OKAZAKI:  We filed a statement of no position,

25   so it wasn't our expectation that we would be arguing today.

UNITED STATES DISTRICT COURT

1          But I guess I do have a little bit of a concern as to the

2    scope of the amendments because, you know, Ms. Rose said, you

3    know, they're thinking about additional claims against the

4    parties.

5          So I guess my question is, is this going to be a limited

6    leave to amend to just address the defects, or is this more

7    carte blanche, they can do whatever they want basically?

8          THE COURT:  More carte blanche, you know, definitely

9    amend the claims that they have now.  But you folks don't have

10   a scheduling order yet, deadline with regard to deadline to

11   amend, so at this point the law clearly says they

12   should -- leave should be given freely.  And so if she did file

13   a motion to amend, you know, I would have to grant it since

14   it's so early on in the case.  So I don't think I can restrict

15   her ability at this point to amend, but I think that's a good

16   clarification.  Thank you.

17         MR. OKAZAKI:  Okay.  Thanks.  Yeah, I mean, as long

18   as we reserve all our rights, because if this had been a motion

19   to amend, you know, we would have arguments.  But --

20         THE COURT:  Yeah, absolutely.  But I think it's

21   really clear unless there's something -- you know, I think case

22   law is really clear, the court almost has to give them the

23   right to do so at this point before the deadline.

24         So I think you guys should have a scheduling conference

25   and a scheduling order as soon as possible if that's what your

1   concern is.

2          MR. OKAZAKI:  My other -- my other question, I guess

3   I didn't quite understand, are they just going to file an

4   amended complaint, you know, by the deadline?  Or are we

5   supposed to, you know, look at their draft first and discuss?

6   I mean, it's just -- they're just going to file, I guess.

7          THE COURT:  Yeah, they have the deadline to file.

8          MR. OKAZAKI:  Okay.

9          THE COURT:  I always encourage counsel if they want

10  to meet and confer, you know, I definitely encourage you folks

11  to do that.  But I'm not requiring it.

12         MR. OKAZAKI:  Okay.  The only request I would have

13  would be, you know, it's a 66-page complaint and it's very

14  difficult to work with.  So if there's a way we could get like

15  a red-line copy, it could even be informal, that would help.

16         THE COURT:  Oh, I see, so that you could compare --

17         MR. OKAZAKI:  After they file.  I mean, I'm not

18  looking for an advanced copy, but afterwards.

19         THE COURT:  Right, yeah.

20         MR. OKAZAKI:  You know, if they had filed a motion

21  to amend, we would see --

22         THE COURT:  Right.

23         MR. OKAZAKI:  -- what their proposed changes were.

24  It's helpful because we don't have to reinvent the wheel when

25  answering or filing a motion.


                    UNITED STATES DISTRICT COURT

1          THE COURT:  Understood.  I think, though, with some

2     of the suggestions that I made, I think the formatting may be

3     different than the first one.  I don't know.  But I encourage

4     you folks to talk to Ms. Rose about it and see if that's

5     something you guys can work out.

6          MR. OKAZAKI:  Yeah.

7          THE COURT:  Anything else?

8          MR. OKAZAKI:  Worse comes to worst, I guess we could

9     do it ourselves, but it'd be easier.

10         THE COURT:  Okay.  All right.  Thank you.

11         MS. BRONSTER:  Your Honor, the only thing I would

12    request is additional time set for our responsive pleading

13    because as you have anticipated, it's possible, if not likely,

14    that we will file another motion, and getting the amendment on

15    December 19th is a bit difficult.  We would like till the end

16    of January, please.

17         THE COURT:  So I'm sure you can work something out

18    with Ms. Rose.

19          Do you have any objection with regard to that, Ms. Rose?

20         MS. ROSE:  We're getting 30 days and she's asking

21    for six weeks, so I would -- she can have -- you know,

22    technically on a motion to amend, you know, she could -- if she

23    has a 30 days, that takes her to middle of January.

24         MS. BRONSTER:  And -- and -- I'm sorry.  My

25    daughter's getting married on January 15th.


UNITED STATES DISTRICT COURT

1           THE COURT:  Oh, congratulations.  So how about if I
2  give Ms. Rose until after the New Year to file her amended?
3           MS. BRONSTER:  That would be fine.  I would have no
4  problem with that.
5           THE COURT:  Then you can have 30 days after that.
6           MS. BRONSTER:  That would be fine.  Thank you.
7           THE COURT:  Well, congratulations to her and to you.
8  That's a fabulous event.
9        Okay.  So 30 days -- I'm sorry -- 30 days.  So what do
10  you want?  January -- you want the first week of January?
11  Second week of January, Ms. Rose?
12           MS. ROSE:  Second week of January, Your Honor.
13           THE COURT:  Okay.  First Monday or Tuesday?  What do
14  you want?
15           MS. ROSE:  I don't have a -- hold on.  Let me pull
16  up a calendar.
17           THE COURT:  Yeah.  Well, Ms. Kimura will be able to
18  help us with that.  The first --
19           THE COURTROOM MANAGER:  First week is the 9th.
20           THE COURT:  The first Monday, the 9th, is that okay?
21           MS. ROSE:  That's fine.
22           THE COURT:  Okay.  The 9th.  And then 30 days after
23  that for the answer, Ms. Kimura?
24           THE COURTROOM MANAGER:  Will be February 9th.
25  That's a Thursday.


                    UNITED STATES DISTRICT COURT

1          MS. BRONSTER:  All right.  Thank you very much, and

2    thank you, Crystal.

3          MS. ROSE:  You're welcome.

4          THE COURT:  All right.  Very good.  Okay.

5       Ms. Rose, do you have anything else that you think we

6    need to address?

7          MS. ROSE:  No, Your Honor.  I think we're fine.

8    Thank you.  Thank you for the time.

9          THE COURT:  So the minute order will just reflect

10   that the motion to dismiss and the substantive joinder are

11   granted, but without prejudice to refiling.

12       We have the amended complaint deadline date and also the

13   deadline for any answer.  All right?

14       So I wish all of you a very good day.  Happy Thanksgiving

15   and please stay safe and well.  We stand adjourned.  Thank you.

16          (Proceedings concluded at 10:25 A.M.)

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1                    COURT REPORTER'S CERTIFICATE

 2

 3            I, DEBRA READ, Official Court Reporter, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 6   true, and correct transcript of the stenographically reported

 7   proceedings held in the above-entitled matter and that the

 8   transcript page format is in conformance with the regulations

 9   of the Judicial Conference of the United States.

10            DATED at Honolulu, Hawaii, November 18, 2022.

11

12

13            /s/ Debra Read

14            DEBRA READ, CSR CRR RMR RDR

15

16

17

18

19

20

21

22

23

24

25
```