# MINUTE ORDER

| | |
|---|---|
| CASE NUMBER: | CIVIL NO. 22-00283 LEK-WRP |
| CASE NAME: | Pacmar Technologies LLC, fka Martin Defense Group, LLC et al., v Martin Kao et al., |
| JUDGE: | Leslie E. Kobayashi |
| DATE: | 3/16/2023 |

COURT ACTION:  EO: COURT'S INCLINATION TO GRANT DEFENDANT DUKE HARTMAN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT, FILED JANUARY 9, 2023 [ECF 68]

The Court, having reviewed Defendant Duke Hartman's ("Hartman") Motion to Dismiss First Amended Complaint, Filed January 9, 2023, filed on February 9, 2023 (dkt. no. 73) ("Motion"), hereby informs the parties of its inclination to GRANT the Motion.

## BACKGROUND

The parties are familiar with the facts of the case and, therefore, the Court does not repeat them in detail here.  The operative pleading is Plaintiffs PacMar Technologies LLC, f/k/a Martin Defense Group, LLC ("PacMar"), and Navatek Holdings LLC's (collectively "Plaintiffs") First Amended Complaint. [Filed 1/9/23 (dkt. no. 68.] Relevant to the Motion, Plaintiffs allege Hartman is liable for: (1) a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "RICO Act"), pursuant to 18 U.S.C. § 1962(c) ("Count I"); (2) conspiracy in violation of the RICO Act, pursuant to 18 U.S.C. § 1962(d) ("Count II"); and (3) fraud, civil conspiracy, breach of fiduciary duties, conversion, embezzlement, unjust enrichment, gross negligence and breach of contract under Hawai`i state law ("State Law Claims").  Hartman seeks dismissal of Count I, Count II, and the State Law Claims.

## DISCUSSION

"The Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions." Bridges v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008) (quoting 18 U.S.C. § 1964(c)).

Under 18 U.S.C. § 1962(c),

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"Broadly speaking, there are two parts to a civil RICO claim." Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co., 943 F.3d 1243, 1248 (9th Cir. 2019) ("Painters"). There is "[t]he civil RICO violation . . . defined under 18 U.S.C. § 1962," then there is "'RICO standing' . . . defined under 18 U.S.C. § 1964(c)." Id. The former aspect "sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)). The latter aspect – RICO standing – requires that "a plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation." Painters, 943 F.3d at 1248 (citation and some internal quotation marks omitted).

> To show the existence of an enterprise . . ., plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose. Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). Racketeering activity, the fourth element, requires predicate acts . . . .

Eclectic Props. E., 751 F.3d at 997. In explaining predicate acts, the United Supreme court has held:

> [P]redicates include any act "indictable" under specified federal statutes, §§ 1961(1)(B)–(C), (E)–(G), as well as certain crimes "chargeable" under state law, § 1961(1)(A), and any offense involving bankruptcy or securities fraud or drug-related activity that is "punishable" under federal law, § 1961(1)(D). A predicate offense implicates RICO when it is part of a "pattern of racketeering activity"—a series of related predicates that together demonstrate the existence or threat of continued criminal activity. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989); see § 1961(5) (specifying that a "pattern of racketeering activity" requires at least two predicates committed within 10 years of each other).

RJR Nabisco, Inc. v. Eur. Cmty., 579 U.S. 325, 330 (2016).

Hartman argues Plaintiffs have not demonstrated a sufficient injury to business or property.  See Motion, Mem. in Supp. at 15–18.  The Court is inclined to agree.

A plaintiff alleging injury to property must sufficiently plead a "concrete financial loss."  Canyon Cnty. v. Syngenta Seeds, Inc., 519 F.3d 969, 975 (9th Cir. 2008) (quotation marks and citation omitted).  "Financial loss alone, however, is insufficient. 'Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO.'"  Id. (quoting Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1131, 126 S. Ct. 1069, 163 L. Ed. 2d 928 (2006)). "[S]peculative injuries do not serve to confer standing under RICO, unless they become concrete and actual."  Steele v. Hosp. Corp. of Am., 36 F.3d 69, 71 (9th Cir. 1994) (citations omitted).

As to the Federal Payment Protection Program ("PPP") loans, Plaintiffs allege PacMar received two PPP loans totaling $12,841,490 and the "amount remains on [PacMar's] books as a liability owed to the [Small Business Administration ('SBA')] . . . ."  [First Amended Complaint at ¶ 146.]  But, Plaintiffs do not allege the SBA is seeking repayment of the loans.  As such, the amount of the PPP loans are currently speculative damages.  Moreover, Plaintiffs do not sufficiently allege how any repayment of the loans constitutes damages to PacMar.  The United States was the entity that was defrauded and suffered damages.  As Hartman points out, the United States "has sought forfeiture of the implicated PPP funds."  [Motion, Mem. in Opp. at 17 (citing Criminal Complaint ¶¶ 85–88, United States v. Kao, Case 1:21-cr-00061-LEK (D. Haw. Sept. 29, 2020)).]  Accordingly, the Court is inclined to dismiss the RICO claim against Hartman related to the PPP loans.

As to the RICO claim against Hartman for the signing bonuses, although Plaintiffs assert a financial loss in that the signing bonuses allegedly cost PacMar $121,298, see First Amended Complaint at ¶ 389, Plaintiffs do not allege how issuing the signing bonuses harmed a specific business or property interest.  The signing bonuses were issued to reduce the PPP loan repayment amount and were made after the PPP loans were obtained.  See id.  Because Plaintiffs do not allege the PPP loans are being paid back, it is unclear how PacMar was injured by issuing the signing bonuses.  Thus, the Court is inclined to dismiss the RICO claim against Hartman based on the signing bonuses.

The same reasoning applies to Plaintiffs' RICO claim against Hartman related to the scholarships.  Plaintiffs state that the "majority" of the money paid by PacMar for the scholarships occurred in "May 2020 or later, which was after [PacMar] had received and 'washed' the PPP funds."  [Id. at ¶ 262.]  It is unclear, then, how PacMar experienced a concrete financial loss.  The Court is therefore inclined to dismiss the RICO claim against Hartman related to the scholarships.

## CONCLUSION

Accordingly, the Court is inclined to grant Hartman's Motion for the

aforementioned reasons.  The parties should appear at the March 24, 2023 hearing prepared to discuss: (1) the issue of RICO standing; (2) whether amendment of the RICO claims would be futile and, therefore, should be dismissed with prejudice; and (3) whether the Court should rule on the State Law Claims if the RICO claims are dismissed.  The parties should also be prepared to direct the Court to controlling case law in their respective memoranda that either supports or contradicts these matters.  The Court notes that this inclination is intended only to help the parties prepare for oral argument and is not the Court's final decision in the matter.  Rather, the parties are encouraged to point to relevant case law and/or facts raised in their memoranda to show the Court why its inclination is mistaken or correct.

       IT IS SO ORDERED.

Submitted by: Agalelei Elkington, Courtroom Manager