BRONSTER FUJICHAKU ROBBINS
A Law Corporation

MARGERY S. BRONSTER     #4750
mbronster@bfrhawaii.com
LANSON K. KUPAU         #5687
lkupau@bfrhawaii.com
REX Y. FUJICHAKU        #7198
rfujichaku@bfrhawaii.com
NOELLE E. CHAN          #11280
nchan@bfrhawaii.com
1003 Bishop Street, Suite 2300
Honolulu, Hawaiʻi 96813
Telephone: (808) 524-5644
Facsimile: (808) 599-1881

Attorneys for Defendant
DUKE HARTMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC),<br><br>            Plaintiff,<br><br>    vs.<br><br>MARTIN KAO; TIFFANY JENNIFER LAM a.k.a JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC,<br><br>            Defendants. | Case 1:22-cv-00283-LEK-WRP<br><br>DEFENDANT DUKE HARTMAN'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; DECLARATION OF COUNSEL; DECLARATION OF DUKE HARTMAN; EXHIBITS "1" – "16"; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE<br><br><br>**Trial Date: April 14, 2025**<br>**Hon. Judge Leslie E. Kobayashi** |

# DEFENDANT DUKE HARTMAN'S STATEMENT OF FACTS
# IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1 for the United States District Court for the District of Hawaii, Defendant Duke Hartman hereby submits his separate statement of material facts in support to his Motion for Summary Judgment:

|   | Facts | Evidentiary Support |
|---|---|---|
| 1 | From September 2018 through January 2021, Hartman worked for Navatek LLC, which changed its name to Martin Defense Group, LLC ("the Company"). | Hartman Decl. ¶3. |
| 2 | The Company is a Hawaii-based company primarily involved in the business of providing engineering solutions and research services in the defense and maritime industries. | Hartman Decl. ¶4. |
| 3 | From at least September 2018 until November 2020, the Chief Executive Officer and President of the Company was Defendant Martin Kao. | Hartman Decl. ¶5. |
| 4 | In 2018, the Company was governed by a Board, which included Steven Loui as the Chairman of the Board, who was also a fiduciary officer and part owner of the Company. | Hartman Decl. ¶7; Exhibit 1. |
| 5 | The responsibility for retention and oversight of lobbyists and political consultants for the Company lay with then Chief Executive Officer, Martin Kao. | Hartman Decl. ¶15. |
| 6 | Kao's objective was for the Company to enter into "strategic partnerships" with universities, and through paid lobbyists to request "Programmatic Budget Increases" (or "plus-ups") from members of Congress and their staff who had the ability to request increases or decreases to programmatic budgets of the executive branch. | Hartman Decl. ¶20; Exhibit 2. |
| 7 | The Company would partner with a research institution or university located in the state of a congressional member who had the ability to request | Hartman Decl. ¶26; Exhibit 2. |

|   |   |   |
|---|---|---|
|   | increases or decreases in Programmatic Budgets of the executive branch, including Department of Defense programs. |   |
| 8 | Even if a Programmatic Budget Increase was secured, the Company would still have to submit proposals to Department of Defense agencies via a competitive process and the Federal Program Managers who retained discretion over which proposals to fund. In other words, while requesting Programmatic Budget Increases increased the likelihood of success, the Company still had to participate in a competitive proposal, selection, and contracting process to win a new contract award. | Hartman Decl. ¶28; Exhibit 2. |
| 9 | This process of requesting and competing for Programmatic Budget Increases is a well-established and legal process in which many academic and private entities participate, including multiple entities in Hawaii. | Hartman Decl. ¶28. |
| 10 | The Company's partnerships with universities led to joint research contracts that would fund the opening of a Company office, and the recruitment of university students as Company hires. These actions had two objectives: 1) to provide engineering staff to execute the Company's research and engineering projects, and 2) to generate good will and a positive working relationship with members of Congress to increase the likelihood that the member would support a Programmatic Budget Increase if requested. | Hartman Decl. ¶29. |
| 11 | To develop relationships with members of Congress and to identify opportunities for business development, the Company used the services of multiple lobbyists. | Hartman Decl. ¶30. |
| 12 | Some of these firms advised the Company as to the lawful and appropriate means by which the Company or its employees could make political contributions to candidates and/or Political Action Committees ("PACS"). | Hartman Decl. ¶31. |
| 13 | Hartman did not have <u>any involvement</u> in creating the Society of Young Women Scientist and | Hartman Decl. ¶32. |

