IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC), | ) ) ) | CASE NO. 1:22-cv-00283-LEK-WRP |
| | ) ) | MEMORANDUM IN SUPPORT OF MOTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |
| _____ | ) | |
| CLIFFORD CHEN, | ) ) | |
| Cross-Claimant, | ) ) | |
| vs. | ) ) | |
| MARTIN KAO, | ) ) | |
| Cross-Claim Defendant. | ) ) | |
| _____ | ) | |

1541833.4

TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     RELEVANT BACKGROUND....................................................................2

        A.      Summary Of Allegations Giving Rise To Claims Against
                Tiffany In The Second Amended Complaint ("SAC").........................3

        B.      Blanket Assertion Of Fifth Amendment Privilege In Answer..............5

        C.      Blanket Assertion Of Fifth Amendment Privilege In Written
                Discovery.........................................................................................6

        D.      The Court's Amended Discovery And Pre-Trial Schedule .................8

        E.      Blanket Assertion Of Fifth Amendment Privilege In Deposition
                Testimony ........................................................................................9

        F.      Eleventh-Hour Attempt To Withdraw Blanket Assertion Of The
                Fifth Amendment Privilege And Proclamation Of Total
                Innocence And Ignorance..................................................................10

III.    LEGAL STANDARD ...............................................................................13

IV.     Tiffany's Misuse of the Fifth Amendment Privilege against Self-
        Incrimination and Other Abusive Litigation Conduct Must Be
        Remedied ...............................................................................................14

        A.      The Court Has Discretion And Power To Grant The Relief
                Plaintiff Requests In This Motion ......................................................14

        B.      Tiffany Must Be Precluded From Testifying And Offering Her
                New Story At Trial............................................................................16

                1.      Tiffany's Assertion of the Fifth Amendment was
                        Improper and Prejudicial.........................................................16

                2.      Tiffany cannot Revoke or Withdraw her Assertion of the
                        Fifth Amendment Privilege and offer her New Story .............18

i

C.      Plaintiff Is Entitled To Adverse Inferences And Evidentiary
        Presumptions Related To Information Tiffany Previously
        Asserted Was Subject To The Privilege..............................................22

V.     CONCLUSION........................................................................................26

1541833.4

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

Baxter v. Palmigiano,
   425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976) ................................... 23

Contractors Equip. Maint. Co. v. Bechtel Hanford, Inc.,
   514 F.3d 899 (9th Cir. 2008) ............................................................. 14

Doe ex rel. Rudy-Glanzer v. Glanzer,
   232 F.3d 1258 (9th Cir. 2000) .................................................... 20, 23, 24

Doran v. Wells Fargo Bank, No. 11-00132 LEK-BMK,
   2011 U.S. Dist. LEXIS 58436, *20-21 (D. Haw. May 31, 2011) ..................... 19

In re Edmond,
   934 F.2d 1304 (4th Cir. 1991) ........................................................ 18, 19

FTC v. Sharp,
   782 F. Supp. 1445 (D. Nev. 1991) ....................................................... 18

Gutierrez-Rodriguez v. Cartagena,
   882 F.2d 553 (1st Cir. 1989) ......................................................... 14, 19

Hamilton v. State Farm Fire & Cas. Co. ,
   270 F.3d 778 (9th Cir. 2001) ............................................................ 19

Holliday v. Extex,
   447 F. Supp. 2d 1131 (D. Haw. 2006) ................................................... 13

Lyons v. Johnson,
   415 F.2d 540 (9th Cir. 1969) ............................................................ 16

Nationwide Life Ins. Co. v. Richards,
   541 F.3d 903 (9th Cir. 2008) ..................................................... 15, 18, 24, 25

SEC v. Art Intellect, Inc.,
   No. 2:11-CV-357, 2013 U.S. Dist. LEXIS 32132, 2013 WL 840048 ........ 18-19

SEC v. Benson,
   657 F. Supp. 1122 (S.D.N.Y. 1987) ..................................................... 21

SEC v. Colello,
   139 F.3d 674 (9th Cir. 1998) ..................................................... 15, 21, 23, 24

1541833.4

SEC v. Premier Holding Corp.,
  No.: SACV 18-00813-CJC(KESx), 2020 U.S. Dist. LEXIS 247561, 2020 WL
  8099514 ...................................................................................... 14, 21

SEC v. Zimmerman,
  854 F. Supp. 896 (N.D. Ga. 1993) ...................................................... 17, 19, 24

U.S. SEC v. Ahmed,
  308 F. Supp. 3d 628 (D. Conn. 2018) ...................................................... 17-18

U.S. SEC v. Cutting,
  No. 2:21-cv-00103-BLW, 2022 U.S. Dist. LEXIS 178181, 2022 WL 4536816
  (D. Idaho Sept. 28, 2022) ...................................................................... 14, 18, 21

United States v. 4003-4005 5th Ave.,
  55 F.3d 78 (2d Cir. 1995) ...................................... 18, 13-14, 15, 16, 19, 20, 21

United States v. Parcels of Land,
  903 F.2d 36 (1st Cir. 1990) ...................................................................... 19

United States v. Sixty Thousand Dollars in U.S. Currency,
  763 F. Supp. 909 (E.D. Mich. 1991) ...................................................... 19

United States v. Solano-Godines,
  120 F.3d 957 (9th Cir. 1997) ...................................................................... 23

United States v. Talco Contrs., Inc.,
  153 F.R.D. 501 (W.D.N.Y. 1994) ...................................................... 19

