# EXHIBIT 14

Of Counsel:

LUNG ROSE VOSS & WAGNILD

CRYSTAL K. ROSE       3242-0
(*crose@legalhawaii.com*)
Attorney at Law
A Law Corporation
RYAN H. ENGLE       7590-0
(*rengle@legalhawaii.com*)
Attorney at Law
A Law Corporation
GRANT FASI ALLISON    10368-0
(*gallison@legalhawaii.com*)
Attorney at Law
A Law Corporation
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Telephone:  (808) 523-9000
Facsimile:  (808) 533-4184

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC), | ) CASE NO. 1:22-cv-00283-LEK-WRP )<br>)<br>) PLAINTIFF PACMAR |
| Plaintiff, | ) TECHNOLOGIES LLC (f/k/a<br>) MARTIN DEFENSE GROUP,<br>) LLC)'S FIRST REQUEST FOR |
| vs. | ) PRODUCTION OF DOCUMENTS<br>) |
| MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or | ) (*Caption continued on next page.*)<br>) |

1123362.1

# EXHIBIT 14

| TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC, | ) ) ) ) ) | TO DEFENDANT TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO |
| Defendants. | ) ) ) ) ) ) | Judge: Magistrate Judge Wes Porter Trial Judge: Leslie E. Kobayashi No trial date set. |

PLAINTIFF PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)'S  FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS TO DEFENDANT
TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO

TO:        KEITH M. KIUCHI, ESQ.
1001 Bishop Street, Suite 985
Honolulu, Hawaii 96813

        and

CHUCK C. CHOI, ESQ.
ALLISON A. ITO, ESQ.
MICHEL A. OKAZAKI, ESQ. (independent
lawyer appearing through Choi & Ito)
Choi & Ito
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813

Attorneys for Defendants
MARTIN KAO, TIFFANY JENNIFER LAM aka JENNY LAM
and/or TIFFANY KAO, and SOCIETY OF YOUNG WOMEN
SCIENTISTS AND ENGINEERS, LLC

PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal

Rules of Civil Procedure, Plaintiff PACMAR TECHNOLOGIES LLC (f/k/a

MARTIN DEFENSE GROUP, LLC), ("Plaintiff"), by and through its attorneys,

Lung Rose Voss & Wagnild, hereby requests Defendant TIFFANY JENNIFER

2

1123362.1

LAM a.k.a. JENNY LAM and/or TIFFANY KAO ("Tiffany Lam") to produce for examination, inspection and copying all of the documents which are in their possession, custody, or control, as listed on the attached pages, to the offices of Lung Rose Voss & Wagnild, Topa Financial Center, 700 Bishop Street, Suite 900, Honolulu, Hawaii 96813, or at some convenient location mutually agreed upon by the parties within thirty (30) days of service of this Request.

PLEASE TAKE FURTHER NOTICE that Defendant is required by Federal Rules of Civil Procedure Rule 34 to serve a written response hereto within thirty (30) days after service and that failure to respond or produce the items requested will be grounds for a motion by Plaintiff pursuant to Federal Rules of Civil Procedure Rule 37 to compel production and impose sanctions.

DATED: Honolulu, Hawaii, January 17, 2024.

CRYSTAL K. ROSE
RYAN H. ENGLE
GRANT FASI ALLISON

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

1123362.1

<u>DEFINITIONS AND INSTRUCTIONS</u>

The following definitions and instructions are applicable to this Request:

1.      The terms "You," "Your," and "Tiffany Lam" mean and include Defendant Tiffany Jennifer Lam a.k.a. Jenny Lam and/or Tiffany Lam and all other persons or entities acting or purporting to act on her behalf, including, without limitation, her present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

2.      The term "MDG" means and includes Martin Defense Group, LLC, now known as Pacmar Technologies LLC, and formerly known as Navatek LLC, and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.  The persons included in this definition specifically include, but are not limited to, Martin Kao, Clifford Chen, Kahele Lum Kee, Duke Hartman, Gary Ambrose, Lori Bofman, and Jennifer Oliver.

