# EXHIBIT 17

Case 1:22-cv-00283-LEK-WRP   Document 312-19   Filed 03/03/26   Page 2 of 46
PageID.4262
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 53

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


PACMAR TECHNOLOGIES LLC      ) CASE NO.
(f/k/a MARTIN DEFENSE        ) 1:22-CV-00283-LEK-WRP
GROUP, LLC),                 )
                             )
          Plaintiff,         )
                             )
     vs.                     )
                             )       **Certified Transcript**
MARTIN KAO; TIFFANY          )
JENNIFER LAM a.k.a.          )
JENNY LAM and/or TIFFANY     )
KAO; LAWRENCE KAHELE LUM     )
KEE; CLIFFORD CHEN; DUKE     )
HARTMAN; SOCIETY OF          )
YOUNG WOMEN SCIENTISTS       )
AND ENGINEERS LLC,           )
                             )
          Defendants.        ) (Pages 53 to 194)
_____)


VOLUME II

DEPOSITION OF TIFFANY J. LAM

FRIDAY, JANUARY 9, 2026


REPORTED BY:    CARLENE K. SASAKI, RPR
                STATE OF HAWAII CSR NO. 544

**EXHIBIT 17**  808.664.6677
www.iDepoHawaii.com



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 3 of 46
PageID.4263

TIFFANY J. LAM, Vol II on 01/09/2026                                     Page 54
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


| | |
|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC), | ) CASE NO.<br>) 1:22-CV-00283-LEK-WRP<br>) |
| Plaintiff, | ) |
| vs. | ) |
| MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Volume II

DEPOSITION OF TIFFANY J. LAM,

taken on behalf of the Plaintiff pursuant to Notice,

on Friday, January 9, 2026, commencing at 9:30 A.M.,

at the office of Lung Rose Voss & Wagnild, and via

Zoom, before Carlene K. Sasaki, RPR, State of Hawaii

CSR No. 544.

Case 1:22-cv-00283-LEK-WRP   Document 312-19   Filed 03/03/26   Page 4 of 46
PageID.4264
TIFFANY J. LAM, Vol II on 01/09/2026                                        Page 55
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

APPEARANCES:

For Plaintiff:

        LUNG ROSE VOSS & WAGNILD
        BY:  GRANT FASI ALLISON, ESQ.
        Topa Financial Center
        700 Bishop Street,
        Suite 900
        Honolulu, Hawaii 96813
        Phone:   (808) 523-9000
        E-mail:  gallison@legalhawaii.com


For Defendant TIFFANY JENNIFER LAM a.k.a. JENNY LAM
and/or TIFFANY KAO:

        MIYOSHI & HIRONAKA LLLC
        BY:  RANDALL HIRONAKA, ESQ.
             PHILIP W. MIYOSHI, ESQ.
        500 Ala Moana Blvd
        Honolulu, HI 96813
        Phone:   (808) 529-7300
        E-mail:  randy@808-law.com
                 philip@808-law.com


Also Present:

        Don Ha, iDepo Video Legal Specialist



                        I N D E X


DEPONENT:              EXAMINATION:                PAGE:

TIFFANY J. LAM          BY MR. ALLISON             60




                  INFORMATION REQUESTED

                        (NONE)




                  UNANSWERED QUESTIONS

                    PAGE:  LINE:

                      18    64

                    189    11




              MARKED PORTIONS BY COUNSEL

                        (NONE)



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 6 of 46
PageID.4266
TIFFANY J. LAM, Vol II on 01/09/2026    Page 62
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

one of you will be making objections today, and that will be you, Randy?

Is that correct?

MR. HIRONAKA:  Correct.


                    EXAMINATION

BY MR. ALLISON:

Q    Okay.  Good morning.  My name is Grant Allison.  I represent the plaintiff, PacMar Technologies.  Just as a housekeeping matter, I may refer to the plaintiff PacMar Technologies LLC, which is formally known as Martin Defense Group, sometimes as PacMar and sometimes as the company.

Do you understand that, and is that okay with you?

A    Yes.

Q    Okay.  For today's depo, do you prefer that I call you Tiffany throughout?

A    That's fine.

Q    I will call you Tiffany.

Tiffany, do you recall that we were here in my office a few months ago, and we had an earlier deposition in which I asked you questions?

A    Yes.

Q    And do you also recall that you pled the

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 7 of 46
PageID.4267
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 63

Fifth, where you refused to answer my questions on the grounds of your Fifth Amendment right not to incriminate yourself with any questions I might have asked relating to an entity called the Society of Young Women Scientists and Engineers?

A    Yes.

Q    It has been represented to me that you no longer have those Fifth Amendment concerns.

Do you agree?  Is that accurate?

A    Yes.

Q    In today's deposition, is it also accurate that you do not intend to plead the Fifth as to questions relating to the Society of Young Women Sceientists and Engineers, LLC?

A    Yes.

Q    Another housekeeping matter:  Because saying "the Society of Young Women Sceientists and Engineers, LLC" is a mouth full, I'm simply going to refer to that entity as either "The Society" or "SYWSE."

Do you understand, and is that okay with you?

A    Yes.

Q    You also pled the Fifth as to questions relating to your production of documents in this

Case 1:22-cv-00283-LEK-WRP     Document 312-19     Filed 03/03/26     Page 8 of 46
PageID.4268
TIFFANY J. LAM, Vol II on 01/09/2026     Page 64
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

matter.  Same questions that I asked you before with respect to The Society:  Do you intend to plead the Fifth today as to any questions related to document productions?

A    No.

