# EXHIBIT "5"

KOBAYASHI SUGITA & GODA, LLP

| | |
|---|---|
| DAVID M. LOUIE | 2162 |
| JESSE W. SCHIEL | 7995 |
| NICHOLAS R. MONLUX | 9309 |

First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawai'i 96813
Telephone: (808) 535-5700
Facsimile: (808) 535-5799
E-mail: dml@ksglaw.com; jws@ksglaw.com; nrm@ksglaw.com

Attorneys for Claimant

NAVATEK CAPITAL INC., individually and derivatively
on behalf of Nominal Respondent MARTIN DEFENSE
GROUP, LLC, fka NAVATEK LLC

DISPUTE PREVENTION & RESOLUTION, INC.

STATE OF HAWAII

| | |
|---|---|
| NAVATEK CAPITAL INC., individually and derivatively on behalf of Nominal Respondent MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC,<br><br>Claimant,<br><br>vs.<br><br>MARTIN KAO; JOHN DOES 1–10; JANE DOES 1–10; DOE PARTNERSHIPS 1–5; DOE CORPORATIONS 1–10; DOE ENTITIES 1–10; and DOE GOVERNMENTAL UNITS 1–10,<br><br>Respondents,<br><br>and<br><br>MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC<br><br>Nominal Respondent. | DPR NO. 21-0234-A<br><br>CLAIMANT NAVATEK CAPITAL INC.'S POST-ARBITRATION BRIEF; APPENDICES "A"–"F"<br><br><br>**ARBITRATION**<br>Date: September 27–30, October 1, 5, 7, 2021<br>Arbitrator: Jerry Hiatt, Esq. |

**JSH-001413**

CONFIDENTIAL INFORMATION

PMT010473

Finally, while Section 8.2(d) of the Operating Agreement confirms that the Company has the right to elect to redeem a dissociated member's shares under the terms in Section 8.3, it is undisputed that the Company has not elected to invoke Section 8.3 and Defendant Kao has never asserted otherwise. *See* Arbitration Transcript, Volume 7 (Closing Statement of D. Chin) at 1445:20-1446:10.

Rather, notwithstanding that the provisions are taken from Hawaii's LLC Statute and are thus statutory as well as contractual, Defendant Kao argues (much like he has with regard to various criminal laws) that Sections 8.2 and 8.3 are unenforceable against him. *See* Kao's Counterclaim, Count I.

### D. **Defendant Kao's Criminality And Breaches Of Operating Agreement And Duties To Company**

#### 1. *PPP Fraud*

Defendant Kao's use of the Company to commit repeated frauds and criminality under the Cares Act Payment Protection Program ("**PPP Program**") is set forth in extensive detail in NCI's Pre-Arbitration Brief (Appendix A), the September 29, 2020 Criminal Complaint (Exhibit 212), the May 6, 2021 Indictment (Exhibit 219), and Tom Simon's expert report (Exhibit 393) (hereinafter, "**Defendant Kao's PPP Fraud**").

In short, Defendant Kao made false certifications regarding the Company's payroll information ($4M instead of actual $1.3M) resulting in an inflated PPP loan of $10,000,000 by Central Pacific Bank ("**CPB**"). Defendant Kao also certified in the CPB loan application that he would not seek a PPP loan from another bank, and that he would use the PPP funds solely for payroll.

Immediately after the CPB PPP loan funded, Defendant Kao withdrew $2,000,000 of the PPP funds into his personal account at Merrill Lynch in clear violation of the PPP terms and

16

**JSH-001428** CONFIDENTIAL INFORMATION PMT010488

proceeded to apply for and obtain a second PPP loan from Radius Bank using the same payroll information, all with full knowledge that the CPB PPP loan had already funded. Defendant Kao sought a third and fourth PPP loan from First Hawaiian Bank ("FHB") but was ultimately caught, resulting in his eventual arrest and criminal charges in the Criminal Complaint filed in September 2020, followed by the Indictment in May 2021.

A simple/abbreviated timeline with exhibit references regarding Defendant Kao's foregoing PPP criminality is set forth the attached Appendix D for ease of reference.

### 2. *Campaign Finance Fraud*

Defendant Kao further breached the Operating Agreement by orchestrating and engaging in an elaborate pay-to-play campaign finance scheme whereby the Company's monies (either checks or American Express cards) were illegally paid to federal candidates through third parties, including the Society of Young Women Scientists, Defendant Kao, his wife Tiffany Lam, co-conspirators Clifford Chen and Lawrence Kahele Lum-Kee, and several of their respective relatives (collectively, the "**Campaign Finance Fraud**").

Defendant Kao's Campaign Finance Fraud is being actively investigated in a criminal probe that resulted in a FBI search warrant (Exhibit 229), which warrant sets forth many of the sworn facts related to this criminal scheme. Defendant Kao's Campaign Finance Fraud is also described in detail in NCI's Pre-Arbitration Brief (including Appendix "1" thereto) and in Tom Simon's expert report (Exhibit 393).

### 3. *Thefts, Transfer Of Assets, Mortgage Fraud, Falsified Resume*

Defendant Kao further breached his fiduciary duties to the Company and NCI by wrongfully converting millions of the Company's monies (which includes the fraudulent campaign contributions above) for his personal use, by executing documents in scheme to wrongfully transfer the assets of MDG to a third party, and by committing personal mortgage fraud.

