Of Counsel:

LUNG ROSE VOSS & WAGNILD

CRYSTAL K. ROSE            3242-0
(crose@legalhawaii.com)
Attorney at Law
A Law Corporation
RYAN H. ENGLE             7590-0
(rengle@legalhawaii.com)
Attorney at Law
A Law Corporation
GRANT FASI ALLISON        10368-0
(gallison@legalhawaii.com)
Attorney at Law
A Law Corporation
JOHN D. FERRY III          9143-0
(jferry@legalhawaii.com)
KIRA J. GOO               11519-0
(kgoo@legalhawaii.com)
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Telephone:  (808) 523-9000
Facsimile:  (808) 533-4184

HOSODA LAW GROUP, AAL, ALC
LYLE S. HOSODA            3964-0
SPENCER J. LAU           11105-0
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone:  (808) 524-3700
Facsimile:   (808) 524-3838
Email:  lsh@hosodalaw.com; sjl@hosodalaw.com

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

1553395.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC), | CASE NO. 1:22-cv-00283-LEK-WRP |
| Plaintiff, | PLAINTIFF'S COUNTER STATEMENT OF FACTS IN OPPOSITION TO DEFENDANT TIFFANY JENNIFER LAM'S MOTION FOR SUMMARY JUDGMENT; ADDITIONAL STATEMENT OF FACTS; DECLARATION OF GRANT FASI ALLISON; DECLARATION OF STEVEN LOUI; EXHIBITS 1-33; CERTIFICATE OF SERVICE |
| vs. | |
| MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC, | |
| Defendants. | Trial Date:  TBD |
| | Trial Judge: Hon. Leslie E. Kobayashi |
| CLIFFORD CHEN, | |
| Cross-Claimant, | |
| vs. | |
| MARTIN KAO, | |
| Cross-Claim Defendant. | |

2

1553395.1

PLAINTIFF'S COUNTER STATEMENT OF FACTS
IN OPPOSITION TO DEFENDANT TIFFANY JENNIFER LAM'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Local Rule 56.1, Plaintiff PACMAR TECHNOLOGIES

LLC (f/k/a MARTIN DEFENSE GROUP, LLC ("Plaintiff") submits its

(I) Counter Concise Statement; (II) Rule Certification of Facts and Statement of

Additional Facts below.

I.      <u>RESPONSES</u>

Plaintiff submits the following response to Tiffany Jennifer Lam's

("Lam") Concise Statement of Facts (continued on next page):

1553395.1

| No. | Fact (Copied from Lam's SoF) | Counter SoF and Citations. |
|---|---|---|
| 1. | On May 4, 2021, Navatek Capital Inc. ("NCI"), individually and derivatively on behalf of Martin Defense Group, LLC, f/k/a Navatek LLC and now known as PacMar Technologies LLC (the "Company" or " PacMar"), filed its Demand for Arbitration ("Demand") against Martin Kao ("Kao" ) before Dispute Prevention & Resolution , Inc. | Admitted. |
| 2. | The Demand alleged that Kao fraudulently used the Company to commit bank fraud and money laundering in connection with  the CARES Act Paycheck Protection Program ("PPP Program"), including fraudulently obtaining a $10,000,000 PPP loan from Central Pacific Bank ("CPB"), a $2,841,490 PPP loan from Radius Bank, and fraudulently seeking  a third PPP loan from First Hawaiian Bank ("FHB"). | Admitted. |
| 3. | The Demand further alleged that Kao engaged in thefts from the Company through numerous breaches of fiduciary duties,  including  non-arms-length transactions , improper distributions , unlawful political contributions using Company funds, and improper use of Company funds for personal expenses and alter-ego foundations. | Admitted. |
| 4. | The Demand alleged claims for Breach of Fiduciary Duties (Count I), Breach of Operating Agreement (Count II), Gross Mismanagement (Count III), Fraud (Count IV), Embezzlement (Count V), Conversion (Count VI), Unjust Enrichment (Count VII), Civil Conspiracy (Count VIII), Indemnities (Count IX), Declaratory Judgment (Count X), and Accounting (Count XI). | Admitted. |
| 5. | On May 19, 2021, the Company filed its Crossclaim against Kao which substantially mirrored the factual allegations in the Demand and asserted claims for Breach of Fiduciary Duty, Gross Negligence, Declaratory Relief – Dissociation, Declaratory Relief – NEWCO Agreements, Indemnification, Contribution, and Uyemura v. Wick Claim. | Denied regarding "substantially mirrored."  Dkt. 332-4. |

