# EXHIBIT 18

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 2 of 160  PageID.7357
TIFFANY J. LAM, Vol II on 01/09/2026  Page 53
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PACMAR TECHNOLOGIES LLC        ) CASE NO.
(f/k/a MARTIN DEFENSE         ) 1:22-CV-00283-LEK-WRP
GROUP, LLC),                  )
                             )
          Plaintiff,          )
                             )
     vs.                      )
                             )
MARTIN KAO; TIFFANY           )
JENNIFER LAM a.k.a.           )
JENNY LAM and/or TIFFANY      )
KAO; LAWRENCE KAHELE LUM      )
KEE; CLIFFORD CHEN; DUKE      )
HARTMAN; SOCIETY OF           )
YOUNG WOMEN SCIENTISTS        )
AND ENGINEERS LLC,            )
                             )
          Defendants.         ) (Pages 53 to 194)
_____)

**Certified Transcript**

VOLUME II

DEPOSITION OF TIFFANY J. LAM

FRIDAY, JANUARY 9, 2026

REPORTED BY:   CARLENE K. SASAKI, RPR
               STATE OF HAWAII CSR NO. 544


EXHIBIT 18

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 3 of 160 PageID.7358 Page 54
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC),

       Plaintiff,

  vs.

MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC,

       Defendants.

     CASE NO. 1:22-CV-00283-LEK-WRP

Volume II

DEPOSITION OF TIFFANY J. LAM,

taken on behalf of the Plaintiff pursuant to Notice,

on Friday, January 9, 2026, commencing at 9:30 A.M.,

at the office of Lung Rose Voss & Wagnild, and via

Zoom, before Carlene K. Sasaki, RPR, State of Hawaii

CSR No. 544.

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 4 of 160
PageID.7359  Page 55
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

APPEARANCES:

For Plaintiff:

   LUNG ROSE VOSS & WAGNILD
   BY:  GRANT FASI ALLISON, ESQ.
   Topa Financial Center
   700 Bishop Street,
   Suite 900
   Honolulu, Hawaii 96813
   Phone:   (808) 523-9000
   E-mail:  gallison@legalhawaii.com

For Defendant TIFFANY JENNIFER LAM a.k.a. JENNY LAM
and/or TIFFANY KAO:

   MIYOSHI & HIRONAKA LLLC
   BY:  RANDALL HIRONAKA, ESQ.
     PHILIP W. MIYOSHI, ESQ.
   500 Ala Moana Blvd
   Honolulu, HI 96813
   Phone:   (808) 529-7300
   E-mail:  randy@808-law.com
       philip@808-law.com

Also Present:

   Don Ha, iDepo Video Legal Specialist

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 5 of 160
PageID.7360
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 56

I N D E X


DEPONENT:          EXAMINATION:          PAGE:

TIFFANY J. LAM       BY MR. ALLISON        60




        INFORMATION REQUESTED

            (NONE)




        UNANSWERED QUESTIONS

            PAGE: LINE:

             18   64

            189   11




        MARKED PORTIONS BY COUNSEL

            (NONE)

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 6 of 160
PageID.7361
TIFFANY J. LAM, Vol II on 01/09/2026                                      Page 57
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

I N D E X (continued):

E X H I B I T S

PLAINTIFF'S                                    PAGE:

Exhibit 1    Hawaii State DCCA printout    74
             of Tiffany Lam's CPA license
              (2 Pages)

Exhibit 2    DCCA Society of Young Women    87
             Scientist and Engineers LLC
              Articles of Organization for
             Limited Liability Company
              (2 Pages)

Exhibit 3    Society of Young Women          89
             Scientist and Engineers LLC
              Operating Agreement
             (15 Pages)

Exhibit 4    Central Pacific Bank            93
              Signature Card for Society
             of Young Women Scientist and
              Engineers LLC form
             (6 Pages)

Exhibit 5    Central Pacific Bank            94
              Beneficial Ownership
             Certification form
              (2 Pages)

Exhibit 6    Central Pacific Bank Address  96
             Change Request form
              (1 Page)

Exhibit 7    Check from Society of Young    99
             Women Scientist and Engineers
              LLC made payable to 1820 PAC,
             dated December 27, 2019
              (1 Page)

Exhibit 8    E-mail correspondence, titled 114
             "FW: Scholarship Answer for
              SYWSE."
             (3 Pages)

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

I N D E X (continued):

E X H I B I T S

PLAINTIFF'S                              PAGE:

Exhibit 9    Scanned copies of checks to    116
             universities
             (6 Pages)

Exhibit 10    Wichita State University       125
             Foundation Gift Pledge Form
             (14 Pages)

Exhibit 11    E-mail correspondence,         128
             titled "1820 Good to go"
             (1 Page)

Exhibit 12    Federal Election Commission    132
             Complaint
             (14 Pages)

Exhibit 13    Terms of Engagement William    137
             B. Canfield III, dated
             February 25, 2020
             (2 Pages)

Exhibit 14    E-mail correspondence,         138
             titled "Jennifer"
             (1 Page)

Exhibit 15    E-mail correspondence,         141
             titled "Jennifer's Statement"
             (1 Page)

Exhibit 16    Federal Election Commission    142
             Response Complaint
             (2 Pages)

Exhibit 17    American Express personal      150
             expenses Tiffany Lam
             (1 Page)

Exhibit 18    American ExpresS charges       151
             (27 Pages)

Exhibit 19    Merrill Lynch notes regarding 154
             check for $250,000
             (2 Pages)

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 8 of 160
PageID.7363
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 59

I N D E X (continued):

E X H I B I T S

PLAINTIFF'S                                  PAGE:

Exhibit 20    E-mail correspondence, titled 161
              "Wed, 10/2, 1:30-3:30 PM"
              (3 Pages)

Exhibit 21    E-mail correspondence,       163
               titled "Navatek
              EP-PROOFs.pdf; Navatek
               LH-PROOFs.pdf; Estimate.pdf."
              (3 Pages)

Exhibit 22    Plaintiff's first request for 166
               production of documents
              (28 Pages)

Exhibit 23    E-mail correspondence,       170
               titled "$10K 'Grant'"
              (1 Page)

Exhibit 24    E-mail correspondence,       173
               titled "Fwd: Important
              Information from Small
               Business Administration (SBA)
              Your EIDL Application"
               (2 Pages)

Exhibit 25    E-mail correspondence,       175
              titled "Fwd: Navatek Writeup
               V2"
              (1 Page)

Exhibit 26    E-mail correspondence,       177
               titled "FW: New Office
              Summary.xlsx"
               (8 Pages)

Exhibit 27    E-mail correspondence,       179
              titled "Fwd:  Letter to
               Society of Young Women
              Scientists and Engineers
               LLC.pdf; Federal Election
              Commission - Complaint.pdf"
               (1 Pages)

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

HONOLULU, HAWAI'I

FRIDAY, JANUARY 9, 2026

9:30 A.M.

-o0o-

THE VIDEOGRAPHER:  We are now recording                    09:30:56
and on the record.  My name is Don Ha.  I'm a Legal
Video Specialist for iDepo Hawaii.  Our business
address is 1164 Bishop Street, Suite 1111, Honolulu,
Hawaii 96813.

I'm not related to any party in this
action, nor am I financially interested in the
outcome in any way.

Today is January 9, 2026, and the time is
9:30 A.M. Hawaii Time.  This is the deposition of the
designated representative Tiffany J. Lam a.k.a. Jenny
Lam and/or Tiffany Kao, in the matter of "PacMar
Technologies LLC, et al., plaintiff, vs. Martin Kao,
et al., defendants," in the United States District
Court for the District of Hawaii, Case
No. 1:22-cv-00283-LEK-WRP.

This deposition is being taken at 700

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 10 of 160
TIFFANY J. LAM, Vol II on 01/09/2026  PageID.7365
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.  Page 61

Bishop Street, Honolulu, Hawaii 96813, on behalf of the plaintiff. The court reporter is Carlene Sasaki of iDepo Hawaii.

Counsel will state their appearances, and the court reporter will administer the oath.

MR. ALLISON: Grant Allison appearing on behalf of the plaintiff, PacMar Technologies LLC.

MR. HIRONAKA: Randall Hironaka and Philip Miyoshi, appearing for Tiffany Lam, who is also present.

THE DEPOSITION OFFICER: Please raise your right hand.

Do you solemnly swear of affirm that the testimony you're about to give shall be the truth, the whole truth, and nothing but the truth?

THE WITNESS: I do.

THE DEPOSITION OFFICER: Thank you.

TIFFANY J. LAM, having been called as a witness and being first duly sworn to tell the truth, the whole truth and nothing but the truth, was examined and testified as follows:

MR. ALLISON: So before we start, I just want to clarify for the record to counsel that only

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 11 of 160
PageID.7366
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 62

one of you will be making objections today, and that

will be you, Randy?

Is that correct?

MR. HIRONAKA:  Correct.

EXAMINATION

BY MR. ALLISON:

Q   Okay.  Good morning.  My name is Grant Allison.  I represent the plaintiff, PacMar Technologies.  Just as a housekeeping matter, I may refer to the plaintiff PacMar Technologies LLC, which is formally known as Martin Defense Group, sometimes as PacMar and sometimes as the company.

Do you understand that, and is that okay with you?

A   Yes.

Q   Okay.  For today's depo, do you prefer that I call you Tiffany throughout?

A   That's fine.

Q   I will call you Tiffany.

Tiffany, do you recall that we were here in my office a few months ago, and we had an earlier deposition in which I asked you questions?

A   Yes.

Q   And do you also recall that you pled the

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 12 of 160
PageID.7367
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 63

Fifth, where you refused to answer my questions on the grounds of your Fifth Amendment right not to incriminate yourself with any questions I might have asked relating to an entity called the Society of Young Women Scientists and Engineers?

A   Yes.

Q   It has been represented to me that you no longer have those Fifth Amendment concerns.

Do you agree?  Is that accurate?

A   Yes.

Q   In today's deposition, is it also accurate that you do not intend to plead the Fifth as to questions relating to the Society of Young Women Sceientists and Engineers, LLC?

A   Yes.

Q   Another housekeeping matter:  Because saying "the Society of Young Women Sceientists and Engineers, LLC" is a mouth full, I'm simply going to refer to that entity as either "The Society" or "SYWSE."

Do you understand, and is that okay with you?

A   Yes.

Q   You also pled the Fifth as to questions relating to your production of documents in this

matter.  Same questions that I asked you before with

respect to The Society:  Do you intend to plead the

Fifth today as to any questions related to document

productions?

A   No.

Q   Do you intend to plead the Fifth today as

to any questions or any topics?

A   No.

Q   Okay.  The last time I deposed you, we

went through some basic ground rules at the start.  I

won't go through them in quite so much detail, but

I'm going to refresh you on them.

The first is that I ask that you let me

completely finish speaking before you answer, and I

will do the same for you.  And the reason is because

the court reporter is trying to write everything

down.

Is that okay with you?

A   Yes.

Q   The second is that you're obligated to be

honest and tell the truth today.

Do you understand that?

A   Yes.

Q   Okay.  The third is that I ask that you

don't guess at anything.  So if you have no basis to

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 14 of 160
PageID.7369
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 65

know an answer, tell me you don't know or that you

don't have an answer.  But if you have a reasonable

basis to give an estimation or to give an answer

informed by your personal knowledge or experience,

that you do so.

Do you understand that, and is that okay

with you?

A   Yes.

Q   Okay.  What is your current address where

you live?

A   2323 Kahala Street, Honolulu, Hawaii

96822.

Q   How long have you lived there?

A   I grew up there.

Q   What is your current employment?

A   I'm unemployed.

Q   How long have you been unemployed?

A   A really long time.

Q   When you say "a really long time," do you

mean three years, five years, ten years?

Is there a reasonable basis for you to

give me a more specific answer?

A   More than ten.

Q   Did you ever hold employment or any

position at all with PacMar at any time, even when it

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 15 of 160
PageID.7370
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 66

was called Martin Defense Group or Navatek LLC?    09:36:56

A    No.    09:37:00

Q    Did you ever complete any tasks or do any work for the company despite not being employed for the company?    09:37:03 09:37:06 09:37:10

A    No.    09:37:11

Q    So it's your testimony that you were never employed, never received compensation, never did any work for the company at all, ever?    09:37:11 09:37:14 09:37:17

A    Yes, yes.    09:37:20

Q    The last time I disposed you, I asked if you had ever been deposed before, and you had said "no."    09:37:21 09:37:28 09:37:31

So is it accurate that the previous time that I took your deposition is still the only time -- single time -- you've been deposed?    09:37:32 09:37:35 09:37:39

A    Yes.    09:37:42

Q    And this is the second time?    09:37:43

A    No, I mean, this is the first time, or, I mean, the last time you did, and then this time.    09:37:45 09:37:48

Q    Correct.  So two times now?    09:37:51

A    Yes.    09:37:54

Q    The last time I deposed you, I asked if you had ever testified under oath in any other form or venue, and you told me that you had never done    09:37:54 09:37:57 09:38:00

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 16 of 160
PageID.7371
Page 67
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

that.

Is that accurate?

A   Actually, I was under oath once.

Q   And what was that occasion?

A   It was for a case.

Q   Which case was that?

A   Oh, with a renter.

Q   What year or what approximate time frame is that?

A   I don't remember.

Q   Was it -- if you can estimate, five years, ten years ago, twenty years ago?

A   Closer to five.

Q   What property was that for?

A   For Kahala Avenue.

Q   And were you under oath because you were being deposed, or were you under oath at a hearing or trial?

A   A trial.  I think it was a trial.

Q   What did you to prepare for today's deposition?

A   I met with my attorneys.

Q   And I'm not going to ask you what you spoke about, but I do want to know:  when did you meet with your attorneys?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 17 of 160
PageID.7372
Page 68

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   I met with them once last week and twice this week.

Q   When you met last week, was that in person, over the phone, over the computer?

A   In person.  In person.

Q   How long was that meeting?

A   I would say maybe one and a half to two hours.

Q   Did you look at any documents during that time.

A   No.

Q   And when you met twice this week, on what days this week did you meet?

A   Monday and Wednesday.

Q   Monday -- where did you meet with your attorneys?

A   At their office.

Q   So it was, again, in person?

A   Yes.

Q   And how long was that meeting?

A   Maybe an hour and a half.

Q   Did you look at documents during that meeting?

A   No.

Q   And when I say -- strike that.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 18 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7373    Page 69
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

When I asked if you looked at documents, I don't just mean hard copies or paper, I mean documents that were put up on a computer screen or electronically?

A   No documents.

Q   On the meeting last week, when you met in person with your attorneys, is it correct that the attorneys you met with are the two attorneys you have present today, Randall and Philip, or were there other attorneys?

A   Oh, it's just Phil.

Q   And then same question on Monday.

Who did you meet with on Monday for one and a half hours approximately?

A   Randall and Philip.

Q   And on Wednesday, when you met with your attorneys, where did you meet?

A   At their office.

Q   And how long was that meeting?

A   Maybe an hour to hour and a half.

Q   Did you look at documents during that meeting?

A   No.

Q   And, again, which -- or who were the attorneys that met with you on Wednesday?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   Randall and Philip.

Q   The last time that I deposed you a few months ago, I had asked you some questions about your work history, and you had told me about three jobs: one with KPMG, one with a startup called HotU, and I believe one with a hotel.

Is that an accurate summary of the work history that you recall?

A   Yes.

Q   I had asked you if you could recall any other jobs that you've had in your life, and you told me you could not.  So my question is this:  As you sit here today, can you recall any other jobs that you've had in your life besides those three?

A   I can't recall.  No, I can't recall.

Q   Is it fair to say that those are the only three jobs you've had in your life?

A   Are you talking about when I was 14, or --

Q   No, let's say from after the time you graduated from college.

A   I used to model.

Q   Okay, and when did you model?

A   I don't remember.  It was a long time.

Q   Who did you model for?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 20 of 160
PageID.7375
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 71

A    More than one agency.

Q    Approximately, what period of time were you a -- did you work as a model?

A    Like, I don't remember.  Maybe 12, 13. Maybe younger.  I don't remember.

Q    And then approximately, what age did you stop modeling?

A    I don't remember.

Q    Do you still model today?

A    No.

Q    We also discussed that you previously held a certified public accounting license, correct?

A    Yes.

Q    And it is accurate that you still hold that CPA license, correct?

A    Yes.

Q    Do you recall when you got the CPA license?

A    After I worked at KPMG.

Q    Do you recall approximately what year that was?

A    No.

Q    Do you recall how long you held the CPA license?

MR. HIRONAKA:  Grant, I think...

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 21 of 160
PageID.7376                                                              Page 72
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

THE VIDEOGRAPHER:  Do we have a Zoom meeting today, because they're waiting to join?

MR. ALLISON:  Can we go off the record, please?

THE VIDEOGRAPHER:  Please stand by.  The time is 9:44 a.m., and we are off the record.

(Whereupon, a recess was taken

from 9:44 a.m. to 9:56 a.m.)

THE VIDEOGRAPHER:  The time is 9:56 a.m., and we're back on the record.

Q   (BY MR. ALLISON)  Okay.  Tiffany, we are back on the record now.  Same rules apply.

I believe before we took that short break, I was asking you about your CPA license.  And my question was:  Approximately, to the best of your recollection, what years did you hold a valid CPA license?

A   I don't know.

Q   Can you estimate it with any amount of reasonability for me?

A   I would be purely guessing.

Q   So you just have --

A   I just think I got it right after I --around the time that I worked at KPMG, after that.  After that.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 22 of 160
PageID.7377
TIFFANY J. LAM, Vol II on 01/09/2026                                              Page 73
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   And did you hold it for one year, five years, ten years?

A   I don't know.  I never used it.

Q   When you took the CPA test to get the license, you took a number of exams, is that correct?

A   I know it's in parts.

Q   Did you take those parts?

A   Yes.

Q   Did you study for them?

A   I must have.

Q   Do you have no recollection at all of taking those tests or holding that license?

A   It was too long ago.

Q   And do you have any recollection of the knowledge that you learned or the things you studied to become a CPA?

A   I mean, I remember basic things like reconciliation, maybe ticking and tying.

Q   Do you recall learning or studying about fiduciary duties in the accounting or money management context?

A   I do not.

Q   Do you believe that that was likely something you learned at that stage of your life when you became a CPA?

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 23 of 160
PageID.7378
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 74

A    I do not.

Q    Is it your testimony that you never studied or learned anything having to do with, or related to, fiduciary duties with respect to money in a business or accounting context?

A    I don't remember.

Q    So it's accurate to say that you simply have no testimony about what you learned or what you knew when you became a Certified Public Accountant?

A    Yes.

Q    Okay.  I'm going to reintroduce what was previously Exhibit 1 to your first deposition.  When I do this, I will hand the court reporter a copy. She will stamp it, and then that copy will go to you. I ask that you don't take these copies today.  They have to stay with the court reporter.  Although this one won't be stamped because it was already stamped. And this was Exhibit 1 to your prior deposition.

Separate of having seen this during your prior deposition, Tiffany, do you recall ever looking at or seeing this document before?

A    I didn't see this before.

(Whereupon, Plaintiff's Exhibit No. 1 was marked for identification by the deposition officer and is attached

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 24 of 160
PageID.7379
TIFFANY J. LAM, Vol II on 01/09/2026                              Page 75
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

hereto.)

Q   Okay.  I'll represent to you that what this is, is this a printout from the Hawaii State DCCA, Department of Commerce and Consumer Affairs' website, that I believe relates to your CPA license.

I'd like you to review the document and confirm for me if this is, in fact, a record relating to your CPA license.

A   Yes, it looks like it.

Q   Okay.  And on the bottom of page 1, it says that the effective date was February 11, 2003.

Do you see that?

A   Yes.

Q   Could that possibly be the date when you obtained your CPA license?

A   Yes.

Q   Do you have any reason to believe that's not the date?

A   No.

Q   So you agree that you obtained your CPA license on February 11, 2003?

A   If that's what it says.  I don't remember, but if that's what it says, it should be right.

Q   And then up above, there's a date that

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 25 of 160
PageID.7380
TIFFANY J. LAM, Vol II on 01/09/2026    Page 76
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

says "expiration date," and it says December 31, 2011.    10:00:54 / 10:00:54

Do you see that?    10:00:58

A   Yes.    10:00:58

Q   Do you understand or recall after looking at this document that you held a CPA license until December 31, 2011?    10:00:58 / 10:01:03 / 10:01:07

A   If it says it here, then I did.    10:01:09

Q   Do you have any reason to believe that that is an inaccurate time frame for which you held a CPA license?    10:01:12 / 10:01:15 / 10:01:19

A   I just don't know because I never used it.    10:01:19 / 10:01:21

Q   Did you take any continuing education classes or credits to maintain your license?    10:01:22 / 10:01:27

A   I don't think so.    10:01:30

Q   Did you pay any annual fees or dues to maintain your license?    10:01:30 / 10:01:36

A   I don't know.    10:01:37

Q   Did anybody do these things on your behalf?    10:01:37 / 10:01:42

A   I don't know.    10:01:43

Q   Did you ask anybody to do these things on your behalf?    10:01:43 / 10:01:47

A   I don't know.  It would be too long ago.    10:01:48

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 26 of 160
PageID.7381
TIFFANY J. LAM, Vol II on 01/09/2026                                             Page 77
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   Are there any details at all that you can tell me about obtaining or holding a CPA license?

A   I don't understand the question.

Q   Are there any details at all about your experience in obtaining and holding a certified public accounting license in your life that you can tell me?

A   Sorry, I still don't really understand.

Q   Sure.  So I've asked you a number of specific questions about your experience, and taking the CPA tests, and obtaining a license.

A   Okay.

Q   And you've largely answered that you don't know or you can't recall to virtually every question.  You agree?

A   Yes.

Q   And so my question is:  Can you tell me anything with respect to obtaining and holding a CPA license that you do know?

A   Just that I took a test.

Q   And that's the extent of your knowledge on obtaining and holding a certified public accounting license?

A   I mean, I worked at KPMG.  I worked at Hilton.  I worked at HotU.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 27 of 160
PageID.7382
Page 78
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   Did you use your CPA license in any of those jobs?

A   No.

Q   Isn't it true that you held those jobs all before you obtained the CPA license?

A   Yes.

Q   Okay.  Let me ask you this:  Why did you obtain a CPA license?

A   Because my mom wanted me to.

Q   Did you want to obtain the CPA license?

A   It didn't matter to me.

Q   It's accurate that once you obtained the CPA license, you never held a job in which you used the CPA license.

Is that accurate?

A   Yes.

Q   Is KPMG the last professional job that you recall holding in your life?

A   Yes.

Q   And during your last deposition, I believe you told me that that ended in or around 2001.

Is that correct?

A   Something like that.  I don't know exactly when.

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 28 of 160
PageID.7383
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 79

Q   What was your position at KPMG?   10:04:09

A   First year staff.   10:04:12

Q   And what were your basic job duties as first year staff at KPMG?   10:04:13   10:04:17

A   I don't remember, but probably like ticking and tying.  Maybe bank reconciliation.  I'm not sure.  That was so long ago.   10:04:19   10:04:24   10:04:32

Q   Separate of your time holding a CPA license, do you have a general understanding of what fiduciary obligations are in the business context and with respect to money and accounting?   10:04:34   10:04:38   10:04:41   10:04:46

A   I don't.   10:04:48

Q   The last time I deposed you, I asked if you ever go by any other names.   10:04:49   10:04:59

Do you go by any other names?   10:05:01

A   No.   10:05:03

Q   And what is the name that you go by?   10:05:03

A   Tiffany Lam.   10:05:07

Q   And you never go by the name of Tiffany Kao, or -- I'm sorry -- Jennifer Kao?   10:05:09   10:05:13

A   I don't.   10:05:17

Q   And how about Jennifer Lam?   10:05:17

A   I don't.   10:05:19

Q   The last time I deposed you, I asked you if you had an e-mail address.  I'm going to ask you   10:05:21   10:05:27

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 29 of 160
PageID.7384
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 80

that question again:  Do you have an e-mail address?  10:05:30

A   Yes.  10:05:32

Q   And what is that e-mail address?  10:05:32

A   Tiffany808@gmail.  10:05:35

Q   Could you spell that for me, please?  10:05:39

A   T-I-F-F-A-N-Y-8-0-8, @, G-M-A-I-L, dot,  10:05:40

C-O-M.  10:05:50

Q   How long have you had that exact e-mail  10:05:50

address for?  10:05:53

A   I don't remember.  10:05:54

Q   Could you estimate?  10:05:54

A   I couldn't.  10:05:57

Q   Has it been longer than five years?  10:05:59

A   Yes.  10:06:03

Q   Longer than ten years?  10:06:04

A   Ten years -- probably.  10:06:07

Q   And as the holder owner of the e-mail  10:06:09

address, tiffany808@gmail.com, is it accurate that  10:06:24

you have the password and log-in credentials to be  10:06:26

able to access and control that account?  10:06:31

A   Do I have access and control of the  10:06:33

account?  Yes.  10:06:38

Q   Does anybody else have access and control  10:06:38

over that account?  10:06:43

A   When you say "access and control," and  10:06:44

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 30 of 160 PageID.7385

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 81

you say "anybody," does that mean strangers and outsiders?

