Of Counsel:

LUNG ROSE VOSS & WAGNILD

CRYSTAL K. ROSE                    3242-0
(*crose@legalhawaii.com*)
Attorney at Law
A Law Corporation
RYAN H. ENGLE                      7590-0
(*rengle@legalhawaii.com*)
Attorney at Law
A Law Corporation
GRANT FASI ALLISON                 10368-0
(*gallison@legalhawaii.com*)
Attorney at Law
A Law Corporation
JOHN D. FERRY III                  9143-0
(*jferry@legalhawaii.com*)
KIRA J. GOO                        11519-0
(*kgoo@legalhawaii.com*)
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Telephone:  (808) 523-9000
Facsimile:  (808) 533-4184

HOSODA LAW GROUP, AAL, ALC
LYLE S. HOSODA                     3964-0
SPENCER J. LAU                     11105-0
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone:  (808) 524-3700
Facsimile:   (808) 524-3838
Email:  lsh@hosodalaw.com; sjl@hosodalaw.com

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC), | ) CASE NO. 1:22-cv-00283-LEK-WRP ) ) |
| Plaintiff, | ) PLAINTIFF'S MEMORANDUM IN ) OPPOSITION TO DEFENDANT ) TIFFANY JENNIFER LAM'S ) MOTION FOR SUMMARY |
| vs. | ) JUDGMENT, FILED MARCH 30, ) 2026 [DKT. 331]; CERTIFICATE OF ) SERVICE |
| MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC, | ) ) ) ) ) ) Trial Judge: Hon. Leslie E. Kobayashi ) Trial Date:  TBD |
| Defendants. | ) ) ) (*Caption continued on next page*.) |
| _____ | ) ) |
| CLIFFORD CHEN, | ) ) |
| Cross-Claimant, | ) ) |
| vs. | ) ) |
| MARTIN KAO, | ) ) |
| Cross-Claim Defendant. | ) ) |
| _____ | ) |

2

1553391.2

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUNd .......................................................3

      A.    The Company and the Parties .................................................... 3

      B.    SYWSE's Illegal Conduct .......................................................... 4

      C.    Kao's PPP Crimes...................................................................... 6

      D.    The Company's Damages Asserted in this Lawsuit .................................. 7

      E.    The Arbitration.......................................................................... 9

      F.    Kao's Appeals........................................................................... 12

III.  LEGAL STANDARD...........................................................................................14

IV.   SUMMARY JUDGMENT MUST BE DENIED ..........................................................15

      A.    Tiffany Failed Her Initial Burden .............................................. 15

      B.    There is No Final Judgment...................................................... 17

      C.    No Other Defendant Could Have Been Included in the
            Arbitration – Specifically Including Tiffany and SYWSE ...................... 21

      D.    The Court Should Not Stay This Matter, And Instead, Should    Set
            This Matter for Trial ............................................................... 23

V.    CONCLUSION...................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ................................................................................ 15

AT&T Techs. v. Communs. Workers of Am.,
    475 U.S. 643, 106 S. Ct. 1415 (1986) ................................................. 21

Bremer v. Weeks,
    104 Hawai`i 43, 85 P.3d 150 (2004) ................................................... 18

Brown v. CMG Mortg., Inc., No. 25-00335 JMS-RT,
    2026 LX 24817, at *7-8 (D. Haw. Jan. 16, 2026) ............................. 20

Cannon v. Dodd,
    154 Haw. 111, 546 P.3d 1225 (Ct. App. 2024) .................................. 19

E. Sav. Bank,
    129 Haw. (2013) ................................................................................... 19

Glover v. Fong,
    42 Haw. 560 (1958) ................................................................ 18, 19, 20, 21

Greer v. Cty. of Kauai, No. 25-00296 JMS-WRP,
    2026 LX 21045, at *14 (D. Haw. Jan. 28, 2026) .............................. 20

Hochroth v. Ally Bank, No. 18-00319-JAO-KJM,
    2019 U.S. Dist. LEXIS 52106 (D. Haw. Mar. 27, 2019) .................. 20

Home Diagnostics Inc. v. Lifescan, Inc.,
    120 F. Supp. 2d 864 (N.D. Cal. 2000) ............................................... 18

In re Mitsuo Yoneji,
    147 Haw. 104, 464 P.3d 892 (Ct. App. 2020) .................................. 19

Kauhane v. Acutron Co.,
    71 Haw. 458, 795 P.2d 276 (1990) ..................................................... 19

Kay v. City of Rancho Palos Verdes,
    504 F.3d 803, 808 (9th Cir. 2007) ....................................................... 19

ii

1553391.2

Keating v. Off. Of Thrift Supervision,
    45 F.3d 322 (9th Cir. 1995) ............................................................... 12-13

Littleton v. State,
    6 Haw. App. 70, 708 P.2d 829 (1985) ............................................. 18, 19, 20, 21

M.F. Williams, Inc. v. City & County of Honolulu,
    3 Haw.App. 319, 650 P.2d 599 (1982) ............................................. 18

