MIYOSHI & HIRONAKA LLLC
PHILIP W. MIYOSHI          #7459
201 Merchant Street, Suite 2240
Honolulu, Hawaii 96813
Telephone: (808) 888-5042
Email: philip@808-law.com

Attorneys for Defendant
TIFFANY JENNIFER LAM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| PACMAR TECHNOLOGES LLC (f/k/a MARTIN DEFENSE GROUP, LLC), <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case 1:22-cv-00283-LEK WRP <br><br> DEFENDANT TIFFANY JENNIFER LAM'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE <br><br><br> Judge: Hon. Leslie E. Kobayashi <br><br> Trial Date: Vacated |
| CLIFFORD CHEN, <br><br> Cross-Claimant, <br><br> vs. <br><br> MARTIN KAO, <br><br> Cross-Claim Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  DISCUSSION ......................................................................................................2

    A.  PacMar's Own Stipulation And Order Forecloses Its Operating
    Agreement Scope Argument ........................................................................2

    B.  The Criminal Convictions Independently Establish Collateral Estoppel..4

    C.  The Confirming Orders Supply Finality And The Offset Structure
    Documents Duplicative Recovery ...............................................................6

        1.  PacMar's *Glover/Littleton* Authorities Are Distinguishable.................6

        2.  Award's Two-Step Offset Structure Establishes Specific Duplicative
        Recoveries.........................................................................................7

        3. The Punitive Damages Award Functions as Treble Damages ...............9

        4. The Transactional Nucleus Test Reaches PacMar's "New" Damages
        Categories on the State-Law Claims ....................................................9

        5. The Arbitrator's "Could Have Been Raised" Language
        Is Dispositive ...................................................................................10

    D.  Counts I And II Fail Entirely On Rico Standing Grounds ......................11

    E.  PacMar's Privity Argument Leaves Issue Preclusion Intact ...................14

    F.  Count XIII (Fraudulent Conveyance) Fails On Multiple Independent
    Grounds ....................................................................................................15

    G.  The Court Should Stay This Action If Summary Judgment Is Not
    Granted ....................................................................................................16

III.  CONCLUSION ...................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*,
   449 U.S. 90 (1980) ................................................................................12
*American Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) ................................................................4
*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ........................................................................10, 11
*Ayers v. City of Richmond*,
   895 F.2d 1267 (9th Cir. 1990) ..............................................................4
*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) .............................................................9, 11
*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010) ..........................................................................10, 11
*Mpoyo v. Litton Electro-Optical Sys.*,
   430 F.3d 985 (9th Cir. 2005) ...............................................................8
*RJR Nabisco, Inc. v. European Cmty.*,
   579 U.S. 325 (2016) ............................................................................11
*Roxas v. Marcos*,
   89 Haw. 91, 969 P.2d 1209 (1998) ......................................................3
*Santos v. State of Hawaii*,
   64 Haw. 648, 646 P.2d 962 (1982) ......................................................8
*SEC v. Stein*,
   906 F.3d 823 (9th Cir. 2018) ...............................................................4
*Tafflin v. Levitt*,
   493 U.S. 455 (1990) ............................................................................3

**Statutes**

28 U.S.C.S. § 1738 .......................................................................................13

Haw. Rev. Stat. § 428-701 ..............................................................................6

## I.    INTRODUCTION

PacMar's opposition rests on positions that contradict its own prior conduct and concede by silence the duplicative nature of specific damages categories sought in this action. In 2021, PacMar — through court-approved stipulation — committed every claim now mirrored in this lawsuit to binding arbitration under Section 12.22 of the Operating Agreement. PacMar now disowns that stipulation, asserting the very clause it invoked was too narrow to encompass the same kinds of claims it actually arbitrated, while simultaneously invoking the resulting Award as the source of its current corporate structure under Steven Loui's control and the offset recoveries it has banked.

PacMar's opposition fails for at least five independent reasons, any one of which warrants summary judgment. *First*, the April 1, 2021 Stipulation and Order forecloses PacMar's argument that Section 12.22 was too narrow to reach RICO and tort claims. *Second*, the federal criminal convictions of Kao, Chen, and Lum Kee independently establish collateral estoppel — and PacMar has already represented to this Court in ECF 321 that the same convictions estop relitigation of "the same facts and issues" pleaded in the SAC. *Third*, the Award's offset structure documents specific dollar overlaps with damages PacMar seeks here. *Fourth*, Counts I and II fail entirely on RICO standing grounds: every pleaded damages category is either compensated through the Arbitration or speculative under ECF 91, and PacMar's

"new" damages are not pleaded as RICO injury and do not flow from the campaign contribution predicate acts. *Fifth*, Count XIII fails for lack of any substantive allegation against Lam.

