Of Counsel:

LUNG ROSE VOSS & WAGNILD

CRYSTAL K. ROSE 3242-0
(*crose@legalhawaii.com*)
Attorney at Law
A Law Corporation
RYAN H. ENGLE 7590-0
*(rengle@legalhawaii.com)*
Attorney at Law
A Law Corporation
GRANT FASI ALLISON 10368-0
*(gallison@legalhawaii.com)*
Attorney at Law
A Law Corporation
JOHN D. FERRY III 9143-0
*(jferry@legalhawaii.com)*
KIRA J. GOO 11519-0
*(kgoo@legalhawaii.com)*
Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813
Telephone: (808) 523-9000
Facsimile: (808) 533-4184

HOSODA LAW GROUP, AAL, ALC
LYLE S. HOSODA 3964-0
SPENCER J. LAU 11105-0
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone: (808) 524-3700
Facsimile: (808) 524-3838
Email: lsh@hosodalaw.com; sjl@hosodalaw.com

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC),<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN KAO; TIFFANY JENNIFER LAM a.k.a. JENNY LAM and/or TIFFANY KAO; LAWRENCE KAHELE LUM KEE; CLIFFORD CHEN; DUKE HARTMAN; SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC,<br><br>Defendants.<br><br>CLIFFORD CHEN,<br><br>Cross-Claimant,<br><br>vs.<br><br>MARTIN KAO,<br><br>Cross-Claim Defendant. | CASE NO. 1:22-cv-00283-LEK-WRP<br><br>CONCISE STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MEMORANDUM; DECLARATION OF GRANT FASI ALLISON; EXHIBITS 1-17; CERTIFICATE OF SERVICE<br><br>Trial Judge: Hon. Leslie E. Kobayashi<br>Trial Date: Vacated |



1609748.3

CONCISE STATEMENT OF FACTS IN SUPPORT OF
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM

Pursuant to Local Rule 56.1 and the Court's September 18, 2026 EO: Order Approving Plaintiff and Defendant Tiffany Jennifer Lam's Proposed Supplemental Briefing Schedule [Dkt. 381], Plaintiff PACMAR TECHNOLOGIES LLC (f/k/a MARTIN DEFENSE GROUP, LLC) (" "PacMar" or "Company") submits its Concise Statement in Support of Plaintiff's Supplemental Memorandum.

| No. | Facts | Evidentiary Support |
|---|---|---|
| 1. | When Society of Young Women Scientist and Engineers LLC ("SYWSE") was founded, Martin Kao represented to others within the Company that SYWSE was founded by his wife, Tiffany Lam, because she was passionate about young women who were studying math and engineering. | Exhibit 1, 151:10-152:3. |
| 2. | The illegal $150,000.00 campaign contribution was made with Company money. | Exhibit 1, 26:6-27:2. |
| 3. | Kao, testifying as SYWSE's representative, also confirmed that these funds were intended to be Company money taken from the Company's accounts, but later this amount was "reversed" and booked as a distribution to Kao in direct response to the Federal Election Commission's ("FEC") complaint and in an effort to fool the FEC. | Exhibit 1, 123:24-125:1. |
| 4. | Kao and Tiffany now both claim that Tiffany had no knowledge of SYWSE and Kao forged Tiffany's signature on these documents, and the basis for this assertion is that Kao says he forged every SYWSE document and that the fact that "Jennifer Lam" and "Tiffany Lam" are the names on each SYWSE document is purely and completely a "coincidence." | Exhibit 1, 133:5-135:19. |

