KEITH M. KIUCHI #2735
1001 Bishop Street, Suite 985
Honolulu, Hawaii 96813
Telephone: (808) 533-2230
Facsimile: (808) 533-4391
E-Mail: kkiuchi106@cs.com

Electronically Filed
FIRST CIRCUIT
1CCV-20-0001511
10-APR-2023
07:05 PM
Dkt. 728 MQSH

CHOI & ITO, Attorneys at Law
Chuck C. Choi #6435
Allison A. Ito #8152
Michel A. Okazaki #6524 (independent lawyer appearing through Choi & Ito)
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: cchoi@hibklaw.com
aito@hibklaw.com
mikeokazaki@hawaii.rr.com

Attorneys for Defendant/Respondent
MARTIN KAO

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| NAVATEK CAPITAL INC., individually and derivatively on behalf of Nominal Respondent MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>MARTIN KAO; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-5; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL UNITS 1-10,<br><br>Defendants/Respondents,<br><br>And<br><br>*[caption continued on next page]* | CIVIL NO: 1CCV-20-0001511 GWBC (CONTRACT)<br><br>DEFENDANT/RESPONDENT MARTIN KAO'S MOTION TO QUASH GARNISHEE SUMMONS DIRECTED TO GEREMY ROBINSON (DKT 705) AND/OR TO DISCHARGE OR RELEASE GARNISHEE; MEMORANDUM IN SUPPORT; DECLARATION OF TIFFANY LAM; EXHIBITS "A" TO "C"<br><br>Date: June 6, 2023<br>Time: 3:00 p.m.<br>Judge: Hon. Gary W.B. Chang |



EXHIBIT 5

Pacmar v. Kao
30(b)(6) of SYWSE
15
exhibitsticker.com

MARTIN DEFENSE GROUP, LLC, fka
NAVATEK LLC,

Nominal Respondent.

**DEFENDANT/RESPONDENT MARTIN KAO'S MOTION TO QUASH GARNISHEE SUMMONS DIRECTED TO GEREMY ROBINSON (DKT 705) AND/OR TO DISCHARGE OR RELEASE GARNISHEE**

DEFENDANT/RESPONDENT MARTIN KAO ("KAO"), through counsel, and pursuant to Rules 7(b), and 26(c), Hawaii Rules of Civil Procedure, Chapter 652, Hawaii Revised Statutes ("HRS"), and HRS 603-21.9(6), hereby seeks an order to quash the GARNISHEE SUMMONS DIRECTED TO GEREMY ROBINSON (DKT 705) AND/OR TO DISCHARGE OR RELEASE GARNISHEE filed by Martin Defense Group LLC, now known as Pacmar Technologies LLC.

This Motion is based on the attached memorandum, declaration, and exhibits.

DATED: Honolulu, Hawaii, April 10, 2023

/s/ Chuck C. Choi
KEITH M. KIUCHI
CHUCK C. CHOI
ALLISON A. ITO
MICHEL A. OKAZAKI

ATTORNEYS FOR DEFENDANT/ RESPONDENT
MARTIN KAO

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

This Motion relates to a garnishee summons served on Geremy Robinson, a tenant of Martin Kao and Tiffany Lam. Mr. Robinson is a tenant under a rental contract with Martin Kao and Tiffany Lam, as Tenants by the Entirety. Mr. Robinson's rent is payable to Martin Kao and Tiffany Lam, as Tenants by the Entirety. As such, Mr. Robinson does not owe any rent to Mr. Kao individually.

## II PROCEDURAL BACKGROUND

On April 28, 2022, Martin Defense Group LLC, now known as Pacmar Technologies LLC, obtained a Final Judgment Affirming Arbitration Award against Martin Kao. *See* Dkt 452.

Martin Kao is married to Tiffany Lam. The Final Judgment is not against Tiffany Lam, who was not a party to the above-captioned lawsuit.

On March 15, 2023, the Court approved the issuance of a Garnishee Summons on Geremy Gerard Robinson. The summons required Mr. Robinson to disclose whether he had any of the following at the time of service:

> (a) You had any goods or effects of the Defendant in your possession, and if so, their nature, amount, and value; OR
>
> (b) You were indebted to the Defendant, and if so, the nature and amount of the debt; OR
>
> (c) You had any monies of the Defendant in your possession for safekeeping and, if so, the amount thereof.

*See* Dkt 705 at 3.

The Garnishee Summons was served on March 18, 2023. *See* dkt 711.

The return is scheduled for April 11, 2023, at 9:00 a.m.

## III. ARGUMENT

Martin Kao and Tiffany Lam own real property located at 4902 Kahala Ave, Honolulu HI 96816 and 1198 Ikena Cir, Honolulu HI 96821.

Both properties are held by Martin Kao and Tiffany Lam as Husband and Wife, Tenants by the Entirety ("T/E").

The deed for the Kahala Property is in the record at Dkt 628, page 18/38.

The deed for the Ikena Circle Property is in the record at Dkt 628, page28/38.

The Judgment that Pacmar seeks to enforce is only against Martin Kao. *See* Dkt 452.

As the Court is aware, Gather Vacations Inc. had been the property manager for the properties. However, effective January 30, 2023, the property management agreement with Gather Vacations was terminated by mutual agreement. *See* **Exhibit C**.

Pacmar conducted discovery on Gather Vacations. By doing so, Pacmar discovered the names of the tenants and obtained garnishee summonses as to both.

Mr. Robinson is the tenant who resides at the property located at 4902 Kahala Avenue.

After Gather Vacations was terminated, a revised Rental Agreement was prepared and executed. *See* **Exhibit A**. The first page of the Rental Agreement states in part:

> THIS RENTAL AGREEMENT ("Agreement") is made as of the 1st day of February 2023 by and between Martin Kao and Tiffany Lam, as Tenants by the Entirety, whose mailing address is c/o Tiffany Lam, 1026 Waiiki Street, Honolulu, Hawaii, 96821 (collectively, "Landlord"), and Geremy G. Robinson, whose mailing address is 4902 Kahala Ave., Honolulu, Hawaii, 96816 ("Tenant"). Landlord and Tenant may be referred to herein as a "Party" or collectively as the "Parties."
>
> WHEREAS, Landlord, as Tenants by the Entirety, are the owners of that certain real property located at Kahala Ave., Honolulu, Hawaii, 96816 ("Property" or "Unit");

> WHEREAS, Tenant and Elite Pacific, as Landlord's prior agent and property manager, entered into that certain Rental Agreement dated September 22, 2022 ("September 2022 Agreement") for the Unit; and
>
> WHEREAS, Landlord and Tenant desire to restate the September 2022 Agreement in its entirety as set forth herein.

*See* **Exhibit A** at 1. The rents under the Agreement are due as follows:

> **1.5 RENTS**
>
> TENANT shall pay LANDLORD a monthly charge for rent ("Monthly Rent") and other monthly charges each month of Eighteen Thousand Dollars (~~$18,000.00~~), inclusive of Hawaii State General Excise Tax. $14,000 MK
>
> RENT IS DUE IN ADVANCE, without notice, demand, or deduction. Payment is due by the ~~FIRST~~ EIGHTEENTH (18th) MK day of each Month by 5:00 PM, BEGINNING ON February 1, 2023. TENANT shall pay LANDLORD the Monthly Rent by way of check made payable to and written on the check as follows: "Martin Kao and Tiffany Lam, Tenants by the Entirety". Payment of the Monthly Rent shall be delivered to LANDLORD, c/o Tiffany Lam, at 1026 Waiiki Street, Honolulu, Hawaii 96821.
>
> LANDLORD will provide TENANT a receipt for rents paid, upon request.

*See* **Exhibit A** at 3. The Contract was signed by Martin Kao and Tiffany Lam as T/E:

> ACCEPTANCE OF LEASE
>
> By signing below, the parties agree to the foregoing and acknowledge they have been provided a copy of this agreement.
>
> **LANDLORD:**
>
> X ____________________
> Tiffany Lam
>
> X ____________________
> Martin Kao
>
> **As Tenants by the Entirety**
>
> **TENANT:**
>
> X ____________________
> Geremy G. Robinson

In Hawaii, parties can designate personal property as being owned as Tenants by the Entirety.

> Land, or any interest therein, **or any other type of property** or property rights or interests or interest therein, may be conveyed …by spouses to themselves… as tenants by the entirety, … or by tenants by the entirety to themselves … and each such instrument shall be construed as validly creating a …tenancy by the entirety … if the tenor of the instrument manifestly **indicates such intention**.

Haw. Rev. Stat. Ann. § 509-2 (emphases added).

Hawaii caselaw makes it clear that intent is the main factor:

> **[A]lthough a tenancy by the entirety can exist in personal property, it must manifestly appear that the spouses intended to create such an estate.** In re Estate of Au, 59 Haw. 474, 583 P.2d 966 (1978); see Hawaii Revised Statutes (hereinafter "HRS") §§ 509-1 and 509-2 (1985).

