# SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC
# OPERATING AGREEMENT

This **OPERATING AGREEMENT** is entered into and shall be effective as of the date signed below. The Person who is identified as the Member as set forth on the signature page of this Agreement is executing this Agreement pursuant to the provisions of the Hawaii Uniform Limited Liability Company Act, HRS 428, as amended from time to time or any corresponding provisions of succeeding law (the "Act"), on the following terms and conditions:

## SECTION 1
## THE COMPANY

**1.1 Formation.** The Member is forming a limited liability company (the "Company") under and pursuant to the provisions of the Act and upon the terms and conditions set forth in this Agreement. The rights and liabilities of the Member shall be as provided in the Articles of Organization, this Operating Agreement, and the nonwaivable provisions of the Act. "Operating Agreement" means this limited liability company agreement including all Exhibits and Schedules attached hereto, as amended from time to time. Simultaneously with the execution of this Operating Agreement and the formation of the Company, the Member shall be admitted as a member of the Company.

**1.2 Name.** The name of the Company shall be **SOCIETY OF YOUNG WOMEN SCIENTISTS AND ENGINEERS LLC** and all business of the Company shall be conducted in such name.

**1.3 Purpose.** The purposes of the Company are to invest in and manage assets on behalf of the Member and to engage in any and all activities allowed by the laws of the State of Hawaii consistent with the enumerated purposes (the "Business").

## SECTION 2
## MEMBER'S CAPITAL CONTRIBUTIONS

**2.1 Original Capital Contributions.** The Member whose name and address is detailed on Exhibit A will contribute property to the Company as described on Exhibit A.

**2.2 Additional Capital Contributions.** In addition to the Original Capital Contribution, the Member may make additional contributions.

## SECTION 3
## ALLOCATIONS

All profits and losses for any Fiscal Year shall be allocated to the Member in



EXHIBIT 10

Pacmar v. Kao
30(b)(6) of SYWSE
20
exhibitsticker.com

MDG021781
PAC-008196

proportion to the Member's Units.

**SECTION 4**
**DISTRIBUTIONS**

The Company may make distributions as determined by the Member from time to time in accordance with this Operating Agreement.

**SECTION 5**
**MANAGEMENT**

**5.1 Managers.** The management of the Company shall be vested in one or more Managers. The initial Manager shall be the Manager designated on Exhibit B to this Agreement. The Manager may be removed and replaced at any time, with or without cause, by the Member. Each Manager shall perform his duties as a Manager in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A person who so performs his duties shall not have any liability by reason of being or having been a Manager of the Company.

**5.2 Manager Powers.**

**(a)** Except as otherwise provided in this Operating Agreement, all powers to control and manage the Company shall be exclusively vested in the Manager, and the Manager may exercise all powers of the Company; do all such lawful acts as are not prohibited by the Articles of Organization, this Operating Agreement, or statute; and in so doing shall have the right and authority to take all actions which the Manager deems necessary, useful, or appropriate for the management and conduct of the Company, including exercising the following specific rights and powers:

**(1)** Conduct the Company's business, carry on its operations, and have and exercise the powers granted by the Act in any state, territory, district, or possession of the United States or in any foreign country which may be necessary or convenient to effect any or all of the purposes for which it is organized;

**(2)** Execute any agreements on behalf of the Company to acquire by purchase, lease, or otherwise any real or personal property which may be necessary, convenient, or incidental to the accomplishment of the Business;

**(3)** Decide how the Company will operate, maintain, finance, improve, construct, own, grant operations with respect to, sell, convey, assign, mortgage, and lease any real estate and any personal property necessary, convenient, or incidental to the accomplishment of the Business;

**(4)** Execute any and all agreements, contracts, documents, certifications, and instruments on behalf of the Company necessary or convenient in connection with the management, maintenance, and operation of the Company, or in

connection with managing the affairs of the Company, including executing amendments to this Operating Agreement and the Articles of Organization in accordance with the terms of this Operating Agreement, both as Manager and, if required, as attorney-in-fact for the Member pursuant to any power of attorney granted by the Member to the Manager;

