STATE OF HAWAII
OFFICE OF ASSISTANT REGISTRAR
RECORDED June 29, 2020 8:01 AM
Doc No T11137028
On Cert(s) 1195474
Issuance of Cert(s)

/s/ LESLIE T. KOBATA, Assistant Registrar
SMC 19

I hereby certify that this is a true copy from the records of the Bureau of Conveyances,
[signature]
Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii

| LAND COURT SYSTEM | REGULAR SYSTEM |
| --- | --- |
| AFTER RECORDATION, RETURN TO: | RETURN BY: MAIL ☒ PICKUP ☐ |
| Alan S. Chun, Escrow Officer<br>Title Guaranty Escrow Services, Inc.<br>6600 Kalanianaole Highway, Suite 108A<br>Honolulu, Hawaii 96825 | TG: 202019338 B LC 2<br>TGE: 21320149066<br>ALAN CHUN |
| | Total pages: 19 |

Tax Map Key No. (1) 3-5-008-001

**MORTGAGE, SECURITY AGREEMENT**
**AND FINANCING STATEMENT**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated **June 22, 2020**, together with all Riders to this document.

(B) "**Mortgagor**" means **MARTIN YUE-SHAN KAO and TIFFANY JENNIFER LAM, husband and wife.**

(C) "**Borrower**" is **MARTIN YUE-SHAN KAO and TIFFANY JENNIFER LAM, husband and wife.** Borrower is the mortgagor under this Security Instrument.

(D) "**Lender**" is **BANK OF AMERICA, N.A.** Lender is **a national banking association.** Lender's address is **20 Greenway Plaza, Suite 900, TX6-020-09-01, Houston, Texas 77046.** Lender is the mortgagee under this Security Instrument.

(E) "**Note**" means the promissory note signed by Borrower and dated **June 22, 2020.** The Note states that Borrower owes Lender **THREE MILLION AND NO/100 DOLLARS** (U.S. **$3,000,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 25, 2035.**

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property".

(G) "**Loan Documents**" means the Note, this Security Instrument, all Riders attached hereto and all other documents executed in connection with, securing or relating to the indebtedness evidenced by the Note.

**EXHIBIT 17**

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all riders to this Security Instrument that are executed by Mortgagor and/or Borrower. The following Riders are to be executed by Mortgagor and Borrower ***check box as applicable***:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [x] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] Other(s): |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | Custom Mortgage Rider |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Mortgagor"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Mortgagor's and Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Mortgagor does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the **City and**

**County of Honolulu** which currently has the address of **4902 Kahala Avenue, Honolulu, Hawaii 96816** ("Property Address"):

**All of the property described in Exhibit "A" attached hereto and incorporated herein by reference,**

**SUBJECT, HOWEVER, to the encumbrances noted in Exhibit "A";**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

MORTGAGOR COVENANTS that Mortgagor is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Mortgagor, Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower or Mortgagor might have now or in the future against Lender shall relieve Borrower or Mortgagor from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall

be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Mortgagor or Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Mortgagor or Borrower shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Mortgagor or Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower falls to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing

or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4. **Charges; Liens.** Mortgagor or Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Mortgagor or Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's right to disapprove Mortgagor's choice, which right shall not be exercised unreasonably. Lender may require Mortgagor to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Mortgagor shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Mortgagor.

If Mortgagor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Mortgagor's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not

protect Mortgagor, Mortgagor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Mortgagor acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Mortgagor could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Mortgagor shall promptly give to Lender all receipts of paid premiums and renewal notices. If Mortgagor obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Mortgagor. Unless Lender and Mortgagor otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Mortgagor or Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Mortgagor or Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Mortgagor. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Mortgagor. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Mortgagor abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Mortgagor hereby assigns to Lender (a) Mortgagor 's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Mortgagor 's rights (other than the right to any refund of unearned premiums paid by Mortgagor) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Intentionally omitted.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Mortgagor shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Mortgagor is residing in the Property, Mortgagor shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Mortgagor shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Mortgagor shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Mortgagor is not relieved of Mortgagor's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Mortgagor notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Mortgagor shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Mortgagor 's occupancy of the Property as Mortgagor 's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower or Mortgagor fail to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Mortgagor has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Mortgagor shall comply with all the provisions of the lease. If Mortgagor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Mortgagor or Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Mortgagor was required to make separately designated payments toward the premiums for Mortgage Insurance, Mortgagor shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in

effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Mortgagor or Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Mortgagor or Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Mortgagor or Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Mortgagor or Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Mortgagor and/or Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Mortgagor or Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Mortgagor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Mortgagor and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Mortgagor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Mortgagor and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Mortgagor, or if, after notice by Lender to Mortgagor that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Mortgagor fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Mortgagor has a right of action in regard to Miscellaneous Proceeds.