|    |    |    |
|----|----|----|
|    | Engineers, LLC ("SYWSE"), managing its operations or affairs, ensuring compliance with campaign finance regulations, transferring any funds from the Company to SYWSE, or authorizing campaign contributions by SYWSE. |    |
| 14 | Hartman was told by Kao, and believed, that the Company and Kao were being advised by the Company's board, its Chairman (Loui) and professional lobbyists and attorneys who were ensuring compliance with all applicable campaign finance laws and regulations. | Hartman Decl. ¶33. |
| 15 | After the news in early February 2020 that a public interest watchdog complaint was filed with the Federal Elections Commission ("FEC") against SYWSE related to a campaign finance contribution to a Maine super PAC supporting U.S. Sen. Susan Collins, Kao formulated a plan and directed me and a number of others at the Company to execute the plan, which included putting in place a website and a scholarship program for SYWSE. | Hartman Decl. ¶34; Exhibits 3, 4. |
| 16 | Kao's plan to use SYWSE as a philanthropic vehicle to fund scholarships was part of his strategy for defending SYWSE against the allegations filed with the FEC and the bad press it generated. | Hartman Decl. ¶34. |
| 17 | Besides Hartman, the other Company employees involved in Kao's efforts included Chen, Lum Kee, Lori Bofman, Michael "Mike" Schmicker, Troy Keipper, Eric Schiff, Karen Ernst, and eventually Jen Oliver. | Hartman Decl. ¶35; Exhibits 5, 6, 9, 10, 11, 12, 13. |
| 18 | Schmicker was the original author of the plan he entitled "PR Plan for SYWSE $165k scholarship donations" to improve the public image of the Company after the FEC complaint. | Hartman Decl. ¶36; Exhibits 5, 11. |
| 19 | This "plan", which Schmicker developed with Kao and Bofman, was a comprehensive public relations and communications plan which included establishing a website, informing the entire company of the plan on behalf of Kao, and introducing Bofman (who was directed to lead the operation of SYWSE) with universities across the country | Hartman Decl. ¶37; Exhibits 5, 11. |

3

| 20 | Hartman's involvement with this PR plan for SYWSE was directed by Kao and was limited to two activities: 1) providing my general thoughts about the plan to Schmicker and Bofman, who were the primary architects and executors of the plan on behalf of Kao, and 2) introducing Bofman to universities at the direction of Kao. | Hartman Decl. ¶38; Exhibits 5, 6, 11, 12. |
|---|---|---|
| 21 | Kao directed Hartman to provide to Bofman a list of the universities with which the Company was doing business or wished to do business. | Hartman Decl. ¶40; Exhibits 6, 8. |
| 22 | The Company and Kao were being advised by the Company's Board, which included Loui, as well as professional lobbyists and lawyers who were ensuring compliance with all applicable campaign finance laws and regulations. | Hartman Decl. ¶42; Exhibits 6, 8. |
| 23 | Hartman had no knowledge or intent to participate in a "cover up" of any illegal campaign contributions by Kao, Chen, Lum Kee, or anyone else. At no point did anyone at or above his level in the Company's organization at the time (including Loui, Schmicker, Keipper (who was my immediate supervisor at the time and involved in the plan), Chen, Lum Kee, Schiff, Kring, and Kao), or any of the Company's advisors (including Andy Winer, Jeff Bjornstad, Glen Mandigo, and William "Bill" Canfield) tell Hartman that this "plan" was a coverup of illegal activities. | Hartman Decl. ¶45. |
| 24 | At Kao's direction, Hartman put Company employee Bofman (who was directed to be the "spokesperson" for SYWSE) in email contact with the Company's contacts at the universities with which the Company was already partnered or was planning on partnering. | Hartman Decl. ¶46; Exhibit 6. |
| 25 | Bofman, in coordination with Lum Kee and Chen, would then send donation checks for scholarships via SYWSE to universities that were to be given to women studying STEM at various universities. | Hartman Decl. ¶50; Exhibit 6. |
| 26 | Hartman had no access to SYWSE's checking account and was not a signatory to the SYWSE checking account.  He had no | Hartman Decl. ¶51; Exhibit 9. |

4

| | | |
|---|---|---|
| | knowledge of the source of the funds of the scholarship donations that would be made by SYWSE, and whether those funds would originate from the Company or Kao's personal sources. He did not sign any of the checks making the scholarship payments to any universities. | |
| 27 | By the end of March 2020, multiple employees of the Company were still working on a comprehensive public relations response to increasing scrutiny of SYWSE's activities. Those involved in formulating the PR plan were Kao, Chen, Lori Bofman, Michael Schmicker, Troy Keipper, and me. | Hartman Decl. ¶52; Exhibits 5, 11. |
| 28 | On September 29, 2020, Kao was arrested and charged by the U.S. Justice Department for defrauding the federal government out of more than $10.2 million in CARES Act relief.  Hartman was not charged by the Federal government. | Hartman Decl. ¶58; Exhibits 14, 15. |
| 29 | On February 10, 2022, Kao, Chen, and Lum Kee were charged by the U.S. Justice Department for making and conspiring to make illegal campaign contributions.  Hartman was not charged by the Federal government. | Exhibit 16. |

DATED:  Honolulu, Hawaiʻi, November 15, 2024.

/s/ *Rex Y. Fujichaku*
MARGERY S. BRONSTER
LANSON K. KUPAU
REX Y. FUJICHAKU
NOELLE E. CHAN

Attorneys for Defendant
DUKE HARTMAN

5