Wehling v. Columbia Broad. Sys.,
  608 F.2d 1084 (5th Cir. 1979) ...................................................................... 15

Rules

Fed. R. Civ. P. 26(b)(1)...................................................................... 13

HRE 509 ...................................................................................... 5

iv

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I.    <u>INTRODUCTION</u>

   For nearly four years, from the start of this case on June 22, 2022 until her deposition on January 9, 2026, Tiffany asserted a blanket Fifth Amendment objection to all discovery efforts by Plaintiff relating to *any* inquiry about Plaintiff's claims or Tiffany's defenses.  However, in late 2025, well after the discovery cutoff expired, Tiffany declared that her criminal liability was "over," and agreed to a second or continued deposition on January 9, 2026—only three months before trial.  At that deposition, Tiffany testified that, in fact, she never had any criminal exposure, because she had no knowledge of the Society of Young Women Scientists and Engineers LLC ("SYWSE"), and her signatures appearing on every SYWSE document, check, or record was "forged."  This is textbook misuse of the Fifth Amendment privilege.

   Tiffany's litigation tactics have not only been improper, they have been – and will continue to be – unfairly prejudicial to Plaintiff.  Consequences must be imposed, and remedies must be provided: Tiffany <u>cannot</u> be allowed to offer her newly-disclosed line of testimony.  Given Tiffany's years of litigation misconduct, particularly her misuse of the Fifth Amendment privilege against self-incrimination and stonewalling in discovery, Plaintiff seeks an order that:

  A. Bars and precludes Tiffany from revoking  her invocation of the Fifth Amendment privilege;

1541833.4

B.  Bars and precludes Tiffany from offering at trial any testimony or evidence regarding subject matter she withheld from discovery pursuant to the privilege; and

C.  Imposes adverse inferences against Tiffany as to her position with SYWSE, including as its sole member and manager, and responsibility for its conduct, including but not limited to the execution, approval, and authorization of SYWSE documents or checks bearing her name or signature.

The grounds for the requested relief are well-established under the law and equitable principles.  The relief requested is not only appropriate but necessary given Tiffany's blanket assertion of the Fifth Amendment privilege and her eleventh-hour attempt to cast it aside to proclaim her complete innocence. Accordingly, this Motion should be granted.

## II.  RELEVANT BACKGROUND

The Court is familiar with the factual allegations, claims and procedural background of this case: over the past few years, there have been motions regarding Tiffany's (and other Defendants') blanket assertion of the Fifth Amendment privilege against self-incrimination, and resulting Court orders commanding Tiffany to comply with her obligations, imposing sanctions, and adjusting the discovery schedule.[1]

---

[1] Dkt. 157 (Order Granting Plaintiff's Motion to Compel), 192 (Order re: Second Motion to Compel), 227 (Minute Order re: Discovery Plan), 237 (Order re: Discovery Letter Briefs).

1541833.4

A.    Summary Of Allegations Giving Rise To Claims Against Tiffany In
The Second Amended Complaint ("SAC")

Tiffany is the wife of Defendant Martin Kao ("Kao").  According to official government and business records, Tiffany served as the sole manager and member of SYWSE, and she was sole authorized holder and signatory for SYWSE's only bank account, at Central Pacific Bank ("CPB").  In those roles, Tiffany played a critical role in perpetuating the fraudulent misconduct and attempted cover-up that gives rise to this litigation.  As previously detailed, Defendants' illicit conduct included the misappropriation of Plaintiff's funds, campaign contribution fraud ("Campaign Fraud"), and paycheck protection program fraud ("PPP Fraud").

Tiffany's knowledge of, participation in, and responsibility for these schemes is established by, among other things:

- At all relevant times, Tiffany was the sole member and manager of SYWSE, and was its agent of record until January 20, 2021.

- Consistent with or in addition to her official position of control over SYWSE, Tiffany's name and/or signature appear on SYWSE's governing documents and other documents created and executed in the ordinary course of the creation and conduct of its affairs.  Ex. 1.

- Her name and signature appeared on forms or communications regarding SYWSE's bank account with CPB, and a copy of her driver license was provided to CPB to set up the account.  Exs. 2-3.

- Her name or signature appeared on SYWSE's illegal campaign checks that were drawn on the CPB account, including but not limited to a $150,000 check from SYWSE to 1820 PAC, dated December 27, 2019

3

("SYSWE-1820 PAC Check").  Ex. 4.  (Her signature also appeared on checks to educational institutions intended to cover up or obscure the Campaign Fraud and other wrongdoing.)  Ex. 5.

- Emails between and among Defendants regarding their regular and their illicit activities were trafficked through her email account, tiffany808@gmail.com.  Exs. 6-9.

- When Defendants' conduct through SYWSE triggered a complaint with the Federal Election Commission ("FEC"), alleging violations of campaign contribution laws and Campaign Fraud ("FEC Complaint"), Tiffany was named one of the respondents.  Ex. 10.

- And Tiffany took the lead in providing an official response to the FEC Complaint (on behalf of herself and other respondents, including SYWSE) through her counsel, William "Bill" Canfield.  Ex. 11.

- When CPB notified Tiffany of the FEC Complaint, she personally went to CPB and removed the remaining funds in the account.  Ex. 12.

- When Kao hired an attorney to defend himself against the criminal indictments and charges that followed, and had a check drafted for $250,000 to deliver to his defense attorney, Tiffany personally picked up the check and delivered it to Kao's criminal defense attorney.  Ex. 13.