3.      The terms "Navatek Holdings" or "Navatek" mean and include Navatek Holdings, LLC, and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents,

4

employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

4. The term "Plaintiff" means and includes, The term "Plaintiff" means and includes, Plaintiff Pacmar Technologies LLC (f/k/a Martin Defense Group, LLC), and Navatek Holdings LLC and all other persons or entities acting or purporting to act on their behalf, including, without limitation, their present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

5. The term "Martin Kao" means and includes Defendant Martin Kao and all other persons or entities acting or purporting to act on his behalf, including, without limitation, his present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

6. The term "Lum Kee" means and includes Defendant Lawrence Kahele Lum Kee and all other persons or entities acting or purporting to act on his behalf, including, without limitation, his present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

7. The term "Clifford Chen" means and includes Defendant Clifford Chen and all other persons or entities acting or purporting to act on his

5

1123362.1

behalf, including, without limitation, his present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

8. The term "Gary Ambrose" means and includes Defendant Gary Ambrose and all other persons or entities acting or purporting to act on his behalf, including, without limitation, his present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

9. The term "Duke Hartman" means and includes Defendant Duke Hartman and all other persons or entities acting or purporting to act on his behalf, including, without limitation, his present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

10. The term "SYWSE" means and includes Defendant Society of Young Women Scientists and Engineers LLC and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

11. The term "Scholarships" means and includes any money, contributions, donations, consideration, or value of any kind that was given or

6

1123362.1

exchanged with any person, entity, school, university, or program for purposes related to funding tuition for students attending a college, university, professional education program, or secondary education program of any kind.

12. The term "Lawsuit" means the action entitled Martin Defense Group, LLC, et al. vs. Martin Kao et al.; Civil No. 22-00283 LEK-WRP, including, but not limited to, any proceedings related thereto.

13. The term "PPP Program" means the CARES Act Paycheck Protection Program.

14. The term "PPP Loan" means and includes any loan that was requested, applied for, or issued by, through, or related to the PPP Program.

15. The term "Newco" means and includes MDG Newco, LLC, and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

16. The term "AUA" means and includes Advanced Unmanned Aerospace LLC, and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

7

1123362.1

17. The term "Marty & Mickey Kao Foundation" means and includes the Marty & Mickey Kao Foundation and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

18. The term "Navatek Foundation" means and includes the Navatek Foundation and all other persons or entities acting or purporting to act on its behalf, including, without limitation, its present and former agents, employees, consultants, investigators, attorneys and former attorneys, insurance carriers, accountants, and advisors.

19. The term "FEC" means and includes the Federal Election Commission or any person, representative or entity acting on its behalf.

20. The term "PAC" means and includes any political action committee, which are committees that receive contributions for the purpose of financing political activity or efforts, or any person, representative or entity acting on behalf of the PAC.

21. The term "1820 PAC" means and includes the 1820 PAC, a political action committee, or any person, representative or entity acting on its behalf, specifically including (but not limited to) Scott Reed.

8

22. The term "CPB" means and includes Central Pacific Bank or any person, representative or entity acting on its behalf, specifically including (but not limited to) Roland Chang.

23. The term "FHB" means and includes First Hawaiian Bank or any person, representative or entity acting on its behalf, specifically including (but not limited to) Darlene Blakeney.

24. The term "Radius Bank" means and includes Radius Bank or any person, representative or entity acting on its behalf specifically including (but not limited to) Gabe Beukinga.

25. The term "Merrill Lynch" means and includes Merrill Lynch, Pierce, Fenner & Smith Incorporated, or any person, representative or entity acting on its behalf.

26. The term "Lobbyist" means and includes any individual or entity who is employed or retained by a client for financial or other compensation in exchange for conducting or facilitating written or oral communications to an elected official, government office, or the staff of an elected official or government office that relate to any of the following: (i) the formulation, modification, or adoption of Federal legislation (including legislative proposals); (ii) the formulation, modification, or adoption of a Federal or governmental rule, regulation, Executive order, or any other program, policy, or position of the United

9

Case 1:22-cv-02083-BK-MKV-PWR Document 142-4 Filed 08/24/23 Page 10 of 28 PageID.4219
PageID.4219

States Government; (iii) the administration or execution of a Federal or governmental program or policy (including the negotiation, award, or administration of a Federal or governmental contract, grant, loan, permit, or license); or (iv) the nomination or confirmation of a person for a position subject to confirmation by the Senate.

27. The term "Strategies 360" means and includes Strategies 360 or any person, representative or entity acting on its behalf specifically including (but not limited to) Andy Winer.