Q    Do you intend to plead the Fifth today as to any questions or any topics?

A    No.

Q    Okay.  The last time I deposed you, we went through some basic ground rules at the start.  I won't go through them in quite so much detail, but I'm going to refresh you on them.

The first is that I ask that you let me completely finish speaking before you answer, and I will do the same for you.  And the reason is because the court reporter is trying to write everything down.

Is that okay with you?

A    Yes.

Q    The second is that you're obligated to be honest and tell the truth today.

Do you understand that?

A    Yes.

Q    Okay.  The third is that I ask that you don't guess at anything.  So if you have no basis to

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 9 of 46
PageID.4269
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.    Page 89

Honolulu, Hawaii 96804?    10:16:48

A    No, I am not.    10:16:53

Q    Have you ever used that address before?    10:16:54

A    No, I have not.    10:16:57

Q    And so it's your testimony that you did not sign or submit this document on November 26, 2019, to the DCCA?    10:16:59 10:17:01 10:17:10

A    I've never seen this document.    10:17:12

Q    Okay.  You can set that aside for now.    10:17:14

MR. ALLISON:  We'll do this is the next in order.    10:17:48 10:17:50

(Whereupon, Plaintiff's Exhibit No. 3 was marked for identification by the deposition officer and is attached hereto.)    10:17:50 10:17:50 10:17:50 10:17:50

Q    (BY MR. ALLISON)  Okay.  Ms. Lam, the document that we've marked as Exhibit 3, have you seen this document before?    10:17:58 10:18:00 10:18:03

A    No, I have not.    10:18:04

Q    This is -- at the top, it says, "Society of Young Women Scientists and Engineers LLC Operating Agreement," correct?    10:18:06 10:18:11 10:18:11

A    Correct.    10:18:12

Q    Could you flip to the end -- not the very last page, but the third-to-the-last page?    10:18:13 10:18:19



TIFFANY J. LAM, Vol II on 01/09/2026                     Page 90
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Is that your signature?

A     That is not my signature.

Q     And is it, again, your testimony that you are not the Jennifer Lam noted as its manager and member?

A     If you're asking me if I know about this company, I don't know about this company.

Q     Okay.  And if I ask you about any of the obligations and statements listed in this document, such as the contribution of capital, or liability, or any other rights or obligations, would your testimony be the same that you've never seen this document, and you don't know what it says, and you don't have anything to do with this?

A     Yes.

Q     You can put this to the side now.

Did you ever discuss this entity with your husband, Martin Kao?

A     No.

Q     Martin never told you about The Society, or told you about any plans to create The Society?

A     No.

Q     And that question is unlimited as to time -- not just currently or recently, but dating back to 2019.

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 11 of 46
PageID.4271

TIFFANY J. LAM, Vol II on 01/09/2026    Page 93
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

(Whereupon, Plaintiff's Exhibit No. 4 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  Tiffany, have you ever seen this document before?

A    No.

Q    At the bottom of the first page, there's, again, a printed name; it says "Jennifer Lam," and, again, a signature.

Is that your signature?

A    No.

Q    On the second page, at the very bottom, there is, again, a printed name, "Jennifer Lam," and a signature and title "Manager."  It's dated 12-10-2019.

Is that your signature on the second page?

A    No.

MR. ALLISON:  And I will note for the record that this is the signature card at Central Pacific Bank for The Society of Young Women Scientists and Engineers LLC's bank account.

Q    (BY MR. ALLISON)  This is not a document you have ever seen or signed.

TIFFANY J. LAM, Vol II on 01/09/2026

PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Is that your testimony?

A    Yes.

Q    On the third, fourth, and fifth pages, there is, again, the same signature and same printed name, "Jennifer Lam."  If you could look at those pages.  And it's the same question:  Is that your signature on the third, fourth, or fifth page?

A    It is not.

Q    Earlier I asked you, "Who in the world do you think would have done this?  Who would have signed your name on these documents relating to The Society?"  And you answered, "Martin Kao," correct?

A    Yes.

Q    So same question as to this document we've marked as Exhibit 4:  Who do you believe or suspect signed your name onto these documents?

A    Martin.

MR. ALLISON:  Do this one as the next in order, please.

(Whereupon, Plaintiff's Exhibit No. 5 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  Tiffany, have you seen this document before?

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 13 of 46
PageID.4273
TIFFANY J. LAM, Vol II on 01/09/2026    Page 95
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    No.

Q    At the very bottom, there's a name and it says, "Tiffany Jennifer Lam," and the title is "Authorized Representative."  And it says:

"The legal entity for which the account is being opened."

And it lists "Society of Young Women Scientists and..." and it cuts off the word "and." This is an entity type "Limited Company."

Do you see where I'm referencing?

A    Yes.

Q    The address is listed as 307A Kamani Street, Honolulu, Hawaii 96813.

Do you see that?

A    Yes.

Q    Are you familiar with the property 307A Kamani Street?

A    No, I am not.

Q    Have you ever been to that property?

A    I've never heard of it.

Q    You don't own that property or have any interest in that property?

A    I've never heard of that.

Q    That is your name, though, at the bottom of the first page, "Tiffany Jennifer Lam," correct?

TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 96
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Correct.

Q    And on the second page, there's a certification, it says:

"I, Tiffany Jennifer Lam, hereby certify to the best of my knowledge..."

And it goes on from there.

Do you see where I'm referencing?

A    I see.

Q    And, again, there is a signature.

Is that your signature?

A    No, it is not.

Q    And, again, I'll ask you:  Who is it that you believe may have signed this document purporting to be you, if it is not you, as you've testified?