17

**JSH-001429**       CONFIDENTIAL INFORMATION       PMT010489

## a. Defendant Kao's Thefts From The Company

Defendant Kao converted, stole, and/or embezzled **$4,302,888.40** of dollars of MDG's monies for his personal use in further violation of the Company's Operating Agreement. *See* table, Infra, at Section IV.D.1.a

## b. Defendant Kao's Attempted Transfer Of The Company's Assets

On or about September 29, 2020—a day prior to his arrest—Defendant Kao executed an operating agreement for MDG NEWCO, LLC ("**NEWCO**") ("**NEWCO Operating Agreement**"), on behalf of NEWCO's purported members—Defendant Kao, individually, and the Company. *See* Exhibit 533. On or about September 29, 2020, Defendant Kao also executed an Incentive Unit Award Agreement ("**Incentive Agreement**") which granted Defendant Kao sole control of NEWCO and sole interest in NEWCO's profits (Exhibit 530), assigning the Company's assets to NEWCO (Exhibit 531), and Intercompany Agreement, binding the Company to consummate the Assignment in the event of Defendant Kao's death or disability and other requirements (Exhibit 532). In the event the Company does not consummate the Assignment, the Intercompany Agreement further purports to bind the Company to pay to NEWCO, as liquidated damages, (1) the "gross contract revenues remaining to be collected or earned" on all of the Company's contracts, and (2) the "gross amount of balance sheet assets" remaining on the Company's books. *Id*. ¶ 3.

The NEWCO Operating Agreement, Incentive Agreement, Assignment, and Intercompany Agreement (collectively, the "**NEWCO Agreements**") each purport to be effective as of September 23, 2020. NCI's testimony at the arbitration hearing showed that NCI was at all times relevant entirely unaware of the NEWCO Agreements and did not consent to the Company's or Defendant Kao's execution of the NEWCO Agreements. *See* Arbitration Transcript, Volume 1

18

(Testimony of S. Loui) at 86:18-88:10, 89:5-19.

Defendant Kao's intent in executing the NEWCO Agreements was to steal the Company's assets and leave NCI with nothing, all in violation of the Operating Agreement. In emails between Defendant Kao and his cohorts (Chen and Lum-Kee), they confirm their intent behind the NEWCO scheme as follows: "There's still the path of moving everything and everyone from MDG and putting it into MDG Newco. *Leave Steve behind with an empty shell*." "If we really don't require his consent to do this, there shouldn't be a requirement for notice. *No point tipping him off of our intentions*." "Agree. *Like Pearl Harbor . . . sneak attack*." Exhibits 523, 522 (emphasis added).

Defendant Kao's attempted "sneak attack" NEWCO transfer scheme violated, among other possible violations, Sections 5.4 (Limitation on Authority of the Management Committee), 5.5 (Manager's Standard of Care), 8.1 (Covenant Not to Breach), and 8.2 (Consequences of Violation of Covenants) of the Operating Agreement. *See* Exhibits 522, 523. Moreover, Defendant Kao's NEWCO scheme also violated the PPP Loans he signed, which prohibit such an assignment. *See* Exhibit 213 at NCI000134, 216 at NCI00143.

### 4. *Defendant Kao's Mortgage Fraud*

Defendant Kao's fraud and criminality was not limited to his management and use of MDG. Defendant Kao's records also show that he forged documentation to Merrill Lynch (fraudulently doctoring documents stating his E-Trade account balances in his E-Trade Account Number ending in 4054 to make $49,614.70 appear to be $4,961,400.70, $56,189.02 appear to be $5,618,900.01, and $71,132.59 appear to be $10,383,788.01) and improperly utilized the PPP loan funds from CPB to qualify for a mortgage loan with Bank of America. *See* Exhibits 5, 406, 407, 408 and 571. Indeed, after reviewing and analyzing the relevant documents related to said mortgage transaction, and based on his knowledge, training, and experience, NCI's expert, Mr.

19

Tom Simon,[6] opined that Defendant Kao (and Mr. Lum Kee, who conspired with him) intentionally forged and submitted false documentation to Merrill Lynch in connection with Defendant Kao's mortgage application transaction, and that the transmission of these fraudulent documents via interstate wire to Merrill Lynch were criminal in violation of 18 U.S.C. Section 1343: Wire Fraud (collectively, "**Defendant Kao's Mortgage Fraud**"). *See* Exhibit 393 at 22–24; *see also* Exhibits 5, 406, 407, 408 and 571.

Defendant Kao's consciousness of fraudulent intent is evidenced in an April 27, 2020 email to Messrs. Chen and Lum-Kee where he states "Looks like I'm going to be under contract for my purchase by the end of this week. Going to try and leverage and trick BofA into a quick mortgage process and giving me a better rate. I'm certain, Chris has no clue what he's saying about that . . . but can't hurt to fake it and see what happens. Then bail after they execute the mortgage." Exhibit 145.

### 5. *Defendant Kao's Falsified Resume Used In Federal Contracting*

Unbeknownst to NCI at all times relevant, Defendant Kao also falsified his resume which was used by the Company when submitting bids for federal contracts. Specifically, Defendant Kao's resume used in federal contract bids listed a law degree from the UCLA School of Law and an LLM degree from the NYU School of Law. *See* Exhibit 209. In reality, Defendant Kao did not attend either school much less attend law/tax degrees from them. *See* Exhibits 1 and 402.

Defendant Kao's lies, if discovered, could place the Company at further risk of disqualification or suspension based on the fact that the Company may have obtained contracts through fraudulent misrepresentations by its principal. At a minimum, however, Defendant Kao's

---

[6] Mr. Simon is a former FBI Special Agent with expertise in investigations, interrogations and intelligence gathering. His expert report, Exhibit 393, is unrefuted.