4

| 6. | The Arbitration included evidentiary hearings held over seven days from September 27 through October 7, 2021, and the parties were afforded a full and fair opportunity for examination and cross-examination of 15 witnesses, introduction of relevant exhibits, and submission of arguments and legal authorities. | Admitted. |
|---|---|---|
| 7. | The evidentiary record was substantial, and each party offered introduced numerous exhibits that were stipulated to be authentic and received in evidence. | Deny regarding "substantial." Dkt. 332-5. |
| 8. | At the conclusion of the Arbitration, NCI and PacMar submitted comprehensive post-arbitration briefs. | Admitted. |
| 9. | On November 23, 2021, the Arbitrator issued a comprehensive 100-page written Award ("Award"). | Admitted. |
| 10. | The Arbitrator found that Kao engaged in a fraudulent scheme to obtain PPP loan funds from CPB, Radius Bank, and FHB and found Kao liable for breach of fiduciary duty, gross negligence, and related claims. | Admitted. |
| 11. | The Arbitrator found that Kao engaged in money laundering of PPP loan proceeds, including instructing the transfer of $2,000,000 from the Company's CPB account to Kao's personal Merrill Lynch account and expressing intent to "wash" PPP Loan money, resulting in $8,000,000 flowing from the Company's CPB account to its Merrill Lynch account. | Admitted. |
| 12. | The Arbitrator found that Kao made frequent political campaign contributions in his and his wife's name using Company-issued AMEX cards in violation of 52 U.S.C. § 30119 and engaged in an unlawful campaign contribution to the 1820 PAC through SYWSE in violation of 52 U.S.C. §§ 30119 and 30122. | Admitted. |
| 13. | The Arbitrator found that Kao started SYWSE— described as an "LLC that can be set up to 'facilitate' transactions"—and that a $150,000 check was written from the Company to SYWSE and then from | Admitted, however, the Arbitrator also found that Tiffany was "the manager |

5

| | | |
|---|---|---|
| | SYWSE to the 1820 PAC, and that a scholarship program under SYWSE "was set up later to do 'damage control' following 'the screwup with 1820.'" | of SYWSE" and signed checks on its behalf. Dkt. 332-5, PAIGID.5039. |
| 14. | The Arbitrator found that Kao orchestrated straw donor contributions through his family members and employees, including Clifford Chen and Lawrence Kahele Lum Kee, in violation of 52 U.S.C. § 30122. | Admitted. |
| 15. | The Arbitrator found that Kao used Company funds inappropriately for personal expenses, caused the Company to pay expenses on behalf of various foundations, made improper distributions to himself, made improper loans from Company funds, and caused the Company to make payments to law firms for his personal criminal and civil cases, including $250,000 to attorney Michael Green. | Admitted. |
| 16. | The Arbitrator found that the Company and NCI agreed that any damages recovered against Kao must flow only to the Company under the applicable law regarding derivative claims. | Deny to the extent this includes attorney's fees and costs which was an exception not the Arbitrator's finding. Dkt. 332-5, PAIGID.5023. |
| 17. | The Arbitrator awarded gross special damages of $2,268,805.40, encompassing: Improper Distributions ($495,000.00) (which included the $150,000 contribution to 1820 PAC), Crisis Communications ($35,575.90), Interim CFO Expenses ($168,419.22), Post-Arrest Attorney Retainers ($974,838.02), Personal Expenses ($295,661.12), Foundation Expenses ($107,209.55), SYWSE Expenses ($1,513.83), and Political Contributions ($190,587.76). | Admitted. |