Q   Anybody else that's not you.

A   My family.

Q   And who in your family has access and control over your account?

A   My kids and Martin.

Q   And how long have your kids had access and control over your e-mail account?

A   I don't remember.

Q   How many kids do you have?

A   Two.

Q   How old are they?

A   Eleven and twelve.

Q   And when you say that your 11- and 12-year-old kids have access and control over your e-mail account, what does that mean?

A   It means that I have a home computer, and it's always on, and our Gmail accounts are always open.

Q   And have your kids ever sent e-mails from your e-mail account?

A   Possibly.

Q   But you're not sure?

A   I'm not sure.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 31 of 160
                                          PageID.7386                              Page 82
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   What about Martin?

What does it mean that Martin has access and control over your e-mail account?

A   It just means that our Gmail accounts are open, so anybody can go on it at any time.

Q   Are you aware of any time during which Martin has sent e-mails from your e-mail account?

A   Yes.

Q   And under what circumstances did Martin do that?

A   The only times I know, for sure, are when I get e-mails that he wants forwarded.

Q   When did that happen?

A   Throughout -- a long time.

Q   Okay.  Approximately when did that practice start?

When did Martin start using your e-mail account to forward or send e-mails that he wanted forwarded?

A   A long time ago.  I can't tell you when.

Q   Longer than five years ago?

A   Yeah.

Q   Longer than ten years ago?

A   Possibly.

Q   Do those e-mails still exist in your

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 32 of 160
PageID.7387
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 83

e-mail account at tiffany808@gmail.com?

A   I don't know.

Q   Have you looked for those e-mails recently?

A   Have I looked for them?

MR. HIRONAKA:  Well, I'm sorry.  I'm going to object.  Because I think -- lack of foundation.

I mean, based on her answer that -- she hasn't stated that she even knows what these e-mails are.  She just answered that.  She believed some were sent.

MR. ALLISON:  This is a deposition, so lack of foundation is not a proper objection, and she's testified about the e-mail.  So I'm entitled to ask about them.

MR. HIRONAKA:  No, I understand.

Q   (BY MR. ALLISON)  Have you ever searched for those e-mails?

A   I don't understand the question.

Q   Do you recall in this case that you received what's called a request for production of documents?

A   Yes.

Q   And what is your understanding of what

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 33 of 160
PageID.7388
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 84

that request for production of documents asked of you?

A   Any documents with Martin.

Q   And when you received that request for production of documents, what did you do in response?

A   Look for them.

Q   And when you, as you put it, looked for them, did you look for the e-mails that Martin forwarded?

A   Just all e-mails.

Q   And did you find any e-mails?

A   I found e-mails.

Q   Did you produce those e-mails?

A   Yes.

Q   Okay.  I don't believe you did, but I'll take it up with your counsel after the deposition.

MR. HIRONAKA:  I can add clarification if you'd like now.  After.  Okay.

Q   (BY MR. ALLISON)  Do you use any other or have any other e-mail addresses, Tiffany?

A   No.

Q   Do you -- have you ever deleted any of these e-mails that Martin sent through or from your e-mail address?

A   I don't know.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 34 of 160
PageID.7389
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 85
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   Is it a standard practice of yours to delete e-mails from your e-mail account?

A   I don't understand the question.

Q   Have you ever deleted an e-mail from your e-mail account before?

A   Yes.

Q   Have you ever deleted an e-mail from your e-mail account that was one of these that we're discussing in which Martin sent or forwarded something by, or through, or from your e-mail account?

A   I don't know.

Q   You don't know if you ever deleted one of those?

A   I mean, I just delete.  I don't recall. I just delete them.

Q   When was the last time you deleted e-mails from your e-mail account?

A   I can't recall.

Q   Was it within the last year?

A   Possibly.

Q   How about within the last two years?

A   Probably.

Q   How about since Martin was arrested in -- around October of 2020?

10:11:39
10:11:49
10:11:51
10:11:53
10:11:56
10:11:58
10:11:58
10:12:01
10:12:04
10:12:08
10:12:10
10:12:10
10:12:11
10:12:13
10:12:13
10:12:20
10:12:20
10:12:27
10:12:28
10:12:30
10:12:35
10:12:39
10:12:44
10:12:45
10:12:49

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 35 of 160
PageID.7390
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 86

A   I don't know.  I just don't know.

Q   So it's possible that you deleted these e-mails?

A   It's possible.

Q   And your testimony is that you're not sure if you did or not?

A   Yes.

Q   Are you familiar with an entity called the Society of Young Women Sceientists and Engineers, LLC?

A   Do you mean with the name?

When you say "familiar," what do you mean by that?

Q   Have you ever heard of it?

A   Have I heard of it?  Yes.

Q   And under what context did you hear of it?

A   What do you mean?

Q   When, where, how did you hear of The Society?

A   I think around the time I received the witness subpoena from the Department of Justice.

Q   When was that?

A   In 2020, I believe.

Q   And that's the first time you ever heard

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 36 of 160
PageID.7391
Page 87
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

of this entity, Society of Young Women Scientists and Engineers?

A   I believe so.

Q   You had never previously heard of it prior to 2020?

A   Yes.

Q   What part of the year or what time of the year, month, season -- however you can recall -- did you receive that witness subpoena in 2020 from the Department of Justice about The Society?

A   I would say the later half of the year.

Q   Have you ever held a position or role with The Society?

A   No, I have not.

Q   Do you currently hold a position or role with The Society?

A   No, I do not.

MR. ALLISON:  We'll mark this as Exhibit 2.

(Whereupon, Plaintiff's Exhibit No. 2 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  Ms. Lam, please review this document briefly and let me know when you've had

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 37 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7392
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 88

a chance to look at it.  You don't have to read every word, but if you could just look at each page.

A   Okay.

Q   Have you seen this document before?

A   No.

Q   I will represent to you that this is a document, again, from the State of Hawaii, Department of Commerce and Consumer Affairs' business registration website.  And this is the Articles of Organization for The Society.

Do you see where it says that at the top of the first page?

A   Yes.

Q   Okay.  And do you see at the bottom, it says who the organizer and the address of the organizer is of The Society?

A   Yes.

Q   Is that you, Jennifer Lam?

A   No, that is not me.

Q   So you are not this person, Jennifer Lam, who organized this entity?

A   I had no knowledge.  I had no involvement in it.

Q   Are you familiar with that address that's listed there at the bottom right:  P.O. Box 2394,

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 38 of 160
PageID.7393
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 89

Honolulu, Hawaii 96804?

A   No, I am not.

Q   Have you ever used that address before?

A   No, I have not.

Q   And so it's your testimony that you did not sign or submit this document on November 26, 2019, to the DCCA?

A   I've never seen this document.

Q   Okay.  You can set that aside for now.

MR. ALLISON:  We'll do this is the next in order.

(Whereupon, Plaintiff's Exhibit No. 3 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  Okay.  Ms. Lam, the document that we've marked as Exhibit 3, have you seen this document before?

A   No, I have not.

Q   This is -- at the top, it says, "Society of Young Women Scientists and Engineers LLC Operating Agreement," correct?

A   Correct.

Q   Could you flip to the end -- not the very last page, but the third-to-the-last page?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 39 of 160
PageID.7394
Page 90

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Is that your signature?    10:18:23

A   That is not my signature.    10:18:30

Q   And is it, again, your testimony that you are not the Jennifer Lam noted as its manager and member?    10:18:32    10:18:37    10:18:40

A   If you're asking me if I know about this company, I don't know about this company.    10:18:45    10:18:48

Q   Okay.  And if I ask you about any of the obligations and statements listed in this document, such as the contribution of capital, or liability, or any other rights or obligations, would your testimony be the same that you've never seen this document, and you don't know what it says, and you don't have anything to do with this?    10:18:50    10:18:59    10:19:03    10:19:07    10:19:10    10:19:13    10:19:15

A   Yes.    10:19:17

Q   You can put this to the side now.    10:19:18

Did you ever discuss this entity with your husband, Martin Kao?    10:19:45    10:19:48

A   No.    10:19:51

Q   Martin never told you about The Society, or told you about any plans to create The Society?    10:19:51    10:19:59

A   No.    10:20:03

Q   And that question is unlimited as to time -- not just currently or recently, but dating back to 2019.    10:20:03    10:20:11    10:20:13

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 40 of 160
PageID.7395
TIFFANY J. LAM, Vol II on 01/09/2026    Page 91
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

You never had any discussions with Martin about The Society?

A   I did not.

Q   If you could flip back to Exhibit 3, and the signature on the third-to-last page.

If that's not your signature, do you have any idea or thoughts as to who signed this document?

A   I do not.

Q   You agree that -- strike that.

Your middle name is Jennifer, correct?

A   Correct.

Q   And your full name is Tiffany Jennifer Lam, correct?

A   Correct.

Q   Do you agree that this document is -- if it's not you, as you've testified -- it's at least purporting to be you?

A   Yes, someone is using it without my consent.

Q   And if that's your testimony, then my question is:  Who do you believe is using this without your consent?

A   Do you want me to guess?

Q   I don't want you to guess if you have no basis, but if you have a reasonable suspicion, or if

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 41 of 160
PageID.7396
TIFFANY J. LAM, Vol II on 01/09/2026                                          Page 92
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

you have an answer to the question, I'd like you to give it.    10:21:43  10:21:45

A   Martin.    10:21:46

Q   So you believe that Martin forged your signature on this document?    10:21:46  10:21:50

A   No, I don't know who signed that, but if you're asking who I believe it might be, possibly.    10:21:52  10:21:56

Q   Is there any other person in the world that you can think of that would do this for any reason?    10:22:00  10:22:03  10:22:07

A   I don't know.    10:22:08

Q   Did you ever ask Martin if he forged your name on any of these documents relating to The Society?    10:22:08  10:22:15  10:22:18

A   I did not.    10:22:18

Q   Did Martin ever tell you that he forged his name -- strike that.    10:22:19  10:22:29

Did Martin ever tell you that he created this entity, The Society, and used your name or forged your signature on documents to incorporate the company?    10:22:31  10:22:34  10:22:38  10:22:41

A   He did not.    10:22:42

MR. ALLISON:  Do this one as the next one in order.    10:23:02  10:23:05

///    10:23:05

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 42 of 160
PageID.7397
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 93

(Whereupon, Plaintiff's Exhibit No. 4 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  Tiffany, have you ever seen this document before?

A   No.

Q   At the bottom of the first page, there's, again, a printed name; it says "Jennifer Lam," and, again, a signature.

Is that your signature?

A   No.

Q   On the second page, at the very bottom, there is, again, a printed name, "Jennifer Lam," and a signature and title "Manager."  It's dated 12-10-2019.

Is that your signature on the second page?

A   No.

MR. ALLISON:  And I will note for the record that this is the signature card at Central Pacific Bank for The Society of Young Women Scientists and Engineers LLC's bank account.

Q   (BY MR. ALLISON)  This is not a document you have ever seen or signed.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 43 of 160
                                    PageID.7398
TIFFANY J. LAM, Vol II on 01/09/2026                                          Page 94
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Is that your testimony?                                        10:24:16

A   Yes.                                                       10:24:16

Q   On the third, fourth, and fifth pages,                    10:24:17
there is, again, the same signature and same printed          10:24:26
name, "Jennifer Lam."  If you could look at those             10:24:29
pages.  And it's the same question:  Is that your             10:24:32
signature on the third, fourth, or fifth page?                10:24:34

A   It is not.                                                 10:24:38

Q   Earlier I asked you, "Who in the world do                 10:24:39
you think would have done this?  Who would have               10:24:44
signed your name on these documents relating to The           10:24:46
Society?"  And you answered, "Martin Kao," correct?           10:24:49

A   Yes.                                                       10:24:52

Q   So same question as to this document                      10:24:53
we've marked as Exhibit 4:  Who do you believe or             10:24:55
suspect signed your name onto these documents?                10:25:00

A   Martin.                                                    10:25:04

MR. ALLISON:  Do this one as the next in                      10:25:41
order, please.                                                10:25:44

(Whereupon, Plaintiff's Exhibit No. 5                         10:25:44

was marked for identification by the                          10:25:44

deposition officer and is attached                            10:25:44

hereto.)                                                       10:25:45

Q   (BY MR. ALLISON)  Tiffany, have you seen                  10:25:45
this document before?                                         10:25:47

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 44 of 160
TIFFANY J. LAM, Vol II on 01/09/2026 PageID.7399 Page 95
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   No.

Q   At the very bottom, there's a name and it says, "Tiffany Jennifer Lam," and the title is "Authorized Representative."  And it says:

"The legal entity for which the account is being opened."

And it lists "Society of Young Women Scientists and..." and it cuts off the word "and." This is an entity type "Limited Company."

Do you see where I'm referencing?

A   Yes.

Q   The address is listed as 307A Kamani Street, Honolulu, Hawaii 96813.

Do you see that?

A   Yes.

Q   Are you familiar with the property 307A Kamani Street?

A   No, I am not.

Q   Have you ever been to that property?

A   I've never heard of it.

Q   You don't own that property or have any interest in that property?

A   I've never heard of that.

Q   That is your name, though, at the bottom of the first page, "Tiffany Jennifer Lam," correct?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 45 of 160
PageID.7400
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 96

A    Correct.

Q    And on the second page, there's a certification, it says:

"I, Tiffany Jennifer Lam,

hereby certify to the best of

my knowledge..."

And it goes on from there.

Do you see where I'm referencing?

A    I see.

Q    And, again, there is a signature.

Is that your signature?

A    No, it is not.

Q    And, again, I'll ask you:  Who is it that you believe may have signed this document purporting to be you, if it is not you, as you've testified?

A    Possibly Martin.

Q    Is there anybody else in the world that you think would have had a reason to sign your name to this document?

A    I can't think of any.

MR. ALLISON:  Next one in order.

(Whereupon, Plaintiff's Exhibit No. 6

was marked for identification by the

deposition officer and is attached

hereto.)

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   (BY MR. ALLISON)  Tiffany, have you seen this document before?    10:28:13 10:28:24

A   No, I have not.    10:28:25

Q   This is an address-change request form for Central Pacific Bank.    10:28:26 10:28:35

Do you see that at the top?    10:28:37

A   I see it.    10:28:39

Q   And under customer information, it lists Society of Young Women Scientists and Engineers.    10:28:40 10:28:45

Do you see that?    10:28:47

A   Yes.    10:28:53

Q   Under that name, it says:    10:28:53

"Last four SSN/CIF."    10:28:57

Do you see that?    10:29:02

A   Yes.    10:29:02

Q   And are those the last four digits of your Social Security number that are listed there: 0153?    10:29:03 10:29:07 10:29:11

A   No, that isn't.    10:29:11

Q   Below that, it has the e-mail address, tiffany808@gmail.com, which is your e-mail address, correct?    10:29:12 10:29:18 10:29:20

A   Correct.    10:29:21

Q   This document is dated at the bottom, May 7, 2020.    10:29:21 10:29:27

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 47 of 160
PageID.7402
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 98

Do you see that?

A   Yes.

Q    During that time period, on or around May 7, 2020, did you regularly or frequently check or look at your e-mail account for your e-mails at tiffany808@gmail.com?

A   I don't know, but back then, I don't think I looked at my e-mail much.

Q    Back then, do you know or believe that Martin was using or looking at your e-mail account?

A    It's possible.

Q    Have you ever seen any e-mails in your e-mail account at tiffany808@gmail.com from Central Pacific Bank relating to The Society of Young Women Scientists and Engineers?

A   I don't think so.

Q    Have you ever deleted any such e-mails?

A    I don't know.

Q    At the bottom the page, there's a signature.

Is that your signature?

A    No.

Q    Same question as before:  Who is it that you reasonably believe or suspect may have signed that signature if it was not you?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Possibly Martin.                                          10:30:48

Q    Is there anybody else in the world you                    10:30:49
suspect would have had a reason to do this or did              10:30:54
this?                                                          10:30:57

A    I don't know.                                             10:30:57

Q    Can you think of anybody else?                            10:30:58

A    I can't.                                                  10:31:02

Q    Is Martin the only person you can think                   10:31:03
of that might have done this?                                  10:31:06

A    Yes.  Maybe the person with the last four                 10:31:07
digits.  Whoever that is.                                      10:31:14

(Whereupon, Plaintiff's Exhibit No. 7                          10:31:14

was marked for identification by the                          10:31:14

deposition officer and is attached                            10:31:14

hereto.)                                                      10:31:33

Q    (BY MR. ALLISON)  Have you ever seen this                 10:31:44
document that we've marked as Exhibit 7 before?                10:31:46

And let me specify before you answer.  By                     10:31:49
this document -- I'm sorry.                                    10:31:52

MR. HIRONAKA:  Sorry, do you have other                       10:31:52
copies of this one?                                           10:31:54

MR. ALLISON:  Yeah, sorry.                                    10:31:56

MR. HIRONAKA:  These are all the same.                        10:32:00

Q    (BY MR. ALLISON)  Strike that.  I'll ask                  10:32:05
my question over.  I'll start over.                           10:32:08

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 49 of 160
PageID.7404
TIFFANY J. LAM, Vol II on 01/09/2026                                              Page 100
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Tiffany, this is a copy of a check.

Do you see that?

A   Yes.

Q   The check for which this is a copy of, have you ever seen that original check before?

A   No.

Q   Have you ever seen this or another Xerox copy of this check before?

A   No.

Q   Have you ever seen a check that is from the Society of Young Women Sceientists and Engineers, LLC?

A   I have not.

Q   There are two signatures on this check: one on the signature line and one below it on the routing line.

Do you recognize the signature on the signature line or the one on top?

A   Yes.

Q   Whose signature is that?

A   Martin's.

Q   And do you recognize the signature below the signature line next to the routing number?

A   I do not.

Q   That is not your signature?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   That is not my signature.    10:33:18

Q   So it's your testimony that you did not sign this check?    10:33:20 10:33:25

A   Yes.    10:33:26

Q   Did you deliver this check to anybody?    10:33:27

A   No.    10:33:31

Q   Were you aware that The Society -- strike that.    10:33:32 10:33:39

Were you aware that The Society paid this entity listed here on the payee line, 1820 PAC -- P-A-C, PAC --the amount of $150,000 on December 27, 2019?    10:33:40 10:33:43 10:33:52 10:33:57

A   I don't recognize anything on this paper.    10:33:58

Q   But, certainly, you are aware of these facts today, because you testified earlier that the Department of Justice served you with a witness subpoena on this subject matter, right?    10:34:03 10:34:05 10:34:06 10:34:09

A   Yes.    10:34:11

Q   So you must have become aware of these facts at some point since or after you were served with that subpoena.    10:34:11 10:34:14 10:34:17

Is that accurate?    10:34:17

A   My attorney handled everything.    10:34:19

Q   So you never testified or gave testimony to the Department of Justice?    10:34:23 10:34:25

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 51 of 160
PageID.7406
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 102

A    My attorney talked to the DOJ.

Q    So you, yourself, never personally talked to the DOJ?

A    No.

Q    Who was your attorney at that time that did that?

A    Brad Tolsnick (phonetic) -- O'Grady. O'Grady (phonetic).

Q    Who paid for that attorney?

A    I did.

MR. ALLISON:  We've been going about an hour.  I propose we take a break now, if that's okay with everybody.

Okay, let's go off the record.

THE VIDEOGRAPHER:  The time is 10:35 a.m., and we are off the record.

(Whereupon, a recess was taken from 10:35 a.m. to 10:49 a.m.)

THE VIDEOGRAPHER:  The time is 10:49 a.m., and we're back on the record.

Q    (BY MR. ALLISON)  Okay, Tiffany, we're back on the record.  Same rules apply.

Do you understand?

A    Yes.

Q    Okay.  We were going over some documents

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 52 of 160
PageID.7407
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 103
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

about The Society before we took a break.  I'm going    10:49:12
to ask you some general questions about The Society,    10:49:18
and I ask that you answer to the best of your    10:49:20
knowledge.    10:49:22

As you sit here today, do you know how    10:49:24
many employees The Society had?    10:49:27

A   I had no involvement.  I have no    10:49:31
knowledge.  I don't know anything about The Society.    10:49:34

Q   So if I ask you any question at all about    10:49:38
The Society, as to any topic at all, you would not be    10:49:41
able to answer a single question?    10:49:46

A   Yes.    10:49:48

Q   Other than obvious things, like what is    10:49:48
its name?    10:49:52

A   Yes.    10:49:53

Q   Do you know what The Society's purpose    10:49:54
is?    10:49:57

A   No.    10:49:57

Q   Do you know what business The Society was    10:49:57
engaged in?    10:50:01

A   No.    10:50:01

Q   Do you know if The Society ever filed tax    10:50:02
returns?    10:50:06

A   I don't.    10:50:07

Q   Were you ever paid or compensated by The    10:50:07

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 53 of 160
PageID.7408
TIFFANY J. LAM, Vol II on 01/09/2026    Page 104
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Society?

A    I don't know anything about The Society.

Q    Okay.  Do you know Lori Bofman?

A    Yes.

Q    Who is Lori Bofman?

A    Martin's ex-admin assistant.

Q    Do you know when she became Martin's administrative assistant?

A    I don't.

Q    Do you know if it was -- strike that.

Prior to when she became Martin's administrative assistant, did you know Lori Bofman?

A    Yes.

Q    How did you know her?

A    I don't remember.

Q    Prior to when she became Martin's administrative assistant, what was your relationship with Lori Bofman?

A    What did you say?

Q    What was your relationship with Ms. Bofman?

A    Before --

Q    She became Martin's administrative assistant.

A    We were friends.

Q   How did you become friends, or how did you meet Ms. Bofman?

A   I don't remember.

Q   When did you become friends with Ms. Bofman?

A   I don't remember.

Q   Was it a short time before she became Martin's assistant, or a long time before she became Martin's assistant?

A   Probably short.

Q   So you didn't know her from, like, when you were young and attending grade school?

A   No, no.

Q   You met her when you were an adult?

A   Yes.

Q   Do you remain friends with Ms. Bofman today?

A   If you're asking me if I consider her a friend, yes.

Q   When was the last time you saw Ms. Bofman?

A   Maybe a month ago.

Q   What was the occasion that you saw her one month ago?

A   No occasion, just I saw her.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 55 of 160
TIFFANY J. LAM, Vol II on 01/09/2026        PageID.7410
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.                    Page 106

Q   Where did you see her?                                10:52:37

A   Here in Hawaii.                                       10:52:39

Q   Where specifically in Hawaii?                         10:52:42

A   What do you mean?  Where did I see her?               10:52:45

Like, where do we see each other?                        10:52:50

Q   Did you meet her for lunch?                           10:52:52

Did she come to your house?                              10:52:56

A   We went to Ko'olani.                                  10:52:58

Q   Ko'olani?                                             10:53:09

A   Is that what it's called?                             10:53:09

Q   I believe Ko'olani is a condominium.                  10:53:11

A   Oh, that area.  I don't know the area.                10:53:14

Q   Do you mean Ko'olina?                                 10:53:19

A   Ko'olina.                                             10:53:21

Q   On the west side?                                     10:53:22

A   Yes.                                                  10:53:24

Q   So did you go to, like, the Four Seasons,             10:53:24
or the Disney Aulani Resort?                             10:53:27

A   We just grabbed, like, a snack to eat.                10:53:31

Q   Do you remember where you got that snack              10:53:34
from?                                                    10:53:36

A   No.                                                   10:53:37

Q   Did you meet her at Ko'olina?                         10:53:39

A   Did I meet her -- no.                                 10:53:43

Q   So on that day about a month ago when you             10:53:54

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 56 of 160
PageID.7411
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 107

spent sometime with Ms. Bofman at Ko'olina, where did you first see her that day?

A   She picked me up.

Q   Where did she pick you up?

A   At my house.

Q   And then you drove to Ko'olina together in Ms. Bofman's car.

    Is that correct?

A   Yes.

Q   So then you went to Ko'olina, and how long were you at Ko'olina for?

A   Maybe an hour.

Q   And at Ko'olina, you got a snack?

A   Yeah.

Q   Did you do anything else?

A   No.

Q   You didn't play golf or go to the pool?

A   No.

Q   Do you recall where you got the snack at?

A   No.

Q   Was it at a restaurant?

A   Yes.