Mayes v. WinCo Holdings, Inc.,
    846 F.3d 1274 (9th Cir. 2017) ....................................................... 14, 15

Migra v. Warren City Sch. Dist. Bd. Of Educ.,
    465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed.2d 56 (1984) ................................. 19

Mpoyo v. Litton Electro-Optical Sys.,
    430 F.3d 985 (9th Cir. 2005) ......................................................... 16

Narayan v. EGL, Inc.,
    616 F.3d 895 (9th Cir. 2010) ......................................................... 15

Petricevic v. Shin, No. 20-00283 LEK-WRP,
    2022 U.S. Dist. LEXIS 70454 (D. Haw. Apr. 18, 2022) ................................. 20

Sierra Club v. City & Cty. of Honolulu, No. 04-00463 DAE-BMK,
    2008 U.S. Dist. LEXIS 14533 (D. Haw. Feb. 26, 2008) ................................. 18

Siopes v. Kaiser Found. Health Plan, Inc.,
    130 Haw. 437, 312 P.3d 869 (2013) .................................................. 22

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.,
    809 F.2d 626 (9th Cir. 1987) ......................................................... 14

Tejada v. Deutsche Bank Nat'l Tr. Co.,
    No. 10-00136 SOM/KSC, 2011 U.S. Dist. LEXIS 83000
    (D. Haw. July 27, 2011) ............................................................. 23

**Statutes**

    HRS §658A-23 ....................................................................... 13

1553391.2

**Rules**

FRCP R. 56 ............................................................................................... 14

**Other**

Article I, Section 10 of the Hawaii Constitution ................................................ 14

1553391.2

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
TIFFANY JENNIFER LAM'S MOTION FOR SUMMARY JUDGMENT,
<u>FILED MARCH 30, 2026 [DKT. 331]</u>

I.      <u>INTRODUCTION</u>

Summary judgment must be denied because Defendant Tiffany Lam's ("Tiffany") primary argument – that the damages in the Arbitration and this matter are the "same" – is unsupported, speculative, and relies on impermissible inferences.  Indeed, as the movant for summary judgment, Tiffany must demonstrate that there is no issue of fact that the exact claims, issues, and damages in the prior action are the same raised in this action.  Not only has Tiffany relied on conclusions and impermissible inferences, Plaintiff PacMar Technologies LLC's ("PacMar" or the "Company") claims—including as stated in its damages expert report—clearly show the this matter is distinct from the Arbitration.

First, with respect to the PacMar's "RICO" claims, Tiffany has failed to show that any claim in the Arbitration related to a recovery from the Society of Young Women Scientists and Engineers LLC ("SYWSE") $60,000 scholarship "donations."  PacMar's RICO claims include a scheme by Tiffany and SYWSE to use $60,000 of Company money in an illegal effort to coverup other crimes committed (and since admitted to) by Martin Kao ("Kao"), Tiffany's husband. The Arbitration Final Award is completely devoid of mention of the $60,000 and PacMar's asserted Arbitration damages do not mention these amounts either.

Second, there is no "final judgment" arising from the Arbitration Final Award because Kao has since appealed confirmation of the Award. The Intermediate Court of Appeals ("ICA") has since vacated circuit court's ruling in part, instructing the state circuit court to conduct further proceedings which have not yet occurred. Kao then further appealed portions of the ICA's decision to the Hawaii Supreme Court, Kao's Application for Certiorari ("Application") was accepted, and the Parties are still waiting for the circuit court and the Hawaii Supreme Court's decisions. There is no final judgment, and therefore no preclusion, because under Hawaii law, which this Court employs where the lower tribunal also relied on Hawaii law, a judgment is not final with respect to issue or claim preclusion while it is on appeal.

Third, PacMar had no ability to assert its damages or claims (including "RICO" claims) in the Arbitration because it had no arbitration agreement with Tiffnay or SYWSE (or any non-Kao defendant for that matter). The Arbitration was limited to claims between PacMar and its members (who at the time were Kao and non-party Navitek Capital, Inc. ("NCI")) pursuant to a binding arbitration contained in the Company's Operating Agreement. That binding arbitration agreement further limited arbitrability of claims to matters arising from the Operating Agreement. Accordingly, there is no identity of claims, no preclusion, and no "double recovery" because these claims were not asserted in

2

the Arbitration, and they never could have been.

Fourth, the claims and damages asserted in this action are distinct from the Arbitration. PacMar's damages expert report details its damages, which total $36,835,501. PacMar's damages include amounts unrelated to the Arbitration, including those for lost profits, investment related losses, the SYWSE scholarships, losses related to office space that Defendants (including Chen and Hartman) acquired for PacMar, and damages arising from a 2025 settlement of claims asserted by Federal Election Commission ("FEC") against the Company related to Tiffany and SYWSE's conduct.