The Arbitrator himself anticipated and foreclosed PacMar's argument: "anything that could have been brought up in these proceedings by any Party, including Mr. Kao, is intended to be fully and finally resolved by this Award." Award at 80.

## II.    DISCUSSION

### A.    PacMar's Own Stipulation And Order Forecloses Its Operating Agreement Scope Argument

PacMar's central procedural argument — that Section 12.22 of the Operating Agreement was too narrow to encompass RICO or tort claims, leaving PacMar no procedural mechanism to assert them in the Arbitration collapses against PacMar's own conduct in the underlying state court action.

On April 1, 2021, the Circuit Court of the First Circuit entered a Stipulation and Order in *Navatek Capital Inc. v. Kao*, Civil No. 1CCV-20-0001511 ("Stipulation"), signed by PacMar through counsel Peter Starn and approved by Judge Gary W.B. Chang. Through that stipulation, PacMar committed to "submit any and all claims asserted in the Complaint and/or Crossclaim and any affirmative defenses and/or counterclaims to binding arbitration pursuant to section 12.22 of the Operating Agreement." Stipulation ¶ 3. The Complaint asserted eleven counts,

2

including pure tort and statutory claims: Fraud, Embezzlement, Conversion, Civil Conspiracy, Unjust Enrichment, Gross Mismanagement, and Accounting. PacMar's First Amended Crossclaim asserted Gross Negligence and other tort claims. PacMar — through the same management led by Loui that prosecutes this litigation — affirmatively stipulated, with court approval, that all of these claims fell within Section 12.22's scope.

Section 12.22's plain language confirms its breadth: the clause covers "any difference arising out of or relating to the terms or conditions or **subject matter** of this Agreement," and arbitration is "the exclusive means of settling any disputes." Operating Agreement § 12.22 (emphasis added). Tort and RICO claims arising from Kao's misconduct in operating the Company plainly relate to that subject matter — which is precisely why PacMar stipulated they were arbitrable.

PacMar cannot now reverse course. Judicial estoppel bars a litigant from successfully maintaining one position and asserting a contrary position later. *Roxas v. Marcos*, 89 Haw. 91, 124, 969 P.2d 1209, 1242 (1998). PacMar invoked Section 12.22's broad scope in 2021 to obtain comprehensive arbitration and the substantial Award it now relies on for offset and corporate-structure purposes; it cannot adopt a narrow-scope position to evade that Award's preclusive consequences.

The stipulation also forecloses PacMar's RICO-specific argument. Civil RICO is subject to concurrent state and federal jurisdiction. *Tafflin v. Levitt*, 493

3

U.S. 455, 467 (1990). PacMar stipulated to resolve "any and all claims" against Kao through arbitration as the "exclusive means of settling any disputes." If PacMar wished to assert RICO labels for Kao's conduct, the Arbitration was the time and place. PacMar received the benefit of arbitrating tort claims under Section 12.22 — including Civil Conspiracy, the substantive analog of its RICO claims — and now seeks to keep those recoveries while disclaiming the preclusive consequences of the very forum it chose. The Court should not reward this maneuver.

> **B.    The Criminal Convictions Independently Establish Collateral Estoppel**

PacMar's opposition dismisses the criminal-conviction argument as "non-sensical" in a single paragraph. Opp. at 17. That position is irreconcilable with the position PacMar itself has already taken before this Court. On March 12, 2026, PacMar filed a Motion in Limine (ECF 321) seeking precisely the relief Lam now invokes — an order that "the guilty pleas, factual bases and criminal convictions against Defendants Martin Kao and Clifford Chen be pre-admitted into evidence, and that Kao and Chen are collaterally estopped from attempting to litigate facts and issues to which they have already pleaded, and been found guilty of, in their criminal cases." ECF 321-1 at 1. PacMar adopted the *SEC v. Stein / Ayers v. City of Richmond* four-factor test as the governing standard (*id.* at 2-3); represented that the criminal convictions involve "the same facts and issues in common with and which arise out of the same transaction as those alleged in the SAC herein" (*id.* at 10); and invoked

4

*Tradewind Ins. Co. v. Stout*, 85 Hawaiʻi 177, 188-189 (App. 1997), as Hawaiʻi authority for applying collateral estoppel from criminal convictions even where the party invoking estoppel was not a party to the criminal proceeding (*id.* at 5-6).