| | | |
|---|---|---|
| 5. | Contrary to Kao's assertions (and therefore Tiffany's assertions), Kao could not identify the signatures on most of these documents. For example, when Kao was shown a standalone "Jennifer Lam" signature taken from the SYWSE's Central Pacific Bank ("CPB") Signature Card, Kao did not recognize the signature and he could not be sure he signed it. | Exhibit 1, 52:14-53:1; Exhibits 2-3. |
| 6. | When Kao was shown a standalone "Tiffany Lam" signature cropped from a Lease that Kao and Tiffany executed, he at first said he did not recognize it, but later changed his testimony and said he forged it. | Exhibit 1, 53:2-5, 73:3-21; Exhibits 4-8, 17. |
| 7. | Kao was also only "75 precent" sure he forged the "Jennifer Lam" signature on the SYWSE operating agreement when shown that signature. Ex. 1, 54:5-16; Exs. 9-10. | Exhibit 1, 54:5-16; Exhibits 9-10. |
| 8. | Kao was only "85 percent" sure he forged the "Jennifer Lam" signature on the CPB New Business Account Information form for SYWSE's bank account. | Exhibit 1, 54:20-55:12. |
| 9. | Similarly, Kao did not recognize the stand-alone signature of "Tiffany Lam" that was submitted to the Circuit Court on a signed declaration under oath by Tiffany in another case. | Exhibit 1, 53:6-13; Exhibit 5, p. 13 (Lam Declaration). |
| 10. | Kao testified that he does not know what Tiffany's authentic signature looks like and could not identify it if he saw it. Because Kao does not even know what Tiffany's signature looks like, and because he could not be certain he forged all the SYWSE documents, he cannot establish with any certainty that he forged all relevant SYWSE documents. | Exhibit 1, 43:5-11. |
| 11. | Kao testified that he did not forge "Jennifer Lam" or "Tiffany Lam" on every SYWSE document. | Exhibit 13, 135:20-136:12. |
| 12. | Kao testified that he thinks Defendants Clifford Chen ("Chen") and Lawerence Lum Kee ("Lum Kee") may have signed some of the SYWSE documents as well. | Exhibit 13, 135:20-136:12; Ex. 1, 30(b)(6) Depo. Tr., 56:18-58:1. |

| | | |
|---|---|---|
| 13. | Kao testified that he had no personal knowledge that Chen or Lum Kee forged "Jennifer Lam" or "Tiffany Lam" on any SYWSE documents. | Exhibit 13, 135:20-136:12; Ex. 1, 30(b)(6) Depo. Tr., 56:18-58:1. |
| 14. | The basis for Kao's knowledge is what he claims the Federal Bureau of Investigation ("FBI") told him. | Exhibit 13, 135:20-136:12; Ex. 1, 30(b)(6) Depo. Tr., 56:18-58:1. |
| 15. | Tiffany provided a picture of her Hawaii state driver's license to the enterprise and to Lum Kee, who then emailed to CPB to open SYWSE's bank account. | Exhibit 14. |
| 16. | Kao testified that he has "no knowledge" of how Tiffany's driver's license was emailed to CPB and that he had no role in that action. | Exhibit 1, 97:12-20. |
| 17. | Tiffany was integral to the funding and payments of Company money through SYWSE to universities. For example, emails show that Lori Bofman ("Bofman"), who was assigned to work on SYWSE for the Company, sent numerous emails confirming that SYWSE funds were company funds routed through Tiffany. | Dkt. 343-8; Exhibit 15. |
| 18. | Bofman was not only Kao's assistant and an employee of the Company, but Bofman is personal and social friends with Tiffany. | Dkt. 343-20, Vol. II Lam Depo., 105:16-108:15, 163:14-17. |
| 19. | Kao admitted that this scheme was both a cover-up of his crimes committed through the Company, but also a means to further the Company's business by currying favor with powerful Members of Congress who could direct contracts the Company. | Exhibit 13, 43:22-45:10, 103:13-19; Exhibit 1, 134:5-23. |
| 20. | Kao and Lam confirmed that Kao was permitted to freely impersonate Lam through her personal email address. Lam testified that it was "typical" for Kao to use her email without her approval or even her knowledge sometimes, and that she "just did what Martin said without question[.]" And when asked if she ever once questioned Kao on this practice, Lam stated that she had not found any "reason to." | Dkt. 343-20, Vol. II Lam Depo., 181:14-184:3. |