*Traders Travel Int'l v. Howser*, 69 Haw. 609, 613, 753 P.2d 244, 246 (1988) (emphasis added).

"In Hawai'i, a creditor cannot reach the interest of a tenant by the entirety." *Guray v. Tacras*, 119 Haw. 212, 218, 194 P.3d 1174, 1180 (Ct. App. 2008) (citation omitted).

Here, the intention is clear. The obligation under the rental contract is not an obligation owed to Mr. Kao individually, and any payments owed under the rental contract is not a debt owed to Mr. Kao individually. Rather, it is an obligation and debt owed to a T/E entity (i.e., Martin Kao and Tiffany Lam, Tenants by the Entirety).

As the rent is owed to "Martin Kao and Tiffany Lam, Tenants by the Entirety," Mr. Robinson does not owe funds to Mr. Kao and is not indebted to Mr. Kao. Rather, he rents property from Martin Kao and Tiffany Lam, Tenants by the Entirety and, when he owes rent, he owes the rent to the same T/E entity.

The new rental contract cannot be challenged as being a fraudulent transfer as to Pacmar. There has been no transfer of property, only the execution of a new rental contract. As with other rental contracts, there is no debt owed by a tenant to the landlord until rent it due for the particular month.

The prior rental agreement was prepared by Gather Vacations (dba Elite Pacific) and contained many provisions relating to Elite Pacific. *See* **Exhibit B**. A revised direct rental agreement with the tenant was executed, effective February 1, 2023.

The new rental agreement is directly between the owner of the property and Mr. Robinson. There is no dispute that the 4902 Kahala Avenue is owned by Martin Kao and Tiffany Lam as tenants by the entirety. The rental contract makes it clear that rent is owed to the owner of the property, Martin Kao and Tiffany Lam as tenants by the entirety. The rent that becomes due is not converted from garnishable property to protected property. Rather, the obligation itself is owed to the owner, a T/E entity. Martin Kao and Tiffany Lam do not have any obligation to rent their T/E real property in a manner that will provide income to Pacmar.

This situation is therefore different from a situation where joint-tenancy property, such as funds in a joint bank account, is converted after judgment into exempt Tenants-by-the-Entirety property. Fraudulent transfers of T/E property were discussed by the United States District Court in *Valvanis v. Milgroom*:

> Despite the general protection against creditors that a tenancy by the entirety enjoys, "the creation of a tenancy by the entirety may not be used as a device to defraud existing creditors." Id. at 616, 561 P.2d at 1297 (citations omitted); see also In re Estate of Wall, 440 F.2d at 219 ("That is not to say, however, that the rights and remedies of existing creditors can be obliterated by the simple expedient of erecting a tenancy by the entireties in property that is otherwise vulnerable."); *see, e.g., In re Blitstein*, 105 B.R. at 135 (finding that the "transfer of property by a debtor, through a conduit to the debtor and his wife, to create an estate by the entireties in order to place property beyond the reach of creditors constitutes a fraud on the creditors in and of itself creating a continuing and resulting trust and allowing the avoidance of that conveyance") (citing Sample, 162 So. at 494); Koffman, 682 A.2d at 1288 (stating that pursuant to Pennsylvania law, "when a spouse conveys individual property to a tenancy by the entireties in fraud of creditors, a creditor may nevertheless execute against the conveyed property"); *Probst*, 41 N.E.2d at 609 (finding that trial court "erroneously refused to conclude" that house purchased with funds of debtor to be held in tenancy by the entireties by his son and daughter-in-law was property of the debtor subject to sale on execution to satisfy creditor's claims).

*Valvanis v. Milgroom*, 529 F. Supp. 2d 1206, 1213-14 (D. Haw. 2007).

Here, executing a contract for the rental of T/E property that provides for payment of rent to the T/E owners is not fraudulent. As stated in the Deed, the owners are husband and wife, tenants by the entirety:

**WARRANTY DEED**

THIS DEED, made this 22nd day of June, 2020, by and between PRECIOUS LAND INC., a Japan corporation, hereinafter called the "Grantor," and MARTIN YUE-SHAN KAO and TIFFANY JENNIFER LAM, husband and wife, whose address is 841 Bishop Street, Suite 1110, Honolulu, Hawaii 96813, hereinafter together called the "Grantee."

**WITNESSETH:**

That in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, the Grantor does hereby grant, bargain, sell and convey unto Grantee as TENANTS BY THE ENTIRETY, with full rights of survivorship, their assigns and the heirs and assigns of the survivor of them, in fee simple all of those certain premises more particularly described in Exhibit "A" attached hereto and made a part hereof.

*See* Dkt 628 at pdf 18/38.

Furthermore, when a party converts an exempt asset to another form of exempt asset, there is no fraudulent transfer. *See e.g.*, *Love v. Menick*, 341 F.2d 680, 682 (9th Cir. 1965) ("the deposit of money derived from surrender of an asset, a portion of which, absent surrender, would have already been exempt under the statute relating to life insurance, into an account of exempt quality, cannot be held, of itself, to constitute fraud.") (citations omitted). This is not a case where a non-exempt asset is used to generate purportedly exempt assets.

In addition, some courts have held that rents from T/E property are necessarily T/E property unless the character is lost.[1] While the Court in prior proceedings refused to find that

[1] "The proceeds from the sale or rental of tenancy by the entireties property are also held as a tenancy by the entireties and are owned in total by both the husband and the wife. *Dodson v. Nat'l Title Ins. Co.*, 159 Fla. 371, 31 So. 2d 402, 404 (Fla. 1947); *Miller v. Rosenthal*, 510 So. 2d

rents are automatically T/E property, the current rental contract with Mr. Robinson is specifically with a T/E entity, with rents owed solely to the T/E entity. As the Court noted previously, the issue is intent to treat the proceeds as T/E property.

Indiana cases, such as *Rhodes*, involved a reluctance to extend T/E to non-real property. *See Rhodes v. Ind. Nat'l Bank*, 544 N.E.2d 179, 180 (Ind. Ct. App. 1989) ("[R]ental income from property owned by the entireties does not retain the character of entireties ownership and that therefore one half of such income is subject to the claims of the creditors of the spouse incurring an individual indebtedness."). In Hawaii, the legislature has allowed a husband and wife to own all types of property as T/E. *See* Haw. Rev. Stat. Ann. § 509-2. In Hawaii, the issue is intent.

Even if the Court were to disregard the T/E status, Pacmar is not entitled to 100% of the rent. If payments or obligations are viewed as being owed to Martin Kao and Tiffany Lam without any T/E protection, then the issue becomes whether Ms. Lam has an equitable interest in the proceeds. Clearly, she has at least a 50% interest. *See* Declaration of Tiffany Lam.

The property was acquired during marriage and is marital property. Ms. Lam never waived her rights to a joint interest in any rents. *Id.*

## IV. <u>CONCLUSION</u>

Based on the foregoing, the Motion to Quash or Discharge should be Granted.

---

1127, 1128 (Fla. 2d DCA 1987); *Brown v. Hanger*, 368 So. 2d 63, 64 (Fla. 3d DCA 1979); *Sheldon v. Waters*, 168 F.2d 483, 485 (5th Cir. 1948). Here, there is no dispute that the Molinaris owned the rental property as a tenancy by the entireties and the proceeds from the sale retained that character. The issue is whether this character was lost when the Molinaris deposited the proceeds into their attorney's trust account." *Passalino v. Protective Grp. Sec., Inc.*, 886 So. 2d 295, 297 (Fla. Dist. Ct. App. 2004).

DATED: Honolulu, Hawaii, April 10, 2023.

/s/ Chuck C. Choi
KEITH M. KIUCHI
CHUCK C. CHOI
ALLISON A. ITO
MICHEL A. OKAZAKI

ATTORNEYS FOR DEFENDANT/ RESPONDENT
MARTIN KAO

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| NAVATEK CAPITAL INC., individually and derivatively on behalf of Nominal Respondent MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>MARTIN KAO; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-5; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL UNITS 1-10,<br><br>Defendants/Respondents,<br><br>and<br><br>MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC,<br><br>Nominal Respondent. | CIVIL NO: 1CCV-20-0001511 GWBC (CONTRACT) |

DECLARATION OF TIFFANY LAM

I, TIFFANY LAM, declare under penalty of law that the following is true and correct:

1. I am over the age of 18 and am competent to testify as to the matters contained in this Declaration.

2. I make this Declaration from personal knowledge, except where indicated that I am testifying based on information and belief. I am the wife of Martin Kao, defendant/respondent herein. I make this Declaration in support of *Defendant/Respondent Martin Kao's Motion To Quash Garnishee Summons Directed To Geremy Robinson (Dkt 705) And/Or To Discharge Or Release Garnishee; Memorandum In Support* ("Motion").