**(5)** Borrow money and issue evidences of indebtedness on behalf of the Company necessary, convenient, or incidental to the accomplishment of the Business and secure the same by mortgage, pledge, or other lien on any Company assets;

**(6)** Execute on behalf of the Company, in furtherance of the Business, any deed, lease, mortgage, deed of trust, mortgage note, promissory note, bill of sale, contract, or other instrument purporting to convey or encumber any or all of the Company assets;

**(7)** Decide whether the Company will prepay in whole or in part, refinance, recast, increase, modify, or extend any liabilities affecting the assets of the Company and in connection therewith execute any extensions or renewals of encumbrances on any or all of such assets;

**(8)** Care for and distribute funds to the Member by way of cash income, return of capital, or otherwise, all in accordance with the provisions of this Operating Agreement and perform all matters in furtherance of the objectives of the Company or this Operating Agreement;

**(9)** Contract on behalf of the Company for the employment and services of employees and/or independent contractors, such as lawyers and accountants, and delegate to such persons the duty to manage or supervise any of the assets or operations of the Company;

**(10)** Engage in any kind of activity and perform and carry out contracts of any kind (including contracts of insurance covering risks to Company assets and Manager liability) necessary or incidental to, or in connection with, the accomplishment of the Business as may be lawfully carried on or performed by a limited liability company under the laws of each state in which the Company is then formed or qualified;

**(11)** Take, or refrain from taking, all actions not expressly proscribed or limited by this Operating Agreement as may be necessary or appropriate to accomplish the Business;

**(12)** Institute, prosecute, defend, settle, compromise, and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of or against the Company, the Member, or any Managers in connection with activities arising out of, connected with, or incidental to this Operating Agreement and to engage counsel or others in connection therewith;

**(13)** Purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, sell, mortgage, lend, pledge, or otherwise dispose of and otherwise use and deal in and with shares or other interests in or obligations of domestic or foreign

corporations, associations, general or limited companies, other limited liability companies, or direct or indirect obligations of the United States or of any government, state, territory, government district or municipality or of any instrumentality of any of them; and

**(14)** Delegate authority to officers, employees, agents, and representatives of the Company as it may from time to time deem appropriate.

**(b)** The Manager may establish policies and guidelines for the hiring of employees to permit the Company to act as an operating company with respect to its Business. The Manager may adopt appropriate management incentive plans and employee benefit plans.

**5.3 Duties and Obligations of the Manager.**

**(a)** The Manager and officers of the Company shall be responsible for conducting, in the name of, and on behalf of, the Company, the day-to-day business and affairs of the Company.

**(b)** The Manager shall cause the Company to conduct its business and operations separate and apart from that of any Member or Manager or any of its Affiliates, including, without limitation, (i) segregating Company assets and not allowing funds or other assets of the Company to be commingled with the funds or other assets of, held by, or registered in the name of any Member, Manager, or any of its Affiliates, (ii) maintaining books and financial records of the Company separate from the books and financial records of any Member, Manager, or its Affiliates and observing all Company procedures and formalities, including, without limitation, maintaining minutes of Company meetings and acting on behalf of the Company only pursuant to due authorization by the Member, (iii) causing the Company to pay its liabilities from assets of the Company, and (iv) causing the Company to conduct its dealings with third parties in its own name and as a separate and independent entity.

**(c)** The Manager shall take all actions which may be necessary or appropriate (i) for the continuation of the Company's valid existence as a limited liability company under the laws of the State of Hawaii and of each other jurisdiction in which such existence is necessary to protect the limited liability of the Member or to enable the Company to conduct the business in which it is engaged and (ii) for the accomplishment of the Business, including the acquisition, development, maintenance, preservation, and operation of Property in accordance with the provisions of this Operating Agreement and applicable laws and regulations.