Mortgagor shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Mortgagor can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Mortgagor and Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Mortgagor or Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Mortgagor or Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Mortgagor or Borrower or any Successors in Interest of Mortgagor or Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Mortgagor or Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower and Mortgagor covenant and agree that Borrower's and Mortgagor's obligations and liability shall be joint and several. However, any Borrower or Mortgagor who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Mortgagor or Borrower who assumes Mortgagor's or Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Mortgagor's or Borrower's rights and benefits under this Security Instrument. Mortgagor and Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Mortgagor and Borrower fees for services performed in connection with Mortgagor's or Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security

Instrument to charge a specific fee to Mortgagor or Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Mortgagor, Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Mortgagor or Borrower in connection with this Security Instrument shall be deemed to have been given to Mortgagor and Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Mortgagor or Borrower shall constitute notice to all Mortgagors and Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Mortgagor or Borrower has designated a substitute notice address by notice to Lender. Mortgagor and Borrower shall promptly notify Lender of Mortgagor's or Borrower's change of address. If Lender specifies a procedure for reporting Mortgagor's or Borrower's change of address, then Mortgagor and Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Mortgagor.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales

contract or escrow agreement, the intent of which is the transfer of title by Mortgagor at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Mortgagor is not a natural person and a beneficial interest in Mortgagor is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Mortgagor or Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Mortgagor or Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Mortgagor nor Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Mortgagor, Borrower or Lender has

notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Mortgagor shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Mortgagor shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Mortgagor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Mortgagor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Mortgagor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Mortgagor and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower and Mortgagor prior to acceleration following Borrower's or Mortgagor's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable**

**Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give Mortgagor notice of sale in the manner provided in Section 15. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Mortgagor shall pay any recordation costs. Lender may charge Mortgagor a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Mortgagor relinquishes all right of dower and courtesy in the Property.

BY SIGNING BELOW, Mortgagor and Borrower accept and agree to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Mortgagor and Borrower and recorded with it.

| | |
|---|---|
| **MARTIN YUE-SHAN KAO** | **TIFFANY JENNIFER LAM** |
| Mortgagor and Borrower | Mortgagor and Borrower |

RRES Name: Nicholas Palmer
RRES Title: Senior Vice President; Residential Real Estate Specialist
RRES NMLS #: NMLS# 637465

Bank Name: Bank of America, N.A.
Bank NMLS#: NMLS# 399802

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

On JUN 2 2 2020, before me Roxanne M. Olayan, a notary public in the First Circuit of the State of Hawaii, personally appeared **MARTIN YUE-SHAN KAO**, proved to me on the basis of satisfactory evidence, who, being by me duly sworn or affirmed, did say that such person(s) executed this 21 -page Mortgage, Security Agreement and Financing Statement dated JUN 2 2 2020, as the free act and deed of such person(s), and, if applicable, in the capacity shown, having been duly authorized to execute such instrument in such capacity.

[signature]

Print Name:____________________
Notary Public, State of Hawaii

ROXANNE M. OLAYAN
My Commission Expires: EXPIRATION: August 22, 2023

ROXANNE M. OLAYAN ★ STATE OF HAWAII ★ NOTARY 99-411 PUBLIC

(Stamp or Seal)

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

On JUN 2 2 2020, before me Roxanne M. Olayan, a notary public in the First Circuit of the State of Hawaii, personally appeared **TIFFANY JENNIFER LAM**, proved to me on the basis of satisfactory evidence, who, being by me duly sworn or affirmed, did say that such person(s) executed this 19-page Mortgage, Security Agreement and Financing Statement dated JUN 2 2 2020, as the free act and deed of such person(s), and, if applicable, in the capacity shown, having been duly authorized to execute such instrument in such capacity.