That evidence, coupled with Tiffany's role and position at SYWSE and her marital relationship with Kao, indicated that Tiffany knew (or was at least generally aware of) Defendants' wrongdoing, and participated in (or at least helped facilitate) it.  The documents and evidence also demonstrate that Tiffany personally and materially benefitted from the wrongdoing.  Tiffany and Kao were listed as co-owners of several multi-million-dollar homes in and around Honolulu; there is substantial evidence that Kao, Tiffany, and other Defendants used

4

1541833.4

Plaintiff's funds to cover personal expenses, including but not limited to attorneys'
fees incurred in relation to the FEC Complaint and the criminal cases arising out of
the Campaign and PPP Fraud.  Accordingly, Plaintiff named Tiffany as a
Defendant to its SAC.  Dkt. 97.

B.    Blanket Assertion Of Fifth Amendment Privilege In Answer

Tiffany, along with co-Defendants Kao and SYWSE, filed a
consolidated Answer to the SAC ("Answer").  Dkt. 100.  Tiffany acknowledged
that she had not been indicted, charged or convicted of any crime related to either
the PPP Fraud or Campaign Fraud; however, Tiffany stated that she was providing
her responses to the SAC subject to her "privilege against self-incrimination as set
forth" in the U.S. and Hawai`i constitutions and HRE Rule 509. Id.[2]

Notably, in the responses she provided subject to the privilege,
Tiffany did not deny, dispute or contest allegations that she was SYWSE's sole
registered manager, member or agent, or allegations that in her capacities as
SYWSE's principal and agent, she had signed, approved, or otherwise authorized
SYWSE's documents and checks, including but not limited to the SYSWE-1820
Check for $150,000.[3]

---

[2] Tiffany first stated her intent to rely on the Fifth Amendment privilege, and the
basis for that assertion, in August 2022.  Dkt. 21 (answer to original complaint).

[3] Compare Dkt. 97, SAC, ¶83 ("to ensure the $150,000 donation to 1820 PAC was
made, on December 31, 2019, Tiffany Lam as the agent and principal of SYWSE

5

Similarly, Tiffany did <u>not</u> state or affirmatively claim as a defense that she had no knowledge of SYWSE or its operations, that she did not participate in SYWSE's operations, that SYWSE documents or checks bearing her signature were forgeries, or that she had no knowledge of and did not approve or authorize those documents and checks. <u>See e.g.</u> Dkt. 100, PAGEID1454-1457 (affirmative defenses).

Thus, Tiffany's blanket invocation and assertion of the privilege, as well as her responses provided subject to the privilege, created a reasonable belief that Tiffany knew of and participated in SYWSE's operations as its agent and principal, and that she signed or otherwise authorized SYWSE documents and checks bearing her name and signature.

C.    Blanket Assertion Of Fifth Amendment Privilege In Written Discovery

Written discovery requests to Tiffany (and her co-Defendants Kao and SYWSE) provided no further insight. For months, Tiffany did not offer any response to Plaintiff's First Request for Production of Documents ("RPOD") directed to her. Exhibit 14; Dkt. 142-1, PAGEID2003-2004. She only responded

---

signed another check from SYWSE to 1820 PAC for $150,000.") <u>with</u> Dkt. 100, Answer, PAGEID1420 (responding that "the records speak for themselves. To the extent further response is necessary, Kao declines to respond to this allegation in reliance upon the Privilege against Self-Incrimination.").

1541833.4

after Plaintiff filed its First Motion to Compel; by that time, her responses (and production) were approximately seven months overdue under the FRCP.  Dkt. 155; Dkt. 157.

Moreover, Tiffany did not produce any responsive documents with her untimely responses to the RPOD.  Id.  Instead, Tiffany broadly asserted that the Fifth Amendment privilege applied and excused her from producing documents critical to Plaintiff's allegations regarding Defendants' misconduct, particularly through SYWSE, and her role in that misconduct.  Ex. 14 (RPOD), Nos. 25-27, 43; Ex. 15 (Response).[4]

The Court granted the Motion to Compel, faulting Tiffany for misusing the privilege.  Dkt. 157, Order Granting Motion to Compel, PAGEID2304-2306 ("Defendant Kao's and Defendant [Tiffany] Lam's Blanket Fifth Amendment Invocation is Improper.").  The Court found that Tiffany's actions in the discovery dispute "were not substantially justified," id.,

---

[4] Tiffany claimed that the privilege shielded and excused her from producing, among other things, any documents related to communications between her and Plaintiff's predecessor, any documents related to communications regarding SYWSE, any documents relating to communications regarding to monies paid or donated by Plaintiff or SYWSE, or any documents relating to communications regarding campaign contributions.  Id.  Tiffany also (falsely) claimed that even if the Fifth Amendment privilege did not apply, she did not have any responsive documents to produce.  Id.; see also infra n. 7 (discussing testimony at Tiffany's second deposition).

7

PAGEID2313, and that Plaintiff was entitled to an award of its fees and costs.  Id.

The Court also ordered Tiffany to provide a proper response to the RPOD and

produce all responsive documents in her possession.

Tiffany failed to comply with the Court's order.  See e.g. Dkt. 164;

Dkt. 192, Order.  In its Second Motion to Compel, Plaintiff detailed how Tiffany's

amended written responses to the RPOD remained deficient.  Id.  The Court

granted Plaintiff's Second Motion in part, but stopped short of granting Plaintiff

the full range of sanctions requested.  Id.  However, the Court warned Tiffany and

her co-Defendants that "continued failure to comply with their discovery

obligations may result in an order entering default against them."  Id.,

PAGEID2914. Tiffany never complied with her obligation to produce documents

responsive to the RPOD.  Declaration of Grant Fasi Allison ("Allison Decl."),

¶¶13-14.