28. The term "Cornerstone Government Affairs" means and includes "Cornerstone Government Affairs" or any person, representative or entity acting on its behalf.

29. The term "Strategic Marketing Innovations" means and includes Strategic Marketing Innovations or any person, representative or entity acting on its behalf.

30. The term "W2A" means and includes Washington 2 Advocates or any person, representative or entity acting on its behalf.

31. The term "TCH Group" means and includes TCH Group LLC or any person, representative or entity acting on its behalf, specifically including (but not limited to) Mike Tongour.

1123362.1

32. The term "Red Maple Consulting" means and includes Red Maple Consulting or any person, representative or entity acting on its behalf.

33. The term "The Livingston Group" means and includes The Livingston Group, LLC, or any person, representative or entity acting on its behalf.

34. The term "Align Strategies" means and includes Alignment Government Strategies or any person, representative or entity acting on its behalf.

35. The term "Unconventional Innovation" means and includes Unconventional Innovation LLC or any person, representative or entity acting on its behalf.

36. The term "MDG Lobbyist" means and includes Strategies 360, Cornerstone Government Affairs, Strategic Marketing Innovations, W2A, TCH Group, Red Maple Consulting, The Livingston Group, Align Strategies, Unconventional Innovation, or any other any Lobbyist, as that term is defined herein, that was hired or paid any amount by MDG whether in exchange for lobbying activities, consulting services, or any other service.

37. The term "Signing Bonus" or "Signing Bonuses" means and includes any amounts paid to employees of MDG but were disclosed, noted, or characterized as payments related to vacations, time off, or paid time off, and specifically includes (but is not limited to) amounts paid to Gary Ambrose, or other persons hired by MDG to work in the MDG Oklahoma office.

11

38. The term "Person" means and includes, without limitation, any natural person, firm, company, partnership, association, joint venture, sole proprietorship, organization, business trust, corporation, public entity, governmental entity, or any other group combination acting as a unit or other form of legal business.

39. The terms "Document" and "writing" mean and include any tangible thing upon which is recorded or any form of communication or representation, including letters, words, pictures, sounds, or symbols, or any combination thereof, by means of handwriting, typewriting, printing, photo stating, photographing, sound and video recording, or any other method of recording, whether in Your possession or under Your control or not, relating to or pertaining in any manner to the subject in connection with which it is used, and includes, but is not limited to, all file copies and all drafts prepared in connection with the documents and writings, whether used or not. This definition also includes, but is not limited to, any and all:

a. Tangible things or items, whether handwritten, typed, printed, tape recorded, electronically recorded, computerized, video-tape recorded, visually reproduced, stenographically reproduced or reproduced in any other manner;

12

1123362.1

b. All ESI in its native format with Metadata, including but not limited to electronic records, e-mails and attachments, files, text, graphics, word processing and/or spreadsheets generated by a computer on any media or device;

c. Originals and all copies of any and all communications;

d. Writings of any kind or type whatsoever;

e. Data compilations of any kind from which information can be obtained and translated, if necessary, by Plaintiff through detection devices into reasonably usable form;

f. Computer files of all types, including, but not limited to any ESI, document files, text files, graphics files, spreadsheet files, audio files, video files, engineering files, e-mail files, deleted files, presentation files, database files including but not limited to schemas, data dictionaries and reports, internet files, intranet files, and calendar files, generated by or stored on any computer or electronic media (removable or non-removable), including, but not limited to, floppy disks, hard drives, CD ROMs, tape backups, zip disks, magneto-optical storage, and DVD-RAM, and including any software application, including prototyping software and hardware necessary to review the same;

13

1123362.1

g.     Books, bulletins, periodicals, newsletters, articles, brochures, advertisements, reports, logs, agenda, minutes, pamphlets, and published material of any kind;

h.     Microtape, microfilm, photographs, slides, movies, films, records, tapes, tape recordings, video-tape recordings, transcripts, and any other recordings (mechanical, electronic, typed, or written), whether stenographically or otherwise reproduced;

i.     Diaries, calendars, desk calendars, appointment books, and hard copies of any computer calendar files;

j.     Memoranda, reports, summaries, outlines, notes, phone records, minutes, and interoffice communications;

k.     Letters, correspondence, telegrams, telexes, facsimiles, cables, wires, telephone logs, messages, text messages, and other such communications;

l.     Drawings, blueprints, sketches, charts, graphs, maps, drawings, schedules, plans, schematics, models, surveys, printouts, and cards;

m.     Proposals, feasibility studies, engineering studies, renderings, as-built drawings, progress schedules, requests for information, change orders, estimates, and projections;

n.     Engineering or scientific notebooks and data;