A    Possibly Martin.

Q    Is there anybody else in the world that you think would have had a reason to sign your name to this document?

A    I can't think of any.

MR. ALLISON:  Next one in order.

(Whereupon, Plaintiff's Exhibit No. 6 was marked for identification by the deposition officer and is attached hereto.)



TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q     (BY MR. ALLISON)  Tiffany, have you seen this document before?

A     No, I have not.

Q     This is an address-change request form for Central Pacific Bank.

Do you see that at the top?

A     I see it.

Q     And under customer information, it lists Society of Young Women Scientists and Engineers.

Do you see that?

A     Yes.

Q     Under that name, it says:

"Last four SSN/CIF."

Do you see that?

A     Yes.

Q     And are those the last four digits of your Social Security number that are listed there: 0153?

A     No, that isn't.

Q     Below that, it has the e-mail address, tiffany808@gmail.com, which is your e-mail address, correct?

A     Correct.

Q     This document is dated at the bottom, May 7, 2020.



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 16 of 46
TIFFANY J. LAM, Vol II on 01/09/2026      PageID.4276                      Page 98
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Do you see that?                                    10:29:28

A    Yes.                                           10:29:30

Q    During that time period, on or around         10:29:30
May 7, 2020, did you regularly or frequently check or   10:29:35
look at your e-mail account for your e-mails at     10:29:41
tiffany808@gmail.com?                               10:29:46

A    I don't know, but back then, I don't          10:29:47
think I looked at my e-mail much.                   10:29:50

Q    Back then, do you know or believe that        10:29:53
Martin was using or looking at your e-mail account? 10:29:58

A    It's possible.                                10:30:01

Q    Have you ever seen any e-mails in your        10:30:03
e-mail account at tiffany808@gmail.com from Central 10:30:10
Pacific Bank relating to The Society of Young Women 10:30:17
Scientists and Engineers?                           10:30:21

A    I don't think so.                             10:30:21

Q    Have you ever deleted any such e-mails?       10:30:22

A    I don't know.                                 10:30:28

Q    At the bottom the page, there's a            10:30:29
signature.                                          10:30:34

Is that your signature?                             10:30:35

A    No.                                           10:30:36

Q    Same question as before:  Who is it that     10:30:37
you reasonably believe or suspect may have signed   10:30:41
that signature if it was not you?                   10:30:45



TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Possibly Martin.

Q    **Is there anybody else in the world you suspect would have had a reason to do this or did this?**

A    I don't know.

Q    **Can you think of anybody else?**

A    I can't.

Q    **Is Martin the only person you can think of that might have done this?**

A    Yes.  Maybe the person with the last four digits.  Whoever that is.

(Whereupon, Plaintiff's Exhibit No. 7 was marked for identification by the deposition officer and is attached hereto.)

Q    **(BY MR. ALLISON)  Have you ever seen this document that we've marked as Exhibit 7 before?**

**And let me specify before you answer.  By this document -- I'm sorry.**

MR. HIRONAKA:  Sorry, do you have other copies of this one?

MR. ALLISON:  Yeah, sorry.

MR. HIRONAKA:  These are all the same.

Q    **(BY MR. ALLISON)  Strike that.  I'll ask my question over.  I'll start over.**

10:30:48
10:30:49
10:30:54
10:30:57
10:30:57
10:30:58
10:31:02
10:31:03
10:31:06
10:31:07
10:31:14
10:31:14
10:31:14
10:31:14
10:31:33
10:31:44
10:31:46
10:31:49
10:31:52
10:31:52
10:31:54
10:31:56
10:32:00
10:32:05
10:32:08



Case 1:22-cv-00283-LEK-WRP  Document 312-19  Filed 03/03/26  Page 18 of 46
PageID.4278
TIFFANY J. LAM, Vol II on 01/09/2026  Page 100
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Tiffany, this is a copy of a check.

Do you see that?

A    Yes.

Q    The check for which this is a copy of, have you ever seen that original check before?

A    No.

Q    Have you ever seen this or another Xerox copy of this check before?

A    No.

Q    Have you ever seen a check that is from the Society of Young Women Sceientists and Engineers, LLC?

A    I have not.

Q    There are two signatures on this check: one on the signature line and one below it on the routing line.

Do you recognize the signature on the signature line or the one on top?

A    Yes.

Q    Whose signature is that?

A    Martin's.

Q    And do you recognize the signature below the signature line next to the routing number?

A    I do not.

Q    That is not your signature?



TIFFANY J. LAM, Vol II on 01/09/2026    Page 101
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    That is not my signature.    10:33:18

Q    So it's your testimony that you did not sign this check?    10:33:20 10:33:25

A    Yes.    10:33:26

Q    Did you deliver this check to anybody?    10:33:27

A    No.    10:33:31

Q    Were you aware that The Society -- strike that.    10:33:32 10:33:39

Were you aware that The Society paid this entity listed here on the payee line, 1820 PAC -- P-A-C, PAC --the amount of $150,000 on December 27, 2019?    10:33:40 10:33:43 10:33:52 10:33:57

A    I don't recognize anything on this paper.    10:33:58

Q    But, certainly, you are aware of these facts today, because you testified earlier that the Department of Justice served you with a witness subpoena on this subject matter, right?    10:34:03 10:34:05 10:34:06 10:34:09

A    Yes.    10:34:11

Q    So you must have become aware of these facts at some point since or after you were served with that subpoena.    10:34:11 10:34:14 10:34:17

Is that accurate?    10:34:17

A    My attorney handled everything.    10:34:19

Q    So you never testified or gave testimony to the Department of Justice?    10:34:23 10:34:25



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 20 of 46
PageID.4280
TIFFANY J. LAM, Vol II on 01/09/2026                                      Page 103
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

about The Society before we took a break.  I'm going to ask you some general questions about The Society, and I ask that you answer to the best of your knowledge.