**JSH-001432** CONFIDENTIAL INFORMATION PMT010492

misrepresentations to federal authorities during the government contracting process was in further breach of his fiduciary duties to the Company.

### 6. *Debarment/Suspension Harm Caused By Kao's Breaches*

With respect to MDG's solvency and general operations, its current contracts with the Navy and DARPA and ability to compete for future contracts with the federal government are MDG's lifeblood and are critical to maintaining MDG's viability. Indeed, MDG's management has confirmed that "[t]he Company's solvency going forward . . . largely depends on . . . the Company's ability to bring in revenue via existing contracts with the federal government and by remaining eligible to compete for new federal contracts . . . ." Exhibit 382.

As explained in detail in NCI's Pre-Arbitration Brief (Appendix A) and in Steven Shaw's expert report (Exhibit 390), MDG's ability to remain eligible to compete for new federal contracts is in serious jeopardy due to Defendant Kao's ongoing disputed ownership of MDG while being the subject of civil and criminal fraud claims, the Indictment filed against him, and the FBI's criminal probe for illegal campaign contributions, among other wrongdoing. *See also* Arbitration Transcript, Volume 2 (Testimony of Steven Shaw) at 288-22-291:1.

The testimony adduced at the Arbitration hearing also confirmed that the issues and risks associated with Defendant Kao's ongoing affiliation and ownership of the Company has: (1) created barriers to getting new work due to the requirement to certify Defendant Kao as a principal and owner of the Company and his current suspension and pending criminal indictment; (2) resulted in lost contracts; (3) resulted in lost employees; (4) resulted in universities refusing to work with the Company; and (5) resulted in politicians refusing to work with the Company. *See* Arbitration Transcript, Volume 3 (Testimony of D. Brunk) at 545:6-17 (additional requirements and lost contracts); 550:13-552:7 (universities); 547:24-550:12 (employees); 546:18-23 (politicians).

21

**JSH-001433**

PMT010493

Numerous witnesses testified to the past and ongoing harm being caused to the Company due to all of the above issues, including the Company's independent manager/CEO Daniel Brunk, Defendant Kao's witness Katie Hughes, NCI's principal Steven Loui, and the Company's CFO James Ota.  Defendant Kao's case in chief witness, Pam Berry, testified that if Kao dissociated himself from the Company, it would "of course" take away any potential threat to the Company's facilities clearance because "that would take [it ] to Mr. Brunk."  Arbitration Transcript, Volume 6 (Testimony of P. Berry) at 1208:11-17.

### E.  Undisputed Proof Of Defendant Kao's Intentional State Of Mind When Committing PPP And Campaign Finance Frauds

While not required to establish his criminality and breaches of fiduciary duties, Defendant Kao's emails around the time he was committing PPP Fraud and Campaign Finance Fraud remove any doubt regarding Defendant Kao intentional state of mind.

The testimony and emails presented during the Arbitration showed that Defendant Kao knowingly and purposefully lied to CPB, Radius Bank, and FHB during the PPP application process.  These emails show that Defendant Kao: (a) knew that MDG was not eligible for PPP loans but applied anyway ("Our payroll is already funded by the federal government.  This would be double dipping.  I would need at least two cups."  (Exhibit 40)); (b) knew that MDG was not eligible for more than a $2.5 million PPP loan based on existing payroll ("I don't think we can get anywhere near the $10 million loan … Our external 'employee' costs would need to be ~ $31 million; which is way more than our revenue.  I think we can get up to max $3.5 million loan without loo[k]ing like we are cooking anything."  (Exhibit 129)); (c) applied anyway with CPB for a $10M PPP loan ("Since we are in excess of the overall cap, I say we just go with this and see what happens."  (Exhibit 130)); (d) sought to deceive the banks and SBA by moving monies around to make it appear that the PPP proceeds were actually being use for payroll ("Speaking of moving

22

funds around, maybe we should start moving slowly more funds out of CPB over the next few months…wash it from them, before moving it all back to CPB. That way it looks like "new" funds. It is difficult to change the account that the Government pmt systems sends money two? Can have them send to Navatek Merrill account until we exhaust the CPB loan funds currently in there? That way it looks like we're using it for payroll" (Exhibit 143 at MDG-HIGJ00011734-35)); (e) knowingly lied to Radius Bank about the CPB loan being "fumbled" after the CPB had already funded (Exhibit 341 (showing CPB loan funded on April 17, 2021); Exhibit 403 at LC_000196 ("As we discussed this morning, we did submit an application with a local Hawaii bank for a completely separate company, and that is one that got fumbled."); Exhibit 164 at MDG-HIGJ00051034 ("I can't say I really understand what his concern is or if it matters as long as he got the app filed and submitted into SBA system. Just responded in a manner to further confuse and bewilder him."); and (f) transferred $2M of PPP funds to his personal bank account.

Additionally, Defendant Kao's emails show that he knowingly engaged in an illegal pay-to-play scheme, using MDG's monies, while committing Campaign Finance Fraud.

A table summarizing the timeline of Defendant Kao's emails, his words, and his fraudulent state of mind relating to the PPP Fraud and Campaign Finance Fraud are set forth in Appendix E attached hereto.

## IV. ARGUMENT

### A. Sections 6.2(e) and 8.2 and 8.3 of the Operating Agreement Are Enforceable

Defendant Kao's Counterclaim asserts that Sections 6.2(e), 8.2, and 8.3 of the Operating Agreement are unenforceable. *See* Exhibit 400. This claim is tantamount to asserting that Hawaii's LLC Statute is somehow unenforceable or unconstitutional. Defendant Kao's claim is absurd and must be rejected.