6

| 18. | The Arbitrator denied the claim for the $2M Note Receivable as speculative, finding that (1) the DOJ had already seized amounts equal to the PPP loans; (2) no claim or litigation was pending against the Company to recover those sums; and (3) awarding the Company $2M would result in the Company receiving a portion of fraudulently obtained PPP money. | Admit in part. The Arbitrator denied the claim without prejudice. Dkt. 332-5, PAIGEID.5073. |
|---|---|---|
| 19. | The Arbitrator found that Kao was entitled to credit of $1,419,838.02 for charges to his Company capital accounts in 2019 and 2020 and set off of $1,986,490.00 for the 2020 current value of his Company capital account, which were effectively deducted from said capital account as of the date of the Award, November 23, 2021. | Admit in part. The Arbitrator used the 2020 K-1, not 2019. Dkt332-5, PAIGEID.5069. |
| 20. | The Arbitrator awarded punitive damages of $4,537,610.80 (twice gross special damages) and attorneys' fees and costs of $2,725,693.49. | Admit in part. The Arbitrator awarded the Company $1,608,8046.77 in attorneys' fees and costs, and awarded NCI $1,117,646.72 in attorneys fees and costs. |
| 21. | After applying credits for amounts already charged to Kao and the present value of Kao's capital account, the Arbitrator entered a final award of $6,125,781.80. | Admitted. |
| 22. | The Arbitrator ruled that Kao was disassociated from the Company effective as of the date of the Award, November 23, 2021. | Admitted. |
| 23. | The Award was confirmed in the Circuit Court of the First Circuit, State of Hawai'i ("Confirming Orders"), and Final Judgment Confirming Arbitration Award was filed on April 28, 2022, in Navatek Capital Inc. v. Martin Kao, Civil No. 1CCV-20-0001511, Dkt. 452. | Admit in part. That order has since been vacated in part by the Intermediate Court of Appeals. Exs. 28-32. |
| 24. | Plaintiff settled with Defendant Duke Hartman in this case for $425,000. | Admitted. |

| 25. | Plaintiff settled with Defendant Lawrence Kahele Lum Kee for an amount submitted under seal. | Admitted. |
|---|---|---|
| 26. | Plaintiff has received in excess of $3.825 million resulting from claims asserted in the Arbitration and this case. | Admit in part. Plaintiff claims and damages are distinct between the Arbitration and this matter.  Dkts. 332-5, 332-9, Ex. 27. |
| 27. | On May 27, 2022, Kao appealed the Hawaii Circuit Court's denial of his Motion to Vacate and the Confirming Orders ("Kao's Appeal"). CAAP-22-0000364. | Admitted. |
| 28. | On July 29, 2025, the Hawaii Intermediate Court of Appeals ("ICA") entered its Summary Disposition Order regarding Kao's Appeal | Admitted. |
| 29. | On December 23, 2025, the Hawaii Supreme Court accepted Kao's Application for Writ of Certiorari ("Application"). SCWC-22-0000364. | Admitted. |
| 30. | Oral argument on the Application before the Hawaii Supreme Court is scheduled for May 12, 2026 at 2:00 p.m. | Admitted. |
| 31. | On September 6, 2022, Kao entered a guilty plea to PPP fraud charges in United States v. Martin Kao, 1:21-cr-00061 (LEK) (D. Haw.), and was ordered to pay restitution to the SBA in the amount $12,841,490. | Admitted. |
| 32. | On September 27, 2022, Kao entered a guilty plea in United States v. Martin Kao, 1:22-cr-00048 (CJN) (D.D.C.), and was sentenced on October 23, 2025, pursuant to his Statement of Offense in Support of Guilty Plea. | Admitted. |