Q   Was it in one of the hotels at the resort?  Or was it in one of the standalone restaurants in one of the other strip centers or

10:54:00
10:54:06
10:54:08
10:54:11
10:54:14
10:54:15
10:54:22
10:54:25
10:54:26
10:54:27
10:54:31
10:54:33
10:54:35
10:54:41
10:54:41
10:54:43
10:54:43
10:54:46
10:54:47
10:54:52
10:54:53
10:54:55
10:54:55
10:55:00
10:55:04

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 57 of 160
PageID.7412
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 108

buildings there?

A   I think it was a strip center.

Q   What time of day did she pick you up approximately?

A   I don't know.  In the afternoon.

Q   And then after you had the snack in Ko'olina at the restaurant, what did you do next with Ms. Bofman on this day?

A   That's it.

Q   She drove you home?

A   Yeah.

Q   Did she come in?

A   No.

Q   She just dropped you off?

A   Yes.

Q   Did you talk about this case?

A   No.

Q   Did you talk about Martin?

A   Yeah.

Q   And what did you talk about with respect to Martin?

A   She just wanted to tell us just, like, happy holidays.  I hadn't seen her for a long time.

Q   Did you discuss her employment at the company on this day a month ago?

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 58 of 160
PageID.7413
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 109

A    No.

Q    Did you discuss The Society of Young Scientists -- strike that.

Did you discuss The Society of Young Women Scientists and Engineers with her that day?

A    No.

Q    Prior to that day, when was the last time you saw or talked to Ms. Bofman?

A    I don't recall.

Q    When was the last time you spoke to Ms. Bofman on the phone?

A    I think around New Year's.

Q    And that phone call would have been after the day that you spent with her in Ko'olina, correct?

A    Yeah.

Q    Did you discuss this case with her on the phone during that call?

A    No.

Q    Did you discuss this deposition with her?

A    No.

Q    Did you discuss The Society with her?

A    No, she just wished us a happy New Year.

Q    When was the last time you exchanged text messages on your phone with Ms. Bofman?

A    I don't recall.

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 59 of 160
PageID.7414
TIFFANY J. LAM, Vol II on 01/09/2026  Page 110
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   Would it have been in connection with the day she called you on or around New Year's?

A   I don't think so.

Q   Would it have been in connection with the day you spent with her at Ko'olina one month ago?

A   I don't know.  I don't know.

Q   Do you frequently or regularly text with Ms. Bofman?

A   No.

Q   Do you frequently e-mail Ms. Bofman?

A   No.

Q   Does she frequently e-mail you?

A   No.

Q   Have you e-mailed Ms. Bofman anytime in the last six months?

A   No.

Q   Has she e-mailed anytime in the last six months?

A   No.

Q   Prior to the day you spent with Ms. Bofman in Ko'olina one month ago, when was the time before that that you last spoke to, text messaged, e-mailed, or saw Ms. Bofman?

A   I can't recall.

Q   Prior to when Ms. Bofman was hired to be

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 60 of 160
PageID.7415
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.                         Page 111

Martin's executive assistant, did Ms. Bofman ever work for you or your family?

A   No.

Q   Did you ever purchase or receive any goods or services from Ms. Bofman prior to the time when she became Martin's executive assistant?

A   No.

Q   Ms. Bofman never baby-sat your children?

A   No.

Q   Ms. Bofman was never your hair dresser or stylist?

A   No.

Q   And you don't recall how or when you first met Ms. Bofman?

A   I don't recall.

Q   Was she your friend initially or Martin's friend initially?

A   I can't recall.

Q   Do you believe that Ms. Bofman and Martin Kao are friends?

A   Yes.

Q   And to this day, do you believe Ms. Bofman and Martin Kao are friends?

A   Yes.

Q   Are you aware of whether or not

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 61 of 160
PageID.7416
Page 112
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Ms. Bofman ever worked for The Society?

A   I'm not aware.

Q   Are you aware of whether or not Ms. Bofman ever completed tasks or other work for The Society, separate of whether she was employed by The Society?

A   I'm not aware.

Q   And Ms. Bofman has never spoken to you about The Society?

A   She has not.

Q   Do you recall that when I deposed you a few months ago, you told me you didn't know who Ms. Bofman was?

A   At all?

Q   Yeah.

A   I don't recall that.

Q   Clearly, that testimony is not accurate?

A   Can you show it to me?

Q   Your attorneys have a copy of the transcript.  But you agree that if you testified that you didn't know Ms. Bofman, that that would be untruthful testimony?

A   When did I say that?

Q   Again, Tiffany, the question is:  You agree that if you previously testified under

oath that you don't know who --

A   No, the last time I did say I went out with her a few times before she started working at the company.

Q   Separate of that, the question is: Previously, if you testified under oath that you did not know who Ms. Bofman is, you agree that would be untruthful testimony?

A   I don't understand the question, because when I say I went out with her a couple of times -- I don't understand.  Sorry.

MR. ALLISON:  Could you repeat the question, please?

(Whereupon, the requested portion was read back by the deposition officer.)

Q   (BY MR. ALLISON)  Please answer the question.

A   Yes.

Q   To be clear, for a clear record, you mean, yes, that would be untruthful testimony?

A   Yes.

MR. ALLISON:  Do this one as number eight?

///

///

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 63 of 160
PageID.7418
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 114

(Whereupon, Plaintiff's Exhibit No. 8

was marked for identification by the

deposition officer and is attached

hereto.) — 11:02:14

Q   (BY MR. ALLISON)  If you could take a — 11:02:14
look at the document we've marked as Exhibit 8, — 11:02:19
please, Tiffany. — 11:02:23

Have you ever seen this e-mail chain — 11:02:24
before? — 11:02:29

A   No. — 11:02:30

Q   And you see that at the top of the first — 11:02:30
page, at the very top, the header, it says it's from — 11:02:36
Lori Bofman, and it's to an e-mail Randy@808law.com, — 11:02:41
correct? — 11:02:46

A   Yes. — 11:02:47

Q   And the signature -- e-mail signature -- — 11:02:48
for the e-mail at the very top is from Lori Bofman, — 11:02:52
Executive Assistant. — 11:02:56

Do you see that? — 11:02:57

A   Yes. — 11:02:59

Q   And the subject line is "Forward — 11:02:59
Scholarship Answer for SYWSE." — 11:03:04

Do you see that? — 11:03:08

A   Yes. — 11:03:10

Q   And Ms. Bofman is sending an e-mail that — 11:03:11

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 64 of 160
PageID.7419
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 115

says:

         "Confirms that the funding

    was coming from Tiffany's account;

    however, according to Cliff, we

    can use Navatek funds?"

         Do you see that?

    A    Yes.

    Q    So, Tiffany, my question is:  Was there
ever any funding for scholarships for The Society of
Young Women Scientists and Engineers that came from
your account?

    A    I don't know what you're talking about.

    Q    Do you have any reason to know why
Ms. Bofman would send an e-mail that says that money
for The Society is coming from Tiffany's account?

    A    I don't know why she would say that.

    Q    Are you aware of whether or not
Ms. Bofman is friends with, or knows, any other
Tiffanys?

    A    I don't know.

    Q    Is this e-mail address, randy@808law.com,
your attorney's e-mail address?

    A    I don't know.

    Q    Do you know if Ms. Bofman is represented
by the same counsel that you're represented by?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 65 of 160
PageID.7420
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 116
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    I don't know.

Q    Have you ever discussed that with her?

A    I did not.

Q    Did you refer your current attorneys to Ms. Bofman so that they could represent her?

A    No, I did not.

Q    Did Ms. Bofman refer your current attorneys to you so that they could represent to you?

A    No, she did not.

Q    Okay.  Put this off to the side for a second.

MR. ALLISON:  Do this as the next one in order.

(Whereupon, Plaintiff's Exhibit No. 9 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  Tiffany, if you could just flip through this document.  I'll represent to you that it's a copy of a number of checks from the Society of Young Women Sceientists and Engineers, LLC, made out to various universities and colleges.

Earlier, we looked at some CPB banking documents that showed, or -- because you testified that you don't believe that those were your

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 66 of 160
PageID.7421

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 117

signatures, they perhaps purported to show -- that you were the holder and signatory on The Society's bank account and banking documents, correct?

A   Right.

Q   So, therefore, you agree that if The Society wrote checks, you would be the person that would have to sign those checks, correct?

A   I should be the person.  I should be.

Q   Are you saying that, or are you asking a question?

A   I'm saying that.

Q   So you agree that you should be the person -- or would need to be -- the person who signs The Society's checks, based on the banking documents we looked at earlier?

MR. HIRONAKA:  I'm going to object.  It's vague and ambiguous.  Assumes facts not in evidence, and it's argumentative.

THE WITNESS:  I don't understand.

Q   (BY MR. ALLISON)  Earlier, we looked at some documents from Central Pacific Bank.

Do you recall?

A   Yes.

Q   And one of the those documents we looked at was the CPB banking card, or signature card, for

11:06:45
11:06:54
11:06:59
11:07:00
11:07:01
11:07:04
11:07:07
11:07:10
11:07:13
11:07:19
11:07:19
11:07:20
11:07:22
11:07:22
11:07:29
11:07:29
11:07:31
11:07:34
11:07:35
11:07:36
11:07:38
11:07:40
11:07:41
11:07:41
11:07:44

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 67 of 160
PageID.7422
Page 118
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

the Society's bank account, correct?    11:07:50

A   Right.    11:07:51

Q   And on that document, it purported to be listing you as the person who had signing authority for The Society's bank account, correct?    11:07:52 11:07:59 11:08:02

A   When you say "listing me," you mean Jennifer?    11:08:07 11:08:11

Q   Some documents said Jennifer Lam, some documents said Tiffany Jennifer Lam.    11:08:12 11:08:15

Do you recall that?    11:08:17

A   I don't.  Sorry.    11:08:18

Q   Do you want to go back and look at those documents again?    11:08:19 11:08:21

A   Sure.    11:08:22

Q   Okay.  As an example, I'll direct you to Exhibit 5.    11:08:23 11:08:43

A   Okay.  Oh, okay.    11:08:47

Q   And on the bottom of the first page of Exhibit 5, do you see where it says "Beneficial Owner Certification," and it says -- below that -- it says:    11:08:50 11:08:52 11:08:57

"Persons opening an account on behalf of a legal entity must provide the following information."    11:09:01 11:09:03 11:09:07 11:09:08

And under A, it says:    11:09:08

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 68 of 160
PageID.7423
TIFFANY J. LAM, Vol II on 01/09/2026     Page 119
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

"Natural person opening account."

And it says:

"Tiffany Jennifer Lam, Authorized Representative."

Do you see that?

A   Yes.

Q   And you agree that your name is Tiffany Jennifer Lam?

A   Yes.

Q   And then on the next line it says:

"Legal entity for which the account is being opened."

Do you see that?  It's on the first page.

A   Okay, yes.

Q   And it lists The Society there as the entity, correct?

A   Correct.

Q   And if you flip on the second page, there's a certification in the middle that we looked at previously.

Do you recall looking at that certification?

A   Okay.

Q   And I'll read it out.  It says:

"I, Tiffany Jennifer Lam, hereby certify to the best of my knowledge that the information provided above is complete and correct, and I that inform Central Pacific Bank if there are any changes in beneficial owners or individuals with significant responsibility for the legal entity."

Do you see that?

A   I see it.

Q   And you are Tiffany Jennifer Lam, you agree?

A   Yes.

Q   But earlier, you testified that is not your signature, correct?

A   Correct.

Q   So setting aside the fact that you testified that that is not your signature, do you agree, based on this document, that you are the person who would need to sign checks made out by The Society based on this document?

A   I still don't understand.  Are you saying that because all the information here is mine, that I

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 70 of 160
PageID.7425
Page 121

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

should be the person?

Q   I'm saying that with respect to bank, the bank believes you're the person who should sign the checks for The Society.

Do you agree?

A   Does the bank believe?

Q   Based on the document that we're looking at --

A   Right.

Q   -- do you agree that the documents reflect that you are the person who should be signing checks for The Society?

A   No, because that's not my signature.

Q   I understand that you've testified it's not your signature.

A   Right.

Q   But the documents show on their face that you, Tiffany Jennifer Lam, are the person who has beneficial authority over The Society's bank accounts.

Do you agree?

I'm not asking you to admit that this is your signature.  I understand that it's your testimony that it's not.  I'm simply asking that, based on the documents, they purport to show -- even

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 71 of 160 PageID.7426

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 122

if not accurate, according to your testimony -- they purport to show that you have signing authority over The Society's bank account? 11:11:53 11:11:57 11:11:59

A   But I didn't input the information. 11:12:01

Q   I understand that.  I'm not asking you to admit that you inputted the information.  I'm simply asking you that, on its face, that's what the documents purport to show? 11:12:04 11:12:07 11:12:10 11:12:14

A   What does "purport" mean? 11:12:16

Q   It means that what's they show on their face, even if you disagree with the truth of it? 11:12:17 11:12:22

A   You mean, that's what it looks like? 11:12:25

Q   Correct. 11:12:25

A   Yes, that's what it looks like. 11:12:28

Q   Thank you.  So because that's what it looks like on the banking documents, you agree that it also looks like you should be the person signing The Society's checks? 11:12:30 11:12:34 11:12:37 11:12:39

A   I don't understand what you're saying. 11:12:45

MR. HIRONAKA:  I'm going to object.  It's argumentative. 11:12:47 11:12:49

MR. ALLISON:  Sure. 11:12:49

THE WITNESS:  Sorry, I don't understand. 11:12:50

Q   (BY MR. ALLISON)  We'll move on.  I'll ask it this way:  If you could go back to Exhibit 5 11:12:51 11:12:54

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 72 of 160
PageID.7427
Page 123
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

and look at the signature on the second page.

A    Yes.

Q    And then compare it to the signatures on the checks on Exhibit 9.

A    Okay.

Q    Do you agree that it appears that whoever signed your signature on Exhibit 5 also appears to have signed these checks in a same or similar fashion?

A    I mean, I guess so.  I don't know.  Kind of.  I'm not a hand specialist.  I don't know.

Q    This is not your signature, though.

Is that your testimony on Exhibit 9 on the multiple checks?

A    Yes, that's not my signature.

Q    Okay.  If we could go back to Exhibit 8 now, this e-mail from Lori Bofman.  In the e-mail, at the bottom of page 1 of Exhibit 8, this is an e-mail from Clifford Chen to Lori Bofman in the same e-mail chain.  First question:  Do you know who Clifford Chen is?

A    Yes.

Q    Have you ever met Clifford Chen before?

A    Yes.

Q    How many times have you met Clifford

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 73 of 160
PageID.7428
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 124

Chen?                                                                    11:14:41

A   Maybe once or twice.                                                 11:14:41

Q   So he's not somebody that you know well?                             11:14:43

A   Correct.                                                             11:14:47

Q   When was the last time you saw Clifford                             11:14:48
Chen?                                                                    11:14:50

A   I don't know.                                                        11:14:50

Q   Who is it that you know Clifford Chen to                            11:14:51
be?                                                                      11:14:55

A   A guy that works at Martin's company.                               11:14:55

Q   Do you know what his position was?                                  11:14:59

A   No.                                                                  11:15:01

Q   I think it says there at the bottom of                             11:15:01
page 1, in his e-mail signature, that he was the                        11:15:04
Chief Financial Officer.                                                 11:15:08

    Do you see that?                                                     11:15:09

A   I do.                                                                11:15:10

Q   So Clifford writes to Lori Bofman in this                          11:15:11
e-mail at the bottom:                                                    11:15:14

    "The checks need to come                                            11:15:15

    from The Society.  As I discussed                                   11:15:18

    with Martin before he left on                                      11:15:19

    his trip, the checks should come                                   11:15:22

    from Kao family accounts.  Best                                    11:15:25

    if Tiffany writes them to The                                      11:15:28

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 74 of 160
PageID.7429
TIFFANY J. LAM, Vol II on 01/09/2026    Page 125
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Society, but Martin can't."

Do you see that?

A   I see.

Q   So my question is this:  Did Martin have access to your bank accounts such that he could write checks from your accounts to The Society?

A   Are you asking me if The Society's on my accounts?

Q   I'm asking if Martin had access to your bank accounts and could write checks that purported to be from you, but were not actually from you?

A   Are you asking if he writes my signature?

Q   Yes.

A   No.

Q   Did Martin ever ask you to write any checks?

A   I can't recall.

Q   Did Martin ever ask you to write a check to anybody ever?

A   I can't recall.

MR. ALLISON:  Do the next one in order.

(Whereupon, Plaintiff's Exhibit No. 10 was marked for identification by the deposition officer and is attached hereto.)

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 75 of 160
PageID.7430
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 126

Q    (BY MR. ALLISON)  Tiffany, these are similarly additional checks from The Society made out to additional schools and universities.  On the first page, the first check for $2,500 from The Society made out to Wichita State University Foundation; is that your signature --

A    No.

Q    -- on the check?

A    No.

Q    Below on the signature line for "Donor," do you recognize that signature?

A    It looks -- yes, it looks like my husband.

Q    That's Martin Kao's signature?

A    It looks like it.

Q    And have you seen Martin's signature before?

A    Yes.

Q    Would you reasonably recognize it if you saw it?

A    Yes.

Q    And it's your testimony that you recognize this signature to be Martin's?

A    It looks like it, yes.

Q    If you could flip to the second page.  At

11:17:10
11:17:21
11:17:26
11:17:44
11:17:49
11:17:55
11:17:56
11:17:56
11:17:57
11:17:57
11:18:02
11:18:05
11:18:09
11:18:09
11:18:12
11:18:13
11:18:16
11:18:17
11:18:17
11:18:20
11:18:21
11:18:21
11:18:24
11:18:27
11:18:29

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 76 of 160
PageID.7431
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 127

the bottom, there's a copy of a check made out to                    11:18:35

University of South Carolina from The Society, and                   11:18:38

it's for $5,000.                                                     11:18:41

    Is that your signature on that check?         11:18:43

A    No, it is not.                                                   11:18:45

Q    Okay.  And if you could just flip through                       11:18:45

the rest of the pages and look at each check.  And I                 11:18:48

will ask you the question:  Is that your signature on                11:18:54

any of these checks on the additional pages of this                  11:18:57

exhibit?                                                             11:19:02

A    No, it is not.                                                   11:19:02

Q    Okay.  Could you flip to the fourth page?                       11:19:03

    At the top, there's an e-mail -- a header     11:19:30

for an e-mail -- and it's from Lori Bofman from the                  11:19:34

e-mail address Lbofman@sywse.com, to somebody named                  11:19:37

Rachel M. Pirkle.                                                    11:19:47

    Do you see that?                              11:19:49

A    I see it.                                                        11:19:50

Q    Did you ever discuss with Lori Bofman                           11:19:51

that she had an e-mail address that was @SYWSE?                      11:19:57

A    No.                                                             11:20:04

Q    Did you ever receive any e-mails from                           11:20:05

Lori Bofman from her e-mail @SYWSE?                                  11:20:09

A    No.                                                             11:20:13

Q    Do you have any knowledge -- or did                             11:20:13

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 77 of 160
PageID.7432
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 128

Ms. Bofman ever tell you anything about these checks she was sending out to universities?

A   No.

MR. ALLISON:  We'll do this as the next one.

(Whereupon, Plaintiff's Exhibit No. 11 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  Tiffany, this is an e-mail -- at the top, is an e-mail -- from someone named Kahele Lum Kee, and it's sent to Martin Kao and Clifford Chen.

Do you see that?

A   Yes.

Q   And there's an attachment listed, and it's titled "Society of Young Women Scientists and Engineers LLC Operating Agreement-11269.docx."

Do you see that?

A   Okay.

Q   My first question is:  Do you know who Kahele Lum Kee is?

A   Yes.

Q   Who is he, or who do you know him to be?

A   Someone that works at the company.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 78 of 160
PageID.7433
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 129

Q    Do you know what his position was?    11:22:14

A    No.    11:22:17

Q    Do you know if he still works at the company?    11:22:17    11:22:19

A    I don't.    11:22:19

Q    Have you ever met him before?    11:22:20

A    Yes.    11:22:21

Q    Where did you meet him?    11:22:22

A    I don't recall.    11:22:24

Q    Do you recall having any interactions with him?    11:22:25    11:22:29

A    I can't recall.    11:22:33

Q    Do you recall ever talking to him?    11:22:33

A    Yes.    11:22:38

Q    Tell me what you recall about talking to him.    11:22:38    11:22:44

A    I mean, not talking, but I remember meeting him.  So --    11:22:44    11:22:46

Q    Do you recall where you met him?    11:22:48

A    No.    11:22:50

Q    Do you recall the context in which you met him?    11:22:51    11:22:53

A    Maybe a company event.    11:22:54

Q    And beyond those broad details, do you remember anything specific about Mr. Lum Kee?    11:23:00    11:23:04

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 79 of 160
PageID.7434
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 130

A   No.

Q   Okay.  If you could look at the e-mail at the bottom of the page.  And this one is from Martin Kao sent to Kahele Lum Kee and Clifford Chen, dated November 22, 2019, and the subject is "1820 Good to go."

Do you see that?

A   Yes.

Q   And Martin's e-mails says, in its entirety:

"Okay.  Everyone is okay
with this.  Please proceed with
setting up.  Thanks!"

Below that it says:

"Name of new LLC:  Society
of Young Women Scientists and
Engineers.  Address:  P.O. Box.
Agent/Member:  Jennifer Lam."

Do you see that?

A   I see it.

Q   Do you understand or believe that when Martin references somebody named Jennifer Lam, that somebody is you?

A   Sure.

Q   Do you and Martin know anybody else named

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 80 of 160
PageID.7435
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 131

Jennifer Lam?

MR. HIRONAKA:  Objection.  Calls for --
well, as to Martin -- her knowledge of who Martin is.

MR. ALLISON:  Sure.  I'll rephrase.

Q   (BY MR. ALLISON)  Do you know anybody
else named Jennifer Lam?

A   No.

Q   Have you ever met or known anybody in a
situation in which Martin was present named Jennifer
Lam?

A   No.

Q   Do you and Martin, as husband and wife,
together, when you're together, know or have ever
spoken to or met anybody else named Jennifer Lam?

A   No.

Q   So is it accurate to say that you are the
only person with the names Jennifer Lam that you and
Martin, as husband and wife, as a couple, know?

A   Yes.

Q   So is it also reasonable to think that
the person Martin is referencing here is the agent
and member of the Society of Young Women Sceientists
and Engineers, LLC named Jennifer Lam is you?

A   I don't know what he's thinking.

Q   But you agree that he is referencing you

11:24:12
11:24:13
11:24:16
11:24:21
11:24:22
11:24:23
11:24:24
11:24:26
11:24:32
11:24:35
11:24:38
11:24:39
11:24:43
11:24:47
11:24:50
11:24:50
11:24:54
11:24:58
11:25:03
11:25:03
11:25:08
11:25:11
11:25:14
11:25:16
11:25:18

Case 1:22-cv-00283-LEK-WRP  Document 343-20  Filed 04/27/26  Page 81 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7436    Page 132
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

there?

MR. HIRONAKA:  Object.  Calls for speculation, but you can answer.

THE WITNESS:  I guess.  I mean, I don't know what he's thinking.

MR. ALLISON:  Do this one as the next one in order.

(Whereupon, Plaintiff's Exhibit No. 12 was marked for identification by the deposition officer and is attached hereto.)

MR. HIRONAKA:  Confirm we're on 12?

MR. ALLISON:  Number 12.

MR. HIRONAKA:  Thank you.

Q   (BY MR. ALLISON)  Tiffany, have you ever seen this document before?

A   No.

Q   I'll represent to you that this is a complaint made to the Federal Election Commission.

A   Okay.

Q   And the complaint involves or relates to the Society of Young Women Sceientists and Engineers, LLC, and you can see that on the first page, sort of middle of the page on the left.

Do you see that?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 82 of 160
PageID.7437
Page 133
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   Yes.

Q   And it says, "Care of Jennifer Lam," correct?

A   Correct.

Q   The address 335 Merchant Street, Unit 2394, Honolulu, Hawaii 96804 -- do you know what address that is, or what property is that is?

A   I do not.

Q   Are you -- and you've never been to that address or property before?

A   I have not.

Q   Were you served with or did you ever receive a copy of this document?

A   Is this the FEC complaint?

Is this what it is?

Q   Yes, this is the document that has conversationally been called the FEC complaint in the context of, you know, Martin's criminal cases.

A   I have not received that.

Q   Did you ever hire an attorney with respect to this document to defend you with respect --

A   Yes.

Q   But in the course of engaging an attorney on the subject matter, you never receive a copy of

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

this document?

11:27:51

A    From the FEC?

11:27:52

Q    From anybody.

11:27:54

A    Oh, yeah.

11:27:55

Q    So you have seen this document before?

11:27:57

A    I've seen it, but I haven't read it.

11:27:58

Well, actually, I don't know if I've even seen it.

11:28:03

I've heard about it maybe.  My attorney takes care of

11:28:07

everything.

11:28:09

Q    And who is that attorney?