Accordingly, and as explained below, the Motion must be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Company and the Parties

PacMar is a company primarily engaged in the business of providing engineering and related services to the United States government. Dkt. 97, ¶3. Kao is PacMar's former and disgraced CEO, and Tiffany was and is Kao's wife. Dkt. 308, ¶4(c). SYWSE is a Hawaii registered LLC and a sham entity that was formed on or around November 26, 2019 by Tiffany for the purposes of making illegal campaign contributions. Ex. 1. In fact, Tiffany was and is the only member and manager that SYWSE has ever had, and the only person who had signing authority over SYWSE bank accounts. Exs. 2, 10, 11, 12.

3

1553391.2

B.    SYWSE's Illegal Conduct

Shortly after SYWSE was registered in November 2019, it received $150,000 from the Company on December 27, 2019, and then immediately "donated" $150,000 to 1820 PAC, a political action committee that supported Sen. Susan Collins.  Exs. 3, 4.  Senator Collins was selected because she was on a Congressional Appropriations Committee and had the power to direct money and contracts to the Company.  Ex. 7, 26:20-24, 145:16-146:5, 185:11-15; Ex. 8, 86:5-87:17, 88:5-15, 90:22-91:6

The $150,000 contribution to Senator Collins violated numerous federal laws.  Shortly after it was made, a complaint was filed with the Federal Election Commission that named Tiffany and SYWSE as respondents and alleged numerous federal criminal violations.  Ex. 5.  Immediately following the filing of the FEC's Complaint, Kao and Tiffany, along with Defendants Chen, Lawrence Lum Kee ("Lum Kee"), Duke Hartman ("Hartman"), concocted a plan to use SYWSE as a conduit for donations made by the Company to certain universities.

The intent of this plan was to obstruct justice by creating a false basis to tell investigators that SYWSE was a legitimate charitable organization that was formed for the purpose of giving these scholarships.  Ex. 9; see also Ex. 17, p.3 (stating that a response to the FEC will include that there is a "factual basis" for stating SYWSE was "not formed for the purpose of making that contribution").  In

4

1553391.2

these emails chain, Kao, former CFO and Defendant Clifford Chen ("Chen"), and others discussed that that the scholarships would be given to protect Kao and then included in responses to the FEC Complaint.  Ex. 9, pp. 5-9.  The plan had the added benefit that all universities who received money were in districts that elected members of congressional appropriations committees that could direct money and contracts to the Company. Ex. 7, 26:20-24, 145:16-146:5, 185:11-15; Ex. 8, 86:5-87:17, 88:5-15, 90:22-91:6.

Eventually, between March and June 2020, SYWSE made numerous donations to universities in districts that elected members of congress that sat on appropriations committees and these donations totaled $60,000.  Ex. 14,15.  SYWSE has never had any legitimate business or way of generating its own money, and all its funds were always the Company's money that were stolen and converted to be used by SYWSE for unlawful purposes.  See, e.g., Ex. 6.  Indeed, Chen, then the Company's CFO, confirmed that SYWSE's money came from the Company, and speculated that sometimes it may have been routed through the "family accounts" of Tiffany and Kao.  Ex. 7, 162:3-163:17.

At or around the same time that the scholarship plan was hatched, SYWSE, and therefore Tiffany, engaged William "Bill" Canfield ("Canfield") to represent her with respect to the FEC Complaint.  Ex. 16; Ex. 18, 133:20-134:16.  Canfield then sent a letter to the FEC on behalf of Tiffany and SYWSE that

5

1553391.2

perpetuated the lie that SYWSE was formed to give scholarships and "was not formed for the purpose of making that contribution[,]" as he had phrased it in a March 25, 2020 email to Defendants Kao and Hartman.  Ex. 19; Ex. 17, p.3. Notably, Canfield signed his letter to the FEC as counsel representing only two parties: SYWSE and "Jennifer Lam, its Manager."[1]

After the FEC Complaint was filed, the FEC commenced an administrative action against the Company based on the same allegations stated in the FEC Complaint and directly arising from Tiffany's actions (among others' actions) in operating SYWSE.  See Exs. 24, 25.  In 2025, the Company reached a settlement with the FEC that required the Company to pay the FEC $325,000, and the Company incurred substantial attorneys fees in defending against, and eventually settling, the FEC's inquiry.  See, Ex. 27, p.30.

Defendant Kao (as well as Chen and Lum Kee) have since pled guilty to crimes resulting from illegal campaign contribution conduct relating to SYWSE, the Company, and themselves.  See, e.g., Ex. 20; Dkts. 321-6, 321-11, 321-12.

C.    Kao's PPP Crimes

Between April 3 and April 21, 2020, Kao, with the help of Defendants Lum Kee and Chen submitted three Paycheck Protection Program ("PPP") loan applications.  See, e.g., Ex. 21, pp.3-9.  These applications were fraudulent and

---

[1] Jennifer is Tiffany's middle name.  Ex. 18, 91:9-14.