PacMar cannot have it both ways. The doctrine PacMar invoked offensively against Kao and Chen applies with equal force defensively against PacMar. PacMar's representation that the criminal cases involve "the same facts and issues" as the SAC is a judicial admission of the very factual identity required to apply collateral estoppel against PacMar on the underlying facts of the SAC. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988) (statements in briefs may constitute judicial admissions). The Hawaiʻi authority PacMar placed before the Court — *Tradewind* — is direct support for the non-mutual collateral estoppel Lam now asserts.

Each factor of the four-factor test PacMar adopted is satisfied for each plea. *SEC v. Stein*, 906 F.3d 823, 829 (9th Cir. 2018); *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990); *Tradewind*, 85 Hawaiʻi at 188-189. Kao pleaded guilty to PPP fraud in the Hawaii Criminal Case and to campaign contribution offenses in the D.C. Criminal Case. Chen and Lum Kee pleaded guilty in the D.C. Criminal Case to the campaign contribution offenses. Each defendant faced serious federal felony charges and was motivated to litigate. Each case involved extensive pretrial proceedings and detailed statements of offense executed in open court. The factual

5

issues admitted — fictitious-payroll PPP applications, money laundering of PPP proceeds, the $150,000 conduit through SYWSE to 1820 PAC, and PacMar-funded unlawful campaign contributions — are identical to the SAC's RICO predicate acts. PacMar has expressly admitted the identity in ECF 321.

This ground is insulated from any appellate outcome PacMar invokes. Even total vacatur on the *Keating* issue would not disturb the convictions' preclusive effect on the underlying facts. The Fifth Amendment concern animating *Keating* no longer exists post-pleas, and any new arbitration would proceed with Kao collaterally estopped from contesting the same conduct. The RICO claims fail regardless of how the Court resolves any other preclusion question.

### C.    The Confirming Orders Supply Finality And The Offset Structure Documents Duplicative Recovery

#### 1.    PacMar's *Glover/Littleton* Authorities Are Distinguishable

PacMar's appellate-finality authorities — *Glover, Littleton, and Hochroth* — are distinguishable. None addresses the posture here, where the appellate court has issued a merits ruling partially affirming the order in question. The ICA's July 29, 2025 SDO affirmed the Confirming Orders on the *Keating* analysis and the punitive damages award; the vacatur was procedural only and limited to eight grounds requiring more developed FOF/COLs. The Arbitrator's underlying factual findings and the $2,268,805.40 in compensatory special damages were not challenged at any appellate level and are not on remand.

6

## 2.    The Award's Two-Step Offset Structure Establishes Specific Duplicative Recoveries

PacMar contends the motion "misunderstood" the offset structure (Opp. at 11-12). The Award's actual mechanics show otherwise.  Award at 73-80. The Arbitrator applied offsets in two distinct rounds:

**Round One** credited $1,419,838.02 in specific damages categories that Kao established had been deducted from his capital account through bookkeeping entries, including $445,000 in Improper Distributions (with the December 23, 2019 entry to "Fund SUWSE" of $150,000 expressly tabulated at Award p. 76) and $974,838.02 in Post-Arrest Attorney Retainers (with the $250,000 Michael Green retainer expressly tabulated at Award p. 77).

**Round Two** offset the remaining $848,967.38 in special damages against the present value of Kao's capital account ($1,986,490), leaving a $1,137,522.62 unpaid capital balance owed to Kao.

The economic reality is straightforward: through this structure, the Company received the equivalent of approximately $3.4 million in transferred value from Kao — value that, absent the damages award, would have flowed to Kao on dissociation under HRS § 428-701. PacMar's argument that it received only an entitlement to $848,967.38 in remaining special damages reads only half of the Award.