| | | |
|---|---|---|
| 21. | When Kao was asked if he knew if Lam understood this practice, Kao said he did not know but confirmed that Lam did not object. | Exhibit 13, 121:22-122:11. |
| 22. | Kao and Lam confirmed that Lam will sign any document Kao asks her to without any review, and Kao confirmed that he signed Lam's signature on documents frequently. | Exhibit 13, 131:20-132:13; Dkt. 343-20, Vol. II Lam Depo., 184:4-24. |
| 23. | Kao testified that Lam's signature appearing on the Kahala Lease is nearly an identical match to Kao's admitted SYWSE forgeries, and that when the Lease signature is placed side-by-side with the admitted forgeries, including on a SYWSE check, it looks more like Kao's admitted forgeries than her real one. | Exhibit 1, 70:2-73:21; Exhibit 8. |
| 24. | The Kahala Lease is one of Kao's admitted forgeries that Kao never told Lam about. | Exhibit 1, 70:2-73:21; Exhibit 8. |
| 25. | Lam's sworn declaration, submitted under penalty of perjury in a different circuit court case, authenticated the Kahala Lease bearing her signature as a landlord and owner of the subject Kahala Property. | Exhibit 5, Lam Declaration, ¶4. |
| 26. | The Kahala Lease is dated in 2023, years after Kao's arrest; thus, years after Kao's arrest, neither Lam nor Kao appeared to be fazed by Kao forging Lam's signature on her behalf. | Dkt. 343-23; Dkt. 343-24; Dkt. 343-25; Exhibit 13, 43:1-3. |
| 27. | Lam did not care if Kao used her identity through her personal email, and apparently signed documents for her, because Kao paid for everything, so Lam did not have to work, had not held a job since shortly after college, and did not worry about how the bills would be paid. | Dkt. 343-20, Vol. II Lam Depo., 70:2-71:10, 148:25-150:6. |
| 28. | After the FEC Complaint was filed, Lam engaged an attorney, William Canfield ("Canfield"), to represent her. | Dkt. 343-20, Vol. II Lam Depo., 133:20-134:13. |
| 29. | Lam communicated with Canfield by phone and email during this time, and she personally paid his retainer and legal fees. | Dkt. 343-20, Vol. II Lam Depo., 134:21-136:24. |
| 30. | On July 16, 2020 Canfield submitted a response to FEC Complaint on behalf of "Jennifer Lam." | Dkt. 343-21. |

| | | |
|---|---|---|
| 31. | Canfield's response to the FEC, submitted on behalf of "Jennifer Lam," made no reference to her alleged lack of involvement with SYWSE, and instead argued that SYWSE was a legitimate organization. | Dkt. 343-21. |
| 32. | On August 27, 2020, Lam received an email from CPB's counsel notifying her of SYWSE's alleged crimes and asking her to contact him. | Dkt. 343-15. |
| 33. | Once again, Lam did not claim that she had no knowledge of SYWSE, despite having full knowledge of the FEC Complaint, for which she had retained Caulfield to provide her with a defense. | Dkt. 343-15; Dkt. 343-21; Dkt. 343-20, Vol. II Lam Depo., 134:21-136:24. |
| 34. | SYWSE was an extension of the Company. | Exhibit 13, 44:23-25. |
| 35. | Lam had a Company credit card that paid certain of her expenses, which she used to conduct business on behalf of the Company. | Dkt. 343-20, 147:8-149:19. |
| 36. | Lam completed "errands" for Kao that were to benefit the Company and paid for those errands with a Company credit card. | Dkt. 343-20, 147:8-149:19. |
| 37. | Lam did not know who paid the Company credit card bills, totaling $16,532.12. | Exhibit 16; Dkt. 343-20, Vol. II Lam Depo., 150:7-20. |
| 38. | Lam's "errands" were done on behalf of the Company at Kao's direction. | Dkt. 343-20, 151:4-154:1 |
| 39. | Chen, the Company's former CFO, admitted that "many times, Martin is the Company." | Dkt. 343-9, 137:18-23. |

DATED: Honolulu, Hawaii, October 1, 2026.

*/s/ Grant Fasi Allison*
CRYSTAL K. ROSE
RYAN H. ENGLE
GRANT FASI ALLISON
JOHN D. FERRY III
KIRA J. GOO
LYLE S. HOSODA
SPENCER J. LAU

Attorneys for Plaintiff
PACMAR TECHNOLOGIES LLC
(f/k/a MARTIN DEFENSE GROUP, LLC)