3. I own the real property bearing street address 4902 Kahala Ave, Honolulu, Hawaii with Martin Kao as tenants-in-the-entirety.

4. Attached hereto as **Exhibit A** is a true and correct redacted copy of the revised Rental Agreement by and among Geremy Robinson (as tenant) and myself and Martin Kao (as landlord) for 4902 Kahala Ave, Honolulu, Hawaii, dated as of February 1, 2023.

5. Pursuant to the revised Rental Agreement, the rental proceeds are owned by myself and my husband as tenants-by-the-entirety.

6. In the event any of the rent is held to be not protected by T/E, or the T/E with regard to the rent fails, I claim a 50% interest in the rent proceeds.

7. I have not waived my rights to receive rent under the revised Rental Agreement with Mr. Robinson. I have not agreed to allow my equitable or other interest to be waived.

8. Attached hereto as **Exhibit B** is a true and correct redacted copy of the Rental Agreement for 4902 Kahala Ave, Honolulu, Hawaii, by and between Geremy Robinson (as tenant), and Elite Pacific (as landlord) dated September 22, 2022.

9. Attached hereto as **Exhibit C** is a true and correct redacted copy of the Property Management Contracts Termination Agreement effective as of January 30, 2023, between Gather Vacations, Inc. dba Elite Pacific (as property manager), and Martin Kao and myself (as owners of the 1198 Ikena Circle, and 4902 Kahala Avenue).

[Signature page follows.]

I, declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information, and belief.

DATED: Honolulu, Hawaii, April 10, 2023

TIFFANY LAM

# EXHIBIT A

# RENTAL AGREEMENT

THIS RENTAL AGREEMENT ("Agreement") is made as of the 1st day of February 2023 by and between Martin Kao and Tiffany Lam, as Tenants by the Entirety, whose mailing address is c/o Tiffany Lam, 1026 Waiiki Street, Honolulu, Hawaii, 96821 (collectively, "Landlord"), and Geremy G. Robinson, whose mailing address is 4902 Kahala Ave., Honolulu, Hawaii, 96816 ("Tenant"). Landlord and Tenant may be referred to herein as a "Party" or collectively as the "Parties."

WHEREAS, Landlord, as Tenants by the Entirety, are the owners of that certain real property located at Kahala Ave., Honolulu, Hawaii, 96816 ("Property" or "Unit");

WHEREAS, Tenant and Elite Pacific, as Landlord's prior agent and property manager, entered into that certain Rental Agreement dated September 22, 2022 ("September 2022 Agreement") for the Unit; and

WHEREAS, Landlord and Tenant desire to restate the September 2022 Agreement in its entirety as set forth herein.

NOW THEREFORE, for and in consideration of the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

## 1. RENTAL AGREEMENT

### 1.1 PARTIES AND OCCUPANTS

LANDLORD may not discriminate due to RACE, SEX, INCLUDING GENDER IDENTITY OR EXPRESSION, SEXUAL ORIENTATION, COLOR, RELIGION, MARITAL STATUS, FAMILIAL STATUS, ANCESTRY, DISABILITY, AGE, OR HUMAN IMMUNODEFICIENCY VIRUS INFECTION.

LANDLORD means Martin Kao and Tiffany Lam, as Tenants by the Entirety, owners of the Property. UNIT means the premises (as defined in the Landlord-Tenant Code) TENANT is renting from LANDLORD. As used in this Rental Agreement, the term "day" shall mean a calendar day, and the phrase "business day" shall mean Monday through Friday, not including a holiday as designated in Section 8-1 of the Hawaii Revised Statutes.

THIS IS A LEGALLY BINDING CONTRACT. READ IT CAREFULLY. HANDWRITTEN OR TYPED PROVISIONS SHALL SUPERSEDE ANY PRINTED PROVISIONS IF THERE IS A CONFLICT. FILL IN ALL BLANKS. WRITE "NA" IF NOT APPLICABLE. SECTIONS AND PARAGRAPHS WITH CHECK-OFF BOXES ARE OPTIONAL; ALL OTHERS ARE STANDARD PROVISIONS.

## 1.2 LEASE DATE AND PROPERTY REFERENCE OR ADDRESS

This RENTAL AGREEMENT dated as of February 1, 2023 is between you, the undersigned TENANTS: Geremy G. Robinson and us, the LANDLORD: Martin Kao and Tiffany Lam, as Tenants by the Entirety, owners of the Property, for the Property Reference or Address:

4902 Kahala Ave
Honolulu, HI 96816-5410

Occupants (minors and others not responsible for paying rent):
[redacted]

## 1.3 UTILITIES AND OTHER MATTERS

Tenant is responsible for electricity, water, sewer and refuse.

Tenant to allow access to the property for pool and yard service.

Partially furnished. Items, per tenant request, will be removed prior to lease start date.

Property Condition Form: Photo condition may be substituted for standard Property Condition form and/or inventory. Please check all appliances, fixtures, and general condition of the unit when moving in. Please make sure all items are noted. Otherwise, everything will be considered to be in a clean, safe and good working condition. TENANT shall take a photo and send to the LANDLORD of any damage that may have been missed within 7 days of move-in. Any unreported or undocumented damages will be considered tenant damages at move-out.

Inventory: Inventory and Condition Form included with Property Condition Form. Tenant must sign Inventory and Condition Form within 7 days of move-in. Tenant agrees to properly use and maintain inventory. Tenant is responsible for all damages to inventory beyond normal wear and tear.

Registration: As applicable, TENANT must register with the resident manager 24 hours prior of moving in or sooner if required in house rules. The TENANT must schedule the moving of furniture with the resident manager during the prescribed hours. If house rules are included please verify when registering that that they are most recent version.

Do not flush large quantities of toilet tissue, any paper towels, Q-tips or any type of feminine hygiene products down the toilet. These items will clog lines and cause backups. ALL plumbing stoppages will be charged to the resident, unless found to be in the main line.

Smoking: Smoking is not permitted within the indoor areas of the property. (Including all electric flameless devices, hookahs and/or vapes.)

Utilities: ALL utility connections associated with your unit that are not provided by the owner are the resident's responsibility to get connected prior to move-in.

Roommates: If an occupant change occurs during the term of this Agreement, you must notify LANDLORD in writing prior to any occupant change.

Security deposit will not be returned until the termination of this Agreement. It will be the responsibility of Tenants to resolve the security deposit amount themselves. Remaining Tenants will be responsible for vacating tenants damages not resolved prior to being removed from the lease.

## 1.4 LEASE DURATION

RENTAL TERM: This Rental Agreement will begin on February1, 2023 and will end on November 30, 2023 unless otherwise agreed to by the Parties in writing. This Agreement will automatically convert to a Month-to-Month Rental Agreement, unless TENANT or LANDLORD receives written notice from the other party at least thirty (30) days prior to the end of the fixed term that this Agreement will not automatically convert to a month-to-month term.

If this Agreement does convert to a Month-to-Month Rental Agreement, then TENANT must give written notice at least twenty-eight (28) days in advance to terminate and TENANT must pay rent for the twenty-eight (28) days. LANDLORD must give TENANT written notice at least forty-five (45) days in advance to terminate. TENANT may move at any time during the last forty-five (45) days and shall notify LANDLORD of TENANT'S vacate date and pay a prorated rent until TENANT vacates the unit and satisfies the conditions of Standard Terms 2.4.2.

## 1.5 RENTS

$14,000 MK

TENANT shall pay LANDLORD a monthly charge for rent ("Monthly Rent") and other monthly charges each month of Eighteen Thousand Dollars (~~$18,000.00~~), inclusive of Hawaii State General Excise Tax.

EIGHTEENTH (18th) MK TL

RENT IS DUE IN ADVANCE, without notice, demand, or deduction. Payment is due by the ~~FIRST~~ day of each Month by 5:00 PM, BEGINNING ON February 1, 2023. TENANT shall pay LANDLORD the Monthly Rent by way of check made payable to and written on the check as follows: "Martin Kao and Tiffany Lam, Tenants by the Entirety". Payment of the Monthly Rent shall be delivered to LANDLORD, c/o Tiffany Lam, at 1026 Waiiki Street, Honolulu, Hawaii 96821.

LANDLORD will provide TENANT a receipt for rents paid, upon request.

## 1.6 LATE CHARGE AND OTHER CHARGES

Monthly Rent is due and payable IN ADVANCE each month on the first of the month. All payments received after a GRACE PERIOD of TWO (2) days are subject to a LATE FEE OF 8% OF THE MONTHLY RENTAL CHARGE. Late fees are applied at 8:00 a.m. on the

morning of the 3rd of the month. In addition, interest at 10% per year will be charged on all rent and other sums TENANT does not pay to the LANDLORD on time. There will be a charge for all funds returned or credit card charge backs.