**(d)** The Manager shall be under a fiduciary duty to conduct the affairs of the Company in the best interests of the Member and of the Company, including the safekeeping and use of all of the Property and the use thereof for the exclusive benefit of the Company.

**5.4 Reimbursements.** The Company shall reimburse the Member and Manager for all expenses incurred and paid by any of them in the organization of the Company and as authorized by the Company, in the conduct of the Company's business, including, but

notlimited to, expenses of maintaining an office, telephones, travel, office equipment, and secretarial and other personnel as may reasonably be attributable to the Company. Such reimbursement shall be treated as expenses of the Company and shall not be deemed to constitute distributions to any Member of profit, loss, or capital of the Company.

**5.5 Indemnification of the Manager.**

**(a)** Unless otherwise provided in Section 5.5(c) hereof, the Company, its receiver, or its trustee (in the case of its receiver or trustee, to the extent of Company Property) shall indemnify, save harmless, and pay all judgments and claims against the Managers relating to any liability or damage incurred by reason of any act performed or not performed by the Managers in furtherance of the Business, including reasonable attorneys' fees incurred by the Manager in connection with the defense of any action based on any such act or inaction.

**(b)** Unless otherwise provided in Section 5.5(c) hereof, the Company shall indemnify; save harmless; and pay all expenses, costs, or liabilities of any Manager incurred when such Manager makes any deposit or any other similar payment or assumes any obligation in connection with any Property proposed to be acquired by the Company for the benefit of the Company and in accordance with this Operating Agreement and suffers any financial loss as the result of such action.

**(c)** Notwithstanding the provisions of Sections 5.5(a) and 5.5(b) above, such Sections shall be enforced only to the maximum extent permitted by law, and no Manager shall be indemnified from any liability for the fraud, intentional misconduct, gross negligence, or a knowing violation of the law which was material to the cause of action.

**5.6 Filings; Agent for Service of Process.**

**(a)** The Manager is hereby authorized to and shall cause the Articles of Organization to be filed with the Department of Commerce and Consumer Affairs of the State of Hawaii in accordance with the Act. The Manager shall take any and all other actions reasonably necessary to perfect and maintain the status of the Company as a limited liability company under the laws of the State of Hawaii, including the preparation and filing of such amendments to the Articles of Organization and such other assumed name certificates, documents, instruments, and publications as may be required by law, including, without limitation, action to reflect a correction of false or erroneous statements in the Articles of Organization or the desire of the Member to make a change in any statement therein in order that it shall accurately represent the intent of the Member.

**(b)** The Member and the Manager shall execute and cause to be filed original or amended Articles of Organization and shall take any and all other actions as may be reasonably necessary to perfect and maintain the status of the Company as a limited liability company or similar type of entity under the laws of any other jurisdictions in which the Company engages in business.

**(c)** The Manager is authorized to and shall designate the Company's Agent for Service of Process.

**(d)** Upon the dissolution and completion of the winding up and liquidation of the Company in accordance with Section 8, the Manager shall promptly execute and cause to be filed Articles of Termination in accordance with the Act and the laws of any other jurisdictions in which the Managers deem such filing necessary or advisable.

**5.7 Independent Activities; Transactions with Affiliates.**

**(a)** The Manager shall be required to devote such time to the affairs of the Company as may be necessary to manage and operate the Company and shall be free to serve any other Person or enterprise in any capacity that such Manager may deem appropriate in such Manager's discretion.

**(b)** Insofar as permitted by applicable law, neither this Operating Agreement nor any activity undertaken pursuant hereto shall prevent the Member, Manager, or their Affiliates from engaging in whatever activities they choose, whether the same are competitive with the Company or otherwise, and any such activities may be undertaken without having or incurring any obligation to offer any interest in such activities to the Company or the Member or require the Member or Manager to permit the Company or its Affiliates to participate in any such activities.