ROXANNE M. OLAYAN ★ NOTARY 99-411 PUBLIC ★ STATE OF HAWAII

______________________________
Print Name:____________________
Notary Public, State of Hawaii

ROXANNE M. OLAYAN
My Commission Expires: EXPIRATION: August 22, 2023

(Stamp or Seal)

**EXHIBIT A**

All of that certain parcel of land situate at Waialae-nui, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

Lot 2, area 0.346 acre, more or less, as shown on Map 2, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 828 of the Trustees under the Will and of the Estate of Bernice Pauahi Bishop, deceased.

Together with any other easements set forth in Transfer Certificate of Title No. 1195474 .

Being the property described in Transfer Certificate of Title No. T11137027 .

Subject, however, to the following:

1. Mineral and water rights of any nature.

2. Setback (8 feet wide) for future road widening purposes, as contained in Deed dated November 6, 1989, recorded in said Office as Land Court Document No. 1687556, and also described in instrument recorded in said Office as Land Court Document No. 397904.

3. Setback (25 feet wide) for building purposes, as as contained in Deed dated November 6, 1989, recorded in said Office as Land Court Document No. 1687556, and also described in instrument recorded in said Office as Land Court Document No. 397904.

4. The terms and provisions contained in the Declaration of Protective Provisions dated February 5, 1982, recorded in said Office as Land Court Document No. 1103430, and also recorded in the Bureau of Conveyances of the State of Hawaii in Liber 16149, at Page 332.

5. The terms and provisions contained in the Encroachment Agreement dated March 1, 1995, recorded in said Office as Land Court Document No. 2223936, made by and between Hiro Pacific Corporation, a Hawaii corporation, "Hiro Pacific", and Young Ki Paik, Trustee under that certain unrecorded Trust Agreement known as the Young Ki Paik Revocable Trust dated June 17, 1980, "Paik".

6. The terms and provisions contained in the Declaration of Restrictive Covenants dated September 14, 1999, recorded in said Bureau as Document No. 2000-097828.

(Not noted on Transfer Certificate(s) of Title referred to herein)

7. Utility box as referenced on the survey map prepared by Wesley T. Tengan, Land Surveyor, dated December 31, 2018, revised January 7, 2019.

8. Structure position discrepancies as referenced on the survey map prepared by Wesley T. Tengan, Land Surveyor, dated December 31, 2018, revised January 7, 2019.

9. Encroachment(s) as referenced on the survey map prepared by Wesley T. Tengan, Land Surveyor, dated December 31, 2018, revised January 7, 2019.

10. Any unrecorded leases and matters arising from or affecting the same.

End of Exhibit A

## CUSTOM MORTGAGE RIDER
(TO BE RECORDED WITH SECURITY INSTRUMENT)

This Rider ("Rider") is made as of **June 22, 2020** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Security Agreement and Financing Statement (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **BANK OF AMERICA, N.A., a national banking association** ("Lender") dated **June 22, 2020** and covering the property described in the Security Instrument and known as or located at:

**4902 Kahala Avenue, Honolulu, Hawaii 96816**

Defined terms used in this Rider shall have the meaning set forth in the Security Instrument unless otherwise indicated.

### ADDITIONAL COVENANTS
In addition to the covenants made in the Security Instrument, Mortgagor and Borrower further covenant and agree as follows:

1. **Hazardous Substances.** Mortgagor and Borrower shall indemnify Lender against and reimburse them on demand for, any and all liabilities, costs and expenses (including without limitation reasonable fees and expenses of attorneys and other professional consultants and experts) of every kind which may be incurred by Lender as a result of the presence of any Hazardous Substance about the Property, or the migration or release or threatened migration or release of any Hazardous Substance on, to, from or through the Property, at any time during or before Mortgagor 's ownership of the Property, or any act, omission or event existing or occurring in connection with the handling, storage, removal or disposal of any such Hazardous Substance or any violation of any Environmental Law or the filing or imposition of any environmental lien or claim against the Property as a result of any of the above occurrences.

2. **No Other Liens.** Mortgagor will not, without the prior written consent of Lender, except as otherwise specified by applicable law, grant, suffer or permit any contractual or non-contractual lien on or security interest in the Property, except in favor of Lender, or fail to promptly pay when due all lawful claims, whether for labor, materials or otherwise. To the extent applicable law allows the creation of liens against the Property, Mortgagor will advise Lender in writing within ten (10) days of the creation of any such liens against the Property.