D.     The Court's Amended Discovery And Pre-Trial Schedule

While Tiffany refused and failed to provide proper responses to

written discovery, the discovery deadline expired on November 15, 2024.  See e.g.,

Dkt. 227, ¶B.1.  Recognizing the problem, the Court called for a discovery hearing

to address "outstanding discovery in this case that has been delayed because of

Defendants Kao and [Tiffany] Lam's invocation of their Fifth Amendment

8

1541833.4

privilege against self-incrimination and their refusal to respond to discovery." Dkt. 227, ¶A.

In a January 31, 2025 minute order, the Court laid out a plan for remaining discovery, including production of any remaining documents in Tiffany's possession and the scheduling of her deposition. Id, ¶A.2, A.4. (Once again, Tiffany failed to produce responsive documents. Allison Decl., ¶¶13-14.)

E.    Blanket Assertion Of Fifth Amendment Privilege In Deposition Testimony

On May 29, 2025, six months after expiration of the discovery deadline, Tiffany sat for the first of what would become her two-part deposition. Ex. 16, Vol. 1.[5] The first part of Tiffany's deposition lasted less than an hour. Tiffany continued to make a blanket assertion of the Fifth Amendment privilege and refused to answer any questions regarding SYWSE and related topics; she also asserted the privilege and refused to answer questions regarding her efforts to comply with discovery obligations. Ex. 16, Vol. 1, 28:21-30:20, 32:8-33:17, 37:7-

---

[5] By that time, Tiffany had produced no documents and made no statements on the record to challenge Plaintiff's allegations and evidence that, among other things: as the registered agent and sole manager and member of SYWSE, Tiffany had actively participated and played a key role in its affairs, as evidenced by official documents filed with the DCCA, her name and signature appearing on SYWSE documents, and her signature and authorization of checks drawn on SYWSE's CPB account, including but not limited to the SYWSE 1820 Check for $150,000.

9

1541833.4

38:11, 41:22-43:4, 43:9-44:1.[6]  Thus, as of May 29, 2025, Plaintiff was *still* completely denied any insight into Tiffany's factual defenses or her efforts (or complete lack thereof) to comply with FRCP requirements, the Court's Orders compelling her discovery, or the Court's discovery plan.

>        F.        Eleventh-Hour Attempt To Withdraw Blanket Assertion Of The
>                   Fifth Amendment Privilege And Proclamation Of Total
>                   Innocence And Ignorance

When Tiffany finally declared she would no longer blanketly assert the Fifth Amendment in late-2025, her deposition resumed on January 9, 2026, more than a year after expiration of the discovery deadline and approximately three months prior to trial.  Ex. 17, Vol. 2,62:21-63:10, 63:24-64:8.  Then Tiffany proceeded to proclaim her total innocence and lack of responsibility or knowledge over the SYWSE, its documents, or even her signatures on SYWSE's records.  See generally id.[7]

---

[6] Before making that blanket assertion and refusing to answer questions, Tiffany offered limited testimony regarding her half-hearted effort to search her email account – tiffany808@gmail.com – for responsive documents that, by that point, were more than a year overdue.  Id., 28:2-20.  Tiffany also claimed that she could not remember her search, which had not yielded any responsive documents, and admitted that she had deleted emails from her account in the past (which could explain the fruitlessness of her purported search).  Id., 27:14-28:1; Allison Decl., ¶¶13-14 (attesting that Tiffany never produced responsive documents).

[7] In addition to her new testimony regarding her complete innocence and ignorance of Defendants' wrongdoing, Tiffany's testimony revealed that – after two years and multiple Court orders, sanctions and the threat of further sanctions – she *still* had not made any credible effort to comply with her discovery obligations or to fix

10

Tiffany begrudgingly acknowledged that given her official position as SYWSE's sole member, manager, and former registered agent, she should have been the person approving, executing and submitting official documents and checks on SYWSE's behalf.  Id., 116:14-117:11, 121:24-122:14.

However, Tiffany claimed total ignorance as to SYWSE, related documents and communications, or anything else giving rise to this litigation.  Id., 103:5-12 (Q: "So if I ask you any question at all about The Society, as to any topic at all, you would not be able to answer a single question?" A: "Yes.").

---

the deficiencies in her prior responses and non-existent document production. Tiffany admitted that she never personally reviewed the RPOD, and indicated that shortcomings in her production should be blamed on her attorneys.  Ex. 17, Vol. 2, 166:14-167:18, 169:21-170:18.

As additional excuses for her failure to locate and produce any responsive documents, Tiffany claimed that she was too busy as a stay-at-home mother with two children, and that she did not think her new story would be challenged, so the effort was not worth her time.  Id., 170:15-18, 154:11-20.

Otherwise, Tiffany could not explain why she did not produce any responsive documents, which undoubtedly existed and she would have found, with any reasonably diligent search.  Throughout Tiffany's deposition, Plaintiff marked various emails that passed through Tiffany's account as exhibits; Plaintiff had obtained those documents through other sources, and Tiffany failed to produce them.  E.g. Ex. 17, Vol. 2, 154:11-20 (discussing Ex. 18 to her deposition), 165:22-166:13 (deposition Ex. 21), 170:21-172:2 (deposition Ex. 23), 174:18-175:3 (deposition Ex. 24), 178:4-179:4 (deposition Ex. 25), 179:10-181:22 (deposition Ex. 27).