14

o.     Patents and patent applications;

p.     Contracts and agreements;

q.     Other legal instruments or official documents;

r.     Deeds, leases, mortgages, assignments or other instruments relating to real property or personal property;

s.     Financial statements, balance sheets, profit and loss statements, statements of financial condition, books of account, income tax returns, worksheets, reports, projections, schedules, ledgers, tabulations, books, records, and journals;

t.     Vouchers, expense accounts, receipts, invoices, purchase orders, bills, orders, billings, checks, cancelled checks, deposit receipts, and statements of any kind;

u.     Investigation and incident reports;

v.     Medical records, medical insurance claim forms, pharmacy, and medical invoices;

w.     Files and records;

x.     Proposals, feasibility studies, engineering studies, renderings, plans, as-built drawings, progress schedules, change orders, estimates and projections;

15

1123362.1

y.      Notes, records and summaries of conferences, meetings, discussions, interviews, or telephone conversations or messages;

z.      Travel reports and vouchers;

aa.     Any other instrument or device that contains information or from which information can be derived or retrieved; and

bb.     Drafts and copies of any of the above, including preliminary, altered, retracted, partial and marked-up drafts and copies.

40.     The term "Electronically Stored Information" or "ESI," means electronically stored information of any kind, including but not limited to information created, modified, manipulated, communicated, stored and/or utilized in digital form or requiring the use of computer hardware and software.  ESI also includes matter of any kind, type, form, in your possession, custody or control, including but not limited to metadata, compound documents, word processing files, spreadsheet drafts and revisions, and/or digital communications.

41.     The term "Metadata" shall mean ESI about the document, writing, and/or correspondence.  The information shall include but is not limited to:

a.      The author;

b.      The recipient(s) of any document, writing and/or correspondence including any person blind copy carbonated;

16

c.    Date created;

d.    Person and date editing the document, writing and/or correspondence;

e.    The name of the document, writing and/or correspondence;

f.    The location the document, writing and/or correspondence is stored on a hard drive or server; and

g.    The amount of times the documents, writing and/or correspondence was accessed, altered, or changed.

42.    "Conversation" means and includes, without limitation, any discussion, conversation, conference, meeting, interview, telephone call, and any statement or representation made therein.

43.    "Communication" means and includes, without any limitation, any verbal or written exchange of information, whether telephonic, telegraphic, printed, recorded, graphic, photographic, or otherwise, and includes "documents," "writings," and "conversations" as defined above.

44.    "Any" shall include "all," and "all" shall include "any."

45.    "Concerning" and "relating to" shall mean directly or indirectly referring to, constituting, comprising, containing information regarding, consisting of, setting forth, alluding to, proposing, showing, disclosing, describing, depicting,

17

explaining, summarizing, reflecting, authorizing, mentioning, discussing, bearing upon, commenting upon, evidencing, detecting, or pertaining in any way.

46. The following instructions are applicable to this Request:

a. In producing these documents, You are requested to furnish all documents known or available to You, regardless of whether these documents are possessed directly by You or Your agents, employees, representatives, investigators, or by Your attorneys or their agents, employees, representatives, or investigators;

b. If any of these documents cannot be produced in full, produce to the extent possible, specifying Your reasons for Your inability to produce the remainder and stating whatever information, knowledge, or belief You do have concerning the unproduced portion;

c. If any documents or things requested were at one time in existence, but are no longer in existence, please so state, specifying for each document or thing: (1) the type of document or thing; (2) the types of information contained thereon; (3) the date upon which it ceased to exist; (4) the circumstances under which it ceased to exist; (5) the identities of all persons having knowledge of the circumstances under which it ceased to exist; and (6) the identities of all persons having knowledge or who had knowledge of the contents thereof;

18

1123362.1

d. All data that is in text (regardless of format) must be OCR'd before production;

e. To the extent ESI in native form, data-processing cards, magnetic tapes or other computer-related materials are produced, produce all programs, instructions, and other related information or application(s) necessary to read, comprehend, and otherwise utilize the documents or writings therein. Alternatively, provide access to all programs, instructions, and application(s) necessary to read, comprehend, and otherwise utilize said documents.

f. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

g. All TIFF images shall be branded in the lower righthand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

h. Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary

19

course of business should be preserved. For example, if a party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail.

i. All production items will be provided with a delimited data file or "load file." Acceptable formats for the load file are .log, .opt, .dii .lfp, .txt, .dat, or .csv. The load file must reference each document in the corresponding production.

j. Documents or ESI containing color need not be produced initially in color but shall be produced in native format or in color format. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESI.

k. This Request is a continuing one. If, after producing documents, You obtain or become aware of any further documents responsive to this Request, You are required to produce the additional documents to Plaintiff; and

l. If any documents covered by this Request are withheld by reason of a claim of privilege, a privilege log shall be furnished as part of Your required response to this Request, identifying each document for which a privilege is claimed together with the following information with respect to each document

20

withheld: (a) date; (b) sender; (c) recipient; (d) the identity of any person to whom copies were furnished; (e) general subject matter; (f) basis on which privilege is claimed; and (g) the paragraph of the Request to which such document relates.

1123362.1

## DOCUMENTS REQUESTED

1. Any and all Documents relating in any way to the allegations contained in the Complaint.

2. Any and all Documents relating in any way to the Lawsuit.

3. Any and all Documents relating to any communications by, among, or between You and Plaintiff.

4. Any and all Documents relating to any communications by, among, or between You and Martin Kao since January 1, 2018 and later, and specifically including emails and text messages.

5. Any and all Documents relating to any communications by, among, or between You and Clifford Chen since January 1, 2018 and later, and specifically including emails and text messages.

6. Any and all Documents relating to any communications by, among, or between You and Lum Kee since January 1, 2018 and later, and specifically including emails and text messages.

7. Any and all Documents relating to any communications by, among, or between You and Duke Hartman since January 1, 2018 and later, and specifically including emails and text messages.

8. Any and all Documents relating to any communications by, among, or between You and Gary Ambrose since January 1, 2018 and later, and specifically including emails and text messages.

9. Any and all Documents relating to any communications by, among, or between You and SYWSE since January 1, 2018 and later, and specifically including emails and text messages.

10. Any and all Documents relating to any communications by, among, or between You and Plaintiff since January 1, 2018 and later, and specifically including emails and text messages.

11. Any and all Documents relating to any communications by, among, or between You and Michael J. O'Malley since January 1, 2018 and later, and specifically including emails and text messages.

12. Any and all Documents relating to any communications by, among, or between You and the law firm of Goodsill Anderson Quinn & Stifel or any of its employees, lawyers, staff, or agents since January 1, 2018 and later, and specifically including emails and text messages.

13. Any and all Documents relating to any communications by, among, or between You and William Canfield, Esq., since January 1, 2018 and later, and specifically including emails and text messages.

14. Any and all Documents relating to any communications by, among, or between You and MDG Lobbyists since January 1, 2018 and later, and specifically including emails and text messages.

15. Any and all Documents relating to any communications by, among, or between You and Cleta Mitchell since January 1, 2018 and later, and specifically including emails and text messages.

16. Any and all Documents relating to any communications by, among, or between You and CPB since January 1, 2018 and later, and specifically including emails and text messages.

17. Any and all Documents relating to any communications by, among, or between You and FHB since January 1, 2018 and later, and specifically including emails and text messages.

18. Any and all Documents relating to any communications by, among, or between You and Radius Bank since January 1, 2018 and later, and specifically including emails and text messages.

19. Any and all Documents relating to any communications by, among, or between You and Merrill Lynch since January 1, 2018 and later, and specifically including emails and text messages.

20. Any and all Documents relating to any communications by, among, or between You and FEC since January 1, 2018 and later, and specifically including emails and text messages.

2

1123362.1

21. Any and all Documents relating to any communications by, among, or between You and 1820 PAC since January 1, 2018 and later, and specifically including emails and text messages.

22. Any and all Documents relating to any communications by, among, or between You and AUA since January 1, 2018 and later, and specifically including emails and text messages.

23. Any and all Documents relating to any communications by, among, or between You and Newco since January 1, 2018 and later, and specifically including emails and text messages.