As you sit here today, do you know how many employees The Society had?

A    I had no involvement.  I have no knowledge.  I don't know anything about The Society.

Q    So if I ask you any question at all about The Society, as to any topic at all, you would not be able to answer a single question?

A    Yes.

Q    Other than obvious things, like what is its name?

A    Yes.

Q    Do you know what The Society's purpose is?

A    No.

Q    Do you know what business The Society was engaged in?

A    No.

Q    Do you know if The Society ever filed tax returns?

A    I don't.

Q    Were you ever paid or compensated by The

A    I don't know.    11:04:24

Q    Have you ever discussed that with her?    11:04:24

A    I did not.    11:04:26

Q    Did you refer your current attorneys to Ms. Bofman so that they could represent her?    11:04:27 11:04:37

A    No, I did not.    11:04:41

Q    Did Ms. Bofman refer your current attorneys to you so that they could represent to you?    11:04:43 11:04:46

A    No, she did not.    11:04:49

Q    Okay.  Put this off to the side for a second.    11:04:50 11:05:32

MR. ALLISON:  Do this as the next one in order.    11:05:32 11:05:50

(Whereupon, Plaintiff's Exhibit No. 9 was marked for identification by the deposition officer and is attached hereto.)    11:05:50 11:05:50 11:05:50 11:05:51

Q    (BY MR. ALLISON)  Tiffany, if you could just flip through this document.  I'll represent to you that it's a copy of a number of checks from the Society of Young Women Sceientists and Engineers, LLC, made out to various universities and colleges.    11:05:51 11:06:06 11:06:12 11:06:12 11:06:20

Earlier, we looked at some CPB banking documents that showed, or -- because you testified that you don't believe that those were your    11:06:34 11:06:39 11:06:42

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 22 of 46
PageID.4282
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 117

signatures, they perhaps purported to show -- that you were the holder and signatory on The Society's bank account and banking documents, correct?

A    Right.

Q    So, therefore, you agree that if The Society wrote checks, you would be the person that would have to sign those checks, correct?

A    I should be the person.  I should be.

Q    Are you saying that, or are you asking a question?

A    I'm saying that.

Q    So you agree that you should be the person -- or would need to be -- the person who signs The Society's checks, based on the banking documents we looked at earlier?

MR. HIRONAKA:  I'm going to object.  It's vague and ambiguous.  Assumes facts not in evidence, and it's argumentative.

THE WITNESS:  I don't understand.

Q    (BY MR. ALLISON)  Earlier, we looked at some documents from Central Pacific Bank.

Do you recall?

A    Yes.

Q    And one of the those documents we looked at was the CPB banking card, or signature card, for



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 23 of 46
PageID.4283
TIFFANY J. LAM, Vol II on 01/09/2026                                      Page 121
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

should be the person?

Q    I'm saying that with respect to bank, the bank believes you're the person who should sign the checks for The Society.

Do you agree?

A    Does the bank believe?

Q    Based on the document that we're looking at --

A    Right.

Q    -- do you agree that the documents reflect that you are the person who should be signing checks for The Society?

A    No, because that's not my signature.

Q    I understand that you've testified it's not your signature.

A    Right.

Q    But the documents show on their face that you, Tiffany Jennifer Lam, are the person who has beneficial authority over The Society's bank accounts.

Do you agree?

I'm not asking you to admit that this is your signature.  I understand that it's your testimony that it's not.  I'm simply asking that, based on the documents, they purport to show -- even

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 24 of 46
PageID.4284
TIFFANY J. LAM, Vol II on 01/09/2026                                           Page 122
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

if not accurate, according to your testimony -- they purport to show that you have signing authority over The Society's bank account?    11:11:53 11:11:57 11:11:59

A    But I didn't input the information.    11:12:01

Q    I understand that.  I'm not asking you to admit that you inputted the information.  I'm simply asking you that, on its face, that's what the documents purport to show?    11:12:04 11:12:07 11:12:10 11:12:14

A    What does "purport" mean?    11:12:16

Q    It means that what's they show on their face, even if you disagree with the truth of it?    11:12:17 11:12:22

A    You mean, that's what it looks like?    11:12:25

Q    Correct.    11:12:25

A    Yes, that's what it looks like.    11:12:28

Q    Thank you.  So because that's what it looks like on the banking documents, you agree that it also looks like you should be the person signing The Society's checks?    11:12:30 11:12:34 11:12:37 11:12:39

A    I don't understand what you're saying.    11:12:45

MR. HIRONAKA:  I'm going to object.  It's argumentative.    11:12:47 11:12:49

MR. ALLISON:  Sure.    11:12:49

THE WITNESS:  Sorry, I don't understand.    11:12:50

Q    (BY MR. ALLISON)  We'll move on.  I'll ask it this way:  If you could go back to Exhibit 5    11:12:51 11:12:54

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 25 of 46
PageID.4285
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 123
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

and look at the signature on the second page.      11:13:00

A    Yes.      11:13:06

Q    And then compare it to the signatures on      11:13:07
the checks on Exhibit 9.      11:13:12