First, as discussed above, the Operating Agreement was negotiated between sophisticated

23

**JSH-001435**

determined govern the purchase unless the purchaser defaults.").  Thus, if the Company someday elects the option of redeeming Defendant Kao's distributional interest under Section 8.3, the price and terms of such purchase would be fixed based on the last filed tax return as of the election, with a promissory note in that amount payable over 10 annual equal installments.

The Company's contractual option of electing a fixed price for Defendant Kao's distributional interest prior to expiration of the Company's Term is simply that: an unexercised option.  In the meantime, the default rule in Section 8.2(d) of the Operating Agreement and HRS §428-603(a)(2)(B) and 701(a)(2) continue to apply, meaning that Defendant Kao's distributional interest will not be purchased until expiration of the Company's Term pursuant to the requirements in HRS §428-701(a)(2).

    **D.**    **<u>DAMAGES</u>**

        **1.**    *NCI Is Entitled A Derivative Award[9] Of Damages Under The Operating Agreement, In Favor Of The Company*

          **a.**    **MDG's Damages Are $4,302,888.40**

Unrebutted evidence was presented by both NCI and MDG during the Arbitration of the following damages incurred by MDG due to Defendant Kao's foregoing misconduct and breaches of fiduciary duties:

| Source of Damages | Amount | Exhibit No. |
|---|---|---|
| April 20, 2020 "Note Receivable" | $2,000,000.00 | 224 and 341 |
| Crisis Communications | $35,575.90 | MDG-147 |

---

[9] *See* HRS § 428-1104; *Stevens v. McGuireWoods LLP*, 43 N.E.3d 923, 928 ("**the nominal plaintiff in a derivative action serves only as a 'champion' of the corporation's claims**. [citations omitted].  The result is that the nominal plaintiff benefits only *indirectly* from a successful shareholder derivative suit, for example through an increased value on their shares. *Id.* Though long-settled at common law, **these principles also have been codified in the Limited Liability Company Act, which states expressly that, once the nominal plaintiff's fees and expenses have been paid, the trial court 'shall direct the plaintiff to remit to the limited liability company' the remainder of all judgment** or settlement **proceeds**.") (emphasis added).

34

CONFIDENTIAL INFORMATION

| | | |
|---|---|---|
| Foundation Expenses, including:<br> - Legal Fees<br> - Miscellaneous<br> - San Francisco Condo | $107,209.55 | 300<br><br>MDG Exhibits: 7, 40, 44, 56, 64, 68, 72, 117, 120–137, 139, and 146 |
| Improper Distributions<br>- Series of illegal distributions taken by Defendant Kao, including $150K illegal contribution to Society of Young Women Scientist [sic] of Engineers, booked first as a loan and changed to a "distribution". | $495,000.00 | 226, 227, 228, 566, 567, 568 and 569 |
| Interim CFO | $168,419.22 | 283<br><br>MDG Exhibits: 142, 145, 169 |
| Personal Expenses, including:<br> - Family Travel<br> - Legal Fees<br> - Miscellaneous<br> - Tiffany Lam's AMEX | $295,661.12 | 63–76, 265–267, and 269–281<br><br>MDG Exhibits: 2–10, 12, 13, 14, 17, 18, 21, 25, 29, 33, 37, 40, 44, and 72 |
| Post-Arrest Retainers | $974,838.02 | 220, 221, and 222 |
| Illegal Political Contributions, including:<br> - Contributions to federal officials and candidates | $190,587.76 | 96, 117, 229, 232–236, 239, 241–243, 247, 276, 291, 292, 307, 324, 325, 329, 330, 467, and 550–553 |
| Society of Young Women Scientist [sic] and Engineers Expenses | $1,513.83 | 66<br><br>MDG Exhibits: 28, 32, 43, 47, 51, 55, 59, 61, 67, 69, 71, and 73 |
| Payments to Tsar and Tsai law firm in Taiwan | $34,083.00 | 282, 564, 565, and 558–563 |
| TOTAL: | **$4,302,888.40** | |

35

JSH-001447            CONFIDENTIAL INFORMATION            PMT010507

*See also* NCI's and MDG's Pre-Arbitration Briefs (Appendices A and F); NCI's Revised Verdict Grid; MDG's Revised Verdict Grid; Arbitration Transcript, Volume 3 (Testimony of J. Ota) at 660:4-712:1.

Therefore, NCI respectfully requests a monetary judgment in favor of MDG in the amount of **$4,302,888.40**.

    **b.**    **If The Arbitrator Does Not Award Damages To The Company For Kao's Unpaid $2,000,000 Promissory Note, The Arbitrator Should Dismiss This Portion Of The Damages Claim "Without Prejudice"**

After Kao's arrest and indictment for bank fraud, wire fraud, and money laundering, the DOJ seized $2 million (of the CPB PPP Loan proceeds) from Defendant Kao that he had converted for his personal use from the Company's accounts. *See* Exhibit 341; *see also* Arbitration Transcript, Volume 3 (Testimony of D. Brunk) at 506:7-21. The $2 million was classified as a loan on the Company's books, the balance of which loan is now due and owing by Defendant Kao to the Company. *See* Exhibit MDG 225.

At this time it is uncertain whether the DOJ will transfer the $2 million to the Treasury for purposes of applying against the amounts owed by the Company to the Treasury (who has taken over collection for the CPB/Radius PPP loans). Arbitration Transcript, Volume 3 (Testimony of D. Brunk) at 570:6-22. The DOJ could elect to keep the money to satisfy penalties awarded against Defendant Kao in the criminal case, or it could instead elect to transfer the $2 million to the Treasury, which may offset amounts owed to the Treasury on the PPP loans. *See id.* at 507:7-17, 570:6-22.