8

II.    <u>ADDITIONAL STATEMENT OF FACTS</u>

Plaintiff submits the following Concise Statement of Additional Facts for the Court's Consideration when reviewing the Motion (continued on next page):

1553395.1

| No. | Fact | Support |
|---|---|---|
| 1. | PacMar's primary business is providing engineering and related services to the US Government. | Dkt. 97, ¶3. |
| 2. | Kao is PacMar's former and disgraced CEO, and Tiffany was and is Kao's wife. | Dkt. 308, ¶4(c). |
| 3. | SYWSE is a Hawaii registered LLC that was formed on or around November 26, 2019 by Tiffany for the purposes of making illegal campaign contributions and Tiffany is the only member and manager of SYWSE and had sole signing authority over its bank accounts. | Exs. 1, 2, 10, 11, 12. |
| 4. | Shortly after SYWSE was registered in November 2019, it received $150,000 from the Company on December 27, 2019, and then immediately "donated" $150,000 to 1820 PAC, a political action committee that supported Sen. Susan Collins. | Exs. 3, 4. |
| 5. | Senator Collins was selected because she had the power in congress to direct money to the Company. | Ex. 7, 26:20-24, 145:16-146:5, 185:11-15; Ex. 8, 86:5-87:17, 88:5-15, 90:22-91:6 |
| 6. | An FEC complaint was filed regarding SYWSE and 1820 PAC. | Ex. 5. |
| 7. | Shortly after the FEC Complaint was filed, Defendants Kao, Tiffany, Chen, Lum Kee, and Hartman concocted a plan to use SYWSE as a conduit for donations to universities to obstruct justice by creating a false basis to tell investigators that SYWSE was a legitimate charitable organization that was formed for the purpose of giving these scholarships. | Ex. 9; Ex. 17, p.3 |
| 8. | In these emails, it was discussed that the scholarships would be given to protect Kao and then included in responses to the FEC Complaint. | Ex. 9, pp. 5-9. |
| 9. | Between March and June 2020, SYWSE made donations to universities in districts that elected members of congress that sat on appropriations committees and these donations totaled $60,000. | Ex. 14, 15. |
| 10. | SYWSE has never had any legitimate business or way of | Ex. 6; Ex. 7, |

10

| | | |
|---|---|---|
| | generating its own money, and all its funds were always the Company's money that were stolen and converted to be used by SYWSE for unlawful purposes.  See, e.g., Ex. 6. | 162:3-163:17. |
| 11. | Tiffany, engaged William "Bill" Canfield ("Canfield") to represent her with respect to the FEC Complaint. | Ex. 16; Ex. 18, 133:20-134:16. |
| 12. | Canfield sent a letter to the FEC on behalf of Tiffany and SYWSE that perpetuated the lie that SYWSE was formed to give scholarships and "was not formed for the purpose of making that contribution[,]" as he had phrased it in a March 25, 2020 email to Defendants Kao and Hartman. | Ex. 19; Ex. 17, p.3. |
| 13. | Canfield's letter was sent on behalf of SYWSE and "Jennifer Lam;" Jennifer is Tiffany's middle name | Ex. 19; Ex. 18, 91:9-14. |
| 14. | After the FEC Complaint was filed, the FEC commenced an administrative action against the Company based on the same allegations stated in the FEC Complaint and directly arising from Tiffany's actions (among others' actions) in operating SYWSE. | Exs. 24, 25. |
| 15. | In 2025, the Company reached a settlement with the FEC that required the Company to pay the FEC $325,000, and the Company incurred substantial attorneys' fees in defending against, and eventually settling, the FEC's inquiry. | Ex. 27, p.30. |
| 16. | Defendant Kao (as well as Chen and Lum Kee) have since pled guilty to crimes resulting from illegal campaign contribution conduct relating to SYWSE, the Company, and themselves. | Ex. 20; Dkts. 321-6, 321-11, 321-12. |
| 17. | Between April 3 and April 21, 2020, Kao, with the help of Defendants Lum Kee and Chen submitted three Paycheck Protection Program ("PPP") loan applications. | Ex. 21, pp.3-9. |
| 18. | These applications were fraudulent and Kao was arrested in late-2020 and eventually pled guilty to various crimes associated with his fraudulent conduct. | Exs. 22, 23. |
| 19. | The Company disclosed an expert report by JS Held detailing its damages to the Defendants on August 5, 2024. | Dkt. 138. |
| 20. | PacMar has since supplemented its damages report to include new information and damages, such amounts related to the settlement with the FEC, but also to remove other times that PacMar has determined are not damages, | Ex. 27; Dkt. 341. |