11:28:09

A    Bill Canfield.

11:28:10

Q    When did you engage Bill Canfield?

11:28:12

A    I don't remember.

11:28:22

Q    Is Bill Canfield still your attorney

11:28:22

today?

11:28:28

A    How do you know?

11:28:28

Q    Do you have an active engagement in which

11:28:32

he represents you?

11:28:34

A    I mean, he represented me for this, so I

11:28:36

don't know if it's still active.

11:28:38

Q    Who paid Bill Canfield's legal bills for

11:28:40

representing you?

11:28:47

A    I did.

11:28:48

Q    And did you ever talk on the phone with

11:28:48

Bill Canfield?

11:28:48

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 84 of 160
PageID.7439
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 135

A    Yes.                                                    11:28:48

Q    Did you ever meet with him in person?                  11:28:56

A    Oh, so long ago.  I don't remember,                    11:28:58
sorry.                                                       11:29:05

Q    No, that's okay.  Did you ever exchange                11:29:05
e-mails with Mr. Canfield?                                   11:29:11

A    Yes.                                                    11:29:16

Q    And did Mr. Canfield send letters on your              11:29:17
behalf to the FEC or anybody else?                          11:29:24

A    Yes.                                                    11:29:27

Q    Do you have copies of those letters?                   11:29:27

A    No.                                                     11:29:31

Q    Did you ever have copies of those                      11:29:34
letters?                                                     11:29:37

A    When you say "letters," do you mean,                   11:29:37
like, e-mail?  Like, maybe correspondences?                 11:29:39
    Is that what you're talking about?                      11:29:43

Q    Anything -- e-mails, letters on his                    11:29:45
letterhead?                                                  11:29:47

A    So I'm assuming he communicated with                   11:29:48
them.  So I would be maybe assuming, because I guess         11:29:52
he could talk by phone.  I don't know.                       11:29:55

Q    Did Mr. Canfield ever provided you copies              11:29:59
of those communications or correspondences that he          11:30:02
sent to other people on your behalf?                        11:30:05

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 85 of 160
PageID.7440
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 136

A    I don't know.    11:30:09

Q    Okay.  We could put that one off to the side now.  Thank you.    11:30:10  11:30:21

I want to you ask you a few more questions about something you just said.  I asked you who paid Mr. Canfield's legal fees, and you said you did.    11:30:31  11:30:44  11:30:46  11:30:46

Is that correct?    11:30:51

A    Yes.    11:30:51

Q    What account did you pay them from?    11:30:51

A    I don't remember.    11:30:54

Q    Did you pay him by credit card or check?    11:30:54

A    I think by check.    11:30:58

Q    Did Mr. Canfield ask for a retainer fee?    11:30:59

A    Yes.    11:31:11

Q    And did -- strike that.    11:31:12

Who paid his retainer fee?    11:31:15

A    I paid it.    11:31:17

Q    And when you say that you paid for both his legal fees and his retainer, do you mean you personally, or do you mean you and Martin, or do you mean Martin?    11:31:18  11:31:22  11:31:27  11:31:30

Can you be more specific?    11:31:31

A    I can't be more specific.    11:31:32

Q    Is it your testimony that the money with    11:31:40

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 86 of 160
PageID.7441
TIFFANY J. LAM, Vol II on 01/09/2026                                          Page 137
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

which Mr. Canfield was paid his legal fee and    11:31:46
retainer was personal money that belonged to you?    11:31:49

A    Yes.    11:31:53

Q    And not money that belonged to anybody else?    11:31:54    11:32:00

A    I mean, my money and Martin's money.    11:32:00

What do you mean?    11:32:07

Q    I'm asking for you to be as specific as you can be about the source of the funds that paid for Mr. Canfield's legal fees and retainer?    11:32:08    11:32:11    11:32:15

A    I don't recall.  Like, I don't really understand.    11:32:20    11:32:26

Q    But it is your testimony that it was your money that belonged to you personally, accurate?    11:32:26    11:32:29

A    Yes, I own -- I mean, it's not anyone else's money.    11:32:33    11:32:36

MR. ALLISON:  Do this one as the next one in order, please.    11:32:39    11:32:47

(Whereupon, Plaintiff's Exhibit No. 13 was marked for identification by the deposition officer and is attached hereto.)    11:32:47    11:32:47    11:32:47    11:32:48

Q    (BY MR. ALLISON)  Tiffany, have you seen this document before that we marked as Exhibit 13?    11:32:48    11:32:56

A    No.    11:33:02

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 87 of 160
PageID.7442
Page 138
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   If you haven't seen this document before, is there any engagement letter from Mr. Canfield that you have seen previously at any time?

A   Yes, this isn't my engagement letter with him.

Q   You had separate engagement letter with Mr. Canfield?

A   Yes.

Q   Okay, you can put that to the side.

MR. ALLISON:  Do this one as the next in order.

(Whereupon, Plaintiff's Exhibit No. 14 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  Tiffany, this is an e-mail from Mr. William Canfield to Martin Kao, and the subject is "Jennifer."

Do you see that?

A   I see it.

Q   And the e-mail says:

"Martin, can you provide her e-mail to me?  The FEC wants a statement from her that she speaks for The Society."

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 88 of 160
PageID.7443
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 139

Thanks, Bill."

A   I see it.

Q   A moment ago, we looked at an engagement letter as Exhibit 13, and you said that wasn't your engagement letter with Mr. Canfield, correct?

A   Correct.

Q   And you had a separate engagement letter with Mr. Canfield?

A   Correct.

Q   Were you represented separately from Martin and The Society by Mr. Canfield?

A   I don't know what this is -- I just know that I had an engagement with him.

Q   Did you provide a statement to the FEC that you speak for The Society?

A   Personally, did I write to them?

Q   In any way, either through counsel or otherwise.

A   I don't know what my attorney did.  I mean, he handles it himself.

Q   Well, because Mr. Canfield is asking for a statement that somebody named Jennifer speaks for The Society.

A   Okay.

Q   Do you have an understanding of who

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 89 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7444    Page 140
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Jennifer could be in this context?    11:36:29

A    I don't think I knew who he was back then.    11:36:32 11:36:36

Q    When did you first meet or come to know Bill Canfield?    11:36:37 11:36:41

A    I think it was later.    11:36:42

Q    Approximately.    11:36:43

A    It was after Martin's arrest.    11:36:44

Q    So it was sometime after October 2020?    11:36:49

A    Probably.    11:36:53

Q    So at this time in June -- on June 24, 2020, you were not represented by Mr. Canfield?    11:36:54 11:37:01

A    No.    11:37:05

Q    Okay.  So --    11:37:05

A    He came much later.    11:37:07

Q    Understood.  Did Mr. Canfield e-mail you on or around June 24, 2020, to get a statement from you, saying that you speak for The Society?    11:37:10 11:37:15 11:37:19

A    No, I didn't know he existed.    11:37:22

Q    So Mr. Canfield did not do what he says he's going to do here in this e-mail?    11:37:32 11:37:37

He did not e-mail you to get this statement?    11:37:38 11:37:40

A    He did not.    11:37:40

Q    Okay.    11:37:58

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 90 of 160
PageID.7445
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 141
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

MR. ALLISON:  Do the next one in order.

(Whereupon, Plaintiff's Exhibit No. 15 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  These are additional e-mails between Martin and -- Martin Kao -- and Mr. Canfield on June 24, 2020.  The e-mail at the bottom, Mr. Canfield says:

"Martin, let's have Jennifer e-mail to me the following statement, 'I, Jennifer Lam, am the executive director (?) and registered agent for The Society of Young Women Scientists and Engineers LLC am authorized to speak for The Society in all matters.'"

Do you see that statement?

A   I see it.

Q   So on or around June 24, 2020, were you asked by anybody to send that statement, or a similar statement, to Mr. Canfield?

A   No.

Q   When you searched your e-mails to make a

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

production in response to the request for production
of documents in this case, did you search for e-mails
in this time period that it related or involved in
The Society?

A    I don't recall.

Q    But it's your testimony that you never
sent an e-mail that said the quoted statement in this
e-mail, or substantially similar statement, on or
around June 24, 2020.

Is that true?

A    Yes.  I didn't know he existed.

MR. ALLISON:  This is the next one in
order, please.

(Whereupon, Plaintiff's Exhibit No. 16
was marked for identification by the
deposition officer and is attached
hereto.)

Q    (BY MR. ALLISON)  Tiffany, have you seen
this letter before?

A    No.

Q    In the opening paragraph, it says:

"Respondents, the Society of
Young Women Scientists and
Engineers, LLC (The Society), and
its Registered Agent and Manager,

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 92 of 160
PageID.7447
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 143

Jennifer Lam (Ms. Lam) submit this response to a complaint filed by the campaign legal center."

Do you see that?

A   Yes.

Q   It's your testimony that you are not the Jennifer Lam referenced in that first paragraph, or that you had no knowledge of this when it was sent?

A   I had no knowledge of it.

Q   It's also your testimony that Mr. Canfield did not represent you as of the date this letter was sent, which is the 16th day of July 2020, as stated in the second page of this letter?

A   Yes.

Q   So under Mr. Canfield'S signature on the second page, where it says he is, "Counsel to the Society of Young Women Sceientists and Engineers, LLC and Jennifer Lam, its manager," it's your testimony that you are not that person, Jennifer Lam, its manager?

A   Yes.  I didn't know him back then.

Q   And you never spoke with Mr. Canfield at this time?

A   I didn't know he existed.

Q   Do you have an explanation as to why or

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 93 of 160
PageID.7448
TIFFANY J. LAM, Vol II on 01/09/2026                                     Page 144
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

how Mr. Canfield is sending letters to a federal investigative agency, purporting to represent you?

A   I do not.

MR. ALLISON:  Okay.  We've been going for about an hour exactly.  Let's go off the record.  Take a break now.

THE VIDEOGRAPHER:  Please stand by.  The time is 11:43 a.m., and we are off the record.

(Whereupon, a recess was taken from 11:43 a.m. to 12:34 p.m.)

THE VIDEOGRAPHER:  The time is 12:34 p.m., and we're back on the record.

Q   (BY MR. ALLISON)  Okay.  Tiffany, we're back on the record.  Same rules apply.

Do you have any questions about that?

A   No.

Q   Okay.  Earlier, I had asked you if you had any employment position with the company at any time.  And you answered that you never did.

Is that accurate?

A   Yes.

Q   Have you ever completed any unpaid tasks for or on behalf of the company?

A   I'm not sure I know how to answer that. I don't really understand.

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 94 of 160
PageID.7449
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 145

Q   Did you ever do anything in furtherance of the company -- it's objectives or goals -- even though you weren't paid?

MR. HIRONAKA:  Do you understand the question?

THE WITNESS:  I'm sorry, I don't understand your question.  I'm not understanding.

Q   (BY MR. ALLISON)  Did you ever complete any tasks for Martin Defense Group, LLC or Navatek LLC at any time?

A   Am I -- so are you asking me if I'm doing it for them?

Q   Yeah, I'm asking did you ever do anything for or on behalf of the company?

A   No.

Q   Did you ever attend any meetings arranged by or for the company?

A   No.

Q   Did you ever buy or purchase any goods or items for the company?

A   For the company -- no.

Q   Did you ever pick something up and deliver it to or for the company or on behalf of the company?

A   Not for the company.  I'm not really

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

understanding.                                                    12:35:51

Q   I'm just trying to understand if you did       12:35:52
anything at all for the company or in service of the             12:35:55
company.                                                          12:35:58

A   It's not for the company.                      12:36:01

Q   Okay, that's a qualification.                  12:36:05

Can you explain that to me?                                       12:36:07

A   Because I don't -- I don't understand          12:36:11
what you mean.  If I'm doing something for them?  No,             12:36:12
I'm not doing something for them.                                12:36:16

Q   Okay.  Did you -- so you never did             12:36:18
anything for Martin Defense Group, LLC?                           12:36:21

A   No, I'm not doing it for them.                  12:36:31

Q   Well, what in your mind did you do that        12:36:34
you're thinking of?                                              12:36:38

A   I'm thinking you're referring to things        12:36:39
that I did for Martin.                                           12:36:46

Q   Okay.  And what things are these?             12:36:48

A   Favors that I did for Martin.                   12:36:51

Q   And what specifically are you thinking         12:36:55
of?                                                              12:36:57

A   Like errands.                                   12:36:58

Q   Okay, what kinds of errands?                    12:36:59

What specific errands?                                           12:37:02

A   Like things he wanted me to do.                 12:37:04

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 96 of 160
PageID.7451
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 147
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   Can you name a few?

A   So, like, if he wanted me to buy cookies, right, he would ask me to buy the cookies for the company, for their business expense or whatever.

Q   Okay.  And how did you pay for these errands that you did for Martin?

A   I used a credit card.

Q   Was it your credit card?

A   When you say "my credit card" --

Q   Was your name on the credit card?

A   Yes.

Q   Did you pay the bill for the credit card?

A   I don't know.  I don't handle the finances.

Q   Who was the credit card from, meaning specifically, what credit card company was it?

A   American Express.

Q   And you don't know who paid the bill for that credit card?

A   No.

Q   What year or time frame would this have been?

A   I don't remember.

Q   Well, it certainly would have been before Martin was arrested in or around October of 2020,

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 97 of 160
PageID.7452
Page 148
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

correct?                                          12:38:36

A    What do you mean?                            12:38:37

When I was using the credit card?                12:38:38

Q    Yes.                                         12:38:38

A    When he was at the company.                  12:38:41

Q    So would it have been before October of      12:38:44
2020?                                             12:38:47

A    Yes.                                         12:38:48

Q    In the time period before October of         12:38:48
2020, did you have any credit cards for which you 12:38:54
personally paid the bills for?                    12:38:58

A    Are you saying that I'm writing a check?     12:39:00

Q    Or having money deducted on auto pay from    12:39:07
your account?                                     12:39:12

A    So Martin handles all finances.  I don't     12:39:12
know.                                             12:39:19

Q    And so it's your testimony that you have     12:39:19
no knowledge, understanding, or information as to the 12:39:23
source of funds that paid for credit cards that you 12:39:27
used prior to October 2020?                       12:39:30

A    Yes.                                         12:39:33

Q    Did you ever ask Martin where the funds      12:39:33
were coming from?                                 12:39:39

A    No.                                          12:39:40

Q    And why didn't you ask Martin where the      12:39:40

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 98 of 160
PageID.7453
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 149

funds were coming from?                                      12:39:50

A   Because I never did.                                     12:39:51

Q   As long as the bills were paid, it didn't               12:39:52
matter to you -- it wasn't a concern to you where the       12:39:59
funds came from?                                            12:40:03

A   As long as I can support my kids.                        12:40:04

Q   And did you ever have any conversations                 12:40:07
with Martin about the source of funds that paid for         12:40:11
amounts to support your kids?                               12:40:16

A   No.                                                     12:40:18

Q   At no time you had any type of                          12:40:18
conversation with Martin about the source of funds          12:40:23
that were being used to support your kids?                  12:40:26

A   I can't recall.                                         12:40:28

Q   What about the source of funds that were                12:40:30
being used to support your lifestyle?                        12:40:31

Did you ever have discussions with Martin                   12:40:34
about the source of those funds?                            12:40:36

A   No.                                                     12:40:38

Q   Were you ever curious as to the source of               12:40:38
those funds?                                                12:40:42

A   No.                                                     12:40:43

Q   Did you ever have a worry that the source               12:40:43
of funds that you and Martin had could be inadequate        12:40:49
to support your lifestyle or to support your                12:40:52

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 99 of 160
PageID.7454
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Page 150

children?

A   No.

Q   And so, then, is it correct to say that in your mind, it was just never a thought that you had to ask about where the money was coming from?

A   No.

MR. ALLISON:  And we'll mark this as Exhibit 17.

(Whereupon, Plaintiff's Exhibit No. 17 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  So, Tiffany, what I'm showing you is Exhibit 17, a summary of charges.  And I have the source documents, and we can look at them in a second, but I wanted to show you the summary first.  And these are charges made to your American Express card that the company paid for between February 28, 2019, and October 30, 2020, and the total is $16,532.12.

My first question is:  I want you to look at the expenses here and tell me whether or not you believe that these accurately reflect amounts you spent on the American Express card.

A   So I don't recognize any of these

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 100 of 160
PageID.7455

Page 151

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

specific expenses, but I do remember charging things. 12:43:13

For example, with Big Island Candies and Honolulu 12:43:19

Cookie Company. 12:43:25

MR. ALLISON:  And we'll do this as the 12:43:26

next exhibit in order. 12:43:29

THE WITNESS:  iTunes account -- that's 12:43:31

not me.  I don't have an iTunes account. 12:43:34

Q   (BY MR. ALLISON)  What about Neiman 12:43:35

Marcus? 12:43:38

A   Neiman Marcus -- it's possible that they 12:43:39

were -- it's possible that Martin might have asked me 12:43:47

to charge something for the business. 12:43:54

Q   From Neiman Marcus? 12:43:55

A   Yes, like gift baskets on the third 12:43:55

floor. 12:44:09

MR. ALLISON:  We'll do this next document 12:44:10

as Exhibit 18. 12:44:13

(Whereupon, Plaintiff's Exhibit No. 18 12:44:13

was marked for identification by the 12:44:13

deposition officer and is attached 12:44:13

hereto.) 12:44:18

Q   (BY MR. ALLISON)  Tiffany, these are -- 12:44:18

this isn't a full set.  You'll notice if you look at 12:44:31

the Bates stamp pages, they do jump a little bit, 12:44:35

because I only printed the selection that involves 12:44:39

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 101 of 160
PageID.7456
TIFFANY J. LAM, Vol II on 01/09/2026     Page 152
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

your credit card.

So the first thing I want to ask you, if you could flip to page 2, where it says "Tiffany Lam" at the bottom, it says, card ending 4-92439 -- is that the card that you had -- the AMEX card -- that we've been discussing?

A   I don't know.

Q   Do you have any reason to believe that that's not accurate?

A   No.

Q   And in looking at the charges specifically listed under your name on this American Express -- on these Americans express documents -- are there any charges here that you believe you did not make on the American Express card?

A   On this?

Q   I'll represent to you, Tiffany, that charges in Exhibit 18 are the same charges that are summarized on Exhibit 17.  I'm just providing you the source documents so that you can see them if you want to look at them.

A   So I know the iTunes.com is not me.  I did not charge those.  I don't have an iTunes account.  I could not have charged those.

Q   Did anybody else have access to your

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

credit card, your AMEX card?    12:45:57

A   Possibly.    12:46:01

Q   And who possibly had access to it?    12:46:02

A   Martin.    12:46:06

Q   Is Martin the only other person who had access to it?    12:46:09    12:46:13

A   I mean, anyone can have access to it, right, and the company has the numbers.    12:46:14    12:46:17

Q   So other than the iTunes charges, are there any charges here that you believe were not made by you?    12:46:20    12:46:26    12:46:29

A   The DCCA was not me.  I know that because I never used the credit card after Martin was arrest.    12:46:30    12:46:39

Q   Any others?    12:46:45

A   I don't recognize all the alcohol charges, like the vendors, but I did buy alcohol for the company, for the office, and for political people.    12:46:49    12:46:55    12:47:01    12:47:04

Q   So is it your testimony that none of these charges are personal expenses?    12:47:05    12:47:08

A   Yes, none of the charges that I made were personal expenses.    12:47:11    12:47:14

Q   And is it your testimony that you were authorized to make these charges by Martin?    12:47:15    12:47:23

A   I only used the credit card at the    12:47:26

direction of Martin.

Q    Okay.  You can put these documents to the side.  Did you ever help Martin pay any of his attorneys when --

A    What do you mean?

Q    -- when or after he was arrested?

A    No, I don't think so.

Q    Did you ever pick up checks and deliver checks to any of the attorneys?

A    No.

Q    Did you ever pick up any checks that were company money from company accounts and deliver them to attorneys for Martin?

A    No.

Q    So it's your testimony, then, that on October 13, 2020, you did not pick up a check for $250,000 from Merrill Lynch and made out to Jay Michael Green & Associates?

A    I did not.  I was sitting in Michael Green's office with Martin.

MR. ALLISON:  Do this as the next exhibit.

(Whereupon, Plaintiff's Exhibit No. 19 was marked for identification by the deposition officer and is attached

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 104 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7459    Page 155
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

hereto.)

Q   (BY MR. ALLISON)  So, Tiffany, let's first look at the second page with the Bates stamp ending in 5694 at the bottom, and this is a check made out for $250,000 to Michael Jay Green & Associates.

Do you see that?

A   I see it.

Q   Okay.  And if you could flip back to the first page, the cover is a memo from Merrill Lynch Wealth Management, and it says that the account name and address is Martin Defense Group, LLC, and the address 841 Bishop Street, Suite 1110, Honolulu, Hawaii 96813-3196.

Do you see that?

A   I see it.

Q   There's an account number provided: 145-03506.

Do you see that?

A   I see it.

Q   And that account number -- that is not account that belongs to you or Martin, correct?

A   I don't know.

Q   And based on the fact that the account name and address in the upper left-hand corner says,

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 105 of 160
PageID.7460
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 156

"Martin Defense Group, LLC," do you have reason to believe that this account being referenced here is anyone's other than Martin Defense Group, LLC?

A   No.

Q   Okay.  And then below that, for office, it says, "Merrill Lynch, Pierce, Fenner & Smith, Inc.", and there's an address:  1003 Bishop Street, Suite 2800, Honolulu, Hawaii 96813.

Do you see that?

A   I see it.

Q   Have you ever been to that Merrill Lynch office before?

A   Yes.

Q   Do you know where is it?

A   I think so.

Q   When was the last time you went there?

A   I can't remember.

Q   Was it five years ago or more?

A   I don't know.

Q   Okay.  And the amount here says "$250,000."

Do you see that on the right?

A   I see it.

Q   It says, "Check Payable To:  Michael Jay Green & Associates."

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 106 of 160
PageID.7461
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 157

Do you see that?                                    12:51:16

A   I see it.                                       12:51:17

Q   And there's a line there that says             12:51:17
"Picked Up By," do you see that?                   12:51:20

A   I see that.                                     12:51:21

Q   And it says "Tiffany Lam."                     12:51:22
That's you, correct?                               12:51:24

A   Yes.                                            12:51:26

Q   But you're disputing that you picked this      12:51:26
check up, correct?                                 12:51:30

A   Yes, my recollection was that Merrill          12:51:31
Lynch dropped it off.                              12:51:36

Q   And where is, based on your recollection,      12:51:36
where did they drop it off?                        12:51:40

A   At Michael Green's office.                     12:51:41

Q   Below the "Check Payable To:  Michael Jay      12:51:43
Green & Associates," it says:                      12:51:50
        "Please address any                        12:51:52
    inquiries concerning this notice               12:51:54
    to" -- and there's a manager name, "Rae        12:51:55
Cambonga."                                         12:51:55
        Do you see that?                           12:51:59

A   Yes.                                            12:52:00

Q   And then there's a pen ink initial that        12:52:00
looks like an R there next to it.                  12:52:07

Do you see that?

A   Yes.

Q   Do you know Mr. Cambonga?

A   Not to my knowledge.

Q   You don't recall meeting him previously?

A   No.

Q   So do you have any explanation as to why Merrill Lynch created a memo saying you picked up a check made out on the Jay Michael Green for $250,000 at their office at 1003 Bishop Street, Suite 2800, if your recollection is that that never happened?

A   I don't know.  My recollection is that Merrill Lynch -- a Merrill Lynch representative came to Michael Jay Green's office to drop it off, and Martin was there.

Q   How many times did that happen?

A   I don't know.  That was the only one I remember.

Q   Let me rephrase the question.

How many times do you recall that a Merrill Lynch representative came to Michael Green's office to drop off a check?

A   That was the only time I remember.