Kao was arrested in late-2020 and eventually pled guilty to various crimes associated with his fraudulent conduct. Exs. 22, 23.

####        D.       The Company's Damages Asserted in this Lawsuit

Tiffany's Motion is wholly premised on two misunderstandings. First, Tiffany wrongly concludes that the Company's damages in this action and the Arbitration are the same, and the Company has already recovered amounts that exceed its damages in both the Arbitration and in this case. Second, Tiffany wrongly concludes that the Arbitration award is a final judgment.

With respect to damages, the Company disclosed an expert report by JS Held detailing its damages to the Defendants on August 5, 2024. Dkt. 138. PacMar has since supplemented its damages report to include new information and damages, such amounts related to the settlement with the FEC, but also to remove other times that PacMar has determined are not damages, such as the "$2 million loan to Kao." See Ex. 27; Dkt. 341. PacMar's damages in this lawsuit are provided in the Supplemental Damages Report, and are distinct from the damages asserted or awarded in the Arbitration. See Ex. 27 (for example, schedule 1.0 on page 4 summarizes PacMar's damages totaling $36,835,501).

Although Tiffany ignored PacMar's damages and its expert report in her Motion, failed to engage her own expert or submit an expert report that rebuts PacMar's damages, and instead merely concluded that they "are the same" as those

1553391.2

Awarded in the Arbitration, the categories are distinct.  For example, PacMar's

damages, stated in its expert report, include:

- Lost Profits: $4,795,733, these were not alleged or awarded in the Arbitration.  Ex. 27, Schedules 1.0, 1.1, 1.2, 2.0, 2.1-2.4, 3.0

- Investment Related Losses: $14,304,145, these were not alleged or awarded in the Arbitration.  Ex. 27, Schedules 1.0, 1.1, 5.0.

- SYWSE Scholarships: $60,000.  These were mentioned in passing in the Final Award, but no amounts were included, alleged, or awarded.  Dkts. 332-9; 332-5, PAIGEID.5040,5072-5079; Ex.27, Schedule 8.1, pp. 24, 30-31.

- Losses related to Office Spaces: $3,338,812.  These amounts were not alleged or awarded in the Arbitration.  Dkts. 332-9; 332-5, PAIGEID.5040,5072-5079; Ex. 27, Schedule 8.1, pp. 25-28, 30-31

- FEC Related Damages: $527,020.  These amounts arose years after the Arbitration and are not part of the Final Award.  Ex. 24-26; Ex. 27, Schedule 8.1, pp. 30-31.

These are only a few examples among many demonstrating that Tiffany failed to

meet her burden.  Because Tiffany did not engage an expert, did not issue a rebuttal

report, and did not conduct an analysis of damages beyond concluding that they are

"all the same," PacMar need only point out examples of her failures.  Regardless,

comparison of PacMar's damages exhibit from the Arbitration (Dkt. 332-9), with

what was actually awarded in the Final Award (Dkt. 332-5, PAIGEID.5072-5079),

and PacMar's expert report (Ex. 27), demonstrates that the damages stated in the

Final Award are distinct from those alleged in this matter.

8

E.    The Arbitration

After Kao was arrested, Kao, PacMar,[2] and Navitek Capital Inc.

("NCI")[3] commenced arbitration before Arbitrator Jerry Hiatt ("Arbitrator").  The

Arbitration occurred on September 27 through October 1, 5, 7, 2021

("Arbitration").  The Arbitrator issued the Final Award on October 18, 2021.  Dkt.

332-5

Contrary to Tiffany's conclusions, PacMar could not have asserted

any claims against Tiffany (or any other non-Kao Defendant) in the Arbitration.

First, the Arbitration was pursuant to the binding arbitration agreement from the

Company's Operating Agreement.  Ex. 27, §12.22 (arbitration clause); Dkt. 332-5,

PAIGEID.5000 ("By agreement of . . . NCI. . . Kao. . . and MDG).  Second,

Tiffany and SYWSE were not parties to the Operating Agreement, not parties to

the binding arbitration clause, PacMar has no arbitration agreement with Tiffany,

and the only parties bound by the arbitration agreement were the Company and its

members.  Compare Ex. 33 with Dkt 332-5.  Third, claims asserted in the

Arbitration (by any party) were limited to those arising from the Operating

Agreement.  Ex. 33, §12.22.  Fourth, the Arbitration was expedited pursuant to

Section 12.22 of the Operating Agreement.  Dkt. 332-5, PAIGEID.5000; Ex. 33,

---

[2] Then called Martin Defense Group, LLC or "MDG."
[3] NCI was the 1% owner of PacMar's profits and the 61% owner of PacMar's capital.  Dkt. 332-3, ¶5.

9

§12.22.

The Operating Agreement also specifics and requires that the Arbitration was conducted under Hawaii State law "including as to all matters of construction, validity, and performance but without giving effect to the conflict of law provisions thereof." Ex. 33, §12.2.   There was simply no possible way for PacMar to assert claims against Tiffany (or any other non-Kao Defendant) in the Arbitration, or to assert its RICO claims against those same parties in the Arbitration.