The specific categories credited overlap directly with damages PacMar now seeks:

7

| Damages Category | Award Treatment | SAC Allegation | PacMar's Response |
|---|---|---|---|
| $150,000 SYWSE/1820 PAC | Credited as offset (p. 76) | RICO predicate (¶¶ 332-333) | Conceded — Opp. p. 16 |
| $250,000 Michael Green retainer | Credited as offset (p. 77) | Damages claim (¶ 350) | No response |
| $445,000 Improper Distributions | Credited as offset | Within self-dealing | No response |
| $974,838.02 Post-Arrest Retainers | Credited as offset | Self-dealing damages | No response |
| $190,587.76 Political contributions | Awarded in special damages | $173,968 (¶¶ 334-335) | Conceded — Opp. p. 16 |
| Lam's Amex charges | Within $295,661.12 Personal Expenses (Finding #9) | ¶¶ 269-274, 306-314 | No response |
| Foundation expenses | $107,209.55 awarded | ¶¶ 269-274, 306-314 | No response |
| Crisis Communications | $35,575.90 awarded | Self-dealing damages | No response |

PacMar concedes that the $150,000 1820 PAC contribution and the $190,587.76 in political contributions "were stated in the Final Award." PacMar's only response — invoking its larger total damages figure of $36,835,501 — is a non-sequitur. Whether PacMar's aggregate damages exceed the Award is irrelevant to whether specific line items have already been recovered. PacMar offers no response at all to the $250,000 Michael Green retainer, Lam's Amex charges, the Foundation expenses, or the Crisis Communications expenses. The double-recovery prohibition operates on this overlap directly.

8

PacMar's burden-shifting argument — that Lam was required to engage an expert and submit a rebuttal report — misstates the summary judgment standard. The duplicative nature of specific line items is established by direct comparison of two documents in the record: the SAC and the Award. The legal effect of that overlap is a question of law for the Court, not an empirical question requiring expert input.

### 3.  The Punitive Damages Award Functions as Treble Damages

The Arbitrator awarded $4,537,610.80 in punitive damages — twice the gross special damages, functionally equivalent to a treble award comparable to RICO under § 1964(c). PacMar does not contest this point. The marginal value of pursuing RICO for the same conduct is therefore zero, and the policy concerns underlying the one-satisfaction rule are squarely implicated.

### 4.  The Transactional Nucleus Test Reaches PacMar's "New" Damages Categories on the State-Law Claims

PacMar contends that Lost Profits ($4,795,733), Investment-Related Losses ($14,304,145), and Office Space Losses ($3,338,812) are "new" categories not awarded in the Arbitration. As to the state-law claims (Counts V-XIII), even accepting that characterization, these damages are barred under the transactional nucleus test of *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005), and *Santos v. State of Hawaii*, 64 Haw. 648, 651-52, 646 P.2d 962, 965 (1982). All claims arising from the same nucleus of operative facts are precluded regardless of the legal theory or damages label affixed.

9

The lost profits and investment-related losses are downstream consequences of the identical conduct adjudicated in the Arbitration — Kao's PPP fraud, money laundering, and self-dealing that destroyed the Company's banking relationships and operational stability. The Arbitrator expressly recognized these consequences (Award at 79-80, noting the Company "lost its banking relationship both with Merrill Lynch and with its main banker, CPB, due to its fraudulent loan applications"). The office space damages of $156,571 are pleaded as part of the NEWCO Fraud — the September 2020 scheme to transfer the Company's assets to MDG NEWCO, LLC. SAC ¶¶ 275-281. The NEWCO Fraud was directly before the Arbitrator through PacMar's Crossclaim Count IV (Declaratory Relief – NEWCO Agreements) and was resolved in Award Finding #9. PacMar's choice not to pursue the lease costs and other consequential damages from the NEWCO scheme in the Arbitration does not entitle it to seek them now under different theories. As demonstrated in Section D *infra,* these "new" damages cannot save Counts I and II because they are not pleaded as RICO injury and do not flow from the campaign contribution predicate acts in any event.

### 5.   The Arbitrator's "Could Have Been Raised" Language Is Dispositive

The Arbitrator expressly stated: "anything that could have been brought up in these proceedings by any Party, including Mr. Kao, is intended to be fully and finally resolved by this Award and, as to such matters, this denial of an accounting is with

prejudice." Award at 80. This is direct support for the "could have been raised" branch of res judicata under *Santos*. The Arbitrator's own framing forecloses PacMar's argument that it remains free to assert claims that arise from the same conduct and could have been raised in the Arbitration.