**1.7 SECUIRTY DEPOSIT**

TENANT shall pay $18,000.00 IN ADVANCE, as a security deposit. By law, this deposit may not be more than one month's rent, TENANT MAY NOT USE THIS DEPOSIT AS TENANT'S LAST MONTH'S RENT. If TENANT is a service member, see Standard Term 2.8. LANDLORD acknowledges receipt of the security deposit. Any interest earned on the security deposit shall accrue to the benefit of the LANDLORD.

**1.8 UTILITIES**

LANDLORD will pay for the following utilities: Pool service, refuse, sewer, and yard service.

TENANT will pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. LANDLORD does not guarantee or warrant that there will be no interruption of utility service. TENANT shall contact the utility service provider in the event of an interruption of service. If your electricity is ever interrupted, you must use only battery-operated lighting. If LANDLORD meters back utilities, this amount is due within 5 days of TENANT billing, and TENANT is entitled to view the utility invoice and any subsequent billing split upon request.

**1.9 KEYS, CARDS AND LOCKS**

LANDLORD has provided TENANT the unit entry keys, security keys, key fobs, parking cards, garage door openers, locks, mailbox keys, etc. listed below.

TENANT may not have additional keys or cards made or have locks changed or added without prior written approval of LANDLORD. TENANT is responsible for replacement cost of items listed below that are not returned, not in working order, or are damaged.

Items provided:
2 Front Door, 2 Garage/Gate Openers

**1.10 PETS**

Pets are not allowed to occupy or to visit the UNIT unless LANDLORD gives TENANT prior written approval. If TENANT brings any pet onto the UNIT without LANDLORD'S prior written approval, LANDLORD may fine tenant and/or terminate this Rental Agreement. Knowing misrepresentation of an animal as a Service Animal may result in civil fines. If TENANT knowingly misrepresents an animal as a Service Animal, LANDLORD may terminate this Rental Agreement.

1.11 **SMOKING**

Smoking is NOT allowed in the Unit, which includes cigarettes, cigars, pipes, e-cigarettes and all other forms of smoking.

1.12 **SPECIAL TERMS**

Please see additional lease terms.

1.13 **RECEIPT BY TENANT**

Receipt of the following, if checked, is acknowledged by TENANT:
- ✓ Fair Housing Information
- ✓ House Rules

1.14 **ADDENDA**

- ✓ Rental Addendum
- ✓ Vacating Instructions
- ✓ Property Condition Form
- ✓ Required Insurance Addendum

1.15 **LANDLORD CONTACT INFORMATION**

Contact information of Landlord is as follows:

Tiffany Lam
1026 Waiiki Street
Honolulu, Hawaii 96821

By initialing below, you acknowledge and agree to the terms in Section 1.

X C.R
Geremy G. Robinson

2. **STANDARD TERMS**

2.1 **TENANT'S RESPONSIBILITIES**

1. **Alterations.** TENANT will not: (a) change, add to, or paint the Unit; (b) bore or make holes by drilling, nailing, or fastening any item to the Unit through use of nails, screws, adhesives, or like items without LANDLORD'S prior written consent. In accordance with federal and state laws, if TENANT has a disability, TENANT is permitted to make reasonable

modifications to the Unit, at TENANT'S expense, if such modifications are necessary to enable TENANT to use and enjoy the Unit; provided, however, that TENANT submits a request for the modification to LANDLORD for approval. TENANT'S request shall state, with specificity and in detail, the nature of the modification, and TENANT'S reason for needing to make such a modification. LANDLORD shall not unreasonably withhold or delay LANDLORD'S consent to TENANT'S request. It may also be necessary to seek the approval of applicable homeowner's associations and/or condominium association AOAOs. Upon the termination of this Rental Agreement, TENANT is required to return the Unit to its original condition at no cost or expense to LANDLORD.

2. **Compliance with Rules**. TENANT agrees to comply with all rules that apply to the Unit and to TENANT'S use of the Unit including, but not limited to: (a) by-laws, house rules, and other rules; (b) any federal, state, and county laws; and (c) any covenants, conditions and restrictions. Notice is hereby given that TENANT is responsible for paying any fines, penalties, or other assessments charged by any governmental agency, homeowner's association, and/or condominium association because of TENANT'S failure to comply with any of the terms of this Rental Agreement.

3. **Hazardous Waste and Toxic Substances**. TENANT shall not bring or permit hazardous substances in, on, or under the Unit and shall be liable for any costs to remediate or remove such materials.

4. **Disturbances**. TENANT will not disturb others, or keep them from enjoying their premises or any common facilities at any time. TENANT will not play loud music, or cause any loud or offensive sounds.

5. **Insurance**. TENANT understands that LANDLORD'S insurance does not cover TENANT'S belongings or damage caused by TENANT. TENANT agrees that LANDLORD is not responsible for any loss or damage during the term of this Rental Agreement. TENANT is advised to carry insurance covering all of TENANT'S property located in the Unit. In any event TENANT shall bear full responsibility for any loss or damage to TENANT'S property including any loss or damage from fire, water, theft, or any other cause.

6. **Maintenance**. TENANT agrees to maintain and properly use and operate all electrical, gas, plumbing and other fixtures and appliances supplied. TENANT is responsible for ordinary maintenance, including replacing light bulbs, air conditioning filters, and if applicable, lawn or yard care. TENANT is responsible for the repair of any stoppage in plumbing fixtures or lines, and any damage caused by TENANT, members of TENANT'S family, guests or others. TENANT shall replace batteries in the smoke alarms as needed. Smoke alarms are to be kept in working order at ALL times. Should any smoke alarm(s) become defective TENANT must notify LANDLORD IMMEDIATELY.

7. **Notice of Absence**. TENANT must notify LANDLORD in writing if TENANT will be absent from the Unit for five (5) days or more. If TENANT does not give LANDLORD such notice, TENANT will be responsible for any damage that results from TENANT'S absence.

8. **Notice of Defects.** If TENANT notices any defects in the Unit which are NOT TENANT'S duty to fix, TENANT must notify LANDLORD immediately upon discovery of defect. Any damage caused by TENANT'S failure to report any defect is TENANT'S financial responsibility.

9. **Residential Use Only**. TENANT may only use the UNIT as a private residence for TENANT and any OCCUPANT, as each of those terms are defined in Section 1.2 of this Rental Agreement. Guests may not stay longer than fourteen (14) days without LANDLORD'S written approval.

10. **Short-Term Rental Prohibited**. UNIT may not be used or advertised by the TENANT for use as a short-term rental, as defined by the relevant county jurisdiction. TENANT hereby agrees to indemnify, defend, and hold LANDLORD harmless from and against any and all losses, liabilities, obligations, penalties, claims, fines, demands, litigation, defenses, costs, judgments, suits, administrative actions, proceedings, actual damages, disbursements, or expenses of any kind or nature, including, without limitation, attorneys' fees and expenses, that arise from TENANT'S use or advertisement of the UNIT as a short-term rental.

11. **Assignment and Subletting.** TENANT shall not assign or sublet TENANT's interest in the UNIT without the prior written consent of LANDLORD, which may be unreasonably withheld. An assignment or subletting by TENANT without LANDLORD's prior written consent shall be voidable at LANDLORD's election, and shall be cause to terminate this Rental Agreement.

**2.2 <u>LANDLORD'S REMEDIES</u>**

1. **Failure to Pay Rent.** Certain rights and obligations may apply to the parties during the COVID Relief Period. The "COVID Relief Period" shall be defined as the period from June 16, 2021, and shall end on the sooner of (i) December 31, 2022 or (ii) one (1) year after the expiration of the Governor's Final Eviction Moratorium. If TENANT does not pay the rent or other sums due to LANDLORD, LANDLORD may give TENANT written notice demanding payment. If the rent is not paid within the time specified in the notice (which shall be (i) NOT LESS THAN FIFTEEN (15) CALENDAR DAYS during the COVID Relief Period or (ii) NOT LESS THAN FIVE (5) BUSINESS DAYS after the expiration of the COVID Relief Period), after receipt of that notice, LANDLORD may terminate this Rental Agreement. If LANDLORD employs an attorney or collection agency, TENANT must pay for attorney's fees (not more than twenty-five percent (25%) of the unpaid rent) and costs, regardless of whether or not a lawsuit is filed. If TENANT remains in default, the LANDLORD may bring a summary proceeding for possession of the Unit or any other proper proceeding, action or suit for possession in compliance with Hawai'i law. During the COVID Relief Period, such action brought by LANDLORD against TENANT may be limited by the amount of rent due and subject to special conditions and procedures such as specific notice requirements and mandatory mediation. The parties are strongly encouraged to refer to 2021 Haw. Act 57 (H.B. 1376) for guidance.