**(c)** To the extent permitted by applicable law and subject to the provisions of this Operating Agreement, the Manager is hereby authorized to cause the Company to purchase Property from, sell Property to or otherwise deal with the Member, acting on its own behalf, or any Affiliate of the Member or Manager; provided that any such purchase, sale or other transaction shall be made on terms and conditions which are no less favorable to the Company than if the sale, purchase or other transaction had been made with an independent third party.

## SECTION 6
## ROLE OF MEMBERS

**6.1 Rights or Powers.** Members who are not also Managers shall not have any right or power to take part in the management or control of the Company or its business and affairs or to act for or bind the Company in any way. Notwithstanding the foregoing, the Member shall have all the rights and powers specifically set forth in this Operating Agreement and, to the extent not inconsistent with this Operating Agreement, in the Act.

**6.2 Voting Rights.** No Member has any voting right except with respect to those matters specifically reserved for a Member vote which are set forth in this Operating Agreement and as required in the Act.

**6.3 Required Member Consents.** Notwithstanding any other provision of this Operating Agreement, no action may be taken by the Company in connection with any of the following matters without the written consent of the Member:

**(a)** Any activity that is not consistent with the purposes of the Company as set forth in section 1.3 hereof;

(b) Any act in contravention of this Operating Agreement;

(c) Confession of a judgment against the Company in an amount in excess of $10,000.00;

(d) Any transaction to liquidate or dissolve the Company;

(e) Any transaction by the Company to merge or consolidate with another Person;

(f) Admission of a new Member to the Company; and

(g) Any amendment to this Operating Agreement.

6.4 **Withdrawal/Resignation.** Except as otherwise provided in Sections 4 and 8, no Member shall demand or receive a return on or of its Capital Contributions or receive withdrawals from the Company.

6.5 **Member Compensation.** No Member shall receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account or for services rendered on behalf of the Company, or otherwise, in its capacity as a Member except as otherwise provided in this Operating Agreement.

6.6 **Members' Liability.** No Member shall be liable under a judgment, decree, or order of a court or in any other manner for the Debts or any other obligations or liabilities of the Company. A Member shall be liable only to make its Capital Contributions and shall not be required to lend any funds to the Company or, after its Capital Contributions have been made, to make any additional contributions, assessments, or payments to the Company provided that a Member may be required to repay distributions made to it as provided in the Act.

6.7 **Transactions between a Member and the Company.** Except as otherwise provided by applicable law, any Member may, but shall not be obligated to, lend money to the Company, act as surety for the Company, and transact other business with the Company and has the same rights and obligations when transacting business with the Company as a person or entity who is not a Member. A Member, any Affiliate thereof, or an employee, stockholder, agent, director or officer of a Member or any Affiliate thereof may also be an employee or be retained as an agent of the Company. The existence of these relationships and acting in such capacities will not result in the Member being deemed to be participating in the control of the business of the Company or otherwise affect the limited liability of the Member.

## SECTION 7
## ACCOUNTING, BOOKS AND RECORDS

The Company shall keep on site at its principal place of business separate books

of account for the Company which shall show a true and accurate record of all costs and expenses incurred, all charges made, all credits made and received, and all income derived in connection with the conduct of the Company and the operation of the Business in accordance with this Operating Agreement. To the extent possible, the Company shall use the cash method of accounting in preparation of its financial reports and for tax purposes and shall keep its books and records accordingly.

## SECTION 8
## DISSOLUTION AND WINDING UP

**8.1 Dissolution Events.** The Company shall dissolve and shall commence winding up and liquidating upon the first to occur of any of the following (each a "Dissolution Event"):

**(a)** The vote of the Member to dissolve, wind up, and liquidate the Company;

**(b)** A judicial determination that an event has occurred that makes it unlawful, impossible, or impractical to pursue the Business; or

**(c)** The end of the term of the Company.

Notwithstanding any provision of the Act, the Company shall not dissolve prior to the occurrence of a Dissolution Event.