3. **Financial Statements/Appraisals.** Lender may at its option obtain once in each year (or as otherwise requested by Lender) an appraisal of the Property or any part thereof prepared in accordance with written instructions from Lender by a third party appraiser engaged directly by Lender if any of the following occur as determined by Lender in its sole discretion: (a) a Default has occurred and is continuing; (b) an adverse change has occurred in real estate market conditions in the area where the Property is located; (c) an appraisal is required or recommended by bank examiners and/or auditors or pursuant to banking regulations or bank policy then in effect; or (d) an adverse change has occurred in the financial condition of Borrower. Each such appraiser and appraisal shall be satisfactory to Lender. To the extent not prohibited by applicable law, the cost of each such appraisal shall be payable by Mortgagor or Borrower to Lender on demand (which obligation Mortgagor or Borrower hereby promises to pay). Without limitation of other or additional requirements in any of the other Loan Documents, Mortgagor or Borrower will furnish to Lender, in form and detail satisfactory to Lender, a financial statement of Mortgagor or Borrower no later than thirty (30) days after written request therefor by Lender. Each financial statement submitted pursuant

to this section shall be certified in writing as true and correct by Mortgagor or Borrower. Mortgagor or Borrower will furnish to Lender at Mortgagor or Borrower's expense all evidence which Lender may from time to time reasonably request as to compliance with all provisions of the Note, Security Instrument as supplemented by this Rider, and any other documents provided by Mortgagor or Borrower to Lender or executed in connection with the loan evidenced by the Note (collectively the "Loan Documents").

4. **Effective as Financing Statement.** The Security Instrument shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real estate records of each city or county where the Property (including said fixtures) is situated.

5. **Construction Mortgage.** The Security Instrument constitutes a "Construction Mortgage" as defined in the Uniform Commercial Code adopted by the jurisdiction in which the Property is located to the extent that it secures an obligation incurred for the construction of improvements including the acquisition cost of the land.

6. **No Liability of Trustee.** The Trustee, where applicable, shall not be liable for any error or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever (including Trustee's negligence), except for Trustee's gross negligence or willful misconduct. Borrower will reimburse Trustee for, and save him harmless against, any and all liability and expenses which may be incurred by him in the performance of his duties. The foregoing indemnity shall not terminate upon discharge of the Secured Indebtedness or foreclosure, or release or other termination of the Security Instrument.

7. **Entire Agreement; Further Assurances.** The Loan Documents constitute the entire understanding and agreement between Mortgagor, Borrower and Lender with respect to the transactions arising in connection with the indebtedness secured hereby and supersede all prior written or oral understandings and agreements between Mortgagor, Borrower and Lender with respect to the matters addressed in the Loan Documents. Mortgagor or Borrower will, promptly on Lender's request, execute, deliver, procure and/or file such further documents, and take such further action as is necessary, desirable or proper to carry out more effectively the purposes of the Loan Documents, to correct any defect in the Loan Documents, or to more fully identify and subject to the Security Instrument any property intended to be covered by the Security Instrument.

By signing below Mortgagor and Borrower accept and agree to the terms and covenants contained in this Rider.

| | |
|---|---|
| **MARTIN YUE-SHAN KAO** | **TIFFANY JENNIFER LAM** |
| Mortgagor and Borrower | Mortgagor and Borrower |

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this **June 22, 2020** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned "Borrower," (whether there are one or more persons undersigned) to secure Borrower's Note to **BANK OF AMERICA, N.A., a national banking association** ("Lender") dated **June 22, 2020** and covering the Property described in the Security Instrument, which is located at:

**4902 Kahala Avenue, Honolulu, Hawaii 96816**

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Uniform Covenant 6 of the Security Instrument is deleted and is replaced by the following:

6. Occupancy and Use: Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property. Borrower shall not destroy, damage or impair the property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy and use of the Property as a second home. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

BY SIGNING BELOW, Mortgagor and Borrower accept and agree to the terms and provisions contained in this Second Home rider.

**MARTIN YUE-SHAN KAO**
Mortgagor and Borrower

**TIFFANY JENNIFER LAM**
Mortgagor and Borrower