11

Pursuant to her newly disclosed factual defenses, Tiffany claimed that: she performed no actions and made no decisions on behalf of SYWSE; she neither approved or executed any of the SYWSE documents or checks bearing her name or signature.[8]  Thus, according to Tiffany's new story, any SYWSE documents or checks (including but not limited to the SYSWE-1820 Check for $150,000) bearing her name or signature were forged and/or otherwise made without her knowledge or approval.

Tiffany also claimed that she never read any of the potentially relevant emails that were sent to (and in some cases forwarded from) her personal email account,[9] and that she did not exercise any control or otherwise involve herself in SYWSE's financial decisions or activities.[10]  Tiffany testified that Kao

---

[8] Id., 89:12-90:2 (Operating Agreement), 93:1-94:8 ( "signature card" for SYWSE's CPB account), 94:20-96:12 (CPB's "beneficial ownership certification" form), 96:21-98:22 (CPB's address-change form on the account), 99:10-101:13 and 184:20-185:16 (claiming that she did not sign the SYWSE-1820 Check for $150,000), 123:13-15 and 125:21-127:11 (claiming that she did not sign any of the checks issued on SYWSE's CPB account), 142:13-143:5 and 182:8-17 (claiming that, although the response to the FEC Complaint was made in her name, as "registered agent and manager" of SYWSE and on behalf of all respondents, she was uninvolved and had no knowledge of it).

[9] Ex. 17, Vol. 2, 179:10-181:22, 183:1-2, 183:14-184:19 ("If [Kao] told me to forward it, I wouldn't read it … That means it's not for me …. When he asks me to forward things, I don't read it.").

[10] Ex. 17, Vol. 2, 147:13-14 ("I don't handle the finances."), 148:15-16 ("So Martin handles all the finances. I don't know."); id., 148:15-150:6.

12

1541833.4

controlled her email account and the bank accounts, even those in her name, as the registered holder and signatory of the CPB account. See e.g. id.; Ex. 17, Vol. 2, 182:2-7 (testifying that she never questioned Kao as to why he was operating or using her email address in such a manner, because Kao was her husband). Essentially, Tiffany claimed that she kept her head planted in the sand, and simply did whatever Kao told her, without any questions asked.

Thus, whereas Tiffany previously proclaimed that she could not and would not testify regarding SYWSE and related matters due to her fear of criminal prosecution for what she might say or reveal, Tiffany now claimed the opposite: that she had been innocent and ignorant of such matters all along.

III.   LEGAL STANDARD

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure ("FRCP"), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Relevancy, for purposes of Rule 26(b)(1), is a "broad concept that is construed liberally . . . ." Id.; Holliday v. Extex, 447 F. Supp. 2d 1131, 1140 (D. Haw. 2006). "Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues." Holliday, 447 F. Supp. 2d at 1140. Although Federal Rules of Evidence ("FRE") governs and allows the assertion of the Fifth Amendment privilege as an exception to general discovery rules, civil litigants are not permitted

13

1541833.4

to use the Fifth Amendment as both "sword" and "shield."  United States v. 4003-4005 5th Ave., 55 F.3d 78, 85 (2d Cir. 1995) (affirming district court's refusal to allow litigant to "revoke" or "withdraw" prior assertion of Fifth Amendment privilege and order precluding litigant from "testifying about matters previously hidden from discovery through application of the privilege").

IV.    TIFFANY'S MISUSE OF THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION AND OTHER ABUSIVE LITIGATION CONDUCT MUST BE REMEDIED

   A.    The Court Has Discretion And Power To Grant The Relief Plaintiff Requests In This Motion

       As the record in this case demonstrates, Tiffany used the Fifth Amendment privilege (and engaged in other discovery abuses) to gain a tactical advantage to escape personal liability in this civil litigation.  Tiffany's attempt to use the Fifth Amendment as "a sword and shield," or "have it both ways," is impermissible and inherently prejudicial to Plaintiff.[11]  Under circumstances such as these, courts have broad discretion to fashion and order appropriate relief,

---

[11]National Life Insurance v. Richards, 514 F.3d 903, 910 (9th Cir. 2008) ("A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial.") (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 577 (1st Cir. 1989)); see also United States SEC v. Cutting, 2022 U.S. Dist. LEXIS 178181, *26, 2022 WL 4536816 (D. Idaho Sept. 28, 2022) ("While [a defendant] certainly has the right to either assert the privilege **or** provide unlimited […] testimony, 'he cannot have it both ways.'") (bracketing added; emphasis in original; quoting SECv. Premier Holding Corp., 2020 U.S. Dist. LEXIS 247561, 2020 WL 8099514, at *5 (C.D. Cal. Nov. 30, 2020)) (further citations omitted).

14

including preclusionary orders and/or adverse inferences against parties who invoke the Fifth Amendment in civil litigation – particularly where the privilege has been abused, or its invocation (and revocation) otherwise caused prejudice to the opposing party.  See 4003-4005 5th Ave., 55 F.3d at 85 (affirming district court's refusal to allow litigant to "revoke" or "withdraw" prior assertion of Fifth Amendment privilege and order precluding litigant from "testifying about matters previously hidden from discovery through application of the privilege); Nationwide Life, 541 F.3d at 911 (district court properly (1) issued preclusionary order "as to the subject as to which she asserted the Fifth Amendment privilege" and (2) imposed an adverse inference); SEC v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) ("[A] district court has discretion in its response to a party's invocation of the Fifth […] If invocation of the privilege prejudiced the other party, the district court 'would be free to fashion whatever remedy is required to prevent unfairness.'") (quoting Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1089 (5th Cir. 1979) (bracketing and ellipses added)).