24. Any and all Documents relating to any communications by, among, or between You and Marty & Mickey Kao Foundation since January 1, 2018 and later, and specifically including emails and text messages.

25. Any and all Documents relating to any communications by, among, or between You and Navatek Foundation since January 1, 2018 and later, and specifically including emails and text messages.

26. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to SYWSE.

27. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to any amounts of money paid or donated by MDG to SWYSE or paid to other persons or entities by MDG on behalf of SWYSE.

28. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to PPP Loans.

29. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Lobbyists.

30. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and

3

1123362.1

specifically including emails and text messages that related to MDG Lobbyists.

31.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to 1820 PAC.

32.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to the FEC.

33.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to CPB.

34.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Radius Bank.

35.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Scholarships.

36.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to AUA.

37.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Newco.

38.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Signing Bonuses.

39.    Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Marty & Mickey Kao Foundation.

4

1123362.1

40. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to Navatek Foundation.

41. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to any amounts of money paid or donated by MDG to either the Marty & Mickey Kao Foundation or the Navatek Foundation.

42. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to any amounts of money paid by MDG that relates in any way to tuition or school expenses for the children of any MDG employee, specifically including (but not limited to) the children of Gary Ambrose or Clifford Chen.

43. Any and all Documents relating to any communications by, among, or between You and any person since January 1, 2018 and later, and specifically including emails and text messages that related to political or campaign contributions made to any candidate, person, PAC, or entity.

44. Any all Documents or communications relating in any way to the operating agreements, articles of incorporation, corporate records or documents, meeting minutes, financial records, contracts, or other business records for SYWSE.

45. Any all Documents or communications relating in any way to the operating agreements, articles of incorporation, corporate records or documents, meeting minutes, financial records, contracts, or other business records for AUA.

46. Any all Documents or communications relating in any way to the operating agreements, articles of incorporation, corporate records or documents, meeting minutes, financial records, contracts, or other business records for Newco.

47. Any all Documents or communications relating in any way to the operating agreements, articles of incorporation, corporate records or documents,

5

meeting minutes, financial records, contracts, or other business records for Marty & Mickey Kao Foundation.

48. Any all Documents or communications relating in any way to the operating agreements, articles of incorporation, corporate records or documents, meeting minutes, financial records, contracts, or other business records for Navatek Foundation.

49. Any and all Documents or Communications, including emails and text messages, that relate in any way to the deposit of an amount equal to, or approximately equal to, $2,000,000 by MDG into a personal account held, owned, or controlled, either individually or jointly, by Defendant Martin Kao, that occurred on or around April 20, 2020.

50. Any and all Documents or Communications that relate in any way to the payment of $15,000 by MDG to Holland & Knight LLP for legal services and expenses on behalf of Defendant Duke Hartman.

51. Any and all Documents or Communications that relate in any way to the payment of legal fees, expenses, or any other amount, to the law firm Braswell Fujioka-Lilley on behalf of Defendant Clifford Chen.

52. Any and all Documents or Communications that relate in any way to the payment of legal fees, expenses, or any other amount, to the law firm MK Law, LLC.

53. Any and all Documents or Communications that relate in any way to credit card charges made by You on an America Express Credit Card that were paid by MDG.

54. Any and all Documents or Communications that relate in any way to the agreement in which Defendant Martin Kao acquired an interest in 99% of MDG's future profits or losses in or around August 2018.

55. Any and all Documents or Communications that relate in any way to Your tax returns from January 1, 2018 through the current date.

56. Any and all Documents that have been or will be reviewed by experts, consultants, or investigators, who have been retained by You or who may

6

1123362.1

testify in this Lawsuit on Your behalf, in order to form their opinions as to allegations contained in the Complaint.

57. Copies of your expert(s)' resumes.

58. Any and all non-privileged Documents relating to this Lawsuit that have been produced to any other party, whether or not a party to this Lawsuit.

59. Any and all non-privileged Documents relating to this Lawsuit that have not already been produced to any other party, whether or not a party to this Lawsuit.

60. Any and all witness statements, tape recordings, or other statements of witnesses or parties concerning this Lawsuit.

61. Any and all Documents that You intend to introduce as an exhibit in any proceeding related to this Lawsuit, including, but not limited to, depositions or arbitration.

62. A list of all Documents that will be withheld from this production request on the basis of attorney-client privilege or because they constitute work product by or for an attorney.

1123362.1