A    Okay.      11:13:17

Q    Do you agree that it appears that whoever      11:13:18
signed your signature on Exhibit 5 also appears to      11:13:22
have signed these checks in a same or similar      11:13:29
fashion?      11:13:36

A    I mean, I guess so.  I don't know.  Kind      11:13:43
of.  I'm not a hand specialist.  I don't know.      11:13:49

Q    This is not your signature, though.      11:13:54

Is that your testimony on Exhibit 9 on      11:13:56
the multiple checks?      11:13:58

A    Yes, that's not my signature.      11:14:01

Q    Okay.  If we could go back to Exhibit 8      11:14:03
now, this e-mail from Lori Bofman.  In the e-mail, at      11:14:12
the bottom of page 1 of Exhibit 8, this is an e-mail      11:14:19
from Clifford Chen to Lori Bofman in the same e-mail      11:14:23
chain.  First question:  Do you know who Clifford      11:14:28
Chen is?      11:14:33

A    Yes.      11:14:33

Q    Have you ever met Clifford Chen before?      11:14:34

A    Yes.      11:14:37

Q    How many times have you met Clifford      11:14:38



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 26 of 46
PageID.4286
TIFFANY J. LAM, Vol II on 01/09/2026                                          Page 125
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Society, but Martin can't."    11:15:30

Do you see that?    11:15:31

A    I see.    11:15:32

Q    So my question is this:  Did Martin have    11:15:32
access to your bank accounts such that he could write    11:15:36
checks from your accounts to The Society?    11:15:40

A    Are you asking me if The Society's on my    11:15:44
accounts?    11:15:48

Q    I'm asking if Martin had access to your    11:15:48
bank accounts and could write checks that purported    11:15:53
to be from you, but were not actually from you?    11:15:55

A    Are you asking if he writes my signature?    11:16:00

Q    Yes.    11:16:04

A    No.    11:16:04

Q    Did Martin ever ask you to write any    11:16:05
checks?    11:16:13

A    I can't recall.    11:16:15

Q    Did Martin ever ask you to write a check    11:16:15
to anybody ever?    11:16:25

A    I can't recall.    11:16:32

MR. ALLISON:  Do the next one in order.    11:16:50

(Whereupon, Plaintiff's Exhibit No. 10    11:16:50
was marked for identification by the    11:16:50
deposition officer and is attached    11:16:50
hereto.)    11:17:10

 

Case 1:22-cv-00283-LEK-WRP     Document 312-19     Filed 03/03/26     Page 27 of 46
PageID.4287
TIFFANY J. LAM, Vol II on 01/09/2026                                      Page 126
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q    (BY MR. ALLISON)  Tiffany, these are similarly additional checks from The Society made out to additional schools and universities.  On the first page, the first check for $2,500 from The Society made out to Wichita State University Foundation; is that your signature --

A    No.

Q    -- on the check?

A    No.

Q    Below on the signature line for "Donor," do you recognize that signature?

A    It looks -- yes, it looks like my husband.

Q    That's Martin Kao's signature?

A    It looks like it.

Q    And have you seen Martin's signature before?

A    Yes.

Q    Would you reasonably recognize it if you saw it?

A    Yes.

Q    And it's your testimony that you recognize this signature to be Martin's?

A    It looks like it, yes.

Q    If you could flip to the second page.  At



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 28 of 46
PageID.4288
TIFFANY J. LAM, Vol II on 01/09/2026                                        Page 127
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

the bottom, there's a copy of a check made out to University of South Carolina from The Society, and it's for $5,000.

Is that your signature on that check?

A    No, it is not.

Q    Okay.  And if you could just flip through the rest of the pages and look at each check.  And I will ask you the question:  Is that your signature on any of these checks on the additional pages of this exhibit?

A    No, it is not.

Q    Okay.  Could you flip to the fourth page?

At the top, there's an e-mail -- a header for an e-mail -- and it's from Lori Bofman from the e-mail address Lbofman@sywse.com, to somebody named Rachel M. Pirkle.

Do you see that?

A    I see it.

Q    Did you ever discuss with Lori Bofman that she had an e-mail address that was @SYWSE?

A    No.

Q    Did you ever receive any e-mails from Lori Bofman from her e-mail @SYWSE?

A    No.

Q    Do you have any knowledge -- or did



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 29 of 46
PageID.4289
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 142
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

production in response to the request for production of documents in this case, did you search for e-mails in this time period that it related or involved in The Society?

A    I don't recall.

Q    But it's your testimony that you never sent an e-mail that said the quoted statement in this e-mail, or substantially similar statement, on or around June 24, 2020.

Is that true?

A    Yes.  I didn't know he existed.

MR. ALLISON:  This is the next one in order, please.

(Whereupon, Plaintiff's Exhibit No. 16 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  Tiffany, have you seen this letter before?

A    No.

Q    In the opening paragraph, it says:

"Respondents, the Society of Young Women Scientists and Engineers, LLC (The Society), and its Registered Agent and Manager,



Case 1:22-cv-00283-LEK-WRP     Document 312-19     Filed 03/03/26     Page 30 of 46
PageID.4290
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 143

Jennifer Lam (Ms. Lam) submit this response to a complaint filed by the campaign legal center."

Do you see that?

A    Yes.

Q    It's your testimony that you are not the Jennifer Lam referenced in that first paragraph, or that you had no knowledge of this when it was sent?

A    I had no knowledge of it.

Q    It's also your testimony that Mr. Canfield did not represent you as of the date this letter was sent, which is the 16th day of July 2020, as stated in the second page of this letter?

A    Yes.