While the $2,000,000 is an unpaid loan that Defendant Kao indisputably owes to the Company, if this uncertainty regarding how the DOJ will apply the $2,000,000 causes the Arbitrator not to award the same as damages to the Company, the Arbitrator should either issue

36

*JSH-001448*              CONFIDENTIAL INFORMATION              PMT010508

his denial ruling as to the $2 million without prejudice, or in the alternative, refrain from ruling on the $2 million at this time.

A definitive ruling at this time denying the Company damages on the unpaid $2,000,000 loan could unfairly prejudice the Company. If the DOJ keeps the money and applies it to Defendant Kao's criminal fines, which it could certainly elect to do, Defendant Kao will have received a $2 million windfall while the Company will be severely prejudiced as it will still be responsible for repaying the same $2 million to the Treasury. And when Treasury calls the loan, the Company may be estopped on preclusion or similar grounds from collecting the $2 million from Defendant Kao despite the fact that the loan was never repaid and never applied to the amounts owed by the Company to the Treasury. *See Dorrance v. Lee*, 90 Hawaii 143, 149, 976 P.2d 904, 910 (1999) (re collateral estoppel). Arbitration awards are afforded the same preclusive effect. *See Caldeira v. County of Hawaii*, 866 F.2d 1175, 1178 (9th Cir. 1989) (since the confirmation of a private arbitration award by a state court has the status of a judgment, federal courts must, as a matter of full faith and credit, afford the confirmation the same preclusive consequences as would occur in state court).

Courts have qualified rulings as "without prejudice" "in order not to prejudice the rights of property in the future" if there was a "future operation and changed conditions arising in such future . . . ." *State of Missouri v. Chicago, B. & Q.R. Co.*, 241 U.S. 533, 539 (1916) (discussing a pattern of practice regarding confiscatory rate cases). Because the Arbitrator's denial of damages to the Company on the $2 million could prejudice the Company depending on how DOJ handles it, the Arbitrator should only issue such a ruling without prejudice. Judgment "without prejudice does not operate as an adjudication on the merits [to the effect that] the doctrine of res judicata would have no effect. Parties are not barred from bringing a subsequent action on the same cause

37

and are free to litigate as though no action had been commenced." *Land v. Highway Const. Co.*, 64 Haw. 545, 551, 645 P.2d 295, 299 (1982) (citations omitted).

Therefore, if the Arbitrator is not inclined to award damages on the unpaid $2,000,000 loan at this time, the Arbitrator should issue such ruling without prejudice to avoid further issues if and when Treasury calls the loan, to ensure the Company is estopped from seeking the $2 million from Defendant Kao if that occurs; or, alternatively, should withhold judgment as to the seized $2,000,000.[10]  The same logic applies to the $8.6 million that was seized from MDG's accounts but has not yet been applied by the Treasury to the amounts owed on the CPB and Radius PPP Loans.  If either any portion of the $10.6 million seized by the DOJ is not transferred and applied by the Treasury to the amounts owed on the CPB and Radius PPP Loans, MDG must have its rights preserved to seek and recover any such seized but unapplied amounts from Defendant Kao.

### 2. *The Award Of Damages Against Defendant Kao Does Not Get Offset By The Amount Of Kao's Unpurchased/Unredeemed Distributional Interest*

Defendant Kao's pre-arbitration brief requests, for the first time, that any damages awarded against him be simply offset against his capital account.  This belated request, which was never made anywhere within his Crossclaim or Counterclaim, must be rejected.

First, as explained thoroughly above, the purchase of Defendant Kao's distributional interest has not occurred and, pursuant to HRS §428-603(a)(2)(B) and 701(a)(2), and Section 8.2(d) of the Operating Agreement, will not occur until December 31, 2117 unless the Company

---

[10] Alternatively, given the uncertainties with the $2 million currently with DOJ, the Arbitrator should withhold judgment on it since the Company's claim for damages has not yet accrued before the Arbitrator. *See Central Laborers' Pension, Welfare and Annuity Funds v. KRI Midwest, Inc.*, No. 06-cv-1048-MJR, 2007 WL 1169698 (S.D. Ill. Apr. 18, 2007) (granting motion for default judgment but withholding entering judgment until the total amount of damages could be calculated and verified because an audit of defendants' records was needed to determine the amount of damages).

38

*JSH-001450*

CONFIDENTIAL INFORMATION

PMT010510

the Operating Agreement and applicable law to challenge the same and obtain an adjustment or damages, meaning that any member of the Company has an adequate remedy at law relating to its capital account.

Therefore, there is no basis whatsoever for the Arbitrator to order an accounting related to Defendant Kao's capital account in the Company, which is the function of the Company's accountants and not the Arbitrator in any event. If some type of accounting regarding the calculation of Defendant Kao's K-1 capital account balance is ordered from Accuity, it must be ordered at Defendant Kao's personal expense.

## V. CONCLUSION

For the foregoing reasons, NCI respectfully asks the Arbitrator to issue an order dissociating Defendant Kao from the Company, awarding MDG damages in the amount of $4,302,888.40, and awarding attorneys' fees and costs to NCI and MDG based on the evidence and argument set forth in their simultaneously filed motions for fees and costs.

DATED: Honolulu, Hawaii, October 18, 2021.