11

| | | |
|---|---|---|
| | such as the "$2 million loan to Kao." | |
| 21. | PacMar's damages in this lawsuit total $36,835,501 and are provided in the Supplemental Damages Report. | Ex. 27 |
| 22. | Tiffany did not disclose any expert report in this matter, nor did Tiffany disclose a report that rebuts or analyzes PacMar's damages. | Declaration of Grant F. Allison, ¶21. |
| 23. | PacMar's damages in its expert report are distinct from those in the Arbitration, including, but not limited to: | Ex. 27. |
| 24. | Lost Profits: $4,795,733, these were not alleged or awarded in the Arbitration. | Ex. 27, Schs. 1.0, 1.1, 1.2, 2.0, 2.1-2.4, 3.0 |
| (a). | Investment Related Losses: $14,304,145, these were not alleged or awarded in the Arbitration. | Ex. 27, Schs. 1.0, 1.1, 5.0. |
| (b). | SYWSE Scholarships: $60,000.  These were mentioned in passing in the Final Award, but no amounts were included, alleged, or awarded. | Dkts. 332-9; 332-5, PAIGEID.5040, 5072-5079; Ex.27, Sch. 8.1, pp. 24, 30-31. |
| (c). | Losses related to Office Spaces: $3,338,812.  These amounts were not alleged or awarded in the Arbitration. | Dkts. 332-9; 332-5, PAIGEID.5040, 5072-5079; Ex. 27, Sch. 8.1, pp. 25-28, 30-31 |
| (d). | FEC Related Damages: $527,020.  These amounts arose years after the Arbitration and are not part of the Final Award. | Ex. 24-26; Ex. 27, Sch. 8.1, pp. 30-31. |
| (e). | After Kao was arrested, Kao, PacMar  and Navatek Capital Inc. ("NCI")  commenced arbitration before Arbitrator Jerry Hiatt ("Arbitrator").  The Arbitration occurred on September 27 through October 1, 5, 7, 2021 ("Arbitration").  The Arbitrator issued the Final Award on October 18, 2021.  Dkt. 332-5. | Dkt. 332-5 |
| 25. | The Arbitration was pursuant to the binding arbitration agreement from the Company's Operating Agreement. | Ex. 27, §12.22 (arbitration clause); Dkt. 332-5, PAIGEID.5000. |