Q   And do you specifically remember the amount that the check that was dropped off?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   I think it was $250,000.   12:53:10

Q   Okay.  So it's your testimony that this bank document, like the other bank documents we looked at before, are wrong?   12:53:13 12:53:17 12:53:20

A   That's my recollection.   12:53:23

Q   Okay.  Do you have any documents or anything that supports your recollection?   12:53:24 12:53:29

A   I didn't think about looking for any documents.   12:53:32 12:53:35

Q   Well, you were asked in this case to produce all the documents you had that were relevant, right?   12:53:37 12:53:40 12:53:43

A   Right, but I didn't think it would be disputed.   12:53:44 12:53:48

Q   You didn't think what would be disputed?   12:53:49

A   My recollection.   12:53:52

Q   So because you didn't think your recollection would be disputed, you didn't search for any documents that were related to your recollection?   12:53:54 12:53:56 12:54:00

A   I just didn't think about it.   12:54:03

Q   Other than your recollection, you don't have any explanation as to why or how you can dispute this memo from Merrill Lynch that says you picked up this $250,000 check from Merrill Lynch on 10-13-2020, do you?   12:54:05 12:54:17 12:54:20 12:54:23 12:54:27

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 109 of 160
PageID.7464
Page 160

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   What did you say?                                    12:54:30

Q   I said other than your recollection, you            12:54:31
don't have anything else that can dispute the           12:54:34
information on this memo from Merrill Lynch that says    12:54:35
you picked up this $250,000 check for Michael Green      12:54:38
on the 13th of October 2020, do you?                     12:54:41

A   Correct.                                            12:54:44

Q   It's just your recollection?                        12:54:44

A   Yes.                                                12:54:48

Q   And you've testified quite often today              12:54:48
that you simply don't remember things that happened     12:54:50
five years ago, ten years ago, correct?                 12:54:54

A   Specific things like this, yes.                     12:54:57

Q   Specific things like taking and passing             12:55:00
the CPA exam?                                            12:55:02

A   I mean, that was over 20 years ago.                 12:55:04

Q   So you remember things from five years              12:55:07
ago, but not things from 20 years ago?                  12:55:12

MR. HIRONAKA:  Objection.  Argumentative.               12:55:13

Q   (BY MR. ALLISON)  Okay.  We'll move on.             12:55:15

I want to ask you now, Tiffany, about                   12:55:55
some e-mails that you sent and received, or may have    12:55:57
sent and received.  We'll start with this one.          12:56:03

MR. ALLISON:  Number 20?                                12:56:17

///                                                      12:56:17

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 110 of 160
PageID.7465
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 161

(Whereupon, Plaintiff's Exhibit No. 20
was marked for identification by the
deposition officer and is attached
hereto.)

Q   (BY MR. ALLISON)  Do you recognize these e-mails, Tiffany?

A   No.

Q   Do you know who the recipient and sender of these e-mails is, CA, and then Diehm, D-I-E-H-M?

A   Yes, it's one of Martin's -- Martin's employees, I guess.

Q   Okay.  And are these e-mails -- strike that.

At the bottom of page 1, the e-mail on the bottom, it's copied to the e-mail address tiffany808@gmail.com.

Do you see that?

A   Yes.

Q   That's your e-mail address, correct?

A   Yes.

Q   So do you know why this e-mail was copied to you?

A   I have no idea.

Q   The e-mail at the bottom discusses:

"A quick training session on

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

congressional approp process
appropriations 101 training
session."

Do you see that?

A   Yes.

Q   Did you attend that meeting on appropriations?

A   No.

Q   Do you recall receiving this e-mail?

A   No.

Q   Do you recall reading it?

A   No.

Q   Do you have any information on why Martin copied you on this e-mail?

MR. HIRONAKA:  He's asking if you know.

THE WITNESS:  Oh, sorry.  What was the question?

Q   (BY MR. ALLISON)  Do you know why you were copied on this e-mail?

A   I don't know why.

Q   There's a couple of names that are referenced at the end of the e-mail at the bottom of page 1, and it's Ed Case and his chief of staff, Tim Nelson.

Do you know who Ed Case is?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 112 of 160
PageID.7467
Page 163

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Yes, I've heard of him.

Q    Okay.  Have you ever met him before?

A    I don't think so.

Q    What about Tim Nelson?  Do you know him?

A    No.

Q    Okay.  We can put that one to the side.
Thank you.

MR. ALLISON:  Okay, we'll do this one as the next one in order.

(Whereupon, Plaintiff's Exhibit No. 21 was marked for identification by the deposition officer and is attached hereto.)

Q    (BY MR. ALLISON)  Earlier you testified that Lori Bofman, your friend, was also Martin's administrative assistant or secretary, correct?

A    Yes.

Q    Was she in that role as Martin's assistant on October 15, 2018, when she sent you the e-mail we're looking at marked as Exhibit 21?

A    I'm assuming so --

Q    And is that because the e-mail on the bottom to somebody named an account named Pro Image Bishop was sent from lbofman@navatecltd.com?

A    Yes.

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 113 of 160
PageID.7468
Page 164
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   And then Lori sends you an e-mail -- she forwards the e-mail -- and it says:

"Tiffany.  Let me know what you think of the foundation logo.  Keep in mind, it will be the blue foil embossed (raised)."

She sends off, "Lori."

Do you recall receiving this e-mail from Ms. Bofman?

A   I don't recall.

Q   Were you involved in the Navatek Foundation?

A   No, I was not.

Q   Could you flip to the second or third page?  And on the second or third page are logos for Navatek Foundation, correct?

A   Correct.

Q   And so in this e-mail that Lori is sending you, she's asking for your opinion on the foundation logo, correct?

A   Correct.

Q   And so you don't have any information or idea why Lori sent you this e-mail?

A   I don't.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 114 of 160
PageID.7469
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 165

Q    Do you recall receiving this e-mail?    01:02:05

A    I don't.    01:02:10

Q    Do you recall approving the Navatek    01:02:10
Foundation logos?    01:02:14

A    I don't think I did.    01:02:18

Q    Did you ever do any work on behalf of    01:02:20
Navatek Foundation?    01:02:24

A    No.    01:02:24

Q    Have you heard of Navatek Foundation    01:02:24
before?    01:02:26

A    I do not remember, meaning I don't think    01:02:27
I ever heard of it.    01:02:32

Q    Do you believe that Lori -- strike that.    01:02:33

Based on the contents of this e-mail, do    01:02:46
you understand this e-mail to be one that Lori meant    01:02:48
to send to you, and not to say Martin using your    01:02:50
account?    01:02:54

MR. HIRONAKA:  Objection.  Lacks personal    01:02:54
knowledge.    01:02:59

THE WITNESS:  Oh, sorry.  Did you have a    01:02:59
question?    01:03:17

Q    (BY MR. ALLISON)  Yeah, my question is:    01:03:17
Do you understand, reading this e-mail, that this was    01:03:17
an e-mail sent to you?    01:03:24

A    I see that it's sent to me.    01:03:24

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 115 of 160
PageID.7470
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 166

Q   Okay, when you searched your e-mails for documents to produce in response to the RPOD, did you find this e-mail?    01:03:26 01:03:29 01:03:34

A   I don't remember.    01:03:35

Q   Did you search for the name Lori Bofman?    01:03:35

A   I think the search was with Martin.    01:03:41

Q   So the only thing you searched for was the word "Martin"?    01:03:46 01:03:49

A   No, whatever the search asked for. Whatever my attorney told me.  I just can't remember.    01:03:51 01:03:54

Q   Did you research for the word "Navatek"?    01:04:00

A   If that's what you asked for.  I don't know what you asked of me.  I can't remember.    01:04:03 01:04:10

MR. ALLISON:  22.    01:04:35

(Whereupon, Plaintiff's Exhibit No. 22 was marked for identification by the deposition officer and is attached hereto.)    01:04:35 01:04:35 01:04:35 01:04:36

Q   (BY MR. ALLISON)  Tiffany, do you recognize this document?    01:04:38 01:04:43

A   Do I recognize what?    01:04:44

Q   The document we're looking at here.  The document marked as Exhibit 22.    01:04:47 01:04:49

A   No.    01:04:51

Q   Okay.  Well, I'll direct you to the --    01:04:52

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

I'll direct you to the second page at the top. And it says:

> "Plaintiff PacMar Technologies LLC, formally known as Martin Defense Group, LLC, first request for production of documents to defendant, Tiffany Jennifer Lam, a.k.a. Jenny Lam, and/or Tiffany Kao."

Does that refresh your recollection or knowledge of what this document is?

A    No.

Q    Have you ever seen this document before?

A    I don't recall ever seeing this.

Q    So it's your testimony that nobody ever provided this document to you?

A    It's possible. I mean, I get so many documents.

Q    Okay. Could we flip to page -- so there's numbers on the bottom, and if you get to page 20 and 21, it's after that, and it says, "documents requested" at the top.

Do you recall seeing this list of documents that were requested?

A    I can't remember.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 117 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7472    Page 168
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   So it's your testimony that you don't know if you ever saw this before?

A   If anything, my attorney would tell me, and I would get it from him.

Q   That wasn't my question, Tiffany.  My question was:  It's your testimony that you cannot say whether or not you've ever seen this document before with certainty?

A   Yes.  Normally, I don't read the documents.  My attorney does.

Q   And so you cannot tell me with any kind of certainty as to whether or not you searched for documents responsive to each of these enumerated categories of documents?

A   Actually, I remember Martin, Cliff, Lum Kee.  I think -- yeah, Hartman.

Q   Could you flip to number 48?

A   Yes.

Q   Number 48 asks for any and all documents or communications relating in any way to the operating agreements, articles of incorporation, corporate records, or documents, meetings, financial records, contracts, or other business records for Navatek Foundation.

Do you see that?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Mm-hm.

Q    So did you search for documents related to Navatek Foundation?

A    Yes, if my attorney told me to, I would have.

Q    My question wasn't whether your attorney may have told you to, and you would have.

My question is:  Did you do it?

A    I can't recall.

Q    So you don't know whether or not you searched your e-mail for the words "Navatek Foundation"?

A    I can't recall.

Q    If you had searched your e-mails for the word "Navatek Foundation," do you think you might have found the e-mail we found -- the e-mail marked as Exhibit 21 from Lori Bofman -- that discusses the Navatek Foundation?

MR. HIRONAKA:  Objection.  Calls for speculation.

Q    (BY MR. ALLISON)  But needless to say, you can't say today whether or not:  A, you have ever seen this RPOD, marked as Exhibit 22; or B, whether or not you ever searched for the document, or the e-mail, marked as Exhibit 21?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   I mean, normally, I just have the attorneys do it, and they tell me what to do.

Q   And so is it your testimony that the attorneys did the document searching for you?

A   Not the document searching, but they would tell me what to do.

Q   Okay.  And did they tell you to search for documents relating to Navatek Foundation?

A   I can't remember.

Q   Did they tell you to search for -- there are 62 categories of documents.

    Did they tell you to search for all 62 categories of these documents?

A   I can't recall.

Q   And so as you sit here today, you're just not sure whether or not you have?

A   Yeah, I'm not sure.  I mean, I do so much.  I take care of two kids.

Q   I understand.  Okay, we can put those off to the side.  We'll do this one next.

    (Whereupon, Plaintiff's Exhibit No. 23 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  If you could take a

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

look at the header at the top.  We'll start there, Tiffany.

This is an e-mail from Martin sent to Chris Lam, and the e-mail address is HTSHawaii2@gmail.com, and copied on it is tiffany808@gmail.com, correct?

A   Yes.

Q   And, again, we've established that tiffany808@gmail.com is your e-mail address, correct?

A   Yes.

Q   This e-mail was sent on April 1, 2020.

Do you recall receiving this e-mail from Martin?

A   I do not.

Q   You know, a moment ago, we looked at Exhibit 22, which was the RPOD.

Did you search your e-mails -- your e-mail address your e-mails -- from Martin related to Navatek when you produced documents in response is to the RPOD?

A   Yes.

Q   So did you produce this e-mail?

A   I don't remember.

Q   I'll represent to you that you did not.

So if you did not produce this e-mail, do

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 121 of 160
PageID.7476
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 172

you have an explanation as to why you did not?    01:11:50

A   I don't know.    01:11:55

Q   Do you believe -- strike that.    01:11:56

Were you involved in SBA Economic Injury    01:12:06
Disaster Loan advancements of up $10,000 on behalf of    01:12:13
the company?    01:12:16

A   No.    01:12:16

Q   And so you can't say why Martin copied    01:12:16
you on this e-mail?    01:12:22

A   So I noticed when there's copies, I don't    01:12:24
think I read those, because I don't remember ever    01:12:28
reading ones that I was just copied on.    01:12:33

Q   Okay.  Who is Chris Lam?    01:12:36

A   My brother.    01:12:38

Q   And do you know or have an understanding    01:12:39
as to why Martin would be e-mailing Chris Lam on    01:12:43
April 1, 2020, about disaster relief?    01:12:47

A   Why would I know?  Do I know why?    01:12:52

Q   Yeah.  Do you have any understanding of    01:12:57
why this e-mail would have been sent?    01:13:00

A   No, I don't know.    01:13:02

Q   In the e-mail, Martin addresses Chris Lam    01:13:03
as "Toby."    01:13:08

Does Chris go by the name Toby?    01:13:09

A   Yes.    01:13:11

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 122 of 160
PageID.7477
TIFFANY J. LAM, Vol II on 01/09/2026                                                Page 173
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

MR. ALLISON:  Okay, we'll do this as the next one.

(Whereupon, Plaintiff's Exhibit No. 24 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  So if you could disregard the e-mail at the top that Martin sent -- it appears to himself -- and look at the e-mails below that:  the first forwarded message, sent May 1, 2020, at 5:51 is tiffany808@gmail.com to martin.kao@gmail.com.

Do you see that?

A   I see it.

Q   So why did you forward that e-mail about SBA loan applications to Martin on May 1, 2020, at 5:51 p.m.?

A   I don't recall this e-mail.

Q   So you can't say why you forwarded this to Martin?

MR. HIRONAKA:  Objection.  Assumes facts not in evidence.  Misstates her answer.

Q   (BY MR. ALLISON)  Well, this is your e-mail address, right, Tiffany, tiffany808@gmail.com?

A   Yes.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 123 of 160
PageID.7478
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 174
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   Okay, so is it your testimony that you didn't send this e-mail, but somebody else sent the e-mail?

A   I don't know.  If it's a forwarded e-mail, sometimes Martin tells me to forward things sometimes.

Q   And then the e-mail below that is from the Small Business Administration to your e-mail address, tiffany808@gmail.com, sent about 20 minutes prior May 1, 2020 at 5:32 p.m.

Do you see that?

A   Mm-hm, yes.

Q   Do you have an explanation to why the Small Business Administration would have e-mailed you an e-mail about COVID-19 pandemic relief on May 1, 2020, at 5:32 p.m.?

A   I have no idea.

Q   Okay.  Going back to Exhibit 24 for just a second.  When you searched your the records to produce documents in response to the RPOD that we looked at earlier and marked as Exhibit 22, did you search for e-mails relating to Martin and Small Business Administration applications?

A   Yes, I searched "Martin."

Q   Did you find and produce this document

01:14:54
01:14:57
01:15:01
01:15:02
01:15:08
01:15:12
01:15:13
01:15:17
01:15:20
01:15:25
01:15:28
01:15:30
01:15:32
01:15:38
01:15:41
01:15:47
01:15:50
01:15:50
01:16:12
01:16:15
01:16:19
01:16:24
01:16:29
01:16:32
01:16:35

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 124 of 160
PageID.7479
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 175

marked as Exhibit 24, these e-mails we've been looking at?

A   I don't know.

(Whereupon, Plaintiff's Exhibit No. 25 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  The document we've marked as Exhibit 25 are additional e-mails.  Not looking at the top header, but the second to top header, under the word "forwarded message," it says it's from Tiffany Lam, and the e-mail address is tiffany808@gmail.com, sent May 6, 2020, to Martin Kao.  Again, it's martin.kao@gmail.com, and the subject is, "Fwd:  Navatek Writeup V2."

Do you recall sending that e-mail to Martin?

A   I don't.

Q   Do you recall what Navatek Writeup V2 is?

A   I do think I remember.

Q   What is it?  Tell me about it.

A   I think Martin was asking my brother for help.

Q   Okay, and what was he asking for help about?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 125 of 160
PageID.7480
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 176
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   I don't know, but I know he was asking for help.

Q   And so were you serving as a go-between, or middle person, sending messages between Martin and your brother?

A   No, I don't think so.

Q   Can you explain why these e-mails were being sent to your e-mail address?

A   I don't know.

Q   At the bottom in the signature e-mail signature at the very bottom it says, "Chris Lam Principal Home Theater Solutions," correct?

A   Yes.

Q   And is that the same Chris Lam that was in the e-mails we looked at a moment ago that goes by Toby?

A   Yes.

Q   What is this company that he was principal for Home Theater Solutions?

A   That's his company.

Q   Does he still have that company?

A   Yes.

Q   And I noticed the address for Home Theaters Solutions is 2323 Kahala Street.

Is that also your address?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 126 of 160
PageID.7481
TIFFANY J. LAM, Vol II on 01/09/2026                                        Page 177
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   Yes.

Q   And does Toby, or Chris Lam, live with you?

A   Yes.

Q   And is that also the address for his company, Home Theaters Solutions?

A   Yes.

Q   Has your brother, Chris Lam, who goes by Toby, has he ever worked for the company during the time when Martin was at the company?

A   I don't know, but I don't think so.

(Whereupon, Plaintiff's Exhibit No. 26 was marked for identification by the deposition officer and is attached hereto.)

Q   (BY MR. ALLISON)  Okay.  What we've marked as Exhibit 26 is an e-mail from Lori Bofman sent to you, Tiffany Lam, on February 12, 2020, and the subject is "Fw:  New Office Summary.xlsx."

Do you see that at the top?

A   Yes.

Q   And there's an attachment that says, "New Office Summary.xlsx?"

Do you see that?

A   I see it.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 127 of 160
PageID.7482
TIFFANY J. LAM, Vol II on 01/09/2026                                        Page 178
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Q   And if you flip to the pages in the back, you'll see a copy of that Microsoft Excel spreadsheet that was in the subject of the attachment.

So do you recall receiving this e-mail from Lori Bofman on February 12, 2020?

A   No.

Q   Do you -- could you read to yourself -- no need to read it out loud -- but just quickly review what Lori writes to you here.

A   Okay.

Q   So it looks like Lori is e-mailing you sort of an update on what she's doing for the company in her employment.

Is that accurate?

A   To me, it sounds like she's bragging.

Q   Yeah, a little bit.  I agree.

A   To me.

Q   Are these the kinds of e-mails she would typically send you because you're friends?

A   No.

Q   Do you recall receiving this e-mail from Lori?

A   No.

Q   When you search your e-mails to respond to the RPOD, that's document 22 we looked at earlier,

01:21:00
01:21:03
01:21:08
01:21:13
01:21:15
01:21:17
01:21:17
01:21:22
01:21:25
01:21:37
01:21:37
01:21:40
01:21:44
01:21:44
01:21:47
01:21:49
01:21:51
01:21:52
01:21:56
01:21:58
01:21:58
01:22:01
01:22:01
01:22:02
01:22:07

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 128 of 160
PageID.7483
TIFFANY J. LAM, Vol II on 01/09/2026    Page 179
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

did you search for documents from Lori?    01:22:11

A   Possibly.    01:22:14

Q   Was this one you found and produced?    01:22:15

A   I don't know.    01:22:20

Q   Do you recall, when you searched your    01:22:21
records to produce documents in response to the RPOD,    01:22:39
do you recall if you found any e-mails and produced    01:22:42
any e-mails?    01:22:44

A   I produced e-mails.    01:22:45

(Whereupon, Plaintiff's Exhibit No. 27    01:22:45
was marked for identification by the    01:22:45
deposition officer and is attached    01:22:45
hereto.)    01:22:46

Q   (BY MR. ALLISON)  Are you familiar with    01:22:46
this e-mail chain that we've marked as Exhibit 27?    01:23:32

A   No.    01:23:35

Q   At the very bottom is an e-mail from    01:23:41
Roland Chang, an e-mail address,    01:23:45
roland.chang@cpb.bank, sent to your e-mail address,    01:23:50
tiffany808@gmail.com.    01:23:54

Do you see that?    01:23:54

A   Yes.    01:23:54

Q   And the subject is "Letter to Society of    01:23:55
Young Women Scientists and Engineers LLC. "    01:23:55

Do you see that?    01:23:59

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 129 of 160
                                                    PageID.7484
TIFFANY J. LAM, Vol II on 01/09/2026                                                Page 180
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A   Yes.                                                                    01:24:00

Q   And the e-mail starts:                                                 01:24:00

"Good afternoon, Tiffany.                                                   01:24:03

I tried" -- and he goes on --                                              01:24:04

"and tried calling you to inform                                           01:24:06

you that Glenn Chang, CPB's Chief                                          01:24:08

Legal Officer, requested that I                                            01:24:11

send you the above-referenced                                              01:24:13

letter.  The letter is in regards                                          01:24:15

to a complaint filed with the                                              01:24:16

Federal Elections Commission (see                                          01:24:17

attachment above)."                                                        01:24:20

Do you see that?                                                           01:24:20

A   Yes.                                                                    01:24:20

Q   You don't recall receiving this e-mail?                                01:24:21

A   I don't recall.                                                         01:24:23

Q   Do you know who Roland Chang is?                                        01:24:24

A   No.                                                                     01:24:29

Q   Have you ever spoken to, or communicated                               01:24:29
with, Roland Chang?                                                        01:24:35

A   I don't think so.                                                       01:24:35

Q   What about Glenn Chang, CPB's Chief Legal                              01:24:37
Officer, at the time?                                                      01:24:43

A   I don't recognize these people.                                        01:24:45

Q   Okay.  And then above that, it says that                               01:24:46

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 130 of 160
PageID.7485
TIFFANY J. LAM, Vol II on 01/09/2026                                        Page 181
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

this e-mail was forwarded from your e-mail address, tiffany808@gmail.com, to martin.kao@gmail.com.

Do you see that?

A    Yes.

Q    Do you recall forwarding this e-mail to Martin?

A    No, I don't recall forwarding it to him, but he tells me to forward things to him sometimes.

Q    So this potentially was an e-mail you received, and Martin told you to forward it to him, and you didn't look at it; you just forwarded it over?

A    It's possible.

Q    Would you not have read the body of the e-mail that references a bank's chief legal officer and the complaint filed with the Federal Election Commission?

A    If he told me to forward it, I wouldn't read it.

Q    You would just, as you said, forward it without reading a single word in the e-mail?

A    Yes.  That means it's not for me.

Q    Is it typical that you receive e-mails in your e-mail address at tiffany808@gmail.com that are not for you?

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 131 of 160
PageID.7486
TIFFANY J. LAM, Vol II on 01/09/2026                                    Page 182
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    Yes.

Q    Why is that typical?

A    Martin tells me to forward things to him.

Q    And you never questioned Martin on why he's operating or using your e-mail address in this manner?

A    No, he's my husband.

Q    And it never gave you any concern that there was e-mail traffic involving federal election complaints that were being sent to you, that you were being asked to forward, and you gave it no thought other than do what Martin just said?

A    I didn't know.

Q    Well, part of the reason you didn't know is because you just did what Martin said without question, right?

A    Yes.

Q    Looking back, do you regret that?

MR. HIRONAKA:  Objection.

THE WITNESS:  I don't want to answer that.

Q    (BY MR. ALLISON)  When you received and/or forwarded this e-mail at Martin's direction, did you open the attachment titled "Letter to Society of Young Women Scientists and Engineers LLC.pdf"?

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

A    When he asks me to forward things, I don't read it.

Q    So then same question as the other attachment:  When you forwarded this at Martin's direction, did you look at or open the attachment titled "Federal Election Commission - Complaint.Pdf"?

A    What do you mean?  When I forwarded it?

Q    When you received it and/or forwarded this e-mail, did you forward either attachment?

A    I don't think I opened the attachments.

Q    Did you read the line that said "attachments" to read what the attachments were titled?

A    So -- okay.  So let me make this clear. So when he tells me to forward things, throughout our lives together, we have done it many ways.  For example, he might tell me, "Forward it," and he'll tell me the sender.  Or, I'm at the computer at home, because it's always open, he might point to it and say -- he might tell me.  He might show me.  He might do it himself.  I don't keep track of him.

Q    I see.  So if Martin directs you to send an e-mail to somebody, you just simply do it?

A    Yes.

Q    And you have never once questioned him on

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 133 of 160
TIFFANY J. LAM, Vol II on 01/09/2026    PageID.7488    Page 184
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

why you are sending that e-mail, what the purpose is, or anything about the e-mail?

A   I don't find a reason to.

Q   Does Martin ever -- has Martin ever asked you to sign documents?

A   Sign documents -- yes.

Q   And when Martin asks to sign a document, do you review it first?

A   Sometimes no.

Q   So similar to how Martin asks you to forward e-mails, sometimes if he asks to you sign a document, you would just do it without question and without reading the document?

A   Yes.

Q   Stated differently, you would completely rely on Martin to make all determinations as to what you were signing and whether or not you should sign it?

A   Yes.

Q   Earlier, we looked at a number of checks and banking documents related to the Society of Young Women Sceientists and Engineers, LLC, and you testified broadly that you didn't sign those documents, correct?

A   Correct.

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 134 of 160
PageID.7489
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 185

Q   Despite the fact that many of them had your full name on them, some of them had your middle name and last name, correct?

A   Correct.

Q   Is it possible that you did sign those documents, and they were done when Martin asked you to sign them, and you didn't read them, and you just signed them?

A   No, impossible.

Q   And how can be so sure that that's impossible?

A   Because I looked at the signature.

Q   Because that's not your signature?

A   Yeah.

Q   That's your testimony?

A   Yes.