PacMar and NCI's claims arose, first and foremost, from a need to immediately dissociate Kao from PacMar because Kao had received a debarment letter from the Navy in the wake of his arrest, and his debarment threatened the Company's ability to operate as a going concern. See Dkt. 332-3, ¶61.  Kao then voluntarily withdrew as the Company's Manager and CEO on November 19, 2020. Id., ¶63.  Accordingly, Kao became an assignee under the Company's Operating Agreement, and Kao's counterclaims in the Arbitration were to determine the value of his capital accounts pursuant to the Operating Agreement.

Tiffany is also wrong about the damages awarded and setoff in the Arbitration Final Award.  As an initial point, nowhere in the Final Award, the Arbitration parties' pleadings, or the arbitration exhibits is there any argument, allegation, or evidence of the $60,000 in SYWSE scholarship payments.  Although

10

Tiffany cites to sections of the Final Award where these occurrences are discussed, there is no damage award for the $60,000 scholarship payments. See Dkt. 332-5, PAIGEID.5073-5081 (making specific special damages findings). Tiffany's bald assertions that these amounts are already recovered by PacMar is unsupportable.

Tiffany also wrongly concludes that PacMar received $3.4 million from the Total Final Award, plus in excess of $425,000 in settlements with co-defendants . . . for a total recovery of over $3.825 million—substantially exceeding the gross special damages of $2,268,805.40. Dkt. 331-1, PAIGEID.4903. Tiffany has misunderstood the Final Award and miscalculated these figures.

The Total Final Award still due to PacMar is $6,125,781.80 plus interest. Dkt. 332-5, PAIGEID.5098. Further, the Arbitrator and the Final Award concluded that Kao's capital account set-off still left $848,967.38 in special damages due and owing to PacMar after the offset against Kao's accounts:

> In summary, the Arbitrator finds that the special damages found to have been caused by Mr. Kao, he has not met his burden to show that **the remaining $848,967.38 has already been offset** against his **capital account, thus these special damages remain due**.

Dkt. 332-5, PAIGEID.5077 (emphasis added). The $848,967.38 that was not offset is the difference between the gross special damages of $2,268,805.40 and the value of the setoff of $1,419,838.02.

Further contrary to Tiffany's conclusions, the Final Award did not offset the value of Kao's capital accounts as Tiffany now argues it does. Instead,

11

1553391.2

the offsets were applied to all damages found in the Final Award, and an outstanding Final Award of $6,125,781.80 remains "still due."  Dkt 332-5, PAIGEID.5098.

        F.     Kao's Appeals

After issuance of the Final Award, Kao filed a motion to vacate the Final Award, but the circuit court denied Kao's motion and confirmed the Final Award.  Dkt. 332-1, ¶11.  On May 27, 2022, Kao appealed the circuit court's decision to the Intermediate Court of Appeals ("ICA").

On appeal to the ICA, Kao argued that the *entire award* must be vacated, by arguing, among other things, that "Kao was denied a fair hearing because he was required to submit to a hearing in which his voice would be silent" and "[t]he Award violates public policy[,]" among other arguments.  Ex. 28, p.13.  Kao's Opening Brief to the ICA concludes: "The matter should then be remanded to the Circuit Court with instructions for a new arbitration hearing to be conducted."  Id., p.35.

The ICA issued its decision on July 29, 2025, in which the ICA affirmed in part, and vacated in part, the circuit court's denial of Kao's motion to vacate the final the award.  Ex. 29.  Specifically, the ICA affirmed the circuit court with respect to the Final Award's punitive damages findings and the Arbitrator's denial of Kao's motion to stay arbitration pursuant to Keating v. Off. Of Thrift

12

1553391.2

Supervision, 45 F.3d 322, 32425 (9th Cir. 1995). Ex. 29, pp.6-9. However, the ICA vacated the circuit court's order with respect to its failure to enter findings of fact and conclusions of law as to Kao's other eight (8) asserted grounds of dismissal. Those matters are currently proceeding before the circuit court, and because Kao has already initiated multiple appeals, it appears likely that Kao will again appeal any adverse ruling at the circuit court.

With respect to the two grounds on which the ICA affirmed, Kao has appealed to the Hawaii Supreme Court, and Kao's Application was granted on December 23, 2025. Dkt. 332-1, ¶¶12-16; Exs. 30-31. As with the ICA, Kao again seeks to completely vacate the Final Award and to completely re-arbitrate the entirety of the Arbitration through his appeal to the Hawaii Supreme Court. For example, in Kao's Application, he again argued that the circuit court was required to vacate the award under HRS §658A-23(a) because the Arbitrator failed to stay the arbitration pending the outcome of Kao's parallel criminal proceedings. Ex. 30, §V(A), p.9. Thus, Kao again seeks an order that will completely vacate the Final Award, which if granted, will make the Final Award a nullity and cause the parties to completely re-arbitrate from scratch.