### D. Counts I And II Fail Entirely On Rico Standing Grounds

Counts I and II — the only remaining RICO claims — fail on RICO standing grounds for reasons that require no resolution of any preclusion question. RICO standing under § 1964(c) requires concrete injury to "business or property" directly caused by the predicate acts. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). This Court has already held that PPP-related damages are too speculative to support RICO standing. ECF 91 at 3. Counts I and II plead exactly six damages categories (SAC ¶¶ 354, 360); each fails standing on either compensation or speculative grounds, and PacMar's opposition does not engage the standing argument anywhere.

**(1) $150,000 1820 PAC contribution.** Already credited to PacMar through the Arbitration's offset structure (Award p. 76, expressly tabulated as the December 23, 2019 "Fund SUWSE" entry). A plaintiff fully compensated for a specific injury through prior recovery cannot demonstrate the present, concrete, uncompensated loss § 1964(c) demands. *See Canyon County*, 519 F.3d at 975.**(2)**

**$173,968 in other illegal campaign contributions.** Subsumed within the $190,587.76 in Political Contributions awarded as gross special damages. Award at 73-74. PacMar conceded at Opp. p. 16 that this amount "was stated in the Final Award." Already compensated; no cognizable RICO injury.

**(3) $60,000 SYWSE scholarship payments.** SAC ¶ 139 alleges these were paid with "washed" PPP money. This Court already held PPP-related damages are speculative for RICO standing. The $12,841,490 SBA restitution order confirms the entity defrauded by the PPP scheme is the federal government, not PacMar.

**(4) $250,000 Michael Green retainer.** Already credited to PacMar through the Arbitration's offset structure (Award p. 77, expressly tabulated as "Michael Green" within the $974,838.02 in Post-Arrest Attorney Retainers). Already compensated; no cognizable RICO injury.

**(5) $201,249.60 in pay raises.** PacMar's own pleading establishes the speculative defect. The SAC alleges the raises were "approved by the other members of the enterprise immediately following the completion of *the PPP fraud*" (SAC ¶ 244, emphasis added) and that the raises "the enterprise members gave to themselves in the days and weeks after completing *the PPP fraud* shows their common and illegal purpose" (SAC ¶ 257, emphasis added). PacMar thus pleads, as its own factual theory, that the raises were funded from PPP-fraud proceeds. The same speculative defect ECF 91 identified for the signing bonus damages applies with

12

greater force here, because PacMar's pleading directly admits the PPP-fraud source rather than requiring inference from collateral allegations. The proximate cause chain to the Counts I and II campaign contribution predicate acts also fails. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). PacMar's pleading characterizes the raises as flowing from "the PPP fraud," not the campaign contribution scheme — and PPP fraud is not a pleaded predicate act of Counts I or II.

**(6) Unquantified amounts to capitalize and fund SYWSE.** Vague and unspecified. The SYWSE expenses ($1,513.83) the Arbitrator quantified are already within the gross special damages award. To the extent PacMar contends additional amounts exist, they remain unquantified and traced to laundered Company funds; neither a vague placeholder nor PPP-traced funds can satisfy § 1964(c)'s concrete-injury requirement.

PacMar cannot save Counts I and II by pivoting to its expert report's "new" damages categories. *First*, those damages are not pleaded as RICO injury — ¶¶ 354 and 360 exhaustively enumerate the RICO damages, and lost profits, investment losses, office space, and FEC penalties are not among them. RICO standing rests on pleaded injury, not theories developed at expert disclosure. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 346 (2016); *Canyon County*, 519 F.3d at 975. *Second*, the "new" damages do not flow from the campaign contribution predicate

acts; § 1964(c) demands a "direct relation" between injury and predicate acts. *Hemi Group, LLC*, 559 U.S. at 9; *Anza*, 547 U.S. at 457. PacMar itself frames lost profits and investment losses as flowing from Kao's PPP fraud destroying banking relationships — a different conduct cluster from the campaign contribution scheme. *Third*, the FEC settlement damages ($527,020) fail independently: the FEC dismissed all allegations against Lam in MUR 7690 on a unanimous 6-0 vote, finding Kao used Lam's name to obscure his own conduct; the settlement is a regulatory penalty rather than business or property injury; and these damages were not pleaded in Counts I or II in any event.

Counts I and II therefore fail entirely on RICO standing grounds, independent of any preclusion analysis. The Court need not resolve any contested doctrinal question to dispose of the only remaining RICO claims.