2. **Failure to Comply with this Rental Agreement**. If TENANT fails to comply with any of the terms of this Rental Agreement, including damaging the Unit or violating any of the house rules, laws, or other restrictions, LANDLORD will give TENANT written notice of the violation. If the damage is not repaired or the violation is not corrected within the time specified (NOT LESS THAN TEN (10) DAYS) from receipt of such notice, LANDLORD may correct such damage or violation and charge the cost to TENANT and terminate this Rental Agreement subject to additional rights and obligations that may apply during the COVID Relief Period.

3. **Illegal Activity**. TENANT may not use the Unit for any unlawful, improper, offensive purpose, or illegal activity. LANDLORD may terminate this Rental Agreement immediately if there is any illegal use of the Unit. TENANT understands that reasonable attorneys' fees and costs may be awarded to the prevailing party.

4. **Abandonment/Abandoned Possessions**. If TENANT is absent from the Unit for twenty (20) continuous days or more, without written notice, and has not paid the rent, LANDLORD shall consider the Unit abandoned. If TENANT wrongfully quits, abandons or otherwise moves out of the Unit and leaves any personal property, which LANDLORD determines to be of value, LANDLORD may store, sell, or donate said personal property, but LANDLORD must first make reasonable efforts to notify TENANT of the identity and location of, and LANDLORD's intent to sell or donate said personal property, by mailing notice to TENANT's forwarding address, an address TENANT designated for the purpose of notification, or, if neither of those means are available, to TENANT's previous known address. After fifteen (15) days, LANDLORD may advertise the items for sale or may donate the items to a charitable organization. Any proceeds from a sale, after deduction of accrued rent and costs for storage and sale (including advertising costs), will be held for thirty (30) days and afterwards will be forfeited to LANDLORD. If LANDLORD determines the abandoned personal property is of no value, LANDLORD may dispose of said personal property without further notice or liability.

5. **Holdover Tenancy**. If TENANT stays in the Unit after this Rental Agreement's term expires, TENANT will be a HOLDOVER TENANT, and may be liable for twice the monthly rent under this Rental Agreement, on a prorated daily basis, for the first sixty (60) days that TENANT is a HOLDOVER TENANT. Staying in the Unit after this Rental Agreement includes, but is not limited to, TENANT'S failure or refusal to do the following BY THE DAY TENANT'S TENANCY ENDS: to return all the keys to the Unit to LANDLORD, to complete all repairs, to remove all of TENANT'S personal items, and to clean the Unit. LANDLORD may also go to court to obtain possession of the Unit at any time during the first sixty (60) days of TENANT'S holdover. If LANDLORD does not go to court during the first sixty (60) days of TENANT'S holdover and does not enter into a new Rental Agreement at the end of that period, TENANT will be a MONTH-TO-MONTH TENANT and TENANT must pay LANDLORD the monthly rent under the prior Rental Agreement beginning at the end of the first sixty (60) days of holdover.

## 2.3 INVENTORY & CONDITION

1. **When TENANT Moves In**. LANDLORD will inspect and inventory the Unit and the items in it (including fixtures, furnishings, appliances, and other personal property). LANDLORD will prepare a written PROPERTY CONDITION FORM detailing the condition of the property and any items in the Unit when TENANT moves in. TENANT and LANDLORD will both sign the form.

2. **When TENANT Moves Out**. TENANT must remove all TENANT'S personal items. If TENANT leaves any personal items behind, TENANT must pay for any storage and other costs, including advertising costs, involved in selling or disposing them. TENANT must leave the Unit in the same condition as when TENANT moved in. It is TENANT'S duty to have the Unit in clean and proper condition ON THE DAY TENANT'S TENANCY ENDS, NOT ON ANY LATER DAY. TENANT must have the same items in the Unit that were present when TENANT moved in; and TENANT must leave these items in the same condition, except for normal wear and tear. If there is any disagreement, the signed PROPERTY CONDITION FORM will be treated as correct. Rent is still due in accordance with this Rental Agreement, even if it is only a prorated amount. TENANT will be charged rent until all repairs/replacements/cleaning are completed and utilities must be on during this time. TENANT will return all keys and cards (including storage and mailbox). Failure to return the keys will result in LANDLORD re-keying the locks and replacing the keys at TENANT'S expense.

## 2.4 LANDLORDS RESPONSIBILITIES

1. **Possession**. LANDLORD will give TENANT possession of the Unit in its accepted condition at the beginning of the rental term. Any services and appliances supplied by LANDLORD, LANDLORD will maintain. LANDLORD will not be liable for any interruption in these services or appliances which are beyond LANDLORD'S control. TENANT may not end this Rental Agreement because services or appliances are interrupted.

2. **Right to Enter**. LANDLORD will give TENANT at least two (2) days notice before entering the Unit; and enter only during reasonable hours, except in case of emergency. LANDLORD may enter the Unit in order to: inspect; make needed or agreed repairs; decorate, change or improve the Unit; supply services as agreed; and show it to anyone who may want to buy, rent, or finance it. LANDLORD will not abuse this right or use it to harass TENANT. TENANT shall not unreasonably withhold TENANT'S consent. LANDLORD has no other right of entry, except by court order, or if it appears that TENANT has abandoned the Unit.

3. **Refund of Security Deposit**. LANDLORD must return TENANT'S deposit, MINUS DEDUCTIONS, not later than fourteen (14) calendar days after the termination of this Rental Agreement. LANDLORD must give TENANT a written statement at that time explaining any deductions. Deductions can be made in accordance with Paragraph 2.3.2 above and can pay for LANDLORD'S damages caused by TENANT quitting the Unit wrongfully.

4. **Rent Increase**. If TENANT is on a Fixed Rental Agreement, LANDLORD may not increase the rent prior to the ending date. If TENANT is on a Month-to-Month Rental

Agreement, LANDLORD must give TENANT written notice forty-five (45) days prior to any rent increase; TENANT must pay the increased rent or give a twenty-eight (28) day written notice to terminate.

5. **Service of Notices.** If LANDLORD must give any notice to TENANT, LANDLORD can serve it on any TENANT. By serving one of the TENANTS, LANDLORD has given notice to all of the TENANTS. If LANDLORD cannot deliver a notice to TENANT, LANDLORD may post the notice in a conspicuous place on the Unit.

6. **Rental Conversion.** If the Unit is to be demolished, converted to a condominium, LANDLORD must give TENANT written notice at least one hundred twenty (120) days in advance to terminate. TENTANT may move at any time during the last one hundred twenty (120) days and shall notify LANDLORD of TENANT'S vacate date and pay a prorated rent until TENANT vacates the unit and satisfies the conditions of Standard Terms 2.3.2

### 2.5 RENTAL HISTORY

TENANT gives LANDLORD permission to provide rental history to other prospective Landlords.

### 2.6 DAILY RATE

Daily rent is calculated using a thirty (30) day proration.

### 2.7 MILITARY TENANTS

If TENANT receives military orders after execution of this Rental Agreement that require (i) TENANT'S change of permanent station (PCS) from a location on an island within Hawai'i to any location off-island or outside Hawai'i, or (ii) TENANT to deploy with a military unit or as an individual in support of a military operation for a period of not less than ninety (90) days, TENANT may end TENANT'S obligations under this Rental Agreement. To terminate this Rental Agreement, said military TENANT must deliver by hand, private business carrier, or mail with return receipt requested, written notice with a copy of the official orders to the LANDLORD. Oral notice is not sufficient. In the case of a fixed-term or a month-to-month term requiring monthly rents, the earliest termination date is thirty (30) days after the first date on which the next rental payment is due, following proper notification of termination of the Rental Agreement. For example, if rents are due on the first day of every month, and TENANT properly notifies LANDLORD on July 20th that TENANT wishes to terminate the Rental Agreement, the earliest termination date is September 1st (thirty (30) days after August 1st when the next rental payment was due after notice). In the case of all other term of lease, the termination of the Rental Agreement is effective on the last day of the month following the month in which proper notice is delivered to LANDLORD. The parties should refer to the Service Members Civil Relief Act for further guidance. Additionally, under Hawai'i Law, a servicemember TENANT who is ordered military duty for a period of ninety (90) days or more may terminate this Rental Agreement without an early termination penalty or liability for future rents if TENANT receives orders requiring vacating from civilian housing and move into on-post government quarters provided that: (1) the failure to

move into on-post government quarters will result in a forfeiture of the TENANT's housing allowance, (2) TENANT's request to maintain their housing allowance is denied by his/her commanding officer, AND (3) for Rental Agreements of a term of one year or less TENANT submits at least thirty (30) days written notice or for a month-to-month term TENANT submits at least fifteen (15) days written notice to LANDLORD, along with the required evidentiary documents. Additionally, in the event a servicemember TENANT dies during active duty, TENANT's family may be afforded certain relief from the Rental Agreement as provided under Hawai'i law. The parties are strongly encouraged to refer to 2021 Haw. Act 57 (H.B. 1376) for further guidance. A servicemember tenant who terminates this Rental Agreement before the expiration of its term shall receive a prorated portion of the Security Deposit after proper notice and termination under 2021 Haw. Act 19 (H.B. 391).