**8.2 Winding Up.** Upon the occurrence of (a) a Dissolution Event or (b) the determination by a court of competent jurisdiction that the Company has dissolved prior to the occurrence of a Dissolution Event, the Company shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and Member, and the Member shall not take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Company's business and affairs, provided that all covenants contained in this Operating Agreement and obligations provided for in this Operating Agreement shall continue to be fully binding upon the Member until such time as the Property has been distributed pursuant to this Section 8.2 and the Articles of Organization has been canceled pursuant to the Act. The Managers shall be responsible for overseeing the winding up and dissolution of the Company. The Managers shall take full account of the Company's liabilities and Property and shall cause the Property or the proceeds from the sale thereof, to the extent sufficient therefor, to be applied and distributed, to the maximum extent permitted by law, in the following order:

**(a)** First, to creditors (including Members and Managers who are creditors, to the extent otherwise permitted by law) in satisfaction of all of the Company's Debts and other liabilities other than liabilities for which reasonable provision for payment has been made and liabilities for distribution to Members; and

**(b)** The balance, if any, to the Member.

CONFIDENTIAL

**8.3 Termination.** Upon completion of the distribution of the Company's Property as provided in this Section 8, the Company shall be terminated, and the Liquidator shall cause the filing of the Articles of Termination pursuant to the Act and shall take all such other actions as may be necessary to terminate the Company.

## SECTION 9
## DEFINED TERMS

Capitalized words and phrases used in this Operating Agreement have the following meanings:

**"Act"** shall have the meaning set forth in the recital provisions.

**"Affiliate"** means, with respect to any Person (i) any Person directly or indirectly controlling, controlled by, or under common control with such Person; (ii) any officer, director, general partner, member, or trustee of such Person; or (iii) any Person who is an officer, director, general partner, member, or trustee of any Person described in clauses (i) or (ii) of this sentence. For purposes of this definition, the terms "Controlling," "controlled by" or "under common control with" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person or entity, whether through the ownership of voting securities, by contract or otherwise, or the power to elect at least 50% of the directors, managers, general partners, or persons exercising similar authority with respect to such Person or entities.

**"Agreement" or "Operating Agreement"** shall have the meaning set forth in Section 1.1.

**"Articles of Organization"** means the document of formation filed with the Department of Commerce and Consumer Affairs of the State of Hawaii pursuant to the Act to form the Company, as originally executed and amended, modified, supplemented, or restated from time to time, as the context requires.

**"Articles of Termination"** means a certificate filed in accordance with Hawaii Revised Statutes § 428-805.

**"Business"** shall have the meaning set forth in Section 1.3.

**"Capital Contributions"** means, with respect to any Member, the amount of money and the initial Fair Market Value of any Property (other than money) contributed to the Company.

**"Code"** means the United States Internal Revenue Code of 1986, as amended from time to time.

**"Company"** shall have the meaning set forth in Section 1.1.

CONFIDENTIAL

**"Debt"** means (i) any indebtedness for borrowed money or the deferred purchase price of property as evidenced by a note, bond, or other instrument, (ii) obligations as lessee under capital leases, (iii) obligations secured by any mortgage, pledge, security interest, encumbrance, lien, or charge of any kind existing on any asset owned or held by the Company whether or not the Company has assumed or become liable for the obligations secured thereby, (iv) accounts payable, and (v) obligations under direct or indirect guarantees of obligations contingent or otherwise provided that Debt shall not include obligations in respect of any accounts payable that are incurred in the ordinary course of the Company's business and are not delinquent or are being contested in good faith by appropriate proceedings.

**"Dissolution Event"** shall have the meaning set forth in Section 8.1.

**"Fiscal Year"** shall have the meaning set forth in Section 3.

**"Manager"** means the individual elected by the Member to manage the Company.

**"Member"** means the Person (i) who is referred to as such on Exhibit A to this Operating Agreement, or who has become a substituted Member pursuant to the terms of this Operating Agreement and (ii) who has not ceased to be a Member.

**"Person"** means any individual, partnership (whether general or limited), limited liability company, corporation, trust, estate, association, nominee, or other entity.