        Thus, as explained in further detail below, the relief requested in this Motion is not only appropriate, but necessary, to address Tiffany's tactics and mitigate Plaintiff's prejudice.  Tiffany should not be allowed to withdraw her previous assertion of the Fifth Amendment privilege; and she should not be allowed to offer her new testimony proclaiming her total ignorance and innocence

15

1541833.4

of relevant facts, the allegedly unauthorized or forged use of her name and

signature, or otherwise contest or dispute the subject matter covered by her prior

assertions of the privilege; additionally or in the alternative, adverse inferences

should be drawn as to the subject matter covered by Tiffany's prior assertions of

the privilege.

B.    Tiffany Must Be Precluded From Testifying And Offering Her New
      Story At Trial

1.    Tiffany's Assertion of the Fifth Amendment was Improper and
      Prejudicial

When parties assert the Fifth Amendment in civil litigation, courts

must balance the competing interests at play: the protection against self-

incrimination versus the opposing party's right to broad discovery in accordance

with the FRCP.  To ensure or restore  balance and fairness, courts must remain

cognizant that the party who invoked the privilege is the one who "made the

election to create an imbalance in the pans of the scales" in the first place.  Lyons

v.  Johnson, 415 F.2d 540, 541-542 (9th Cir. 1969).   And courts should consider

the manner in which the privilege was invoked and used (or abused) over the

course of the civil action. 4003-4005 5th Ave., 55 F.3d at 84 ("Courts need to pay

particular attention to how and when the privilege was originally invoked.  Since

an assertion of the Fifth Amendment is an effective way to hinder discovery and

provides a convenient method for obstructing a proceeding, trial courts must be

16

1541833.4

especially alert to the danger that the litigant might have invoked the privilege

primarily to abuse, manipulate or gain an unfair strategic advantage over opposing

parties.").

Here, the scales tip heavily in favor of granting the relief that Plaintiff

requests in the Motion.  The grounds for Tiffany's assertion and maintenance of

the privilege in this litigation were, at best, questionable: Tiffany never was

charged with or indicted for any crimes. See e.g. SEC v. Zimmerman, 854 F. Supp.

896, 899 (N.D. Ga. 1993) (violation of Fifth Amendment not a weighty concern

where defendant in civil litigation had not been named as a defendant in any

criminal proceeding).[12]

Moreover, as the Court already determined, Tiffany misused the

privilege for years in this litigation, refusing to comply with discovery obligations,

and causing disruption and delays.[13] In short, Tiffany "has invoked and received

---

[12] Dkt. 100, Answer, ¶5 (citing February 10, 2022 indictment against Kao for
Campaign Fraud, referencing Tiffany as "Individual A," Kao's spouse, and the
registered agent and manager of" SYWSE, as the basis for her invocation of the
privilege).

[13] Dkt. 157, Order Granting Motion to Compel, PAGEID2305-2306; Dkt. 192,
Order GIPDIP Second Motion to Compel, PAGEID2914-2917 (noting Tiffany's
ongoing and unreasonable failure to comply with discovery obligations, awarding
fees and costs as a sanction, and warning that continued violations could result in
harsher sanctions); see also Dkt. 227 (noting that, two months past discovery
deadline, there was "outstanding discovery that had been delayed because of
Defendant […] [Tiffany] Lam's invocation of [her] Fifth Amendment privilege
against self-incrimination and [] refusal to respond to discovery.").

17

the benefit of the Fifth Amendment privilege at every stage of this proceeding, and now [s]he must also bear the consequences of that decision." United States Sec. & Exch. Comm'n v. Ahmed, 308 F. Supp. 3d 628, 650 (D. Conn. 2018) (citations omitted, bracketing added).  Accordingly, sanctions and remedies are appropriate and necessary to restore balance and fairness in this case.

> 2.     Tiffany cannot Revoke or Withdraw her Assertion of the Fifth Amendment Privilege and offer her New Story

The Court must nix Tiffany's belated attempt to revoke her longstanding assertion of the privilege to offer self-serving testimony at trial. See e.g. Nationwide Life, 541 F.3d at 910 ("Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial.") (citing FTC v. Sharp, 782 F. Supp. 1445, 1452 (D. Nev. 1991)); see also Cutting, 2022 U.S. Dist. LEXIS 178181, *25-26, 2022 WL 4536816 n. 2 (collecting cases).

The inherent prejudice of such conduct is plain,[14] and courts fashion sanctions or remedies to prevent parties from engaging in or benefitting from it. See e.g. Cutting, 2022 U.S. Dist. LEXIS 178181, *25, 2022 WL 4536816 ("the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions"

---

[14] Courts recognize the inherent prejudice that results when "a litigant relies on the Fifth Amendment during discovery and then decides to waive the privilege much later in the proceeding."  4003-4005 5th Ave., 55 F.3d at 86 (citations omitted).

1541833.4

and then tossed aside to support a party's assertions.") (citing <u>In re Edmond</u>, 934

F.2d 1304, 1308 (4th Cir. 1991); <u>S.E.C. v. Art Intellect, Inc.</u>, 2013 U.S. Dist.

LEXIS 32132, 2013 WL 840048, at *10 (D. Utah Mar. 6, 2013)

(quoting <u>Zimmerman</u>, 854 F.Supp. at 899).