Q    So under Mr. Canfield'S signature on the second page, where it says he is, "Counsel to the Society of Young Women Sceientists and Engineers, LLC and Jennifer Lam, its manager," it's your testimony that you are not that person, Jennifer Lam, its manager?

A    Yes.  I didn't know him back then.

Q    And you never spoke with Mr. Canfield at this time?

A    I didn't know he existed.

Q    Do you have an explanation as to why or



Case 1:22-cv-00283-LEK-WRP   Document 312-19   Filed 03/03/26   Page 31 of 46
PageID.4291

TIFFANY J. LAM, Vol II on 01/09/2026   Page 147
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q    Can you name a few?    12:37:07

A    So, like, if he wanted me to buy cookies, right, he would ask me to buy the cookies for the company, for their business expense or whatever.    12:37:08 12:37:17 12:37:21

Q    Okay.  And how did you pay for these errands that you did for Martin?    12:37:26 12:37:35

A    I used a credit card.    12:37:36

Q    Was it your credit card?    12:37:42

A    When you say "my credit card" --    12:37:44

Q    Was your name on the credit card?    12:37:49

A    Yes.    12:37:51

Q    Did you pay the bill for the credit card?    12:37:52

A    I don't know.  I don't handle the finances.    12:37:56 12:38:00

Q    Who was the credit card from, meaning specifically, what credit card company was it?    12:38:01 12:38:07

A    American Express.    12:38:10

Q    And you don't know who paid the bill for that credit card?    12:38:12 12:38:18

A    No.    12:38:19

Q    What year or time frame would this have been?    12:38:19 12:38:26

A    I don't remember.    12:38:26

Q    Well, it certainly would have been before Martin was arrested in or around October of 2020,    12:38:27 12:38:33



TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

correct?

A    What do you mean?

When I was using the credit card?

Q    Yes.

A    When he was at the company.

Q    So would it have been before October of 2020?

A    Yes.

Q    In the time period before October of 2020, did you have any credit cards for which you personally paid the bills for?

A    Are you saying that I'm writing a check?

Q    Or having money deducted on auto pay from your account?

A    So Martin handles all finances.  I don't know.

Q    And so it's your testimony that you have no knowledge, understanding, or information as to the source of funds that paid for credit cards that you used prior to October 2020?

A    Yes.

Q    Did you ever ask Martin where the funds were coming from?

A    No.

Q    And why didn't you ask Martin where the



Case 1:22-cv-00283-LEK-WRP   Document 312-19   Filed 03/03/26   Page 33 of 46
PageID.4293

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 149

funds were coming from?

A    Because I never did.

Q    As long as the bills were paid, it didn't matter to you -- it wasn't a concern to you where the funds came from?

A    As long as I can support my kids.

Q    And did you ever have any conversations with Martin about the source of funds that paid for amounts to support your kids?

A    No.

Q    At no time you had any type of conversation with Martin about the source of funds that were being used to support your kids?

A    I can't recall.

Q    What about the source of funds that were being used to support your lifestyle?

Did you ever have discussions with Martin about the source of those funds?

A    No.

Q    Were you ever curious as to the source of those funds?

A    No.

Q    Did you ever have a worry that the source of funds that you and Martin had could be inadequate to support your lifestyle or to support your



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 34 of 46
PageID.4294
Page 150
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

children?                                                    12:40:55

A    No.                                                     12:40:55

Q    And so, then, is it correct to say that               12:40:56
in your mind, it was just never a thought that you          12:40:59
had to ask about where the money was coming from?           12:41:01

A    No.                                                     12:41:04

MR. ALLISON:  And we'll mark this as                        12:41:38
Exhibit 17.                                                  12:42:13

(Whereupon, Plaintiff's Exhibit No. 17                      12:42:13
was marked for identification by the                        12:42:13
deposition officer and is attached                          12:42:13
hereto.)                                                     12:42:15

Q    (BY MR. ALLISON)  So, Tiffany, what I'm                12:42:15
showing you is Exhibit 17, a summary of charges.  And       12:42:19
I have the source documents, and we can look at them        12:42:22
in a second, but I wanted to show you the summary           12:42:25
first.  And these are charges made to your American         12:42:29
Express card that the company paid for between              12:42:32
February 28, 2019, and October 30, 2020, and the            12:42:35
total is $16,532.12.                                        12:42:42

My first question is:  I want you to look                   12:42:48
at the expenses here and tell me whether or not you         12:42:50
believe that these accurately reflect amounts you           12:42:55
spent on the American Express card.                         12:42:58

A    So I don't recognize any of these                      12:43:01

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 35 of 46
PageID.4295
TIFFANY J. LAM, Vol II on 01/09/2026                                         Page 154
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

direction of Martin.

Q    Okay.  You can put these documents to the side.  Did you ever help Martin pay any of his attorneys when --

A    What do you mean?

Q    -- when or after he was arrested?

A    No, I don't think so.

Q    Did you ever pick up checks and deliver checks to any of the attorneys?

A    No.

Q    Did you ever pick up any checks that were company money from company accounts and deliver them to attorneys for Martin?

A    No.

Q    So it's your testimony, then, that on October 13, 2020, you did not pick up a check for $250,000 from Merrill Lynch and made out to Jay Michael Green & Associates?

A    I did not.  I was sitting in Michael Green's office with Martin.

MR. ALLISON:  Do this as the next exhibit.