_____
DAVID M. LOUIE
JESSE W. SCHIEL
NICHOLAS R. MONLUX

Attorneys for Claimant
NAVATEK CAPITAL INC., individually and
derivatively on behalf of Nominal Respondent
MARTIN DEFENSE GROUP, LLC, fka
NAVATEK LLC

*JSH-001454*

42

CONFIDENTIAL INFORMATION

PMT010514

CONFIDENTIAL

# APPENDIX A

*JSH-001455*

CONFIDENTIAL INFORMATION

PMT010515

KOBAYASHI SUGITA & GODA, LLP

| | |
|---|---|
| DAVID M. LOUIE | 2162 |
| JESSE W. SCHIEL | 7995 |
| NICHOLAS R. MONLUX | 9309 |

First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawai'i 96813
Telephone: (808) 535-5700
Facsimile: (808) 535-5799
Email: dml@ksglaw.com; jws@ksglaw.com; nrm@ksglaw.com

Attorneys for Claimant
NAVATEK CAPITAL INC., individually and derivatively
on behalf of Nominal Respondent MARTIN DEFENSE
GROUP, LLC, fka NAVATEK LLC

DISPUTE PREVENTION & RESOLUTION, INC.

STATE OF HAWAII

| | |
|---|---|
| NAVATEK CAPITAL INC., individually and derivatively on behalf of Nominal Respondent MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC, <br><br> Claimant, <br><br> vs. <br><br> MARTIN KAO; JOHN DOES 1–10; JANE DOES 1–10; DOE PARTNERSHIPS 1–5; DOE CORPORATIONS 1–10; DOE ENTITIES 1–10; and DOE GOVERNMENTAL UNITS 1–10, <br><br> Respondents, <br><br> and <br><br> MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC, <br><br> Nominal Respondent. | DPR NO. 21-0234-A <br><br> CLAIMANT NAVATEK CAPITAL INC.'S PRE-ARBITRATION BRIEF; APPENDICES "1" – "3"; CERTIFICATE OF SERVICE <br><br><br> **ARBITRATION** <br> Date: September 27–30, 2021 <br> Arbitrator: Jerry Hiatt, Esq. |

Appendix "A"

*JSH-001456*              CONFIDENTIAL INFORMATION              PMT010516

# Appendix 1

*JSH-001496* CONFIDENTIAL INFORMATION PMT010556

**APPENDIX "1"**

*Illegal Donations Made Through the Society of Young Women Scientists and Engineers LLC ("SYWSE") Using Company Funds*

| Date | Amount and/or Description | Proof[1] | Proof Exhibit No. |
|---|---|---|---|
| Nov. 26, 2019 | **$51.00**—paid by Jennifer Lam (Mr. Kao's wife) to the Hawaii Department of Commerce and Consumer Affairs ("**DCCA**") using the business American Express card of Navatek LLC controller Mr. Lum Kee. | • MDG025142 (DCCA receipt)<br>• NCI000623 (registration fee expensed in Navatek LLC General Ledger account) | Exhibit 276 |
| Nov. 26, 2019 | **$206.00**—paid by Ms. Lori Bofman, Executive Assistant to Mr. Kao, for P.O. Box using her Navatek LLC American Express card. | • NCI001349–NCI001350 (American Express expense report for November 2019 reflecting the charge) | Exhibit 324 |
| Dec. 10, 2019 | Jennifer Lam opens SYWSE checking account at CPB (the "**CPB Account**") with no initial deposit. Address is the P.O. Box established on Nov. 26, 2019 with Navatek LLC funds. | • MDG021796–MDG021797 (CPB Statement and check) | Exhibit 550 |
| Dec. 26, 2019 | **$150,000.00**—check written by Navatek LLC payable to SYWSE and signed by Mr. Lum Kee. | • MDG021818 (deposited check) | Exhibit 467 |
| Dec. 27, 2019 | The **$150,000.00** check is deposited in the CPB Account. | • MDG021818 (deposited check),<br>• MDG021796 (CPB statement) | Exhibits 550, 467 |
| Dec. 27, 2019 | SYWSE writes check to "1820 PAC" in the amount of **$150,000.00**. Signature on the check matches the signature of Mr. Kao. | • NCI001359 (copy of check to 1820 Pac)<br>• NCI000826, MDG25206 (FBI affidavit confirming rejection of check and clearance after executed by Ms. Lam)<br>• NCI000226–NCI000260 (search warrant affidavit describing scheme to launder campaign contributions) | Exhibits 325, 292, 96, 229 |

---

[1] *See also* Expert Report of Tom Simon ("**Simon Report**") at 12–14, attached as **Exhibit 393,** for more detail regarding these donations.

1

JSH-001497                                    CONFIDENTIAL INFORMATION                                    PMT010557

*Illegal Political Donations from Navatek LLC in the Names of Mr. Kao and His Wife, Ms. Lam (2019–2020) Using Company Funds*

| Date | Amount and/or Description | Proof[2] | Proof Exhibit No. |
|---|---|---|---|
| Aug. 30, 2019 | **$2,800.00**—political contribution made to U.S. Senator Jack Reed (RI) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx card. | • NCI000286–NCI000287 | Exhibit 232 |
| Sept. 30, 2019 | **$5,600.00**—political contribution made to U.S. Senator Chris Coons (DE) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx card. | • NCI000295–NCI000297 | Exhibit 235 |
| Sept. 30, 2019 | **$5,600.00**—political contribution made to U.S. Senator Chris Coons (DE) in name of Ms. Lam using her Navatek LLC AmEx card. | • NCI000295–NCI000297 | Exhibit 235 |
| Oct. 2, 2019 | **$2,800.00**—political contribution made to U.S. Senator Jack Reed (RI) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000295–NCI000297 | Exhibit 235 |
| Oct. 2, 2019 | **$3,800.00**—political contribution made to U.S. Senator Jack Reed (RI) in name of Ms. Lam using her Navatek LLC AmEx card. | • NCI000295–NCI000297 | Exhibit 235 |
| Oct. 29, 2019 | **$5,600.00**—political contribution made to U.S. Senator Jeanne Shaheen (NH) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000304 | Exhibit 236 |
| Oct. 29, 2019 | **$5,600.00**—political contribution made to U.S. Senator Jeanne Shaheen (NH) in name of Ms. Lam using her Navatek LLC AmEx card. | • MDG01041632 | Exhibit 551 |