12

| 26. | Tiffany and SYWSE were not parties to the Operating Agreement, not parties to the binding arbitration clause, PacMar has no arbitration agreement with Tiffany, and the only parties bound by the arbitration agreement were the Company and its members. | Compare Ex. 33 with Dkt 332-5. |
|---|---|---|
| 27. | claims asserted in the Arbitration (by any party) were limited to those arising from the Operating Agreement. | Ex. 33, §12.22. |
| 28. | The Arbitration was expedited pursuant to Section 12.22 of the Operating Agreement. | Dkt. 332-5, PAIGEID.5000; Ex. 33, §12.22. |
| 29. | The Operating Agreement also specifics and requires that the Arbitration was conducted under Hawaii State law "including as to all matters of construction, validity, and performance but without giving effect to the conflict of law provisions thereof." | Ex. 33, §12.2. |
| 30. | PacMar and NCI's claims arose, first and foremost, from a need to immediately dissociate Kao from PacMar because Kao had received a debarment letter from the Navy in the wake of his arrest, and his debarment threatened the Company's ability to operate as a going concern. | Dkt. 332-3, ¶61. |
| 31. | Kao then voluntarily withdrew as the Company's Manager and CEO on November 19, 2020. | Dkt. 332-3, ¶63. |
| 32. | There is no damage award for the $60,000 scholarship payments. | Dkt. 332-5, PAIGEID.5073-5081 (making specific special damages findings). |
| 33. | The Total Final Award still due to PacMar is $6,125,781.80 plus interest. | Dkt. 332-5, PAIGEID.5098. |
| 34. | The Final Award concluded that Kao's capital account set-off still left $848,967.38 in special damages due and owing to PacMar after the offset against Kao's accounts. | Dkt. 332-5, PAIGEID.5077 |
| 35. | The Final Award's offsets were applied to all damages found in the Final Award, and an outstanding Final Award of $6,125,781.80 remains "still due." | Dkt 332-5, PAIGEID.5098. |
| 36. | After issuance of the Final Award, Kao filed a motion to vacate the Final Award, but the circuit court denied Kao's motion and confirmed the Final Award. | Dkt. 332-1, ¶11. |

13

1553395.1

| | | |
|---|---|---|
| 37. | On appeal to the ICA, Kao argued that the entire award must be vacated, by arguing, among other things, that "Kao was denied a fair hearing because he was required to submit to a hearing in which his voice would be silent" and "[t]he Award violates public policy[,]" among other arguments. Ex. 28, p.13. Kao's Opening Brief to the ICA concludes: "The matter should then be remanded to the Circuit Court with instructions for a new arbitration hearing to be conducted." | Ex. 28, pp.13,35. |
| 38. | The ICA issued its decision on July 29, 2025, in which the ICA affirmed in part, and vacated in part, the circuit court's denial of Kao's motion to vacate. | Ex. 29. |
| 39. | The ICA affirmed the circuit court with respect to the Final Award's punitive damages findings and the Arbitrator's denial of Kao's motion to stay arbitration pursuant to Keating. | Ex. 29, pp.6-9. |
| 40. | The ICA vacated the circuit court's order with respect to its failure to enter findings of fact and conclusions of law as to Kao's other eight (8) asserted grounds of dismissal. | Ex.29. |
| 41. | Kao also appealed to the ICA's decision to the Hawaii Supreme Court, and Kao's Application was granted on December 23, 2025. | Dkt. 332-1, ¶¶12-16; Exs. 30-31. |
| 42. | Kao seeks to vacate the Final Award through his appeal to the Hawaii Supreme Court. In Kao's Application, he argued that the circuit court was required to vacate the award under HRS §658A-23(a) because the Arbitrator failed to stay the arbitration pending. | Ex. 30, §V(A), p.9. |
| 43. | In its order granting Kao's Application, the Hawaii Supreme Court ordered briefing on: (i) "[w]hat constitutes 'sufficient cause for postponement' under HRS §658A-23(a)(3)?"; and (ii) "[w]hat factors should be considered in deciding whether a civil proceeding in Hawaii should be stayed due to pending criminal charges based on Article I, Section 10 of the Hawaii Constitution?" | Ex. 31. |
| 44. | Kao submitted his Supplemental Brief on January 22, 2026, which he argued that the Final Award must be vacated because, among other things, numerous federal cases found in similar situations that the failure to stay or postpone an arbitration under the FAA resulted in vacatur. | Ex. 32. |

14

1553395.1

DATED:  Honolulu, Hawaii, April 27, 2026.


/s/ Grant Fasi Allison
CRYSTAL K. ROSE
RYAN H. ENGLE
GRANT FASI ALLISON
JOHN D. FERRY III
KIRA J. GOO
LYLE S. HOSODA
SPENCER J. LAU

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

1553395.1