MR. ALLISON:  Okay.  I'm going to take a five-minute break.  I'm going to look at the last few documents.

THE VIDEOGRAPHER:  Please stand by.  The time is 1:31 p.m., and we're off the record.

(Whereupon, a recess was taken from 1:31 p.m. to 1:40 p.m.)

THE VIDEOGRAPHER:  The time is 1:40 p.m., and we're back on the record.

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 135 of 160
PageID.7490
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 186

Q   (BY MR. ALLISON)  Okay.  Tiffany, back on the record.  Same rules apply.

A   Yes.

Q   I want to ask you about how many properties you and Martin own.

Can you list them for me?

MR. HIRONAKA:  I'll object as to relevance.

MR. ALLISON:  That's fine.

Q   (BY MR. ALLISON)  Please answer the question.

MR. HIRONAKA:  And also it's confidential.

MR. ALLISON:  How is it confidential?  It's a public matter of public record of who owns the property.  It's literally recorded publicly.

MR. MIYOSHI:  Can we go off the record maybe just one second?  And I'm not meaning to be obstructionist about this.  Can we just go off -- just 'cause I don't want to override -- I mean, Randy's the one that's making the objections.

MR. ALLISON:  Then it's not proper for you to make the objection if Randy's the one handling --

MR. MIYOSHI:  Then let me just confer

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 136 of 160
PageID.7491
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 187

with Randy one second.

MR. HIRONAKA:  Yeah, our objection is legal based upon not -- basically treating it -- there's no judgment right now.  So the objection is that this is not, you know -- these aren't proper questions.  So I'm going to instruct Tiffany not to answer these.

MR. ALLISON:  Okay, fine.  We'll do it this way.

Q   (BY MR. ALLISON)  Are you familiar with the property at the address 2323 Kahala Street?

A   Yes.

Q   Who lives there currently?

A   I live there.

Q   Who else?

A   My two kids.

Q   Anybody else?

A   My brother's there.

Q   Anybody else?

A   My mom.

Q   Anybody else?

A   No.

Q   Who lives at the property at 1026 Waiiki Street?

A   My mother and father-in-law.

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 137 of 160
PageID.7492
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 188

Q   Who lives at the property 1198 Ikena Circle?

A   No one lives there.

Q   The property's vacant?

A   (Nodding head.)

Q   And who lives at the property 4902 Kahala Avenue?

A   The property's vacant.

Q   The property at 1198 Ikena Circle, how long has that been vacant for?

A   I don't recall.

Q   Can you estimate?  Has it been one year, two years, three years?

A   I can't.

Q   What about the property at 4902?

How long has that been vacant for?

A   I can't recall.

Q   The property at 1198 Ikena Circle, why is it vacant?

A   I don't know.  I don't understand the question.

Q   What is the reason?

Why the property is vacant?

Is there a reason?

A   No, I don't really understand the

01:42:43
01:42:52
01:42:52
01:42:57
01:43:08
01:43:10
01:43:12
01:43:12
01:43:15
01:43:21
01:43:25
01:43:25
01:43:30
01:43:31
01:43:32
01:43:35
01:43:38
01:43:39
01:43:46
01:43:47
01:43:52
01:43:55
01:43:56
01:44:00
01:44:01

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 138 of 160
PageID.7493
TIFFANY J. LAM, Vol II on 01/09/2026                                              Page 189
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

question.

Q   Who makes the decision as to whether or not the property at 1198 Ikena Circle is vacant?

Is that your decision to make?

A   What do you mean, is it my decision?

Q   Well, who decides what is done with that property?

Who decides the use of what that property is used to?  Do you decide or Martin decides?

A   Probably Martin.

Q   So is your testimony that Martin has decided that property will be vacant?

MR. HIRONAKA:  I'm going to object.  Same objections as before.

MR. ALLISON:  There's no possible objection here.  This has nothing to do with judgments.

MR. HIRONAKA:  Well, this is being treated as a judgment debtor exam, Grant, and these questions -- I'm not going to have her answer these questions.

MR. ALLISON:  Okay, very well.  Those are the end of my questions.

Tiffany, thank you very much for your time today.  I will advise you that you are going to

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 139 of 160
PageID.7494
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 190

have the opportunity to review this transcript and

make changes to it.  If you do make changes to it, I

will then have the opportunity to call you back into

another deposition and ask you about those changes.

So it's going to be up to you as to

whether or not you do that.

MR. HIRONAKA:  We'll take signature

through our office.  Thank you.

MR. ALLISON:  Okay, with that, I think we

can go off the record.

THE VIDEOGRAPHER:  Yeah, before we get

off the record, will the court reporter get the

transcript orders?

THE DEPOSITION OFFICER:  Will you be

ordering a transcript?

MR. MIYOSHI:  Yes, digital only.  Digital

is fine.

THE DEPOSITION OFFICER:  Okay, thank you.

THE VIDEOGRAPHER:  Would you like a copy

of the video as well?

MR. MIYOSHI:  Yeah, we don't need a copy

of the video.

MR. ALLISON:  And we'll take the

transcript and video.

THE VIDEOGRAPHER:  The time is 1:46 p.m.

and the deposition is concluded.  We're off the    01:45:53

record.    01:45:56

    (Whereupon, the proceedings

    concluded at 1:45 p.m.)

       -o0o-

Deponent's Declaration

I certify under penalty of perjury that the foregoing is true and correct.

Executed at _____ on _____.


_____
(Signature of Deponent)

Case 1:22-cv-00283-LEK-WRP     Document 343-20     Filed 04/27/26     Page 142 of 160
PageID.7497
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Page 193



I, CARLENE SASAKI, Certified Court Reporter, Certificate No. 544, do hereby declare:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure and the deposition is a true record of the testimony given by the witness.

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to text under my direction.

(X)  That the witness was requested to review the transcript and make any changes to the transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

( )  Signature is waived.

( )  The changes made by the witness are appended to the transcript.

( )  No request was made that the transcript be reviewed pursuant to Section 30(e0 of the Federal Rules of Civil Procedure.

I further declare that I have no interest in the event of the action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Witness my hand this 21st day of January, 2026.

_____

CARLENE SASAKI, HAWAII CSR 544, RPR
iDepo Hawaii, LLC
808-664-6677

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

ERRATA LIST

PAGE   LINE   CORRECTION        REASON

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

_____ _____ _____ _____

        I, undersigned, do hereby certify that
I have read the foregoing deposition, and find it to
be a true and accurate transcription of my testimony,
with the above-noted corrections,

    If any:

_____    _____

    Signature of Deponent        Date

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 144 of 160
PageID.7499
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.    Index: $10,000–2026

**Exhibits**

**Exhibit 1** 57:4 74:12,18,23

**Exhibit 2** 57:6 87:19,20

**Exhibit 3** 57:9 89:12,17 91:4

**Exhibit 4** 57:11 93:1 94:15

**Exhibit 5** 57:14 94:20 118:16, 19 122:25 123:7

**Exhibit 6** 57:17 96:22

**Exhibit 7** 57:19 99:12,17

**Exhibit 8** 57:22 114:1,6 123:16,18

**Exhibit 9** 58:4 116:14 123:4, 13

**Exhibit 10** 58:6 125:22

**Exhibit 11** 58:8 128:6

**Exhibit 12** 58:10 132:8

**Exhibit 13** 58:12 137:19,24 139:4

**Exhibit 14** 58:14 138:12

**Exhibit 15** 58:16 141:2

**Exhibit 16** 58:18 142:14

**Exhibit 17** 58:20 150:8,9,14 152:19

**Exhibit 18** 58:22 151:17,18 152:18

**Exhibit 19** 58:24 154:23

**Exhibit 20** 59:4 161:1

**Exhibit 21** 59:6 163:10,20 169:17,25

**Exhibit 22** 59:9 166:15,23 169:23 171:16 174:21

**Exhibit 23** 59:11 170:21

**Exhibit 24** 59:13 173:3 174:18 175:1

**Exhibit 25** 59:17 175:4,9

**Exhibit 26** 59:19 177:12,17

**Exhibit 27** 59:22 179:10,15

**$**

**$10,000** 172:5

**$150,000** 101:11

**$16,532.12** 150:20

**$2,500** 126:4

**$250,000** 154:17 155:5 156:21 158:9 159:1,24 160:5

**$5,000** 127:3

**-**

**--the** 101:11

**-o0o-** 60:4 191:5

**0**

**0153** 97:18

**1**

**1** 74:12,18,23 75:10 123:18 124:14 161:14 162:23 171:11 172:17 173:10,16 174:10,15

**10** 125:22

**10-13-2020** 159:24

**1003** 156:7 158:10

**101** 162:2

**1026** 187:23

**10:35** 102:16,18

**10:49** 102:18,20

**11** 75:11,21 128:6

**11-** 81:15

**1110** 155:13

**1111** 60:12

**1164** 60:12

**1198** 188:1,9,18 189:3

**11:43** 144:8,10

**12** 71:4 132:8,12,13 177:18 178:5

**12-10-2019** 93:16

**12-year-old** 81:16

**12:34** 144:10,12

**13** 71:4 137:19,24 139:4 154:16

**13th** 160:6

**14** 70:18 138:12

**145-03506** 155:18

**15** 141:2 163:19

**16** 142:14

**16th** 143:12

**17** 150:8,9,14 152:19

**18** 151:17,18 152:18

**1820** 101:10 130:5

**19** 154:23

**1:22-cv-00283-lek-wrp** 60:24

**1:31** 185:21,23

**1:40** 185:23,24

**1:45** 191:4

**1:46** 190:25

**2**

**2** 87:19,20 152:3

**20** 160:16,18,24 161:1 167:21 174:9

**2001** 78:22

**2003** 75:11,21

**2011** 76:2,7

**2018** 163:19

**2019** 89:7 90:25 101:12 130:5 150:19

**2020** 85:25 86:24 87:5,9 97:25 98:4 140:9,12,17 141:8, 21 142:9 143:13 147:25 148:7,10,20 150:19 154:16 160:6 171:11 172:17 173:11, 16 174:10,16 175:13 177:18 178:5

**2026** 60:2,17

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 145 of 160
PageID.7500
TIFFANY J. LAM, Vol II on 01/09/2026                                      Index: 21–agree
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

**21** 163:10,20 167:21 169:17, 25

**22** 130:5 166:14,15,23 169:23 171:16 174:21 178:25

**23** 170:21

**2323** 65:11 176:24 187:11

**2394** 88:25 133:6

**24** 140:11,17 141:8,21 142:9 173:3 174:18 175:1

**25** 175:4,9

**26** 89:6 177:12,17

**27** 101:11 179:10,15

**28** 150:19

**2800** 156:8 158:10

---

**3**

**3** 89:12,17 91:4

**30** 150:19

**307A** 95:12,16

**31** 76:1,7

**335** 133:5

---

**4**

**4** 93:1 94:15

**4-92439** 152:4

**48** 168:17,19

**4902** 188:6,15

---

**5**

**5** 94:20 118:16,19 122:25 123:7

**5694** 155:4

**5:32** 174:10,16

**5:51** 173:11,17

---

**6**

**6** 96:22 175:13

**62** 170:11,12

---

**7**

**7** 97:25 98:4 99:12,17

**700** 60:25

---

**8**

**8** 114:1,6 123:16,18

**841** 155:13

---

**9**

**9** 60:2,17 116:14 123:4,13

**96804** 89:1 133:6

**96813** 60:13 61:1 95:13 156:8

**96813-3196** 155:14

**96822** 65:12

**9:30** 60:3,18

**9:44** 72:6,8

**9:56** 72:8,9

---

**@**

**@SYWSE** 127:20,23

---

**A**

**a.k.a.** 60:19 167:8

**a.m.** 60:3,18 72:6,8,9 102:16, 18,20 144:8,10

**above-referenced** 180:8

**access** 80:20,21,23,25 81:5, 8,16 82:2 125:5,9 152:25 153:3,6,7

**account** 80:20,22,24 81:6,9, 17,22 82:3,7,18 83:1 85:2,5,8, 11,18 93:23 95:6 98:5,10,13 115:3,11,15 117:3 118:1,5,21 119:2,13 122:3 136:10 148:14 151:6,7 152:24 155:11,17,21, 22,24 156:2 163:23 165:17

**Accountant** 74:9

**accounting** 71:12 73:20 74:5 77:6,23 79:11

**accounts** 81:19 82:4 121:20 124:24 125:5,6,8,10 154:12

**accurate** 63:9,12 66:14 67:2 70:7 71:14 74:7 78:12,15 80:18 101:22 112:17 122:1 131:16 137:14 144:20 152:9 178:14

**accurately** 150:23

**action** 60:15

**active** 134:17,20

**add** 84:17

**additional** 126:2,3 127:9 141:6 175:9

**address** 60:12 65:9 79:25 80:1,3,9,18 84:24 88:15,24 89:3 95:12 97:20,21 115:21, 22 127:15,20 130:17 133:5,7, 10 155:12,13,25 156:7 157:18 161:15,19 171:4,9,18 173:24 174:9 175:12 176:8,23,25 177:5 179:18,19 181:1,24 182:5 187:11

**address-change** 97:4

**addresses** 84:20 172:22

**administer** 61:5

**Administration** 174:8,14,23

**administrative** 104:8,12,17, 23 163:16

**admit** 121:22 122:6

**adult** 105:14

**advancements** 172:5

**advise** 189:25

**Affairs'** 75:4 88:8

**affirm** 61:13

**afternoon** 108:5 180:3

**age** 71:6

**agency** 71:1 144:2

**agent** 131:21 141:14 142:25

**Agent/member** 130:18

**agree** 63:9 75:20 77:15 91:9, 15 112:20,25 113:7 117:5,12

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 146 of 160
PageID.7501
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Index: Agreement–Big

119:8 120:14,21 121:5,10,21
122:16 123:6 131:25 178:16

**Agreement** 89:22

**Agreement-11269.docx.**
128:18

**agreements** 168:21

**alcohol** 153:15,16

**Allison** 61:6,24 62:7,9 72:3,
11 83:13,18 84:19 87:18,24
89:10,16 92:23 93:5,20,24
94:18,24 96:21 97:1 99:16,22,
24 102:11,21 113:12,16,22
114:5 116:12,18 117:20
122:22,24 125:21 126:1
128:4,10 131:4,5 132:6,13,15
137:17,23 138:10,16 141:1,6
142:12,18 144:4,13 145:8
150:7,13 151:4,8,16,22
154:21 155:2 160:20,24 161:5
162:18 163:8,14 165:22
166:14,19 169:21 170:25
173:1,7,23 175:8 177:16
179:14 182:22 185:17 186:1,
9,10,14,22 187:8,10 189:15,
22 190:9,23

**ambiguous** 117:17

**Amendment** 63:2,8

**American** 147:17 150:17,24
152:12,15

**Americans** 152:13

**AMEX** 152:5 153:1

**amount** 72:19 101:11 156:20
158:25

**amounts** 149:9 150:23

**and/or** 60:20 167:8 182:23
183:8

**annual** 76:17

**anyone's** 156:3

**anytime** 110:14,17

**appearances** 61:4

**appearing** 61:6,9

**appears** 123:6,7 173:9

**applications** 173:16 174:23

**apply** 72:12 102:22 144:14
186:2

**approp** 162:1

**appropriations** 162:2,7

**approving** 165:3

**approximate** 67:8

**approximately** 69:14 71:2,6,
20 72:15 82:15 108:4 140:7

**April** 171:11 172:17

**area** 106:12

**argumentative** 117:18
122:21 160:19

**arranged** 145:16

**arrest** 140:8 153:13

**arrested** 85:24 147:25 154:6

**articles** 88:9 168:21

**asks** 168:19 183:1 184:7,10,
11

**assistant** 104:6,8,12,17,24
105:8,9 111:1,6 114:18
163:16,19

**Associates** 154:18 155:6
156:25 157:17

**Assumes** 117:17 173:21

**assuming** 135:20,21 163:21

**attached** 74:25 87:22 89:14
93:3 94:22 96:24 99:14 114:3
116:16 125:24 128:8 132:10
137:21 138:14 141:4 142:16
150:11 151:20 154:25 161:3
163:12 166:17 170:23 173:5
175:6 177:14 179:12

**attachment** 128:16 177:22
178:3 180:12 182:24 183:4,5,
9

**attachments** 183:10,12

**attend** 145:16 162:6

**attending** 105:12

**attorney** 101:23 102:1,5,9
133:20,24 134:8,10,14 139:19
166:10 168:3,10 169:4,6

**attorney's** 115:22

**attorneys** 67:22,25 68:16
69:7,8,10,17,25 112:19 116:4,
8 154:4,9,13 170:2,4

**Aulani** 106:18

**authority** 118:4 121:19 122:2

**authorized** 95:4 119:5
141:16 153:24

**auto** 148:13

**Avenue** 67:15 188:7

**aware** 82:6 101:7,9,14,19
111:25 112:2,3,7 115:17

**B**

**baby-sat** 111:8

**back** 72:10,12 90:25 91:4
98:7,9 102:20,22 113:15
118:12 122:25 123:16 140:2
143:21 144:12,14 155:9
174:18 178:1 182:18 185:25
186:1 190:3

**bank** 79:6 93:22,23 97:5
98:14 117:3,21 118:1,5 120:6
121:2,3,6,19 122:3 125:5,10
159:3

**bank's** 181:15

**banking** 116:23 117:3,14,25
122:16 184:21

**based** 83:9 117:14 120:21,23
121:7,25 155:24 157:13
165:14 187:3

**basic** 64:10 73:17 79:3

**basically** 187:3

**basis** 64:25 65:3,21 91:25

**baskets** 151:14

**Bates** 151:24 155:3

**behalf** 61:1,7 76:21,24
118:22 135:9,25 144:23
145:14,23 165:6 172:5

**believed** 83:11

**believes** 121:3

**belonged** 137:2,4,14

**belongs** 155:22

**beneficial** 118:19 120:7
121:19

**Big** 151:2

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 147 of 160
PageID.7502
TIFFANY J. LAM, Vol II on 01/09/2026                    Index: bill–communicated
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

**bill** 134:11,12,14,21,25 139:1 140:5 147:12,18

**bills** 134:21 148:11 149:3

**Bishop** 60:12 61:1 155:13 156:7 158:10 163:24

**bit** 151:24 178:16

**blue** 164:6

**body** 181:14

**Bofman** 104:3,5,12,18,21 105:2,5,16,21 107:1 108:8 109:8,11,24 110:8,10,14,21, 23,25 111:1,5,8,10,14,19,23 112:1,4,8,13,21 113:7 114:13, 17,25 115:14,18,24 116:5,7 123:17,19 124:18 127:14,19, 23 128:1 163:15 164:10 166:5 169:17 177:17 178:5

**Bofman's** 107:7

**bottom** 75:10 88:14,25 93:8, 13 95:2,24 97:24 98:19 118:18 123:18 124:13,19 127:1 130:3 141:9 152:4 155:4 161:14,15,24 162:22 163:23 167:20 176:10,11 179:17

**Box** 88:25 130:17

**Brad** 102:7

**bragging** 178:15

**break** 72:14 102:12 103:1 144:6 185:18

**briefly** 87:25

**broad** 129:24

**broadly** 184:23

**brother** 172:14 175:22 176:5 177:8

**brother's** 187:18

**buildings** 108:1

**business** 60:11 74:5 79:10 88:8 103:19 147:4 151:12 168:23 174:8,14,23

**buy** 145:19 147:2,3 153:16

———————————

**C**

———————————

**C-O-M** 80:7

**CA** 161:9

**call** 62:18,20 109:13,17 190:3

**called** 61:20 63:4 66:1 70:5 83:22 86:8 106:10 110:2 133:17

**calling** 180:5

**Calls** 131:2 132:2 169:19

**Cambonga** 157:21 158:3

**campaign** 143:3

**Candies** 151:2

**Canfield** 134:11,12,14,25 135:6,8,23 136:14 137:1 138:2,7,17 139:5,8,11,21 140:5,12,16,20 141:8,9,23 143:11,22 144:1

**Canfield's** 134:21 136:6 137:10 143:15

**capital** 90:10

**car** 107:7

**card** 93:21 117:25 136:12 147:7,8,9,10,12,15,16,19 148:3 150:18,24 152:1,4,5,15 153:1,13,25

**cards** 148:10,19

**care** 133:2 134:8 170:18

**Carlene** 61:2

**Carolina** 127:2

**case** 60:23 67:5,6 83:21 108:16 109:16 142:2 159:10 162:23,25

**cases** 133:18

**categories** 168:14 170:11,13

**center** 108:2 143:3

**centers** 107:25

**Central** 93:21 97:5 98:13 117:21 120:6

**certainty** 168:8,12

**certification** 96:3 118:20 119:20,23

**certified** 71:12 74:9 77:5,22

**certify** 96:5 120:2

**chain** 114:8 123:20 179:15

**chance** 88:1

**Chang** 179:18 180:6,17,20,22

**charge** 151:12 152:23

**charged** 152:24

**charges** 150:14,17 152:11, 14,18 153:9,10,16,20,21,24

**charging** 151:1

**check** 98:4 100:1,4,5,8,10,14 101:3,5 125:18 126:4,8 127:1, 4,7 136:12,13 148:12 154:16 155:4 156:24 157:10,16 158:9,22,25 159:24 160:5

**checks** 116:20 117:6,7,14 120:22 121:4,12 122:18 123:4,8,14 124:20,23 125:6, 10,16 126:2 127:9 128:1 154:8,9,11 184:20

**Chen** 123:19,21,23 124:1,6,8 128:13 130:4

**chief** 124:15 162:23 180:6,22 181:15

**children** 111:8 150:1

**Chris** 171:4 172:13,16,22,24 176:11,14 177:2,8

**Circle** 188:2,9,18 189:3

**circumstances** 82:9

**clarification** 84:17

**clarify** 61:25

**classes** 76:15

**clear** 113:19 183:14

**Cliff** 115:4 168:15

**Clifford** 123:19,20,23,25 124:5,8,18 128:13 130:4

**Closer** 67:13

**college** 70:21

**colleges** 116:22

**Commerce** 75:4 88:8

**Commission** 132:19 180:11 181:17 183:6

**communicated** 135:20 180:19

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 148 of 160
PageID.7503

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Index: communications–deliver

**communications** 135:24 168:20

**company** 62:13 66:4,5,9 90:7 92:21 95:9 108:25 113:4 124:10 128:25 129:4,23 144:18,23 145:2,14,17,20,21, 23,24,25 146:3,4,5 147:4,16 148:5 150:18 151:3 153:8,17 154:12 172:6 176:18,20,21 177:6,9,10 178:12

**compare** 123:3

**compensated** 103:25

**compensation** 66:8

**complaint** 132:19,21 133:14, 17 143:2 180:10 181:16

**Complaint.pdf** 183:6

**complaints** 182:10

**complete** 66:3 120:4 145:8

**completed** 112:4 144:22

**completely** 64:14 184:15

**computer** 68:4 69:3 81:18 183:18

**concern** 149:4 182:8

**concerns** 63:8

**concluded** 191:1,4

**condominium** 106:11

**confer** 186:25

**confidential** 186:13,14

**confirm** 75:7 132:12

**Confirms** 115:2

**congressional** 162:1

**connection** 110:1,4

**consent** 91:19,22

**Consumer** 75:4 88:8

**contents** 165:14

**context** 73:21 74:5 79:10 86:16 129:21 133:18 140:1

**continuing** 76:14

**contracts** 168:23

**contribution** 90:10

**control** 80:20,21,23,25 81:6, 9,16 82:3

**conversation** 149:12

**conversationally** 133:17

**conversations** 149:7

**Cookie** 151:3

**cookies** 147:2,3

**copied** 161:15,21 162:14,19 171:5 172:8,12

**copies** 69:2 74:15 99:21 135:11,13,23 172:10

**copy** 74:13,14 100:1,4,8 112:19 116:20 127:1 133:13, 25 178:2 190:19,21

**corner** 155:25

**corporate** 168:22

**correct** 62:3,4 66:21 69:7 71:12,15 73:5 78:23 89:22,23 91:10,11,13,14 94:12 95:25 96:1 97:22,23 107:8 109:14 114:14 117:3,7 118:1,5 119:17,18 120:5,17,18 122:13 124:4 133:3,4 136:8 139:5,6,9 148:1 150:3 155:22 157:7,10 160:7,12 161:19 163:16 164:17,18,21,22 171:6,9 176:12 184:24,25 185:3,4