In its order granting Kao's Application, the Hawaii Supreme Court ordered further briefing on: (i) "[w]hat constitutes 'sufficient cause for postponement' under HRS §658A-23(a)(3)?"; and (ii) "[w]hat factors should be

13

1553391.2

considered in deciding whether a civil proceeding in Hawaii should be stayed due to pending criminal charges based on Article I, Section 10 of the Hawaii Constitution?"  Ex. 31.  Kao submitted his Supplemental Brief on January 22, 2026, which he argued that the Final Award must be vacated because, among other things, numerous federal cases found in similar situations that the failure to stay or postpone an arbitration under the FAA resulted in vacatur.  Ex. 32.

Accordingly, there is no question that Kao seeks to completely vacate the Final Award, and if or when that happens, there will be no damages awarded through the Arbitration or Final Award, and the Parties will then re-arbitrate all damages, setoffs, and values of Kao's accounts that comprised the Final Award on which Tiffany's arguments are wholly premised.

III.   LEGAL STANDARD

Summary judgment may only be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP R. 56(a).  "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso., 809 F.2d 626, 630 (9th Cir. 1987).  When considering summary judgment, "[i]nferences must [] be drawn in the light most favorable to the nonmoving party."  Mayes v. WinCo Holdings, Inc., 846 F.3d 1274, 1277 (9th Cir. 2017).  "Credibility

14

1553391.2

determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. . . ruling on a motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. "A 'justifiable inference' is not necessarily the most likely inference or the most persuasive inference. Rather, an inference as to another material fact may be drawn in favor of the nonmoving party" if it is "'rational' or 'reasonable.'" Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010) (citation omitted).

IV.     SUMMARY JUDGMENT MUST BE DENIED

      A.     Tiffany Failed Her Initial Burden

As the movant on a Rule 56 Motion, Tiffany bears the burden of showing an absence of any genuine issue of material fact. Tiffany cannot rely on inferences or unexplained conclusions, as any inferences must be drawn in PacMar's favor as the non-movant. Mayes, 846 F.3d at 1277. Here, Tiffany's failure to specifically or expressly cite to amounts or damages that were included in the Final Award and recovered by PacMar must result in dismissal. Stated differently, Tiffany's non-specific assertions that the damages are the "same," combined with her failure to cite to PacMar's damages expert report, is not sufficient.

15

1553391.2

By failing to disclose and serve any damages expert report or rebuttal report, and failing to actually analyze or cite to what was awarded in the Final Award and in comparison to PacMar's damage expert report, Tiffany has not demonstrated that the damages are the "same."  The only specific amounts from the Arbitration and Final Award that Tiffany actually cites in the entire Motion are "[s]uch contributions included $190,587.76 to various political figures and $150,000 contribution to the 1820 PAC funneled through SYWSE."  Dkt. 331-1, p. 5.  Tiffany utterly fails to specify or cite to a single other expressly stated damage figure that is alleged to be the same between damages stated in the Final Award and what PacMar seeks in this action.  Although PacMar does not dispute that those amounts were stated in the Final Award, PacMar's damages in this matter are $36,835,501.

Fatal to Tiffany's Motion is the fact that the SYWSE scholarship damages totaling $60,000 were never awarded or asserted in the Arbitration.  As a result, the Final Award is silent as to this total.  Further, PacMar's damages are distinct from those asserted in the Arbitration, as stated in Section II(D) above and in PacMar's damages expert report.  Ex. 27.  For these reasons, there is no "identity of claims" because the rights and interests established by the Arbitration would not be "destroyed or impaired" by this action.  Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005)

16

Tiffany's repeated assertions that either the Appeal does not challenge the Arbitration award of damages, or that the criminal convictions establish claim and issue preclusion, are also both wrong. The Appeal clearly challenges the damages awards in the Final Award—why else would Kao appeal? Indeed, Kao's Opening Brief to the ICA and Application to the Hawaii Supreme Court both seek full vacatur of the entire arbitration award. Exs. 28,30. The ICA has already vacated the Award in part. Now, the Hawaii Supreme Court will review two of the ten errors that Kao raised to the ICA, the Circuit Court will review the other eight, and the Arbitration will either be vacated, or Kao will continue his appeals.

Second, Tiffany's assertion that the criminal convictions somehow create issue or claim preclusion as to damages is non-sensical. Tiffany argues because Kao's guilty pleas established certain facts that the Motion must be granted. Although PacMar agrees that the criminal convictions do establish certain facts (see Dkt. 321), those facts have nothing to do with whether claim or issue preclusion arise from the Arbitration. Indeed, as explained, there is no final judgment, and even if there was, the claims and damages asserted in this action are distinct from the Arbitration.

Accordingly, the Motion should be denied.

B.     There is No Final Judgment

Under state and federal law, there must first be a final judgment on the

1553391.2

merits to trigger the preclusive doctrines upon which Defendants rely.  See e.g.