### E.    PacMar's Privity Argument Leaves Issue Preclusion Intact

PacMar argues that Tiffany and SYWSE were not parties to the Operating Agreement's arbitration clause and that PacMar therefore could not have asserted RICO or tort claims against them in the Arbitration. That argument addresses **claim preclusion** (which requires identity of parties or privity) and does nothing to defeat **defensive non-mutual collateral estoppel**, which only requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate. *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). PacMar was a full party to the Arbitration:

seven days of hearings, fifteen witnesses, hundreds of exhibits, comprehensive post-arbitration briefing. PacMar had every opportunity to litigate the underlying factual issues — the PPP fraud, the money laundering, the campaign contribution scheme, the SYWSE coverup, the self-dealing — and did so vigorously. PacMar is precluded from relitigating those issues regardless of the defendant.

PacMar also fails to engage Lam's central comparative argument in the motion: that the SAC's RICO "enterprise" consists of the same individuals named as conspirators in Demand Count VIII (Civil Conspiracy), and the alleged RICO predicate acts are federal statutory labels affixed to identical misconduct. That silence concedes the transactional nucleus point. As to Kao, PacMar's stipulation (Section II.A. *supra*) closes the loop: RICO claims against Kao were within the scope PacMar stipulated would be exclusively resolved by arbitration.

**F.  Count XIII (Fraudulent Conveyance) Fails On Multiple Independent Grounds**

Count XIII fails on at least three independent grounds, all unaddressed in the opposition. *First*, PacMar's expert has now disclaimed the underlying "$2 million loan to Kao" as a damages category (Opp. at 7). Without an underlying creditor claim, no fraudulent conveyance claim exists — Count XIII is expressly predicated on PacMar holding "a claim against Defendant Kao in the amount of the Purported $2M Loan." SAC ¶ 464. *Second*, the Arbitrator expressly denied the underlying $2M Note Receivable claim as speculative and "highly inequitable and inappropriate."

Award at 47-48, 74. *Third*, and dispositively as to Lam, the SAC alleges no wrongful act by her. Paragraphs 462-466 attribute every element of the claim to Kao alone. Lam appears only in paragraph 467(c) as a party against whom injunctive relief is sought. The SAC does not allege Lam knew of the PPP fraud, the Note Receivable, or any fraudulent intent. No substantive cause of action is stated against her.

### G.    The Court Should Stay This Action If Summary Judgment Is Not Granted

PacMar's opposition to a stay rests on speculation that any stay would last 3+ years. Opp. at 23-24. That speculation ignores the immediate posture: Hawaiʻi Supreme Court oral argument is set for May 12, 2026 — less than a week away — and the trial date in this action has been vacated with no new date set. A stay imposes no marginal delay on PacMar's recovery beyond amounts already received.

Both parties benefit from awaiting resolution. If the Award were vacated entirely (as PacMar's opposition suggests is possible), the consequences extend far beyond preclusion: Loui's 99% control would unwind, the over $1.4 million in capital account offsets would unwind, PacMar would have to repay credits already banked, and the litigation authority of current management could be challenged retroactively. PacMar's own theory of appellate uncertainty supports a brief stay. Comity under 28 U.S.C.S. § 1738 likewise counsels deferring to the Hawaiʻi Supreme Court before this Court resolves the same preclusion question on the same record.

## III.   CONCLUSION

Summary judgment rests on multiple independent grounds, any one of which is sufficient: the Stipulation forecloses PacMar's scope-of-arbitration argument; the criminal convictions preclude relitigation of the underlying facts regardless of any appellate outcome; the Award's offset structure establishes specific dollar duplications PacMar does not address; RICO standing defeats Counts I and II in their entirety; and Count XIII fails for lack of any substantive allegation against Lam. The Arbitrator's own language at Award page 80 supplies the closing point: PacMar's claims are "anything that could have been brought up" in the Arbitration, intended to be "fully and finally resolved by this Award."

Lam respectfully requests that this Court grant the Motion for Summary Judgment or alternatively stay these proceedings pending resolution of the Hawaiʻi appellate proceedings.

DATED: Honolulu, Hawaiʻi, May 4, 2026.

*s/Philip W. Miyoshi*
PHILIP W. MIYOSHI
Attorney for Defendant
TIFFANY JENNIFER LAM

17