**2.8 DISCLOSURE**

1. **Lead-Based Paint Disclosure.** If the Unit was constructed prior to 1978, a Lead-Based Paint Addendum must be attached to this Rental Agreement. Disclosure forms are available on the Environmental Protection Agency (EPA) website.

2. **Asbestos Disclosure.** TENANT is aware that asbestos materials are hazardous to one's health, particularly if asbestos fibers are released into the air and inhaled. In the past (before 1979, but possibly since) asbestos was a commonly used insulation material in heating facilities and in certain types of floor and ceiling materials, shingles, plaster products, cement, and other building materials. TENANT is aware that TENANT should make appropriate inquiry into the possible existence of asbestos in the Unit. Structures having "popcorn" or "cottage cheese" type ceilings may contain asbestos fibers or asbestos-containing material. Such ceilings should not be disturbed since it could release asbestos fibers in the air. Any disturbance should be done only by licensed abatement contractors.

3. **Mold Disclosure.** TENANT is aware that mold and/or other microscopic organisms may exist in the Unit. Molds are simple, microscopic organisms, present everywhere. Mold spores may cause health problems. Mold will grow and multiply whenever sufficient moisture, temperature, and organic material are present. LANDLORD is not qualified to inspect the Unit for mold or to make recommendations or determinations concerning possible health or safety issues.

4. **Hawaii Residential Landlord Tenant Code ("the Landlord Tenant Code").** The Landlord Tenant Code is Chapter 521 of the Hawaii Revised Statutes. Both LANDLORD and TENANT should check the Landlord Tenant Code to learn what duties, rights and remedies they have in addition to what is contained in this Rental Agreement. Certain additional rights and obligations may apply during the COVID Relief Period.

5. **Conflict with the Landlord Tenant Code and Other Laws.** If it is found that any part of this Rental Agreement or its terms conflict with the Landlord Tenant Code or any other Federal, State or County laws governing LANDLORD-TENANT relations, public health and safety, etc., then those laws will control; however, all other terms and conditions will still be valid and must be obeyed.

6. **Sex Offender Registration ("Megan's Law").** Hawaii has enacted a law requiring sex offenders to register with the Attorney General's office. LANDLORD makes no representations as to whether or not the public has access to this information. LANDLORD is not required to obtain information regarding sex offenders.

### 2.9 ELECTRONIC (DIGITAL OR FAX) SIGNATURES

Electronically executed copies of this Rental Agreement and any related documents shall be fully binding and effective for all purposes.

### 2.10 TENANTS JOINTLY AND SEVERALLY RESPONSIBLE

BY SIGNING THIS RENTAL AGREEMENT EACH TENANT SHALL BE JOINTLY AND SEVERALLY (COLLECTIVELY AND INDIVIDUALLY) RESPONSIBLE FOR COMPLIANCE WITH ALL ITS TERMS AND CONDITIONS, INCLUDING THE PAYMENT OF RENT IN FULL. EACH TENANT IS RESPONSIBLE FOR OTHER OCCUPANTS AND GUESTS AND SHALL ENSURE THEY COMPLY WITH THE TERMS AND CONDITIONS OF THIS RENTAL AGREEMENT.

By initialing below, you acknowledge and agree to the terms in Section 2.

X G.R
Geremy G. Robinson

## 3. RENTAL AGREEMENT ADDENDUM

This addendum is made part of the rental agreement referenced below:

Property:
4902 Kahala Ave
Honolulu, HI 96816-5410

Agreement Dated: February 1, 2023

Tenant(s): Geremy G. Robinson

### 3.1 ADDITIONAL LEASE TERMS

1. **Sums Due Landlord:** All sums due to Landlord are due no later than the grace period outlined in your Rental Agreement. **This includes any utilities, parking, garage fees, fines, etc.** Three delinquent payments during any one-year time frame shall be cause for termination of your rental contract, and non-renewal.

2. **Returned Checks** are subject to both a $50.00 Returned Check fee and Late Fee if received after the rent due grace period has expired. If personal checks are returned for two or more payments, all further payments must be in certified funds only and include all applicable fees.

3. **Renters Insurance:** TENANT is required to have renters insurance with a $50,000 minimum, and provide a copy to LANDLORD prior to move in. TENANT is responsible to maintain the renters' insurance for the entire duration in residency with no lapse in coverage. Renters insurance shall cover all personal belongings on the premises; liability to guests; and water damage/fire to personal belongings.

4. **TENANT has 10 (TEN) DAYS upon move in to provide proof of Renters Insurance.**

5. **Registration:** As applicable, TENANT must register with the resident manager within 24 hours of moving in. The TENANT must schedule the moving of furniture with the resident manager during the prescribed hours.

6. **Parking Stall(s):** As applicable, TENANT will be responsible for any charges incurred for the cleaning of assigned parking stalls.

7. **Vehicles:** Vehicles shall be maintained in working order and fully operational at all times. All vehicles must be current with vehicle license and registration requirements. Dripping oil or other fluids such as antifreeze is not permitted. Vehicles not in operational order shall be towed at the owner's expense within County Code upon written warning from Property. The number of vehicles varies in accordance with the home.

8. **Tenant Vehicle Information:**

- Mercedes , GIS 450, Grey, License # [redacted] 2020
- Mercedes , S450, Grey, License # [redacted] 2021

9. **Reporting Repairs:** Please notify LANDLORD in writing no matter how small the repair. TENANT may be liable for unreported damages, or damages caused by TENANT. Repairs as a result of TENANT or guests' abuse or neglect will be the financial responsibility of the TENANT. For emergencies, please CALL or TEXT LANDLORD.

10. **TENANT Phone:** TENANT to notify LANDLORD of any cell or home phone number within five (5) days of obtaining it.

11. **Keys:** TENANT is financially responsible for all keys, building or parking FOBs, or ID tags or garage opening devices, which are lost, stolen, or not returned to LANDLORD. Lost keys or building FOBS carries a $100 replacement charge unless otherwise outlined in House Rules.

12. **Crime Free Housing:** Violations of Local, State or Federal Laws are not permissible, and substantiated allegations will result in termination of your lease term.

If you are in violation of The Victims of Trafficking and Violence Prevention Act (TVPA) of 2000; the Federal Drug Enforcement Act of 1988 or in violation of HRS Chapter 712 of July 1, 1990 which includes OFFENSES AGAINST PUBLIC HEALTH AND MORALS INCLUDING BUT NOT LIMITED TO the association of certain crimes such as murder, kidnapping, gambling, prostitution, consumption or promoting of detrimental drugs or intoxicating compounds, promotion of marijuana, manufacture, sale or distribution of controlled substances, your tenancy will be immediately terminated even if you have a fixed lease per HRS Chapter 712-1279 - Termination of lease.

13. **Waterbeds:** No waterbeds are allowed without a written request by TENANT and written acceptance by LANDLORD.

14. **Showing:** TENANT will allow the unit to be shown to prospective TENANTS three (3) weeks prior to check-out date with an appropriate 2-day notice.

15. **Smoking:** Smoking is not permitted within the entire Property. This includes cigarettes, cigars, pipes, e-cigarettes and all other forms of smoking.

16. **Scheduled Work**: TENANT shall be present for all appointments with vendors performing repairs. If TENANT misses the appointment time, TENANT shall be liable for any trip charge assessed from the vendor.

17. **Vendor Scheduling**: SHOULD THE PROPERTY not be returned in the original condition at move out, less normal wear and tear TENANT IS RESPONSIBLE for the LANDLORD's time of $90 per hour if LANDLORD must schedule, and/or oversee vendor work subject to the Tenant Charge out.

18. **Property Upkeep:** TENANT shall keep the exterior of the premises neat and tidy. TENANT shall limit the accumulation of items from street-view that may lessen the value of the property and neighborhood such as bicycles, surfboards, kayaks, toys, vehicles, boats, etc. Only patio furniture, plants, and patio/yard decor shall be stored on the outside of the home (unless prohibited by homeowners association rules or other covenants or restrictions). TENANT shall not keep items around the exterior of the premises which could create unsanitary or hazardous conditions, such as bags of household trash or other items that might attract pests, cardboard boxes, accumulated newspapers, flammable liquids, gas cans, corrosive materials, or other hazardous waste.

## 3.2 BREAKING THE LEASE

Should it become necessary for you to quit your Rental Agreement earlier than contracted, it is considered 'Wrongfully Quitting the Property' in accordance with Hawaii Landlord-Tenant Law. The following represents your requirements to do so:

1. TENANT is responsible for the entire remainder of the lease or until the unit is re-rented.

2. TENANT is responsible for a reasonable commission for LANDLORD to re-rent the dwelling. Commissions are outlined as 50% of the monthly gross rental price or $1500, whichever is greater. All Commissions are subject to General Excise Tax.