**"Property"** means all real and personal property acquired by the Company, including cash, and any improvements thereto, and shall include both tangible and intangible property.

**"Regulations"** means the Income Tax Regulations, including Temporary Regulations, promulgated under the Code, as such regulations are amended from time to time.

## SECTION 10
## MISCELLANEOUS

**10.1 Notices.** Any notice, payment, demand, or communication required or permitted to be given by any provision of this Operating Agreement shall be in writing and shall be deemed to have been delivered, given, and received for all purposes (i) if delivered personally to the Person or to an officer of the Person to whom the same is directed, or (ii) when the same is actually received, if sent either by registered or certified mail, postage and charges prepaid, or by facsimile, if such facsimile is followed by a hard copy of the facsimile communication sent promptly thereafter by registered or certified mail, postage and charges prepaid, addressed as follows, or to such other address as such Person may from time to time specify by notice to the Member and the Managers:

**(a)** If to the Company, to the address set forth in Exhibit A;

**(b)** If to the Managers, to the address set forth in Exhibit B; or

(c) If to a Member, to the address set forth in Exhibit A, attached hereto.

10.2 **Binding Effect.** Except as otherwise provided in this Operating Agreement, every covenant, term, and provision of this Operating Agreement shall be binding upon and inure to the benefit of the Members and their respective successors, transferees, and assigns.

10.3 **Construction.** Every covenant, term, and provision of this Operating Agreement shall be construed simply according to its fair meaning and not strictly for or against any Member.

10.4 **Time.** In computing any period of time pursuant to this Operating Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included, but the time shall begin to run on the next succeeding day. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday, or legal holiday.

10.5 **Headings.** Section and other headings contained in this Operating Agreement are for reference purposes only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Operating Agreement or any provision hereof.

10.6 **Severability.** Except as otherwise provided in the succeeding sentence, every provision of this Operating Agreement is intended to be severable, and, if any term or provision of this Operating Agreement is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this Operating Agreement. The preceding sentence of this Section 10.6 shall be of no force or effect if the consequence of enforcing the remainder of this Operating Agreement without such illegal or invalid term or provision would be to cause the Member to lose the material benefit of its economic bargain.

10.7 **Incorporation by Reference.** Every exhibit, schedule, and other appendix attached to this Operating Agreement and referred to herein is incorporated in this Operating Agreement by reference unless this Operating Agreement expressly otherwise provides.

10.8 **Variation of Terms.** All terms and any variations thereof shall be deemed to refer to masculine, feminine, or neuter, singular or plural, as the identity of the Person or Persons may require.

10.9 **Governing Law.** The laws of the State of Hawaii shall govern the validity of this Operating Agreement, the construction of its terms, and the interpretation of the rights and duties arising hereunder.

10.10 **Title to Property.** All Property owned by the Company shall be owned by the Company as an entity, and no Member shall have any ownership interest in such

CONFIDENTIAL

Property in its individual name. Each Member's interest in the Company shall be personal property for all purposes. At all times after the Effective Date, the Company shall hold title to all of its Property in the name of the Company and not in the name of any Member.

*[Remainder of page intentionally left blank. Signature page follows.]*



**MDG021792**
PAC-008207

CONFIDENTIAL

**IN WITNESS WHEREOF,** the parties have executed and entered into this Operating Agreement of the Company effective the 26th day of November, 2019.

**Society of Young Women Scientists and Engineers LLC,**

By:__________________________________
Jennifer Lam, its Manager and Member

Society of Young Women Scientists and Engineers LLC

EXHIBIT A
MEMBERSHIP LIST

| Name and Address | | Percentage |
|---|---|---|
| Jennifer Lam<br>P.O. Box 2394<br>Honolulu, Hawaii 96804 | 100% | 100% |

Society of Young Women Scientists and Engineers LLC

Exhibit B
LIST OF MANAGERS

**Name and Address**
Jennifer Lam
P.O. Box 2394
Honolulu, Hawaii 96804