Under the circumstances here, courts grant the relief requested in the

Motion: they bar the litigant's revocation or withdrawal of the privilege and bar

new testimony or evidence previously withheld pursuant to the privilege.  <u>See e.g.</u>

<u>id.</u>; <u>see also</u> <u>4003-4005 5th Ave.</u>, 55 F.3d at 85.[15]  Such relief is especially

warranted where, as here, "the litigant's request to waive comes only at the

'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach'

to the litigation."  <u>4003-4005 5th Ave.</u>, 55 F.3d at 85 (citations omitted).[16]

---

[15] <u>In re Edmond</u>, 934 F.2d at 1308-09; <u>see also</u> <u>United States v. Parcels of Land,</u>
903 F.2d 36, 42-46 (1st Cir. 1990); <u>Cartagena</u>, 882 F.2d at 576-77; <u>United States v.</u>
<u>Talco Contractors Inc.</u>, 153 F.R.D. 501, 505-12 (W.D.N.Y. 1994); <u>United States v.</u>
<u>Sixty Thousand Dollars</u>, 763 F. Supp. 909, 913-14 (E.D. Mich. 1991).

[16] The analysis and rationale in <u>4003-4005 5th Ave</u>. and similar cases that rejected a
litigant's belated attempts to withdraw the privilege and offer contradictory
testimony at trial echo the rationale underlying the doctrines of equitable and
judicial estoppel.  <u>United States v. Hemmen</u>, 51 F,3d 883, 892 (9th Cir. 1995)
(reciting elements of equitable estoppel); <u>Hamilton v. State Farm Fire & Cas. Co.,</u>
270 F.3d 778, 782-783 (9th Cir. 2001) (reciting elements and explaining that
judicial estoppel is used to "prevent a party from gaining any advantage by taking
inconsistent positions, [] because of general considerations of the orderly
administration of justice and regard for the dignity of judicial proceedings," and to
"protect against a litigant playing fast and loose with the courts.") (quotations
omitted); <u>Doran v. Wells Fargo Bank</u>, No. 11-00132 LEK-BMK, 2011 U.S. Dist.
LEXIS 58436, *20-21 (D. Haw. May 31, 2011) (citing <u>Hamilton</u>).

19

1541833.4

Tiffany's conduct in this litigation satisfies all the relevant criteria. Her eleventh-hour attempt to withdraw the privilege is the culmination of a manipulative, "cat-and-mouse approach" to this litigation and the privilege. 4003-4005 5th Ave., 55 F.3d at 85 (citations omitted). Tiffany invoked and maintained the privilege (on dubious grounds) and flatly refused to comply with discovery for years; subsequently, more than a year after the discovery deadline expired, multiple orders compelling and sanctioning her conduct, and only a few months prior to trial, Tiffany offered a brand-new self-serving story of her total innocence and ignorance.[17]

---

[17] Of course, Tiffany's new story undermines and contradicts her prior assertion that she had any legitimate fear of criminal charges or prosecution: if she knew nothing and did nothing regarding SYWSE and its activities, as she now claims, it begs the question of why she ever sought – and maintained – the protection against self-incrimination in these proceedings. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1263 (9th Cir. 2000) (in civil context, "invocation of privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner.").

Moreover, Tiffany's new story is wholly unsupported by the record, and directly contradicted by, among other things, her years-long failure to contest Plaintiff's allegations regarding her role and responsibility with SYWSE, her prior admissions regarding her role and responsibility with SYWSE, and official government and business records – such as governing documents, registration documents, and checks – that bear her position, name and signature.

20

1541833.4

In other words, Tiffany is attempting to use the Fifth Amendment as both a sword and shield, or to "have it both ways," which she cannot do.[18]  As set forth above, Tiffany decided and was allowed to invoke the privilege, she enjoyed and took advantage of the protections it provided her, and now she cannot simply "toss[] it aside to support [her] assertions."  Id.

Accordingly, the Court should enter an order barring Tiffnay's untimely attempt to "waive" the privilege, and disallow her testimony at trial "about matters previously hidden from discovery through an invocation of the privilege."  4003-4005 5th Ave., 55 F.3d at 85.  Under applicable law and in accordance with the equities, the scope of the preclusionary order should be as wide and all-encompassing as Tiffany's previous blanket assertions of the privilege.  4003-4005 5th Ave., 55 F.3d at 85.[19]  Thus, for any questions related to SYWSE, political donations, 1820 PAC, communications with Plaintiff (or its

---

[18] Cutting, 2022 U.S. Dist. LEXIS 178181, 2022 WL 4536816 *26 (citing Premier Holding Corp., 2020 U.S. Dist. LEXIS 247561, 2020 WL 8099514, *5 (quoting SEC v. Benson, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987)); Colello, 139 F.3d at 678.

[19] Ex. 16, Vol. 1, 28:21-30:20, 32:8-33:17, 37:7-38:11, 41:22-43:4, 43:9-44:1 (pursuant to privilege, refusing to answer any questions regarding SYWSE, political donations; 1820 PAC; communications with Plaintiff (or its predecessor), and communications with her co-Defendants); Ex. 15, RPOD Response Nos. 25-27, 43 (asserting privilege and otherwise refusing to respond or produce documents regarding similar and related topics).

1541833.4

predecessor), and relevant communications with her co-Defendants, Tiffany's

answers must be limited to an invocation of the Fifth Amendment.  See id.