(Whereupon, Plaintiff's Exhibit No. 19 was marked for identification by the deposition officer and is attached

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 36 of 46
PageID.4296
TIFFANY J. LAM, Vol II on 01/09/2026    Page 166
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q    Okay, when you searched your e-mails for documents to produce in response to the RPOD, did you find this e-mail?    01:03:26 01:03:29 01:03:34

A    I don't remember.    01:03:35

Q    Did you search for the name Lori Bofman?    01:03:35

A    I think the search was with Martin.    01:03:41

Q    So the only thing you searched for was the word "Martin"?    01:03:46 01:03:49

A    No, whatever the search asked for. Whatever my attorney told me.  I just can't remember.    01:03:51 01:03:54

Q    Did you research for the word "Navatek"?    01:04:00

A    If that's what you asked for.  I don't know what you asked of me.  I can't remember.    01:04:03 01:04:10

MR. ALLISON:  22.    01:04:35

(Whereupon, Plaintiff's Exhibit No. 22 was marked for identification by the deposition officer and is attached hereto.)    01:04:35 01:04:35 01:04:35 01:04:36

Q    (BY MR. ALLISON)  Tiffany, do you recognize this document?    01:04:38 01:04:43

A    Do I recognize what?    01:04:44

Q    The document we're looking at here.  The document marked as Exhibit 22.    01:04:47 01:04:49

A    No.    01:04:51

Q    Okay.  Well, I'll direct you to the --    01:04:52



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 37 of 46
PageID.4297
TIFFANY J. LAM, Vol II on 01/09/2026                                      Page 167
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

I'll direct you to the second page at the top.  And it says:

"Plaintiff PacMar Technologies LLC, formally known as Martin Defense Group, LLC, first request for production of documents to defendant, Tiffany Jennifer Lam, a.k.a. Jenny Lam, and/or Tiffany Kao."

Does that refresh your recollection or knowledge of what this document is?

A    No.

Q    Have you ever seen this document before?

A    I don't recall ever seeing this.

Q    So it's your testimony that nobody ever provided this document to you?

A    It's possible.  I mean, I get so many documents.

Q    Okay.  Could we flip to page -- so there's numbers on the bottom, and if you get to page 20 and 21, it's after that, and it says, "documents requested" at the top.

Do you recall seeing this list of documents that were requested?

A    I can't remember.



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 38 of 46
PageID.4298
TIFFANY J. LAM, Vol II on 01/09/2026    Page 169
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Mm-hm.    01:08:07

Q    So did you search for documents related to Navatek Foundation?    01:08:10 01:08:13

A    Yes, if my attorney told me to, I would have.    01:08:13 01:08:16

Q    My question wasn't whether your attorney may have told you to, and you would have.    01:08:16 01:08:22

My question is:  Did you do it?    01:08:22

A    I can't recall.    01:08:24

Q    So you don't know whether or not you searched your e-mail for the words "Navatek Foundation"?    01:08:24 01:08:28 01:08:32

A    I can't recall.    01:08:32

Q    If you had searched your e-mails for the word "Navatek Foundation," do you think you might have found the e-mail we found -- the e-mail marked as Exhibit 21 from Lori Bofman -- that discusses the Navatek Foundation?    01:08:33 01:08:36 01:08:39 01:08:43 01:08:45

MR. HIRONAKA:  Objection.  Calls for speculation.    01:08:45 01:08:47

Q    (BY MR. ALLISON)  But needless to say, you can't say today whether or not:  A, you have ever seen this RPOD, marked as Exhibit 22; or B, whether or not you ever searched for the document, or the e-mail, marked as Exhibit 21?    01:08:48 01:08:51 01:08:54 01:08:58 01:09:01



Case 1:22-cv-00283-LEK-WRP   Document 312-19   Filed 03/03/26   Page 39 of 46
PageID.4299
TIFFANY J. LAM, Vol II on 01/09/2026                                          Page 170
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    I mean, normally, I just have the attorneys do it, and they tell me what to do.

Q    And so is it your testimony that the attorneys did the document searching for you?

A    Not the document searching, but they would tell me what to do.

Q    Okay.  And did they tell you to search for documents relating to Navatek Foundation?

A    I can't remember.

Q    Did they tell you to search for -- there are 62 categories of documents.

Did they tell you to search for all 62 categories of these documents?

A    I can't recall.

Q    And so as you sit here today, you're just not sure whether or not you have?

A    Yeah, I'm not sure.  I mean, I do so much.  I take care of two kids.

Q    I understand.  Okay, we can put those off to the side.  We'll do this one next.

(Whereupon, Plaintiff's Exhibit No. 23 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  If you could take a

did you search for documents from Lori?

A    Possibly.

Q    Was this one you found and produced?

A    I don't know.

Q    Do you recall, when you searched your records to produce documents in response to the RPOD, do you recall if you found any e-mails and produced any e-mails?

A    I produced e-mails.

(Whereupon, Plaintiff's Exhibit No. 27 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  Are you familiar with this e-mail chain that we've marked as Exhibit 27?

A    No.

Q    At the very bottom is an e-mail from Roland Chang, an e-mail address, roland.chang@cpb.bank, sent to your e-mail address, tiffany808@gmail.com.

Do you see that?

A    Yes.

Q    And the subject is "Letter to Society of Young Women Scientists and Engineers LLC. "

Do you see that?

Case 1:22-cv-00283-LEK-WRP   Document 312-19   Filed 03/03/26   Page 41 of 46
PageID.4301

TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 180
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Yes.

Q    And the e-mail starts:

     "Good afternoon, Tiffany.

     I tried" -- and he goes on --

     "and tried calling you to inform

     you that Glenn Chang, CPB's Chief

     Legal Officer, requested that I

     send you the above-referenced

     letter.  The letter is in regards

     to a complaint filed with the

     Federal Elections Commission (see

     attachment above)."