---

[2] The bates referenced documents in this table are company financial ledgers, account statements, and other financial documents. All the illegal contributions detailed in this table were expensed to the General Ledger account as "Contributions." *See* NCI000295 (Ex. 235). In addition, Mr. Simon confirmed that the AmEx cards were paid using Navatek LLC corporate funds, not personal funds of Mr. Kao or his wife, Ms. Lam. Simon Report (**Exhibit 393**) at 16. For more detail regarding the donations in this table, see Simon Report (**Exhibit 393**) at 14–15.

2

*JSH-001498*                    CONFIDENTIAL INFORMATION                    PMT010558

| Oct. 30, 2019 | **$5,600.00**—political contribution made to U.S. Senator Gary Peters (MI) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000304 | Exhibit 236 |
|---|---|---|---|
| Oct. 30, 2019 | **$5,600.00**—political contribution made to U.S. Senator Gary Peters (MI) in name of Ms. Lam using her Navatek LLC AmEx card. | • MDG01041637 | Exhibit 552 |
| Dec. 11, 2019 | **$5,600.00**—political contribution made to U.S. Senator Tammy Baldwin (WI) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000307–NCI000309 | Exhibit 307 |
| Dec. 11, 2019 | **$5,600.00**—political contribution made to U.S. Senator Tammy Baldwin (WI) in name of Ms. Lam using her Navatek LLC AmEx card. | • MDG00470332 | Exhibit 553 |
| Dec. 23, 2019 | **$500.00**—political contribution made to U.S. Senator Lindsey Graham (SC) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000308–NCI000309 | Exhibit 307 |
| Jan. 6, 2020 | **$750.00**—political contribution made to U.S. Representative Joe Wilson (SC) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000327–NCI000329 | Exhibit 239 |
| Jan. 27, 2020 | **$2,500.00**—political contribution made to U.S. Representative Joe Wilson (SC) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000327–NCI000329 | Exhibit 239 |
| Feb. 25, 2020 | **$500.00**—political contribution made to U.S. Senator Lindsey Graham (SC) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000379–NCI000380 | Exhibit 241 |
| Mar. 2, 2020 | **$5,000.00**—political contribution made to U.S. Representative James E. Clyburn (SC) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000392–NCI000393 | Exhibit 242 |
| Mar. 2, 2020 | **$5,000.00**—political contribution made to U.S. Representative James E. Clyburn (SC) in Ms. Lam's name and using her Navatek LLC AmEx Card. | • NCI000392–NCI000393 | Exhibit 242 |
| Mar. 4, 2020 | **$5,000.00**—political contribution made to U.S. Representative Tom Cole (OK) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000392–NCI000393 | Exhibit 242 |

JSH-001499

CONFIDENTIAL INFORMATION

PMT010559

| Mar. 4, 2020 | **$5,000.00**—political contribution made to U.S. Representative Tom Cole (OK) in Ms. Lam's name and using her Navatek LLC AmEx Card. | • NCI000392–NCI000393 | Exhibit 242 |
|---|---|---|---|
| Mar. 4, 2020 | **$5,000.00**—political contribution made to U.S. Representative Kendra Horn (OK) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000392–NCI000393 | Exhibit 242 |
| Mar. 4, 2020 | **$5,000.00**—political contribution made to U.S. Representative Kendra Horn (OK) in Ms. Lam's name and using her Navatek LLC AmEx Card. | • NCI000392–NCI000393 | Exhibit 242 |
| Mar. 21, 2020 | **$1,500.00**—political contribution made to U.S. Representative Kai Kahele (HI) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000415–NCI000416 | Exhibit 243 |
| Mar. 24, 2020 | **$5,600.00**—political contribution made to U.S. Senator James M. Inhoffe (OK) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000415–NCI000416 | Exhibit 243 |
| Mar. 24, 2020 | **$5,600.00**—political contribution made to U.S. Senator James M. Inhoffe (OK) in Ms. Lam's name and using her Navatek LLC AmEx Card. | • NCI000415–NCI000416 | Exhibit 243 |
| Aug. 19, 2020 | **$5,600.00**—political contributions (2 separate ones for $2,800.00 each) made to U.S. Representative Derek Kilmer (WA) in Mr. Kao's name and using Mr. Kao's Navatek LLC AmEx Card. | • NCI000481–NCI000482 | Exhibit 247 |
| Aug. 19, 2020 | **$5,600.00**—political contributions (2 separate ones for $2,800.00 each) made to U.S. Representative Derek Kilmer (WA) in Ms. Lam's name and using her Navatek LLC AmEx Card. | • NCI000481–NCI000482 | Exhibit 247 |