**correspondences** 135:16, 24

**counsel** 61:4,25 84:16 115:25 139:17 143:16

**couple** 113:10 131:18 162:21

**court** 60:23 61:2,5 64:16 74:13,16 190:12

**cover** 155:10

**COVID-19** 174:15

**CPA** 71:15,17,23 72:14,16 73:4,16,25 75:5,8,15,20 76:6, 11 77:2,11,18 78:1,5,8,10,13, 14 79:8 160:15

**CPB** 116:23 117:25

**CPB's** 180:6,22

**create** 90:21

**created** 92:18 158:8

**credentials** 80:19

**credit** 136:12 147:7,8,9,10, 12,15,16,19 148:3,10,19 152:1 153:1,13,25

**credits** 76:15

**criminal** 133:18

**curious** 149:20

**current** 65:9,15 116:4,7

**customer** 97:8

**cuts** 95:8

**D**

**D-I-E-H-M** 161:9

**date** 75:11,14,18,25 76:1 143:11

**dated** 93:15 97:24 130:4

**dating** 90:24

**day** 106:25 107:2 108:3,8,25 109:5,7,14 110:2,5,20 111:22 143:12

**days** 68:13

**DCCA** 75:4 89:7 153:12

**debtor** 189:19

**December** 76:1,7 101:11

**decide** 189:9

**decided** 189:12

**decides** 189:6,8,9

**decision** 189:2,4,5

**deducted** 148:13

**defend** 133:21

**defendant** 167:7

**defendants** 60:22

**Defense** 62:12 66:1 145:9 146:12 155:12 156:1,3 167:5

**delete** 85:2,15,16

**deleted** 84:22 85:4,7,13,17 86:2 98:17

**deliver** 101:5 145:23 154:8, 12

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 149 of 160
PageID.7504
TIFFANY J. LAM, Vol II on 01/09/2026                                    Index: Department–end
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

**Department** 75:4 86:22 87:10 88:7 101:16,25

**depo** 62:17

**deposed** 64:9 66:12,16,23 67:17 70:2 79:13,24 112:11

**deposition** 60:18,25 61:11, 17 62:23 63:11 66:15 67:21 74:12,18,20,25 78:20 83:13 84:16 87:22 89:14 93:3 94:22 96:24 99:14 109:19 113:15 114:3 116:16 125:24 128:8 132:10 137:21 138:14 141:4 142:16 150:11 151:20 154:25 161:3 163:12 166:17 170:23 173:5 175:6 177:14 179:12 190:4,14,18 191:1

**designated** 60:19

**detail** 64:11

**details** 77:1,4 129:24

**determinations** 184:16

**Diehm** 161:9

**differently** 184:15

**digital** 190:16

**digits** 97:16 99:11

**direct** 118:15 166:25 167:1

**direction** 154:1 182:23 183:5

**director** 141:13

**directs** 183:22

**disagree** 122:11

**disaster** 172:5,17

**discuss** 90:17 108:24 109:2, 4,16,19,21 127:19

**discussed** 71:11 116:2 124:21

**discusses** 161:24 169:17

**discussing** 85:9 152:6

**discussions** 91:1 149:17

**Disney** 106:18

**disposed** 66:11

**dispute** 159:22 160:3

**disputed** 159:14,15,18

**disputing** 157:9

**disregard** 173:8

**District** 60:22,23

**document** 64:3 74:21 75:6 76:6 87:25 88:4,7 89:6,8,17, 18 90:9,12 91:7,15 92:5 93:6, 24 94:14,25 96:14,19 97:2,24 99:17,19 114:6 116:19 118:3 120:21,23 121:7 132:16 133:13,16,21 134:1,5 137:24 138:1 151:16 159:3 166:20, 22,23 167:11,13,16 168:7 169:24 170:4,5 174:25 175:8 178:25 184:7,12,13

**documents** 63:25 68:9,22 69:1,3,5,21 83:23 84:1,3,5 92:13,20 94:11,16 102:25 116:24 117:3,14,21,24 118:8, 9,13 121:10,17,25 122:8,16 142:2 150:15 152:13,20 154:2 159:3,6,9,11,19 166:2 167:6, 18,22,24 168:10,13,14,19,22 169:2 170:8,11,13 171:19 174:20 179:1,6 184:5,6,21,24 185:6,19

**DOJ** 102:1,3

**Don** 60:10

**Donor** 126:10

**dot** 80:6

**dresser** 111:10

**drop** 157:14 158:14,22

**dropped** 108:14 157:12 158:25

**drove** 107:6 108:10

**dues** 76:17

**duly** 61:20

**duties** 73:20 74:4 79:3

---

**E**

**e-mail** 79:25 80:1,3,8,17 81:9, 17,22 82:3,7,17 83:1,15 84:20,24 85:2,4,5,7,8,10,18 97:20,21 98:5,8,10,13 110:10, 12 114:8,13,16,17,25 115:14, 21,22 123:17,18,19 124:14,19 127:13,14,15,20,23 128:11

130:2 135:16 138:17,21,23 140:16,21,22 141:8,11 142:7, 8 161:14,15,19,21,24 162:9, 14,19,22 163:20,22 164:1,2,9, 19,24 165:1,14,15,23,24 166:3 169:11,16,25 171:3,4,9, 11,12,18,22,25 172:9,20,22 173:8,15,18,24 174:2,3,5,7,8, 15 175:12,16 176:8,10 177:17 178:4,21 179:15,17,18,19 180:2,15 181:1,5,9,15,21,24 182:5,9,23 183:9,23 184:1,2

**e-mailed** 110:14,17,23 174:14

**e-mailing** 172:16 178:11

**e-mails** 81:21 82:7,12,18,25 83:3,10,19 84:8,10,11,12,13, 23 85:2,18 86:3 98:5,12,17 127:22 130:9 135:6,18 141:7, 25 142:2 160:22 161:6,9,12 166:1 169:14 171:17,18 173:9 174:22 175:1,9 176:7,15 178:18,24 179:7,8,9 181:23 184:11

**earlier** 62:22 94:9 101:15 116:23 117:15,20 120:16 144:17 163:14 174:21 178:25 184:20

**eat** 106:19

**Economic** 172:4

**Ed** 162:23,25

**education** 76:14

**effective** 75:11

**election** 132:19 181:16 182:9 183:6

**Elections** 180:11

**electronically** 69:4

**Eleven** 81:14

**else's** 137:16

**embossed** 164:6

**employed** 66:4,8 112:5

**employees** 103:6 161:11

**employment** 65:15,24 108:24 144:18 178:13

**end** 89:24 162:22 189:23

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 150 of 160
PageID.7505

TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

Index: ended–friends

**ended** 78:21

**ending** 152:4 155:4

**engage** 134:12

**engaged** 103:20

**engagement** 134:17 138:2,4, 6 139:3,5,7,13

**engaging** 133:24

**Engineers** 63:5,14,18 86:9 87:2 89:21 93:23 97:9 98:15 100:11 109:5 115:10 116:21 128:18 130:17 131:23 132:22 141:16 142:24 143:17 179:24 182:25 184:22

**entirety** 130:10

**entitled** 83:15

**entity** 63:4,19 86:8 87:1 88:21 90:17 92:19 95:5,9 101:10 118:22 119:12,17 120:10

**enumerated** 168:13

**errands** 146:22,23,24 147:6

**established** 171:8

**estimate** 67:11 72:19 80:11 188:12

**estimation** 65:3

**et al** 60:21,22

**event** 129:23

**evidence** 117:17 173:22

**ex-admin** 104:6

**exact** 80:8

**exam** 160:15 189:19

**EXAMINATION** 62:6

**examined** 61:22

**exams** 73:5

**Excel** 178:2

**exchange** 135:5

**exchanged** 109:23

**executive** 111:1,6 114:18 141:13

**exhibit** 74:12,18,23 87:19,20 89:12,17 91:4 93:1 94:15,20 96:22 99:12,17 114:1,6

116:14 118:16,19 122:25 123:4,7,13,16,18 125:22 127:10 128:6 132:8 137:19,24 138:12 139:4 141:2 142:14 150:8,9,14 151:5,17,18 152:18,19 154:22,23 161:1 163:10,20 166:15,23 169:17, 23,25 170:21 171:16 173:3 174:18,21 175:1,4,9 177:12, 17 179:10,15

**exist** 82:25

**existed** 140:19 142:11 143:24

**expense** 147:4

**expenses** 150:22 151:1 153:20,22

**experience** 65:4 77:5,10

**expiration** 76:1

**explain** 146:7 176:7

**explanation** 143:25 158:7 159:22 172:1 174:13

**express** 147:17 150:18,24 152:13,15

**extent** 77:21

___

### F

**face** 121:17 122:7,11

**fact** 75:7 120:19 155:24 185:1

**facts** 101:15,20 117:17 173:21

**fair** 70:16

**familiar** 86:8,12 88:24 95:16 179:14 187:10

**family** 81:4,5 111:2 124:24

**fashion** 123:9

**father-in-law** 187:25

**Favors** 146:19

**February** 75:11,21 150:19 177:18 178:5

**FEC** 133:14,17 134:2 135:9 138:23 139:14

**federal** 132:19 144:1 180:11 181:16 182:9 183:6

**fee** 136:14,17 137:1

**fees** 76:17 136:6,20 137:10

**Fenner** 156:6

**fiduciary** 73:20 74:4 79:10

**filed** 103:22 143:2 180:10 181:16

**finances** 147:14 148:15

**financial** 124:15 168:22

**financially** 60:15

**find** 84:11 166:3 174:25 184:3

**fine** 62:19 186:9 187:8 190:17

**finish** 64:14

**five-minute** 185:18

**flip** 89:24 91:4 116:19 119:19 126:25 127:6,12 152:3 155:9 164:15 167:19 168:17 178:1

**floor** 151:15

**foil** 164:6

**forged** 92:4,12,16,20

**form** 66:24 97:4

**formally** 62:12 167:4

**forward** 82:18 114:21 173:15 174:5 181:8,10,18,20 182:3, 11 183:1,9,15,17 184:11

**forwarded** 82:12,19 84:9 85:9 173:10,19 174:4 175:11 181:1,11 182:23 183:4,7,8

**forwarding** 181:5,7

**forwards** 164:2

**found** 84:12 169:16 179:3,7

**foundation** 83:8,14 126:5 164:4,13,17,21 165:4,7,9 168:24 169:3,12,15,18 170:8

**fourth** 94:3,7 127:12

**frame** 67:8 76:10 147:21

**frequently** 98:4 110:7,10,12

**FRIDAY** 60:2

**friend** 105:19 111:16,17 163:15

**friends** 104:25 105:1,4,16 111:20,23 115:18 178:19

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 151 of 160
PageID.7506
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Index: full–idepo

**full** 63:18 91:12 151:23 185:2

**funding** 115:2,9

**funds** 115:5 137:9 148:19,22 149:1,5,8,12,15,18,21,24

**furtherance** 145:1

**Fw** 177:19

**Fwd** 175:15

---

### G

**G-M-A-I-L** 80:6

**gave** 101:24 182:8,11

**general** 79:9 103:2

**gift** 151:14

**give** 61:14 65:3,22 92:2

**Glenn** 180:6,22

**Gmail** 81:19 82:4

**go-between** 176:3

**goals** 145:2

**golf** 107:17

**Good** 62:8 130:5 180:3

**goods** 111:5 145:19

**grabbed** 106:19

**grade** 105:12

**graduated** 70:21

**Grant** 61:6 62:8 71:25 189:19

**Green** 154:18 155:5 156:25 157:17 158:9 160:5

**Green's** 154:20 157:15 158:14,21

**grew** 65:14

**ground** 64:10

**grounds** 63:2

**Group** 62:12 66:1 145:9 146:12 155:12 156:1,3 167:5

**guess** 64:25 91:23,24 123:10 132:4 135:21 161:11

**guessing** 72:21

**guy** 124:10

---

### H

**Ha** 60:10

**hair** 111:10

**half** 68:7,21 69:14,20 87:11

**hand** 61:12 74:13 123:11

**handle** 147:13

**handled** 101:23

**handles** 139:20 148:15

**handling** 186:24

**happen** 82:13 158:16

**happened** 158:11 160:11

**happy** 108:23 109:22

**hard** 69:2

**Hartman** 168:16

**HAWAI'I** 60:1

**Hawaii** 60:11,13,18,23 61:1,3 65:11 75:3 88:7 89:1 95:13 106:2,3 133:6 155:14 156:8

**he'll** 183:17

**head** 188:5

**header** 114:12 127:13 171:1 175:10,11

**hear** 86:16,19

**heard** 86:14,15,25 87:4 95:20,23 134:8 163:1 165:9, 12

**hearing** 67:17

**held** 71:12,23 76:6,10 78:4,13 87:12

**hereto** 75:1 87:23 89:15 93:4 94:23 96:25 99:15 114:4 116:17 125:25 128:9 132:11 137:22 138:15 141:5 142:17 150:12 151:21 155:1 161:4 163:13 166:18 170:24 173:6 175:7 177:15 179:13

**Hilton** 77:25

**hire** 133:20

**hired** 110:25

**Hironaka** 61:8 62:4 71:25

83:6,17 84:17 99:20,23 117:16 122:20 131:2 132:2, 12,14 145:4 160:19 162:15 165:18 169:19 173:21 182:19 186:7,12 187:2 189:13,18 190:7

**history** 70:4,8

**hold** 65:24 71:14 72:16 73:1 87:15

**holder** 80:17 117:2

**holding** 73:12 77:2,5,18,22 78:18 79:8

**holidays** 108:23

**home** 81:18 108:10 176:12, 19,23 177:6 183:18

**honest** 64:21

**Honolulu** 60:1,12 61:1 65:11 89:1 95:13 133:6 151:2 155:13 156:8

**hotel** 70:6

**hotels** 107:23

**Hotu** 70:5 77:25

**hour** 68:21 69:20 102:12 107:12 144:5

**hours** 68:8 69:14

**house** 106:7 107:5

**housekeeping** 62:10 63:16

**HTSHAWAII2@GMAIL. COM** 171:5

**husband** 90:18 126:13 131:12,18 182:7

---

### I

**idea** 91:7 161:23 164:24 174:17

**identification** 74:24 87:21 89:13 93:2 94:21 96:23 99:13 114:2 116:15 125:23 128:7 132:9 137:20 138:13 141:3 142:15 150:10 151:19 154:24 161:2 163:11 166:16 170:22 173:4 175:5 177:13 179:11

**idepo** 60:11 61:3

Case 1:22-cv-00283-LEK-WRP Document 343-20 Filed 04/27/26 Page 152 of 160
PageID.7507
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Index: Ikena–license

**Ikena** 188:1,9,18 189:3

**Image** 163:23

**impossible** 185:9,11

**inaccurate** 76:10

**inadequate** 149:24

**incorporate** 92:20

**incorporation** 168:21

**incriminate** 63:3

**individuals** 120:8

**inform** 120:5 180:5

**information** 97:8 118:24 120:3,25 122:4,6 148:18 160:4 162:13 164:23

**informed** 65:4

**initial** 157:24

**initially** 111:16,17

**Injury** 172:4

**ink** 157:24

**input** 122:4

**inputted** 122:6

**inquiries** 157:19

**instruct** 187:6

**intend** 63:12 64:2,6

**interactions** 129:10

**interest** 95:22

**interested** 60:15

**investigative** 144:2

**involved** 142:3 164:12 172:4

**involvement** 88:22 103:7

**involves** 132:21 151:25

**involving** 182:9

**Island** 151:2

**items** 145:20

**itunes** 151:6,7 152:23 153:9

**itunes.com** 152:22

**J**

**January** 60:2,17

**Jay** 154:17 155:5 156:24 157:16 158:9,14

**Jennifer** 79:20,22 88:18,20 90:4 91:10,12 93:9,14 94:5 95:3,25 96:4 118:7,8,9 119:4, 9 120:1,13 121:18 130:18,22 131:1,6,9,14,17,23 133:2 138:18 139:22 140:1 141:10, 12 143:1,7,18,19 167:7

**Jenny** 60:19 167:8

**job** 78:13,17 79:3

**jobs** 70:4,11,13,17 78:2,4

**join** 72:2

**judgment** 187:4 189:19

**judgments** 189:17

**July** 143:12

**jump** 151:24

**June** 140:11,17 141:8,21 142:9

**Justice** 86:22 87:10 101:16, 25

**K**

**Kahala** 65:11 67:15 176:24 187:11 188:6

**Kahele** 128:12,22 130:4

**Kamani** 95:12,17

**Kao** 60:20,21 79:20 90:18 94:12 111:20,23 124:24 128:12 130:4 138:17 141:7 167:9 175:14

**Kao's** 126:14

**Kee** 128:12,22 129:25 130:4 168:16

**kids** 81:7,8,11,16,21 149:6,9, 13 170:18 187:16

**kind** 123:10 168:11

**kinds** 146:23 178:18

**knew** 74:9 140:2

**knowledge** 65:4 73:15 77:21 88:22 96:6 103:4,8 120:3 127:25 131:3 143:8,9 148:18 158:4 165:19 167:11

**Ko'olani** 106:8,9,11

**Ko'olina** 106:13,14,23 107:1, 6,10,11,13 108:7 109:14 110:5,21

**KPMG** 70:5 71:19 72:24 77:24 78:17 79:1,4

**L**

**lack** 83:7,14

**Lacks** 165:18

**Lam** 60:19,20 61:9,19 79:18, 22 87:24 88:18,20 89:16 90:4 91:13 93:9,14 94:5 95:3,25 96:4 118:8,9 119:4,9 120:1,13 121:18 130:18,22 131:1,6,10, 14,17,23 133:2 141:12 143:1, 7,18,19 152:3 157:6 167:7,8 171:4 172:13,16,22 175:12 176:11,14 177:2,8,18

**largely** 77:13

**lbofman@navatecltd.com** 163:24

**Lbofman@sywse.com** 127:15

**learned** 73:15,24 74:3,8

**learning** 73:19

**left** 124:22 132:24

**left-hand** 155:25

**legal** 60:10 95:5 118:22 119:12 120:10 134:21 136:6, 20 137:1,10 143:3 180:7,22 181:15 187:3

**letter** 138:2,4,6 139:4,5,7 142:19 143:12,13 179:23 180:9 182:24

**letterhead** 135:19

**letters** 135:8,11,14,15,18 144:1

**liability** 90:10

**license** 71:12,15,18,24 72:14, 17 73:5,12 75:5,8,15,21 76:6,

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 153 of 160
PageID.7508
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.    Index: life–met

11,15,18 77:2,6,11,19,23 78:1,5,8,10,13,14 79:9

**life** 70:11,14,17 73:24 77:6 78:18

**lifestyle** 149:16,25

**Limited** 95:9

**list** 167:23 186:6

**listed** 88:25 90:9 95:12 97:17 101:10 128:16 152:12

**listing** 118:4,6

**lists** 95:7 97:8 119:16

**literally** 186:16

**live** 65:10 177:2 187:14

**lived** 65:13

**lives** 183:16 187:13,23 188:1, 3,6

**LLC** 60:21 61:7 62:11 63:14, 18 66:1 86:10 89:21 100:12 116:22 128:18 130:15 131:23 132:23 141:16 142:24 143:17 145:9,10 146:12 155:12 156:1,3 167:4,5 179:24 184:22

**LLC's** 93:23

**LLC.PDF** 182:25

**loan** 172:5 173:16

**log-in** 80:19

**logo** 164:5,21

**logos** 164:16 165:4

**long** 65:13,17,18,19 68:6,20 69:19 70:24 71:23 73:13 76:25 79:7 80:8 81:8 82:14,20 105:8 107:11 108:23 135:3 149:3,6 188:10,16

**longer** 63:8 80:13,15 82:21, 23

**looked** 69:1 83:3,5 84:7 98:8 116:23 117:15,20,24 119:20 139:3 159:4 171:15 174:21 176:15 178:25 184:20 185:12

**Lori** 104:3,5,12,18 114:13,17 123:17,19 124:18 127:14,19, 23 163:15 164:1,8,19,24 165:13,15 166:5 169:17

177:17 178:5,9,11,22 179:1

**loud** 178:8

**Lum** 128:12,22 129:25 130:4 168:15

**lunch** 106:6

**Lynch** 154:17 155:10 156:6, 11 157:12 158:8,13,21 159:23,24 160:4

---

**M**

---

**made** 116:22 120:22 126:2,5 127:1 132:19 150:17 153:10, 21 154:17 155:5 158:9

**maintain** 76:15,18

**make** 141:25 152:15 153:24 183:14 184:16 186:23 189:4 190:2

**makes** 189:2

**making** 62:1 186:21

**management** 73:21 155:11

**manager** 90:4 93:15 142:25 143:18,20 157:20

**manner** 182:6

**Marcus** 151:9,10,13

**mark** 87:18 150:7

**marked** 74:24 87:21 89:13,17 93:2 94:15,21 96:23 99:13,17 114:2,6 116:15 125:23 128:7 132:9 137:20,24 138:13 141:3 142:15 150:10 151:19 154:24 161:2 163:11,20 166:16,23 169:16,23,25 170:22 173:4 174:21 175:1,5,9 177:13,17 179:11,15

**Martin** 60:21 62:12 66:1 81:7 82:1,2,7,9,17 84:3,8,23 85:9, 24 90:18,20 91:1 92:3,4,12, 16,18 94:12,17 96:16 98:10 99:1,8 108:18,21 111:19,23 124:22 125:1,4,9,15,18 126:14 128:12 130:3,22,25 131:3,9,12,18,21 136:21,22 138:17,22 139:11 141:7,10 145:9 146:12,17,19 147:6,25 148:15,22,25 149:8,12,17,24 151:11 153:4,5,13,24 154:1,3,

13,20 155:12,22 156:1,3 158:15 162:13 165:16 166:6,8 167:4 168:15 171:3,13,18 172:8,16,22 173:8,16,20 174:5,22,24 175:13,17,22 176:4 177:10 181:6,10 182:3, 4,12,15 183:22 184:4,7,10,16 185:6 186:5 189:9,10,11

**Martin's** 100:21 104:6,7,11, 16,23 105:8,9 111:1,6,16 124:10 126:16,23 130:9 133:18 137:6 140:8 161:10 163:15,18 182:23 183:4

**martin.kao@gmail.com** 175:14

**martin.kao@gmail.com.** 173:12 181:2

**matter** 60:20 62:10 63:16 64:1 78:11 101:17 133:25 149:4 186:15

**matters.'** 141:18

**meaning** 147:15 165:11 186:18

**means** 81:18 82:4 122:10 181:22

**meant** 165:15

**meet** 67:25 68:13,15 69:13,17 105:2 106:6,23,24 129:8 135:2 140:4

**meeting** 68:6,20,23 69:6,19, 22 72:2 129:18 158:5 162:6

**meetings** 145:16 168:22

**member** 90:5 131:22

**memo** 155:10 158:8 159:23 160:4

**Merchant** 133:5

**Merrill** 154:17 155:10 156:6, 11 157:11 158:8,13,21 159:23,24 160:4

**message** 173:10 175:11

**messaged** 110:23

**messages** 109:24 176:4

**met** 67:22 68:1,3,12 69:6,8, 16,25 105:14 111:14 123:23, 25 129:6,19,22 131:8,14 163:2

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 154 of 160
PageID.7509
TIFFANY J. LAM, Vol II on 01/09/2026                                    Index: Michael–PAC
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

**Michael** 154:18,19 155:5
156:24 157:15,16 158:9,14,21
160:5

**Microsoft** 178:2

**middle** 91:10 119:20 132:24
176:4 185:2

**mind** 146:14 150:4 164:5

**mine** 120:25

**minutes** 174:9

**Misstates** 173:22

**Miyoshi** 61:9 186:17,25
190:16,21

**Mm-hm** 169:1 174:12

**model** 70:22,23,25 71:3,9

**modeling** 71:7

**mom** 78:9 187:20

**moment** 139:3 171:15 176:15

**Monday** 68:14,15 69:12,13

**money** 73:20 74:4 79:11
115:14 136:25 137:2,4,6,14,
16 148:13 150:5 154:12

**month** 87:8 105:22,24 106:25
108:25 110:5,21

**months** 62:22 70:3 110:15,18
112:12

**morning** 62:8

**mother** 187:25

**mouth** 63:18

**move** 122:24 160:20

**multiple** 123:14

— N —

**named** 127:15 128:12
130:22,25 131:6,9,14,23
139:22 163:23

**names** 79:14,15 131:17
162:21

**Natural** 119:1

**Navatek** 66:1 115:5 145:9
164:12,17 165:3,7,9 166:11
168:24 169:3,11,15,18 170:8
171:19 175:15,19

**needless** 169:21

**Neiman** 151:8,10,13

**Nelson** 162:24 163:4

**nodding** 188:5

**note** 93:20

**noted** 90:4

**notice** 151:23 157:19

**noticed** 172:10 176:23

**November** 89:6 130:5

**number** 73:5 77:9 97:17
100:23 113:22 116:20 132:13
155:17,21 160:24 168:17,19
184:20

**numbers** 153:8 167:20

— O —

**O'GRADY** 102:7,8

**oath** 61:5 66:24 67:3,16,17
113:1,6

**object** 83:7 117:16 122:20
132:2 186:7 189:13

**objection** 83:14 131:2
160:19 165:18 169:19 173:21
182:19 186:23 187:2,4 189:16

**objections** 62:1 186:21
189:14

**objectives** 145:2

**obligated** 64:20

**obligations** 79:10 90:9,11

**obstructionist** 186:19

**obtain** 78:8,10

**obtained** 75:15,20 78:5,12

**obtaining** 77:2,5,11,18,22

**obvious** 103:13

**occasion** 67:4 105:23,25

**October** 85:25 140:9 147:25
148:6,9,20 150:19 154:16
160:6 163:19

**office** 62:22 68:17 69:18
153:17 154:20 156:5,12
157:15 158:10,14,22 177:19,

23 190:8

**officer** 61:11,17 74:25 87:22
89:14 93:3 94:22 96:24 99:14
113:15 114:3 116:16 124:15
125:24 128:8 132:10 137:21
138:14 141:4 142:16 150:11
151:20 154:25 161:3 163:12
166:17 170:23 173:5 175:6
177:14 179:12 180:7,23
181:15 190:14,18