Bremer v. Weeks, 104 Hawai`i 43, 54, 85 P.3d 150, 161 (2004) (party asserting

claim or issue preclusion must establish, among other things, that there was a final

judgment on the merits) (bracketing and ellipses added; citations and quotations

omitted); Sierra Club v. City & Cty. of Honolulu, No. 04-00463 DAE-BMK, 2008

U.S. Dist. LEXIS 14533, at *14-15 (D. Haw. Feb. 26, 2008); Home Diagnostics

Inc. v. Lifescan, Inc., 120 F. Supp. 2d 864, 866 (N.D. Cal. 2000).  Here, there is no

"final judgment on the merits" to trigger application issue or claim preclusion

because Kao appealed confirmation of the Final Award, the ICA *vacated* the

Award in part, and the Hawaii Supreme Court accepted Kao's Application to

further review and to vacate the Award.

> Under Hawaii law, an arbitration award is not final if it is on appeal:

> The expression "final judgment" is used in different contexts in the law, but in every instance imports a meaning of conclusiveness. For appeal purposes, for instance, a final judgment is one which settles all claims of all parties to the proceeding from which review is sought. See M.F. Williams, Inc. v. City & County of Honolulu, 3 Haw.App. 319, 650 P.2d 599 (1982). It is also significant in the application of the legal doctrine of res judicata. In that context, the supreme court, in Glover v. Fong, 42 Haw. 560 (1958), held that "[a] judgment is final where the time to appeal has expired without appeal being taken." Id. at 574. It follows from Glover that where an appeal has been taken, a judgment of the trial court is not final, at least for purposes of res judicata.

Littleton v. State, 6 Haw. App. 70, 75, 708 P.2d 829, 833 (1985).  Numerous other

recent Hawaii Appellate Court decisions have cited Glover and Littleton in

18

reaching the same conclusion.  Cannon v. Dodd, 154 Haw. 111, 546 P.3d 1225 (Ct.

App. 2024); In re Mitsuo Yoneji, 147 Haw. 104, 112, 464 P.3d 892, 900 (Ct. App.

2020).

"'[A] federal court must give to a state-court judgment the same

preclusive effect as would be given that judgment under the law of the State in

which the judgment was rendered.'"  Kay v. City of Rancho Palos Verdes, 504

F.3d 803, 808 (9th Cir. 2007) (quoting Migra v. Warren City Sch. Dist. Bd. of

Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)); see also 28 U.S.C.

§ 1738 (providing that the "records and judicial proceedings" of a state court "shall

have the same full faith and credit in every court within the United States . . . as

they have by law or usage in the courts of such State . . . from which they are

taken").

The District Court has recognized and applied the rule, and,

accordingly, applied state law doctrines of claim and issue preclusion:

> Claim preclusion cannot apply at this time, because the state court
> has not issued a final judgment. See E. Sav. Bank, 129 Haw. at 160
> (2013). A "final judgment" for claim preclusion purposes is a
> judgment that can no longer be appealed—either because the time to
> appeal has expired or because the appeal has concluded. See E. Sav.
> Bank, 129 Haw. at 160 (final judgment occurred "when the time to
> appeal the Foreclosure Judgment expired"); Kauhane v. Acutron Co.,
> 71 Haw. 458, 464, 795 P.2d 276 (1990) (final judgment occurred
> when plaintiff "withdrew his appeal and thereby foreclosed
> [appellate] review"); Littleton v. State, 6 Haw. App. 70, 75, 708 P.2d
> 829 (1985) ("[W]here an appeal has been taken, a judgment of the
> trial court is not final, at least for purposes of res judicata.").

19

1553391.2

Hochroth v. Ally Bank, No. 18-00319-JAO-KJM, 2019 U.S. Dist. LEXIS 52106, at *17 (D. Haw. Mar. 27, 2019).  On this basis, Judge Otake concluded that the "Court therefore declines to address the remaining requirements of claim preclusion until the appeal is concluded and the state court judgment becomes final. Thus, the Court DENIES Defendants' motion to dismiss the state law claims under Hawai'i preclusion law."  Id.

Further, because the underlying decisions and tribunals employed Hawaii law, this Court should also rely on Glover and Littleton, as the District Court did in Hochroth, to find there is no "final judgment" while the Award is on appeal.  Brown v. CMG Mortg., Inc., No. 25-00335 JMS-RT, 2026 LX 24817, at *7-8 (D. Haw. Jan. 16, 2026) (citing Littleton in noting that only in the absence of an appeal and with expiration of the time to appeal did the subject order become "final."); Petricevic v. Shin, No. 20-00283 LEK-WRP, 2022 U.S. Dist. LEXIS 70454, at *17 (D. Haw. Apr. 18, 2022) (citing Littleton for the same proposition). Conversely, the District Court has also held that federal law on determining whether a decision is "final" while on appeal is only employed where the lower tribunal exercised federal question jurisdiction.  Greer v. Cty. of Kauai, No. 25-00296 JMS-WRP, 2026 LX 21045, at *14 (D. Haw. Jan. 28, 2026).