3. TENANT is responsible for the difference between rent agreed to in the Rental Agreement and the fair rental value for the remainder of the lease.

4. TENANT is responsible for advertising fees of $300, plus General Excise Tax to re-renting the dwelling.

Your remaining security deposit will be applied against the above costs, and a statement of the balance shall be mailed to you within 14 days of move out. Should the amount not cover the re-rental period, you will be responsible for the difference.

**3.3 MOLD AND MILDEW**

Tropical climates with warm temperatures, high humidity, and frequent precipitation are conducive to the propagation of mold, mildew, fungus, and other types of bacterial growths. Though a home, building, deck, surface, or other improvements on a property can be cleaned to satisfactory appearance, there is no guaranty that mold, mildew, fungus, and other types of bacterial growths can be eliminated. A TENANT should be aware that all properties have hidden, enclosed, and unreachable areas where growths can occur and not be detected by a visual inspection by a Landlord or even a professional house inspector. It is also possible that the property could have a hidden mold that the Owner is not aware of.

If the TENANT, any member of their family, or persons who will inhabit subject property has respiratory, skin, or other health ailments or conditions that can be affected by mold, mildew, fungus, or other types of bacterial growths, they should seek counsel before completing the rental lease. Individuals who may be capable of providing counsel are professional home inspectors, medical health professionals, scientific research professionals, Certified Industrial Hygienist (CIH), or other environmental specialists and/or others who have the requisite knowledge in the matter of detection and lab analysis services.

The only way to provide a reasonable assurance that the property does not have mold or other health hazard problems is to retain the services of an environmental expert who will conduct specific tests. Normally, their tests will consist of an interior and exterior examination for airborne spores and a carpet test, but other procedures may be necessary. Any visible mold should be professionally evaluated.

LANDLORD does not have the requisite knowledge to provide counsel as to the presence or likelihood of conditions conducive to the propagation of mold, mildew, fungus, and other types of bacterial growths. Nor can the aforementioned individuals associated with this contract counsel the TENANT as to the effect the aforementioned conditions can have related to their health, welfare, and continued enjoyment of this property. The TENANT cannot hold liable the Landlord related to the skill, ability, and professional performance of those individuals the TENANT hires for the purpose of inspection and analysis. The TENANT is solely responsible for the selection and hiring of these individuals.

All inspections, including those to detect mold, should be completed within the inspection period established in the lease contract. Any waiver or failure on the part of a TENANT to complete and obtain all appropriate tests, including those of mold, is against the advice of the Landlord.

By initialing below, you acknowledge and agree to the terms in Section 3.

X G.R
Geremy G. Robinson

## 4. VACATING INSTRUCTIONS

### 4.1 VACATING INSTRUCTIONS

This addendum is to help clarify what is required under 2.4.2 of the Rental Agreement when TENANT(S) vacates the Unit. Please read it carefully. Contact LANDLORD if there are any questions. LANDLORD will be showing the Unit to prospective tenants and expect your full cooperation.

**When TENANT Moves Out**. TENANT must take all TENANT'S personal items with TENANT (i.e. hangers, area rugs, mops, etc.). If TENANT leaves any personal items behind, TENANT must pay for any storage and other costs, including advertising costs, involved in selling or disposal. It is TENANT'S duty to have the Unit in clean and proper condition ON THE DAY TENANT'S TENANCY ENDS; NOT ON ANY LATER DAY. TENANT must have the same items in the Unit that were there when TENANT moved in; and TENANT must leave these items in the same condition, except for normal wear and tear. If there is any disagreement, the signed PROPERTY CONDITION FORM will be treated as correct. Rent is still due per the Rental Agreement, even if it is only a prorated amount. **Please be advised that ALL repairs/ replacements/cleaning must be completed by inspection time. If it is not ready, RENT will be charged until the work is completed. LANDLORD will finish anything not completed at TENANT'S expense.**

**FINAL INSPECTION**: The Unit must be ready for final inspection at which time all cleaning and repairs must be completed. Landlord will finish anything not completed but at TENANT(S)' expense. **Rent will be charged until all items are complete.**

**KEYS:** When the property is vacant, return all keys and electronic entry devices (in working condition), that were provided. Failure to return the keys/devices will result in LANDLORD re-keying the locks and replacing the keys/devices at TENANT'S expense.

**UTILITIES AND MAIL:** TENANT(S) are responsible for terminating utility services. Utility service must remain on until the Rental Agreement ends after final inspection, whichever is later. Please notify the postal service of your change of address.

**MINIMUM CLEANING STANDARDS:**

**LANDLORD requires that TENANT(S) have a professional cleaning service to handle TENANT(S)' move out cleaning. A copy of receipt required at checkout. If no receipt is received, then a professional will be hired at TENANT(S)' expense.**

1. All walls, doors, baseboards, woodwork, light switches and faceplates, are to be cleaned of smudges, fingerprints, and scuff marks.

2. All nails and picture hangers are to be removed. Consult LANDLORD regarding filling holes and touch up painting.

3. All windows and screens are to be thoroughly cleaned, including frames, sills and tracks, inside and out.

4. All drawers, shelves, cabinets, countertops and closets are to be thoroughly cleaned. Any shelving paper put in by TENANT(S) is to be removed.

Any damage is TENANT(S)' responsibility.

5. Kitchen/Bathrooms - Disinfect these areas. Grout/caulking - clean off mold and mildew.

6. Carpets: Carpets are to be clean and dry at the time of final inspection.

**LANDLORD requires that TENANT(S) have the carpets professionally cleaned. A copy of receipt required at checkout. If no receipt is received, then a professional will be hired at TENANT(S)' expense.**

7. Floors are to be cleaned, mopped, and waxed. (If applicable)

8. Patios, lanais, and walkways are to be swept and/or hosed down.

9. Garage floors/carport/parking stall are to be cleaned of any grease, oil or stains caused by TENANT(S) or TENANT(S)' guest's vehicles.

10. Plumbing fixtures are to be cleaned of all film or buildup of any type, including soap scum, toilet bowl rings and mineral deposits. All drains to be clear of hair and debris.

11. Appliances must be thoroughly cleaned with appropriate cleaning materials:

A. Refrigerator - Clean the interior by removing all shelves and drawers. Clean the exterior including vacuuming coils, the floor under and around the Unit. Defrost freezer, if necessary, and remove any ice from trays and if ice maker, turn to the off position. DO NOT LEAVE REFRIGERATOR UNPLUGGED OR TURNED OFF AFTER COMPLETION OF CLEANING.

Unless power is off, then leave doors open.

B. Oven - Clean the interior. DO NOT USE CAUSTIC OVEN CLEANER. Follow the manufacturer's directions. All outside surfaces should be cleaned with an all-purpose cleaner to remove grease and grime. Clean bottom drawer (if there is one) and the broiler pan.

C. Range - Remove and clean the drip pans or replace, if needed. Clean under drip pans (most range tops will lift up to expose area under drip pans).

D. Range Hood Filter - Must be removed and cleaned (if the metal type) in a solution of grease-solvent cleaner and hot water, or replaced if needed. Surfaces of range hood should be thoroughly cleaned.

E. Dishwasher/disposal - Clean rubber gasket in dishwasher and disposal to remove built up grime. Make sure dishwasher is free of water. Wipe exterior surfaces of dishwasher, including sides of door. The dishwasher air gap and garbage disposal should be clear.

F. Washer/Dryer - Lint must be removed from filters. Clean the interior and exterior surfaces of both appliances. If dryer vents outside, make sure the area is clean.

G. Ceiling Fan - Wipe clean, including blades, motor housing, light kit, pull chains, etc.

H. Air Conditioners - Filters should be cleaned or replaced. Clean vents, housing, etc.

12. Window Coverings - Vacuum drapery or follow instructions by LANDLORD. Blinds - All slats, blinds, valances and wands to be thoroughly cleaned.

13. Light Fixtures - Clean all light fixtures and replace burnt out bulbs with comparable types of bulbs (CFL, LED, etc.).

14. Smoke Alarms - Must be in working order. Replace any non-working batteries.

IF APPLICABLE:

15. Pets: After professional carpet cleaning and removal of pets, PROFESSIONALLY treat inside and out for fleas, ticks and mites as per Pet Addendum. A copy of the receipt is required. If receipt has not been provided prior to the end of the rental term or as otherwise agreed, a professional pest control company will be hired to do the treatment at TENANT(S) expense.

16. Do final yard work as close as possible to vacating; the yard should be in the same condition as when TENANT(S) took occupancy.