    C.    Plaintiff Is Entitled To Adverse Inferences And Evidentiary
Presumptions Related To Information Tiffany Previously Asserted
Was Subject To The Privilege

In addition to an order barring Tiffany's attempt to withdraw the

privilege and offer related new testimony at trial, Tiffany's assertion of the

privilege and other misconduct entitles Plaintiff to an adverse inference and

evidentiary presumption.  The inference or presumption should be to the effect

that: as SYWSE's registered manager and agent, and holder and signatory on the

CPB account, she was aware of SYWSE's activities, she exercised control over

and had responsibility for SYWSE's operations, and she executed, approved, or

authorized SYWSE documents or checks bearing her name and/or signature.[20]

There is no question that Tiffany understood Plaintiff's allegation she

controlled SYWSE because Plaintiff alleged it in the SAC, explained it in motions,

and produced the relevant documents to Tiffany.  Dkt. 97, SAC, ¶¶19, 29-31, 59-

60, 76-91; Dkts. 155, 181.  Indeed, Exhibits 7, 8, 9, and 10 attached to Plaintiff's

Reply to its first Motion to Compel are various SYWSE company documents

---

[20] For example, there should be an adverse inference and evidentiary presumption
that the SYWSE-1820 PAC Check was written, signed, and delivered with her
knowledge, authorization, and signature; moreover, even if the SYWSE-1820 PAC
Check was *not* physically signed by Tiffany, the adverse inference and evidentiary
presumption should be that she was aware of and authorized its issuance.

22

1541833.4

demonstrating Tiffany's membership and control over SYWSE.  Dkts. 155-6

through 155-10.  Thus, Tiffany knew of Plaintiff's theory that she controlled

SYWSE, yet, Tiffany chose to refuse any discovery, testimony, or relevant factual

assertions in lieu of a blanket Fifth Amendment objection from the start of the case

on June 22, 2022 until she was deposed on January 9, 2026.

Like the foregoing preclusionary order, the adverse inference that

Plaintiff seeks is well-grounded in applicable law and the facts and equities of this

case.  "Parties are free to invoke the Fifth Amendment in civil cases, but the court

is equally free to draw adverse inferences from their failure of proof."  Colello, 139

F.3d at 677 (citing Baxter v. Palmigiano, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 96

S. Ct. 1551 (1976); United States v. Solano-Godines, 120 F.3d 957, 962 (9th Cir.

1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact

finders from drawing adverse inferences against a party who refuses to testify.")

Ultimately, whether to draw the inference is a decision committed to the Court's

discretion, subject to the circumstances of each case and the balancing of interests

(and equities) discussed above.  See supra; Colello, 139 F.3d at 677.  Generally,

however, adverse inferences are "only drawn when independent evidence exists of

the fact to which the party refuses to answer," Glanzer, 232 F.3d at 1264 (citation

omitted), and "there is a substantial need for the information and [no] less

23

burdensome way of obtaining that information." Nationwide Life, 541 F.3d at

912.

All requirements are present here.[21]  Plaintiff has "independent

evidence [...] of the fact to which" Tiffany repeatedly refused to answer.  Glazner,

232 F.3d at 1264; Colello, 139 F.3d at 678; Nationwide Life, 541 F.3d at 912-913.

Among other things: in official documents submitted to and maintained with the

DCCA, she is listed as SYWSE's sole member, manager, and agent; Tiffany did

not contest (and implicitly affirmed) that at all relevant times, she was listed as

SYWSE's registered agent and manager; her name and position appear on SYWSE

business records, such as its Operating Agreement; due to her position and role

with SYWSE, she served as the holder and signatory on SYWSE's bank account

with CPB, and her signature appears on checks drawn on SYWSE's CPB account;

and emails related to SYWSE were trafficked through her email account.

---

[21] Again, any "balancing" of the respective interests must tip in favor of granting
Plaintiff the requested relief.  Although Tiffany invoked her Fifth Amendment
privilege throughout this litigation, Tiffany was never criminally prosecuted;
indeed, according to her new story of innocence and ignorance, Tiffany never had
a reasonable fear of such prosecution.  See e.g. Glanzer, 232 F.3d at 1263 (fear of
prosecution must be reasonable); Zimmerman, 854 F. Supp. at 899 (where there
are no criminal charges, less weight given to concerns regarding potential Fifth
Amendment violations).  Nevertheless, Tiffany improperly maintained a blanket
privilege for years, and improperly refused to comply with her discovery
obligations in this case until deadlines had expired and trial was only months away.

24

1541833.4

The indications and implications of that "independent evidence" are clear, and clearly critical to this case – not only to the claims against Tiffany individually, but the entirety of Defendants' collective scheme and attempted cover-up, and Tiffany's role in it.  See e.g. Nationwide Life, 541 F.3d at 912 (finding substantial need, and imposing adverse inference, where withheld testimony went to "central issue" in the case).

Thus, there is a "substantial need" to establish Tiffany's roles and responsibilities as SYWSE's principal and agent, and the related facts of her knowledge, approval, authorization, and responsibility for SYWSE's conduct.  She chose to plead the Fifth instead of providing timely and full discovery responses and testimony on these and other critical subjects.  Tiffany's misconduct should not be allowed to impair Plaintiff's ability to establish these critical facts at trial. Accordingly, at a minimum, Plaintiff is entitled to the adverse inference and evidentiary presumption requested above.

25

1541833.4

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court

grant this Motion.

DATED:  Honolulu, Hawaii, March 3, 2026.


/s/ *Grant Fasi Allison*
CRYSTAL K. ROSE
RYAN H. ENGLE
GRANT FASI ALLISON
JOHN D. FERRY III
LYLE S. HOSODA
SPENCER J. LAU

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)


26

1541833.4