     Do you see that?

A    Yes.

Q    You don't recall receiving this e-mail?

A    I don't recall.

Q    Do you know who Roland Chang is?

A    No.

Q    Have you ever spoken to, or communicated with, Roland Chang?

A    I don't think so.

Q    What about Glenn Chang, CPB's Chief Legal Officer, at the time?

A    I don't recognize these people.

Q    Okay.  And then above that, it says that



Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 42 of 46
PageID.4302

TIFFANY J. LAM, Vol II on 01/09/2026    Page 181
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

this e-mail was forwarded from your e-mail address, tiffany808@gmail.com, to martin.kao@gmail.com.

Do you see that?

A    Yes.

Q    Do you recall forwarding this e-mail to Martin?

A    No, I don't recall forwarding it to him, but he tells me to forward things to him sometimes.

Q    So this potentially was an e-mail you received, and Martin told you to forward it to him, and you didn't look at it; you just forwarded it over?

A    It's possible.

Q    Would you not have read the body of the e-mail that references a bank's chief legal officer and the complaint filed with the Federal Election Commission?

A    If he told me to forward it, I wouldn't read it.

Q    You would just, as you said, forward it without reading a single word in the e-mail?

A    Yes.  That means it's not for me.

Q    Is it typical that you receive e-mails in your e-mail address at tiffany808@gmail.com that are not for you?

A    Yes.

Q    Why is that typical?

A    Martin tells me to forward things to him.

Q    And you never questioned Martin on why he's operating or using your e-mail address in this manner?

A    No, he's my husband.

Q    And it never gave you any concern that there was e-mail traffic involving federal election complaints that were being sent to you, that you were being asked to forward, and you gave it no thought other than do what Martin just said?

A    I didn't know.

Q    Well, part of the reason you didn't know is because you just did what Martin said without question, right?

A    Yes.

Q    Looking back, do you regret that?

MR. HIRONAKA:  Objection.

THE WITNESS:  I don't want to answer that.

Q    (BY MR. ALLISON)  When you received and/or forwarded this e-mail at Martin's direction, did you open the attachment titled "Letter to Society of Young Women Scientists and Engineers LLC.pdf"?



TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    When he asks me to forward things, I don't read it.

Q    So then same question as the other attachment:  When you forwarded this at Martin's direction, did you look at or open the attachment titled "Federal Election Commission - Complaint.Pdf"?

A    What do you mean?  When I forwarded it?

Q    When you received it and/or forwarded this e-mail, did you forward either attachment?

A    I don't think I opened the attachments.

Q    Did you read the line that said "attachments" to read what the attachments were titled?

A    So -- okay.  So let me make this clear. So when he tells me to forward things, throughout our lives together, we have done it many ways.  For example, he might tell me, "Forward it," and he'll tell me the sender.  Or, I'm at the computer at home, because it's always open, he might point to it and say -- he might tell me.  He might show me.  He might do it himself.  I don't keep track of him.

Q    I see.  So if Martin directs you to send an e-mail to somebody, you just simply do it?

A    Yes.

Q    And you have never once questioned him on

Case 1:22-cv-00283-LEK-WRP     Document 312-19     Filed 03/03/26     Page 45 of 46
PageID.4305
TIFFANY J. LAM, Vol II on 01/09/2026                                              Page 184
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

why you are sending that e-mail, what the purpose is, or anything about the e-mail?

A    I don't find a reason to.

Q    Does Martin ever -- has Martin ever asked you to sign documents?

A    Sign documents -- yes.

Q    And when Martin asks to sign a document, do you review it first?

A    Sometimes no.

Q    So similar to how Martin asks you to forward e-mails, sometimes if he asks to you sign a document, you would just do it without question and without reading the document?

A    Yes.

Q    Stated differently, you would completely rely on Martin to make all determinations as to what you were signing and whether or not you should sign it?

A    Yes.

Q    Earlier, we looked at a number of checks and banking documents related to the Society of Young Women Sceientists and Engineers, LLC, and you testified broadly that you didn't sign those documents, correct?

A    Correct.

01:28:53
01:28:59
01:29:02
01:29:04
01:29:10
01:29:15
01:29:17
01:29:21
01:29:24
01:29:25
01:29:30
01:29:33
01:29:35
01:29:37
01:29:38
01:29:42
01:29:45
01:29:47
01:29:47
01:29:47
01:30:00
01:30:06
01:30:08
01:30:10
01:30:11

 

Case 1:22-cv-00283-LEK-WRP    Document 312-19    Filed 03/03/26    Page 46 of 46
PageID.4306
TIFFANY J. LAM, Vol II on 01/09/2026                                        Page 185
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q    Despite the fact that many of them had your full name on them, some of them had your middle name and last name, correct?

A    Correct.

Q    Is it possible that you did sign those documents, and they were done when Martin asked you to sign them, and you didn't read them, and you just signed them?

A    No, impossible.

Q    And how can be so sure that that's impossible?

A    Because I looked at the signature.

Q    Because that's not your signature?

A    Yeah.

Q    That's your testimony?

A    Yes.

MR. ALLISON:  Okay.  I'm going to take a five-minute break.  I'm going to look at the last few documents.

THE VIDEOGRAPHER:  Please stand by.  The time is 1:31 p.m., and we're off the record.

(Whereupon, a recess was taken from 1:31 p.m. to 1:40 p.m.)

THE VIDEOGRAPHER:  The time is 1:40 p.m., and we're back on the record.