4

**JSH-001500**

CONFIDENTIAL INFORMATION

PMT010560

*Illegal Political Donations Mr. Kao Laundered Through Messrs. Chen and Lum Kee and Their Family Members Using Company Funds*

| Date | Amount and/or Description | Proof[3] | Proof Exhibit No. |
|---|---|---|---|
| Sept. 17, 2019 | **$5,600.00**—political contributions (2 separate ones for $2,800.00 each) made by Clifford Chen (former CFO of Navatek LLC) to U.S. Senator Susan Collins (ME). | • Simon Report at 18<br>• NCI000226–NCI000260 (Apr. 7, 2021 search warrant filed in federal district court for District of Columbia)<br>• NCI000290–NCI000293 (AmEx expense Reports for Navatek LLC)<br>• NCI000289–NCI000292 (Navatek General Ledger reflecting the $5,600 charge as "Contributions" for donations to charities and foundations) | Exhibits 229, 233, 234 |
| Sept. 17, 2019 | **$5,600.00**—political contributions (2 separate ones for $2,800.00 each) made by Lawrence Lum Kee (former Controller of Navatek LLC) to U.S. Senator Susan Collins (ME). | • NCI000226–NCI000260<br>• NCI000290–NCI000293<br>• NCI000289–NCI000292 | Exhibits 229, 233, 234 |
| Sept. 26, 2019 | **$5,600.00**—political contributions (2 separate ones for $2,800.00 each) made by Hsiu Chuan Chen, mother of Clifford Chen to U.S. Senator Susan Collins (ME). | • NCI000803 (donor statement)<br>• NCI000239 (FBI affidavit identifying Hsiu Chuan as Mr. Chen's mother)[4] | Exhibits 229, 291 |
| Sept. 26, 2019 | **$5,600.00**—political contributions (2 separate ones for $2,800.00 each) made by Joy Lum Kee, wife of Lawrence Lum Kee to U.S. Senator Susan Collins (ME). | • NCI000803 (donor statement)<br>• NCI000239 (FBI affidavit identifying Joy Lum Kee as Mr. Lum Kee's wife) | Exhibits 229, 291 |
| Sept. 26, 2019 | **$6,000.00**—Navatek LLC funds used to pay back Mr. Chen per Mr. Lum Kee's instruction to Navatek LLC's Accountant, Ms. Susan Matsuura. | • NCI000800 (email from Mr. Kee to Ms. Matsuura instructing her to issue the check)<br>• NCI001385 (check to Mr. Chen) | Exhibit 291, 330 |

---

[3] For more detail regarding the donations in this table, see Simon Report (**Exhibit 393**) at 16–18.

[4] Mr. Simons cited "NCI0001401" in his report as the FBI affidavit. That was a typo. The document referring to Ms. Hsiu Chen as Mr. Chen's mother is on page NCI000239.

5

*JSH-001501*        CONFIDENTIAL INFORMATION        PMT010561

| Sept. 26, 2019 | **$5,218.88**—Navatek LLC funds used to pay back Mr. Lum Kee per his instruction to Navatek LLC's Accountant, Ms. Susan Matsuura. | • NCI000800<br>• NCI001383 (check to Mr. Lum Kee) | Exhibits 291, 329 |
|---|---|---|---|
| Dec. 31, 2019 | **$11,218.88** ($6,000 + $5,218.88)—written off by Navatek LLC as "uncollectible," effectively erasing the obligations of Messrs. Lum Kee and Chen to repay Navatek LLC | • NCI000801 (Navatek LLC financial document reflecting the write-off)<br>• NCI000815–NCI000817 (tax returns for July 2019 to December 2019 reflecting "bad debts" of $13,784)<br>• NCI000813–NCI000814 (Navatek LLC accounting records showing that of the $13,784 in "bad debts, $11,218.88 was attributable to the amounts paid to Messrs. Lum Kee and Chen)<br>• NCI000240 (FBI affidavit indicating Mr. Chen deposited $5,600 into his account and then wrote a check for the same amount to his mother on October 1, 2019, and noting that Ms. Hsiu Chen admitted that Mr. Chen asked her to donate the money to Senator Collins's campaign). | Exhibits 229, 291 |

6

**JSH-001502**

CONFIDENTIAL INFORMATION

PMT010562

*Illegal Political Donations Mr. Kao Laundered Through His Own Family Members*

| Date | Amount and/or Description | Proof[5] | Proof Exhibit No. |
|---|---|---|---|
| Aug. 18, 2019 | **$5,600.00**—political contributions made by George C. Kao to U.S. Senator Susan Collins (ME) | NCI000226–NCI000260 (FBI search warrant filed with U.S. District Court for District of Columbia pertaining to political donations by Kao's family members); *id.* NCI000238–NCI000239. | Exhibit 229 |
| Aug. 18, 2019 | **$5,600.00**—political contributions made by Rachel C.C. Kao to U.S. Senator Susan Collins (ME) | NCI000238–NCI000239 | Exhibit 229 |
| Aug. 18, 2019 | **$5,600.00**— political contributions made by Christopher Maxim Tory Lam to U.S. Senator Susan Collins (ME) | NCI000238–NCI000239 | Exhibit 229 |
| Aug. 18, 2019 | **$5,600.00**— political contributions made by Christopher Michael Lam to U.S. Senator Susan Collins (ME) | NCI000238–NCI000239 | Exhibit 229 |
| Aug. 18, 2019 | **$5,600.00**— political contributions made by Christopher Michael T. Lam to U.S. Senator Susan Collins (ME) | NCI000238–NCI000239 | Exhibit 229 |
| Aug. 18, 2019 | **$5,600.00**— political contributions made by Joann Lam to U.S. Senator Susan Collins (ME) | NCI000238–NCI000239 | Exhibit 229 |

---

[5] For more detail regarding the donations in this table, see Simon Report (**Exhibit 393**) at 19–20.

7

JSH-001503

CONFIDENTIAL INFORMATION

PMT010563