**open** 81:20 82:5 182:24
183:5,19

**opened** 95:6 119:13 183:10

**opening** 118:21 119:1 142:21

**operating** 89:21 128:18
168:21 182:5

**opinion** 164:20

**opportunity** 190:1,3

**order** 89:11 92:24 94:19
96:21 116:13 125:21 132:7
137:18 138:11 141:1 142:13
151:5 163:9

**ordering** 190:15

**orders** 190:13

**Organization** 88:10

**organized** 88:21

**organizer** 88:15,16

**original** 100:5

**outcome** 60:16

**outsiders** 81:2

**override** 186:20

**owner** 80:17 118:19

**owners** 120:8

**owns** 186:15

— P —

**P-A-C** 101:11

**p.m.** 144:10,12 173:17
174:10,16 185:21,23,24
190:25 191:4

**P.O.** 88:25 130:17

**PAC** 101:10,11

Case 1:22-cv-00283-LEK-WRP   Document 343-20   Filed 04/27/26   Page 155 of 160
PageID.7510
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.   Index: Pacific–question

**Pacific** 93:22 97:5 98:14 117:21 120:6

**Pacmar** 60:20 61:7 62:9,11, 13 65:25 167:3

**pages** 94:3,6 127:7,9 151:24 178:1

**paid** 101:9 102:9 103:25 134:21 136:6,17,18,19 137:1, 9 145:3 147:18 148:11,19 149:3,8 150:18

**pandemic** 174:15

**paper** 69:2 101:13

**paragraph** 142:21 143:7

**part** 87:7 182:14

**parts** 73:6,7

**party** 60:14

**passing** 160:14

**password** 80:19

**pay** 76:17 136:10,12 147:5,12 148:13 154:3

**Payable** 156:24 157:16

**payee** 101:10

**pen** 157:24

**people** 135:25 153:18 180:24

**period** 71:2 98:3 142:3 148:9

**person** 68:4,5,18 69:7 88:20 92:8 99:8,10 117:6,8,13 118:4 119:1 120:22 121:1,3,11,18 122:17 131:17,21 135:2 143:19 153:5 176:4

**personal** 65:4 137:2 153:20, 22 165:18

**personally** 102:2 136:21 137:14 139:16 148:11

**Persons** 118:21

**Phil** 69:11

**Philip** 61:9 69:9,15 70:1

**phone** 68:4 109:11,13,17,24 134:24 135:22

**phonetic** 102:7,8

**pick** 107:4 108:3 145:22 154:8,11,16

**picked** 107:3 157:4,9 158:8 159:23 160:5

**Pierce** 156:6

**Pirkle** 127:16

**plaintiff** 60:21 61:2,7 62:9,11 167:3

**Plaintiff's** 74:23 87:20 89:12 93:1 94:20 96:22 99:12 114:1 116:14 125:22 128:6 132:8 137:19 138:12 141:2 142:14 150:9 151:18 154:23 161:1 163:10 166:15 170:21 173:3 175:4 177:12 179:10

**plans** 90:21

**play** 107:17

**plead** 63:12 64:2,6

**pled** 62:25 63:24

**point** 101:20 183:19

**political** 153:17

**pool** 107:17

**portion** 113:14

**position** 65:25 79:1 87:12,15 124:11 129:1 144:18

**possibly** 75:14 81:23 82:24 85:21 92:7 96:16 99:1 153:2,3 179:2

**potentially** 181:9

**practice** 82:16 85:1

**prefer** 62:17

**prepare** 67:20

**present** 61:10 69:9 131:9

**previous** 66:14

**previously** 71:11 74:12 87:4 112:25 113:6 119:21 138:3 158:5

**principal** 176:12,19

**printed** 93:9,14 94:4 151:25

**printout** 75:3

**prior** 74:18,20 87:5 104:11,16 109:7 110:20,25 111:5 148:20 174:10

**Pro** 163:23

**proceed** 130:12

**proceedings** 191:3

**process** 162:1

**produce** 84:13 159:11 166:2 171:22,25 174:20,25 179:6

**produced** 171:19 179:3,7,9

**production** 63:25 83:22 84:1,5 142:1 167:6

**productions** 64:4

**professional** 78:17

**proper** 83:14 186:22 187:5

**properties** 186:5

**property** 67:14 95:16,19,21, 22 133:7,10 186:16 187:11,23 188:1,6,9,15,18,23 189:3,7,8, 12

**property's** 188:4,8

**propose** 102:12

**provide** 118:23 138:22 139:14

**provided** 120:4 135:23 155:17 167:16

**providing** 152:19

**public** 71:12 74:9 77:6,22 186:15

**publicly** 186:16

**purchase** 111:4 145:19

**purely** 72:21

**purport** 121:25 122:2,8,9

**purported** 117:1 118:3 125:10

**purporting** 91:17 96:14 144:2

**purpose** 103:16 184:1

**put** 69:3 84:7 90:16 116:10 136:2 138:9 154:2 163:6 170:19

---

**Q**

---

**qualification** 146:6

**question** 69:12 70:12 72:15

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 156 of 160
PageID.7511
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.                    Index: questioned–request

77:3,15,17 80:1 83:20 85:3
90:23 91:21 92:1 94:6,14
98:23 99:25 103:9,11 112:24
113:5,9,13,17 115:8 117:10
123:20 125:4 127:8 128:21
145:5,7 150:21 158:19 162:17
165:21,22 168:5,6 169:6,8
182:16 183:3 184:12 186:11
188:21 189:1

**questioned** 182:4 183:25

**questions** 62:23 63:1,3,13,
24 64:1,3,7 70:3 77:10 103:2
136:5 144:15 187:6 189:20,
21,23

**quick** 161:25

**quickly** 178:8

**quoted** 142:7

## R

**Rachel** 127:16

**Rae** 157:20

**raise** 61:11

**raised** 164:7

**Randall** 61:8 69:9,15 70:1

**Randy** 62:2 187:1

**Randy's** 186:21,23

**randy@808law.com** 114:13
115:21

**read** 88:1 113:15 119:25
134:6 168:9 172:11 178:7,8
181:14,19 183:2,11,12 185:7

**reading** 162:11 165:23
172:12 181:21 184:13

**reason** 64:15 75:17 76:9
92:10 96:18 99:3 115:13
152:8 156:1 182:14 184:3
188:22,24

**reasonability** 72:20

**reasonable** 65:2,21 91:25
131:20

**recall** 62:21,25 70:8,10,13,15
71:17,20,23 73:19 74:20 76:5
77:14 78:18 83:21 85:15,19
87:8 107:19 109:9,25 110:24
111:13,15,18 112:11,16

117:22 118:10 119:22 125:17,
20 129:9,10,12,13,15,19,21
137:11 142:5 149:14 158:5,20
162:9,11 164:9,11 165:1,3
167:14,23 169:9,13 170:14
171:12 173:18 175:16,19
178:4,21 179:5,7 180:15,16
181:5,7 188:11,17

**receive** 87:9 111:4 127:22
133:13,25 181:23

**received** 66:8 83:22 84:4
86:21 133:19 160:22,23
181:10 182:22 183:8

**receiving** 162:9 164:9 165:1
171:12 178:4,21 180:15

**recently** 83:4 90:24

**recess** 72:7 102:17 144:9
185:22

**recipient** 161:8

**recognize** 100:17,22 101:13
126:11,19,23 150:25 153:15
161:5 166:20,21 180:24

**recollection** 72:16 73:11,14
157:11,13 158:11,12 159:5,7,
16,18,19,21 160:2,8 167:10

**reconciliation** 73:18 79:6

**record** 60:10 61:25 72:3,6,10,
12 75:7 93:21 102:14,16,20,
22 113:19 144:5,8,12,14
185:21,25 186:2,15,17
190:10,12 191:2

**recorded** 186:16

**recording** 60:9

**records** 168:22,23 174:19
179:6

**refer** 62:11 63:19 116:4,7

**referenced** 143:7 156:2
162:22

**references** 130:22 181:15

**referencing** 95:10 96:8
131:21,25

**referring** 146:16

**reflect** 121:11 150:23

**refresh** 64:12 167:10

**refused** 63:1

**registered** 141:14 142:25

**registration** 88:9

**regret** 182:18

**regularly** 98:4 110:7

**reintroduce** 74:11

**related** 60:14 64:3 74:4 142:3
159:19 169:2 171:18 184:21

**relates** 75:5 132:21

**relating** 63:4,13,25 75:7
92:13 94:11 98:14 168:20
170:8 174:22

**relationship** 104:17,20

**relevance** 186:8

**relevant** 159:11

**relief** 172:17 174:15

**rely** 184:16

**remain** 105:16

**remember** 67:10 70:24 71:4,
5,8 73:17 74:6 75:23 79:5
80:10 81:10 104:15 105:3,6
106:20 129:17,25 134:13
135:3 136:11 147:23 151:1
156:17 158:18,23,24 160:11,
17 165:11 166:4,10,13 167:25
168:15 170:9 171:23 172:11
175:20

**renter** 67:7

**repeat** 113:12

**rephrase** 131:4 158:19

**reporter** 61:2,5 64:16 74:13,
16 190:12

**represent** 62:9 75:2 88:6
116:5,8,19 132:18 143:11
144:2 152:17 171:24

**representative** 60:19 95:4
119:5 158:13,21

**represented** 63:7 115:24,25
134:19 139:10 140:12

**representing** 134:22

**represents** 134:18

**request** 83:22 84:1,4 97:4
142:1 167:5

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 157 of 160
PageID.7512
TIFFANY J. LAM, Vol II on 01/09/2026                              Index: requested–Society
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.

**requested** 113:14 167:22,24 180:7

**research** 166:11

**resort** 106:18 107:24

**respect** 64:2 74:4 77:18 79:11 108:20 121:2 133:21,22

**respond** 178:24

**Respondents** 142:22

**response** 84:5 142:1 143:2 166:2 171:19 174:20 179:6

**responsibility** 120:9

**responsive** 168:13

**rest** 127:7

**restaurant** 107:21 108:7

**restaurants** 107:25

**retainer** 136:14,17,20 137:2, 10

**returns** 103:23

**review** 75:6 87:24 178:9 184:8 190:1

**rights** 90:11

**Roland** 179:18 180:17,20

**roland.chang@cpb.bank** 179:19

**role** 87:12,15 163:18

**routing** 100:16,23

**RPOD** 166:2 169:23 171:16, 20 174:20 178:25 179:6

**rules** 64:10 72:12 102:22 144:14 186:2

---

**S**

---

**Sasaki** 61:2

**SBA** 172:4 173:16

**Sceientists** 63:14,17 86:9 100:11 116:21 131:22 132:22 143:17 184:22

**Scholarship** 114:22

**scholarships** 115:9

**school** 105:12

**schools** 126:3

**Scientists** 63:5 87:1 89:21 93:23 95:8 97:9 98:15 109:3,5 115:10 128:17 130:16 141:15 142:23 179:24 182:25

**screen** 69:3

**search** 142:2 159:18 166:5,6, 9 169:2 170:7,10,12 171:17 174:22 178:24 179:1

**searched** 83:18 141:25 166:1,7 168:12 169:11,14,24 174:19,24 179:5

**searching** 170:4,5

**season** 87:8

**Seasons** 106:17

**secretary** 163:16

**Security** 97:17

**selection** 151:25

**send** 82:18 115:14 135:8 141:22 165:16 174:2 178:19 180:8 183:22

**sender** 161:8 183:18

**sending** 114:25 128:2 144:1 164:20 175:16 176:4 184:1

**sends** 164:1,8

**separate** 74:19 79:8 112:5 113:5 138:6 139:7

**separately** 139:10

**served** 101:16,20 133:12

**service** 146:3

**services** 111:5

**serving** 176:3

**session** 161:25 162:3

**set** 89:9 151:23

**setting** 120:19 130:13

**short** 72:13 105:7,10

**show** 112:18 117:1 121:17,25 122:2,8,10 150:16 183:20

**showed** 116:24

**showing** 150:14

**side** 90:16 106:15 116:10

136:3 138:9 154:3 163:6 170:20

**sign** 89:6 96:18 101:3 117:7 120:22 121:3 184:5,6,7,11,17, 23 185:5,7

**signatory** 117:2

**signature** 90:1,2 91:5,6 92:5, 20 93:10,11,15,17,21 94:4,7 96:10,11 98:20,21,25 100:15, 17,18,20,22,23,25 101:1 114:16 117:25 120:17,20 121:13,15,23 123:1,7,12,15 124:14 125:12 126:6,10,11, 14,16,23 127:4,8 143:15 176:10,11 185:12,13 190:7

**signatures** 100:14 117:1 123:3

**signed** 91:7 92:6 93:25 94:11,16 96:14 98:24 123:7,8 185:8

**significant** 120:9

**signing** 118:4 121:11 122:2, 17 184:17

**signs** 117:13

**similar** 123:8 141:22 142:8 184:10

**similarly** 126:2

**simply** 63:18 74:7 121:24 122:6 160:11 183:23

**single** 66:16 103:11 181:21

**sit** 70:13 103:5 170:15

**sitting** 154:19

**situation** 131:9

**Small** 174:8,14,22

**Smith** 156:6

**snack** 106:19,20 107:13,19 108:6

**Social** 97:17

**Society** 63:4,13,17,19 64:2 86:9,20 87:1,10,13,16 88:10, 16 89:20 90:20,21 91:2 92:14, 19 93:22 94:12 95:7 97:9 98:14 100:11 101:7,9 103:1,2, 6,8,10,19,22 104:1,2 109:2,4, 21 112:1,5,6,9 115:9,15 116:21 117:6 119:16 120:23

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 158 of 160
PageID.7513
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.
Index: Society's–text

121:4,12 124:21 125:1,6 126:2,4 127:2 128:17 130:15 131:22 132:22 138:25 139:11, 15,23 140:18 141:14,17 142:4,22,24 143:17 179:23 182:24 184:21

**Society's** 103:16 117:2,14 118:1,5 121:19 122:3,18 125:7

**solemnly** 61:13

**Solutions** 176:12,19,24 177:6

**sort** 132:23 178:12

**sounds** 178:15

**source** 137:9 148:19 149:8, 12,15,18,20,23 150:15 152:20

**South** 127:2

**speak** 139:15 140:18 141:17

**speaking** 64:14

**speaks** 138:25 139:22

**specialist** 60:11 123:11

**specific** 65:22 77:10 129:25 136:23,24 137:8 146:24 151:1 160:13,14

**specifically** 106:3 146:20 147:16 152:12 158:24

**speculation** 132:3 169:20

**spell** 80:5

**spent** 107:1 109:14 110:5,20 150:24

**spoke** 67:24 109:10 110:22 143:22

**spoken** 112:8 131:14 180:19

**spreadsheet** 178:2

**SSN/CIF** 97:13

**staff** 79:2,4 162:23

**stage** 73:24

**stamp** 74:14 151:24 155:3

**stamped** 74:17

**stand** 72:5 144:7 185:20

**standalone** 107:24

**standard** 85:1

**start** 61:24 64:10 82:16,17 99:25 160:23 171:1

**started** 113:3

**starts** 180:2

**startup** 70:5

**state** 61:4 75:3 88:7 126:5

**stated** 83:10 143:13 184:15

**statement** 138:24 139:14,22 140:17,23 141:12,19,22,23 142:7,8

**statements** 90:9

**States** 60:22

**stay** 74:16

**stop** 71:7

**strangers** 81:1

**Street** 60:12 61:1 65:11 95:13,17 133:5 155:13 156:7 158:10 176:24 187:11,24

**strike** 68:25 91:9 92:17 99:24 101:7 104:10 109:3 136:16 161:12 165:13 172:3

**strip** 107:25 108:2

**studied** 73:15 74:3

**study** 73:9

**studying** 73:19

**stylist** 111:11

**subject** 101:17 114:21 130:5 133:25 138:18 175:15 177:19 178:3 179:23

**submit** 89:6 143:1

**subpoena** 86:22 87:9 101:17,21

**substantially** 142:8

**Suite** 60:12 155:13 156:8 158:10

**summarized** 152:19

**summary** 70:7 150:14,16

**Summary.xlsx** 177:23

**Summary.xlsx.** 177:19

**support** 149:6,9,13,16,25

**supports** 159:7

**suspect** 94:16 98:24 99:3

**suspicion** 91:25

**swear** 61:13

**sworn** 61:21

**SYWSE** 63:20 114:22

---

**T**

---

**T-I-F-F-A-N-Y-8-0-8** 80:6

**takes** 134:8

**taking** 73:12 77:10 160:14

**talk** 108:16,18,20 134:24 135:22

**talked** 102:1,2 109:8

**talking** 70:18 115:12 129:13, 15,17 135:17

**tasks** 66:3 112:4 144:22 145:9

**tax** 103:22

**Technologies** 60:21 61:7 62:10,11 167:3

**tells** 174:5 181:8 182:3 183:15

**ten** 65:20,23 67:12 73:2 80:15,16 82:23 160:12

**test** 73:4 77:20

**testified** 61:22 66:24 83:15 91:16 96:15 101:15,24 112:20,25 113:6 116:24 120:16,20 121:14 160:10 163:14 184:23

**testimony** 61:14 66:7 74:2,8 86:5 89:5 90:3,11 91:20 94:1 101:2,24 112:17,22 113:8,20 121:24 122:1 123:13 126:22 136:25 137:13 142:6 143:6, 10,18 148:17 153:19,23 154:15 159:2 167:15 168:1,6 170:3 174:1 185:15 189:11

**tests** 73:12 77:11

**text** 109:23 110:7,22

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 159 of 160
PageID.7514
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.                        Index: Theater–Waiiki

**Theater** 176:12,19

**Theaters** 176:24 177:6

**thing** 152:2 166:7

**things** 73:15,17 76:20,23 103:13 146:16,18,25 151:1 160:11,13,14,17,18 174:5 181:8 182:3 183:1,15

**thinking** 131:24 132:5 146:15,16,20

**third-to-last** 91:5

**third-to-the-last** 89:25

**thought** 150:4 182:11

**thoughts** 91:7

**ticking** 73:18 79:6

**Tiffany** 60:19,20 61:9,19 62:18,20,21 72:11 74:20 79:18,19 84:20 91:12 93:5 94:24 95:3,25 96:4 97:1 100:1 102:21 112:24 114:7 115:8 116:18 118:9 119:4,8 120:1, 13 121:18 124:25 126:1 128:10 132:15 137:23 138:16 142:18 144:13 150:13 151:22 152:3,17 155:2 157:6 160:21 161:6 164:3 166:19 167:7,8 168:5 171:2 173:24 175:12 177:18 180:3 186:1 187:6 189:24

**Tiffany's** 115:3,15

**Tiffany808@gmail** 80:4

**tiffany808@gmail.com** 80:18 83:1 97:21 98:6,13 171:6,9 173:11,24 174:9 175:13 181:2,24

**tiffany808@gmail.com.** 161:16 179:20

**Tiffanys** 115:19

**Tim** 162:23 163:4

**time** 60:17,18 64:9 65:18,19, 25 66:11,14,15,16,18,19,20, 23 67:8 68:10 70:2,20,24 71:2 72:6,9,24 76:10 79:8,13,24 82:5,6,14,20 85:17 86:21,25 87:7 90:24 98:3 102:5,15,19 105:7,8,20 108:3,23 109:7,10, 23 110:22 111:5 113:2 124:5 138:3 140:11 142:3 143:23

144:8,11,19 145:10 147:21 148:9 149:11 156:16 158:23 177:10 180:23 185:21,24 189:25 190:25

**times** 66:21 82:11 113:3,10 123:25 158:16,20

**title** 93:15 95:3

**titled** 128:17 182:24 183:6,13

**Toby** 172:23,24 176:16 177:2, 9

**today** 60:17 62:1 64:3,6,21 69:9 70:13 71:9 72:2 74:15 101:15 103:5 105:17 134:15 160:10 169:22 170:15 189:25

**today's** 62:17 63:11 67:20

**told** 66:25 70:4,11 78:21 90:20,21 112:12 166:10 169:4,7 181:10,18

**Tolsnick** 102:7

**top** 88:11 89:20 97:6 100:18 114:11,12,17 127:13 128:11 167:1,22 171:1 173:8 175:10 177:20

**topic** 103:10

**topics** 64:7

**total** 150:20

**track** 183:21

**traffic** 182:9

**training** 161:25 162:2

**transcript** 112:20 190:1,13, 15,24

**treated** 189:19

**treating** 187:3

**trial** 67:18,19

**trip** 124:23

**true** 78:4 142:10

**truth** 61:14,15,21,22 64:21 122:11

**twelve** 81:14

**twenty** 67:12

**tying** 73:18 79:6

**type** 95:9 149:11

**typical** 181:23 182:2

**typically** 178:19

---

**U**

**understand** 62:14 63:21 64:22 65:6 76:5 77:3,8 83:17, 20 85:3 102:23 113:9,11 117:19 120:24 121:14,23 122:5,19,23 130:21 137:12 144:25 145:4,7 146:2,8 165:15,23 170:19 188:20,25

**understanding** 79:9 83:25 139:25 145:7 146:1 148:18 172:15,19

**Understood** 140:16

**unemployed** 65:16,17

**Unit** 133:6

**United** 60:22

**universities** 116:22 126:3 128:2

**University** 126:5 127:2

**unlimited** 90:23

**unpaid** 144:22

**untruthful** 112:22 113:8,20

**update** 178:12

**upper** 155:25

---

**V**

**V2** 175:15,19

**vacant** 188:4,8,10,16,19,23 189:3,12

**vague** 117:17

**valid** 72:16

**vendors** 153:16

**venue** 66:25

**video** 60:11 190:20,22,24

**virtually** 77:14

---

**W**

**Waiiki** 187:23

Case 1:22-cv-00283-LEK-WRP    Document 343-20    Filed 04/27/26    Page 160 of 160
PageID.7515
TIFFANY J. LAM, Vol II on 01/09/2026
PACMAR TECHNOLOGIES LLC vs MARTIN KAO, et al.                                Index: waiting–Zoom

**waiting** 72:2

**wanted** 78:9 82:18 108:22 146:25 147:2 150:16

**ways** 183:16

**Wealth** 155:11

**website** 75:5 88:9

**Wednesday** 68:14 69:16,25

**week** 68:1,2,3,12,13 69:6

**west** 106:15

**Wichita** 126:5

**wife** 131:12,18

**William** 138:17

**wished** 109:22

**Women** 63:5,13,17 86:9 87:1 89:21 93:22 95:7 97:9 98:14 100:11 109:5 115:10 116:21 128:17 130:16 131:22 132:22 141:15 142:23 143:17 179:24 182:25 184:22

**word** 88:2 95:8 166:8,11 169:15 175:11 181:21

**words** 169:11

**work** 66:4,9 70:4,7 71:3 111:2 112:4 165:6

**worked** 71:19 72:24 77:24,25 112:1 177:9

**working** 113:3

**works** 124:10 128:25 129:3

**world** 92:8 94:9 96:17 99:2

**worry** 149:23

**write** 64:16 125:5,10,15,18 139:16

**writes** 124:18,25 125:12 178:9

**Writeup** 175:15,19

**writing** 148:12

**wrong** 159:4

**wrote** 117:6

---

**X**

---

**Xerox** 100:7

---

**Y**

---

**year** 67:8 71:20 73:1 79:2,4 85:20 87:7,8,11 109:22 147:21 188:12

**Year's** 109:12 110:2

**years** 65:20 67:12 72:16 73:2 80:13,15,16 82:21,23 85:22 156:18 160:12,16,17,18 188:13

**young** 63:5,13,17 86:9 87:1 89:21 93:22 95:7 97:9 98:14 100:11 105:12 109:2,4 115:10 116:21 128:17 130:16 131:22 132:22 141:15 142:23 143:17 179:24 182:25 184:21

**younger** 71:5

---

**Z**

---

**Zoom** 72:1