Here, the Arbitration was conducted under a binding arbitration agreement that specified that "all matters of construction, validity and

20

1553391.2

performance" must be "governed by and construed in accordance with, the laws of the State of Hawaii[.]" Ex. 33, §12.2  Accordingly, there is no preclusion because the lower tribunals—the Arbitrator, the state circuit court, the ICA—relied on Hawaii state law and did not exercise federal question jurisdiction.  Put simply, the Arbitration must be construed under Hawaii state law according to its plain terms. Therefore, under Glover and Littleton, there is no final judgment.

        C.     No Other Defendant Could Have Been Included in the Arbitration – Specifically Including Tiffany and SYWSE

Tiffany wrongly concludes that preclusive effect also arises because this matter and the Arbitration "involv[es] the same parties or their privies[.]" Dkt. 331-1, pp.16.  Tiffany is wrong because the prior action was an arbitration and PacMar had no ability to join other third-parties to a private arbitration that arose under the Company's Operating Agreement.  Under the law of all jurisdictions, a prerequisite to the arbitrability of claims is a binding arbitration agreement. PacMar had no such agreement with Tiffany or any other Defendant outside of Kao.

The United States Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986).  The Hawaii Supreme Court stated the same (exact) holding: "[a]s repeatedly emphasized by this court,

21

1553391.2

arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he or she has not agreed so to submit." Siopes v. Kaiser Found. Health Plan, Inc., 130 Haw. 437, 456, 312 P.3d 869, 888 (2013) (cleaned up). Tiffany does not assert or argue that she had a binding arbitration agreement with PacMar which PacMar failed to invoke. Instead, Tiffany concludes without support that PacMar already had a chance to litigate its claims against her and the other non-Kao Defendants. It has not.

Here, the Arbitration was, according to the Award, conducted pursuant to an agreement by between the three parties to the arbitration, the Operating Agreement §12.22, and was expedited pursuant to that same agreement. Dkt. 332-5, PAIGEID.5000; Ex. 33. § 12.22. The Operating Agreement's binding arbitration clause mandates, among other things, that the only claims that are subject to arbitration are those "arising out of or relating to the terms or conditions or subject matter of this Agreement" and that binding arbitration agreement is only between PacMar and its members. Ex. 33, §12.22.

With respect to PacMar's "RICO" claims, PacMar's damages are premised, in part, on Tiffany and SYWSE's provision of $60,000 in scholarship amounts to coverup their federal election criminal conduct and violations and to obstruct investigations of the same conduct. There is no preclusion because PacMar had no ability to bring those claims against Tiffany or SYWSE in the

22

1553391.2

Arbitration. Moreover, those claims are not subject to the binding arbitration agreement between PacMar and its members in the Operating Agreement. Similarly, PacMar's other claims and damages also fall outside the scope of the Operating Agreement and could not have been asserted against Chen (or the other now-dismissed Defendants) in the Arbitration because they were not parties to that agreement.

Accordingly, the Motion should be dismissed.

D.     The Court Should Not Stay This Matter, And Instead, Should Set This Matter for Trial

The Court should not stay this case, and instead, the Court should schedule this matter for trial to avoid further prejudice to PacMar for the harms that SYWSE, Tiffany, and others have caused PacMar.

When the District Court stays a matter in this, or similar circumstances, such decisions are typically premised on a reasonable assumption that the appellate court will soon issue its decision and any stay will only last a short period of time. Tejada v. Deutsche Bank Nat'l Tr. Co., No. 10-00136 SOM/KSC, 2011 U.S. Dist. LEXIS 83000, at *10-12 (D. Haw. July 27, 2011) That is not a reasonable assumption here.

Tiffany's primary support for the requested stay is the speculative assumption that any stay will be short lived because the Hawaii Supreme Court oral arguments in Kao's appeal will occur in May 2026. However, the ICA also

23

1553391.2

remanded matters to the state circuit court, and once the circuit court acts, the Final Award will either be vacated (by the circuit court) or Kao will again appeal the circuit court's decision to the ICA. The first ICA appeal took nearly 2.5-years—the Opening Brief was filed on January 12, 2023 and the ICA's Summary Disposition Order was issued on July 29, 2025. Accordingly, a stay to allow Kao to exhaust his many appeals is likely to last for 3+ years.

Accordingly, a stay should not be entered because it will further prejudice PacMar and perpetuate the harm Tiffany, SYWSE, and others have caused PacMar.

## V. CONCLUSION

PacMar respectfully requests that the Court DENY Lam's Motion.

DATED: Honolulu, Hawaii, April 29, 2026.

/s/ Grant Fasi Allison
CRYSTAL K. ROSE
RYAN H. ENGLE
GRANT FASI ALLISON
JOHN D. FERRY III
KIRA J. GOO
LYLE S. HOSODA
SPENCER J. LAU

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

24

1553391.2