17. Any bulky items must be removed from property prior to move-out. No items may be left at curbside or on association property. If any items are left, they will be removed and disposed of at TENANT'S expense.

18. All garbage bins must be empty, cleaned and returned to proper location.

19. Additional Items:

We are legally required to return TENANT(S) deposit or to notify TENANT(S) of any delay due to necessary repairs/cleaning/etc. by midnight of the fourteenth day after termination of the Rental Agreement.

**NOTIFICATION:**

TENANT(S) have notified LANDLORD or LANDLORD has notified TENANT(S) that TENANT(S) will be vacating property on or before __________(date). At this time TENANT(S)' rent is paid until _________(date) and TENANT(S) final rental payment of $__________will be due on _______(date). Date of written notice to vacate received on ______________(date).

This is confirmation of the termination of tenancy. If the above information is incorrect, please notify LANDLORD immediately.

IMPORTANT: To insure prompt return of the security deposit provide LANDLORD with TENANT(S)' new forwarding address. Confirm telephone number __________________ and email address ______________________.

By initialing below, you acknowledge and agree to the terms in Section 4.

X GR
Geremy G. Robinson

## 5. LEAD BASED PAINT ADDENDUM

### 5.1 LEAD BASED PAINT DISCLOSURE

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 houses, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

The property you are renting was built in 1994

A. Presence of lead-based paint and/or lead-based paint hazards:

_____ Known lead-based paint and or lead-based paint hazards are present in the housing. Explain:_______________________________________.

__X__ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

B. Records and reports available to the lessor:

______ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents). _______________________________________.

__X__ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

By providing your initials on this addendum you are acknowledging that you have received a copy of all of the information listed above as well as a copy of the pamphlet Protect Your Family from Lead in Your Home located in the rental binder at the property.

Agent has informed the lessor of the landlord's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

By initialing below, you acknowledge and agree to the terms in Section 5.

X GR
Geremy G. Robinson

**6. LIABILITY TO LANDLORD INSURANCE**

**6.1 <u>LIABILITY TO LANDLORD INSURANCE REQUIRED</u>**

This Addendum is attached to and becomes a part of the Residential Lease Agreement. For the duration of the Lease, Lessee is required to maintain and provide the following minimum required insurance coverage:

- $100,000 Limit of Liability for Lessee's legal liability for damage to Lessor's property for no less than the following causes of loss: fire, smoke, explosion, backup or overflow of sewer, drain or sump, and water damage ("Required Insurance").

Lessee is required to furnish Lessor with evidence of Required Insurance prior to occupancy of leased premises and at the time of each lease renewal period. If at any time Lessee does not have Required Insurance, Lessee is in breach of the Lease and Lessor shall have, in addition to any other rights under the Lease, the right but not the obligation to purchase Required Insurance coverage protecting the sole interest of the Lessor and seek contractual reimbursement from the Lessee for all costs and expenses associated with such purchase. This may be referred to as "force placed insurance".

Lessee may obtain Required Insurance or broader coverage from an insurance agent or insurance company of Lessee's choice. If Lessee furnishes evidence of such insurance and maintains the insurance for the duration of the Lease, then nothing more is required. If Lessee does not maintain Required Insurance, the insurance requirement of this Lease may be satisfied by Lessor, who may purchase such coverage through the Lessor's Legal Liability Insurance Policy ("LLIP"). The coverage provided under the LLIP will provide the Required Insurance coverage listed above. An amount equal to the total cost to the Lessor for the LLIP coverage shall be charged to Lessee by the Lessor as a recoverable expense under the Lease. Some important points of this coverage, which Lessee should understand are:

1. LLIP is designed to fulfill the insurance requirement of the Lease. Lessor is the Insured under the LLIP. This is single interest forced placed insurance. Lessee is not an Insured, Additional Insured or beneficiary under the LLIP. All loss payments are made to the Lessor.

2. LLIP coverage is <u>NOT</u> personal liability insurance or renters insurance. LLIP does not cover the Lessee's personal property (contents), additional living expenses or liability arising out of bodily injury or property damage to any third party. If Lessee requires any of these coverages, then Lessee should contact an insurance agent or insurance company of Lessee's choice to obtain personal liability insurance or renters insurance to protect Lessee's interests.

3. Coverage under the LLIP may be more expensive than the cost of Required Insurance obtainable by Lessee elsewhere. At any time, Lessee may contact an insurance agent or insurance company of their choice for insurance options to satisfy the Required Insurance under this Lease.

4. If Lessee has purchased Renters Insurance and at any time allows such Renters Insurance to lapse in breach of the Lease Agreement, Lessor may purchase Lessor Insurance without notice and add the total cost associated therewith to Lessee's monthly rent payment.

5. Licensed insurance agents may receive a commission on the LLIP.

6. The total cost to the Lessee for the Lessor obtaining LLIP shall be ($9.50) per month. This is an amount equal to the actual premium charge to the Lessor

including any premium taxes and fees due to state governing bodies. There are no other fees, cost or charge added to or included within this total cost.

7. In the event that loss or damage to Lessor's property exceeds the amount of Required Insurance, Lessee shall remain contractually liable to Lessor for such amount. In the event of liability to any other party for bodily injury or property damage, Lessee shall remain liable to such other party.

8. It shall be the Lessee's duty to notify Lessor of any subsequent purchase of Renters Insurance.

As used in this Addendum: "Lease" may be interchangeable with "Lease Agreement"; "Lessee" may be interchangeable with "Resident" or "Tenant", and "Lessor" may be interchangeable with "Landlord" or "Owner".

Scheduling of the premises under the LLIP is not mandatory and Lessee may purchase Required Insurance from an insurance agent or insurance company of Lessee's choice at any time and coverage under the LLIP will be terminated by the Lessor.

By signing below, you acknowledge and agree to the terms in Section 7.

X ______________________
Geremy G. Robinson

9. **Sign and Accept**

ACCEPTANCE OF LEASE

By signing below, the parties agree to the foregoing and acknowledge they have been provided a copy of this agreement.

**LANDLORD:**

X ______________________
Tiffany Lam

X ______________________
Martin Kao

**As Tenants by the Entirety**

**TENANT:**

X ______________________
Geremy G. Robinson

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

Electronically Filed
FIRST CIRCUIT
1CCV-20-0001511
10-APR-2023
07:05 PM
Dkt. 730 NOH

| | |
|---|---|
| NAVATEK CAPITAL INC., individually and derivatively on behalf of Nominal Respondent MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>MARTIN KAO; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-5; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL UNITS 1-10,<br><br>Defendants/Respondents,<br><br>and<br><br>MARTIN DEFENSE GROUP, LLC, fka NAVATEK LLC,<br><br>Nominal Respondent. | CIVIL NO: 1CCV-20-0001511 GWBC<br>(CONTRACT)<br><br>**NOTICE OF HEARING ON MOTION** |

**NOTICE OF HEARING ON MOTION**

TO: DAVID M. LOUIE, ESQ.
JESSE W. SCHIEL, ESQ.
NICHOLAS R. MONLUX, ESQ.
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Email: dml@ksglaw.com; jws@ksglaw.com;
nrm@ksglaw.com

Attorneys for Plaintiff
NAVATEK CAPITAL INC., individually and derivatively
On behalf of Nominal Defendant MARTIN DEFENSE
GROUP, LLC, FKA NAVATEK LLC

DOUGLAS S.G. CHIN, ESQ.
STARN O'TOOLE MARCUS & FISHER
733 Bishop Street, Suite 1900
Honolulu, Hawaii 96813
Email: dchin@starnlaw.com

VERNON Y.T. WOO, ESQ.
201 Merchant Street
Suite 2302
Honolulu, Hawaii 96813
Email: vwoo@hawaii.rr.com

Attorneys for Nominal Defendant
MARTIN DEFENSE GROUP, LLC,
FKA NAVATEK LLC

GEREMY ROBINSON
4902 Kahala Avenue
Honolulu, Hawaii 96816

Garnishee

NOTICE IS HEREBY GIVEN that *Defendant/Respondent Martin Kao's Motion To Quash Garnishee Summons Directed To Geremy Robinson (Dkt 705) And/Or To Discharge Or Release Garnishee; Memorandum In Support* will be brought on for hearing before the Honorable Gary W.B. Chang, Judge of the above-entitled Court, in his courtroom at Kaahumanu Hale, 777 Punchbowl Street, Honolulu, Hawaii, on **June 6, 2023, at 3:00 p.m.**, or as soon thereafter as the matter can be heard.

If you fail to appear at the hearing, the relief requested may be granted without further notice to you.

DATED: Honolulu, Hawaii, April 10, 2023.

/s/ Chuck C. Choi
KEITH M. KIUCHI
CHUCK C. CHOI
ALLISON A. ITO
MICHEL A. OKAZAKI

ATTORNEYS FOR DEFENDANT/RESPONDENT
MARTIN KAO